**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

**Samiha Ayysah, Feras Hindi,**

**Tala Josephano**                )          **Case No.:  1:24-cv-03434-ACR**

                                   )
Plaintiff                          )

**American Airlines Inc. ,**       )

**Gulf Air B.S.C**                 )
Defendant                          )

_____ )

# EXHIBITS

March 24  2025

**Tala Josephano**
**615 S Catalina Ave #233**
**Redondo Beach CA 90277**
**347-749-4980**

**EXHIBITS**

# EXHIBITS

1. **Exhibit 1** Email From Gulf Air Lawyer asking for extension February 17 2025

2. Exhibit 2 Tala Email in Reply to her initial email asking for extension February 17 2025 and confirming Individual claims and objecting to any collective and electronic notifications or service.

3. **Exhibit 3** Gulf Air reply to Plaintiff Tala acknowledging judge rules in Conferring and Serving Procedures

4. **Exhibit 4** Tala Email to GA clearing that Feras and Samiha are unavailable confirm Feras unavailability and showing good faith in communications

5. **Exhibit 5** Gulf Air stating they will proceed with their answer

6. **Exhibit 6** Email From Deputy Alexander to Tala March 4 2025

7. **Exhibit 7** Email from Tala to Deputy Alexander rejecting meet and confer before entry to default hearing or any procedural adjustment hearing.

8. **Exhibit 8** Gulf Air Submission to DOT 2022-2024 With Law Firm name

9. **Exhibit 9**  DOT Order January 30 2025 Gulf Air Waiving Sovereignty

CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, Plaintiff Tala Josephano will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Proposed Order for Motion to Entry Default

1-Defendant American Airlines, Inc. **Micah E. Ticatch** 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Personal delivery via ABC Legal Services (Process Server) Method of Service: Personal delivery via ABC Legal Services (Process Server)

2-Defendant Gulf Air B.S.C., Inc  AT Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Personal delivery via ABC Legal Services (Process Server)

3- Plaintiff Samiha Ayyash & Plaintiff Feras Hindi: Waived Service , courtesy notice.

Respectfully submitted,

March 24 2025

Pro Se Plaintiff

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
(347)749-4980

**EXHIBITS**

**EXHIBITS**



**T Josephano <josephanotala@gmail.com>**

---

# Samiha Ayyash, Feres Hindi & Tala Josephano v. Gulf Air B.S.C. (C) and American Airlines

---

**Darcy C. Osta** <dosta@eckertseamans.com>          Mon, Feb 17, 2025 at 12:29 PM
To: "ayyashsamiha@gmail.com" <ayyashsamiha@gmail.com>, "josephanotala@gmail.com" <josephanotala@gmail.com>
Cc: "Mark A. Johnston" <MJohnston@eckertseamans.com>

Good afternoon,

Our law firm has been retained to represent Gulf Air B.S.C. (C) in the above-referenced matter. We are writing to request a short extension of time, until March 3, 2025, to answer or otherwise respond to the Complaint. Please advise if Plaintiffs are agreeable to the requested extension.

Best,

Darcy



**Darcy C. Osta** (she/her/hers)
Member

Eckert Seamans Cherin & Mellott, LLC
1717 Pennsylvania Avenue, NW, 12th Floor | Washington, D.C. 20006
📞 202-659-6611 | 📠 202-659-6699 | 📱 202-669-8645

✉ dosta@eckertseamans.com

BIO: 👤 VCARD: 📇 | 🌐 in 🐦

This email message and any files transmitted with it may be subject to attorney-client privilege and contain confidential information intended only for the person(s) to whom this email message is addressed.
If you have received this email message in error, please notify the sender immediately by telephone or email and destroy the original message without making a copy.
Any use, copying, disclosure, and/or distribution of this email message and/or any files transmitted with it by someone other than the intended recipient(s) is prohibited. Thank you.

Neither this information block, the typed name of the sender, nor anything else in this email message is intended to constitute an electronic signature and/or create an enforceable contract unless a specific statement to the contrary is included in this email message.



T Josephano <josephanotala@gmail.com>

---

# Samiha Ayyash, Feres Hindi & Tala Josephano v. Gulf Air B.S.C. (C) and American Airlines

---

**T Josephano** <josephanotala@gmail.com>                                    Mon, Feb 17, 2025 at 1:50 PM
To: "Darcy C. Osta" <dosta@eckertseamans.com>
Cc: "ayyashsamiha@gmail.com" <ayyashsamiha@gmail.com>, fhindi@friendshiplogistics.com

Good Day Ms Darcy

Hope you had a good weekend, it's President's day, you shouldn't be working .

Have you submitted a notice of Appearance to the court yet ? Please let me know first if you submitted that so we can reply to your request. As we need to confirm with Notice Of appearance

Following the rules of the court, and on behalf of **ALL** Plaintiffs please don't take this email as consent for any serving, e serving or approval to your request. Please follow the correct serving of documents for each Plaintiff **Separately** until we retain the lawyer.


Thank you

Tala


[Quoted text hidden]

 Gmail

T Josephano <josephanotala@gmail.com>

---

## Samiha Ayyash, Feres Hindi & Tala Josephano v. Gulf Air B.S.C. (C) and American Airlines

---

**Darcy C. Osta** <dosta@eckertseamans.com>                    Mon, Feb 17, 2025 at 2:07 PM
To: T Josephano <josephanotala@gmail.com>
Cc: "ayyashsamiha@gmail.com" <ayyashsamiha@gmail.com>, "fhindi@friendshiplogistics.com"
<fhindi@friendshiplogistics.com>, "Mark A. Johnston" <MJohnston@eckertseamans.com>

Thank you, Ms. Josephano.


We will soon be filing a motion to enlarge the time for Gulf Air to answer the complaint, which will serve as our notice of appearance. Can you kindly advise if Plaintiffs will agree to the requested short extension of time so that we can advise the court accordingly in the motion, which we are required to do under the rules?


We will of course serve our motion on all parties per the applicable rules.

[Quoted text hidden]
[Quoted text hidden]



T Josephano &lt;josephanotala@gmail.com&gt;

## Samiha Ayyash, Feres Hindi & Tala Josephano v. Gulf Air B.S.C. (C) and American Airlines

**Darcy C. Osta** <dosta@eckertseamans.com>                                    Tue, Feb 18, 2025 at 10:33 AM
To: T Josephano <josephanotala@gmail.com>
Cc: "Mark A. Johnston" <MJohnston@eckertseamans.com>, "fhindi@friendshiplogistics.com"
<fhindi@friendshiplogistics.com>, "ayyashsamiha@gmail.com" <ayyashsamiha@gmail.com>

Dear Ms. Josephano,


We appreciate your time and consideration of our request for an extension, but upon further review, we
have decided to proceed within the originally prescribed time limits.

[Quoted text hidden]

 Gmail

**T Josephano <josephanotala@gmail.com>**

---

## Samiha Ayyash, Feres Hindi & Tala Josephano v. Gulf Air B.S.C. (C) and American Airlines

---

**Darcy C. Osta** <dosta@eckertseamans.com>                     Mon, Feb 17, 2025 at 2:07 PM
To: T Josephano <josephanotala@gmail.com>
Cc: "ayyashsamiha@gmail.com" <ayyashsamiha@gmail.com>, "fhindi@friendshiplogistics.com"
<fhindi@friendshiplogistics.com>, "Mark A. Johnston" <MJohnston@eckertseamans.com>

Thank you, Ms. Josephano.

We will soon be filing a motion to enlarge the time for Gulf Air to answer the complaint, which will serve as our notice of appearance. Can you kindly advise if Plaintiffs will agree to the requested short extension of time so that we can advise the court accordingly in the motion, which we are required to do under the rules?

We will of course serve our motion on all parties per the applicable rules.

[Quoted text hidden]
[Quoted text hidden]



T Josephano <josephanotala@gmail.com>

## Ayyash et al. v. Gulf Air B.S.C. (c) et al.; Case No. 1:24-cv-03434-ACR

**Alexander Burton** <Alexander_Burton@dcd.uscourts.gov>                    Tue, Mar 4, 2025 at 1:28 PM
To: T Josephano <josephanotala@gmail.com>
Cc: "Micah E. Ticatch" <mticatch@islerdare.com>, "mjohnston@eckertseamans.com" <mjohnston@eckertseamans.com>,
Guillermo Martinez Olivera <Guillermo_Martinez@dcd.uscourts.gov>

Thank you for your input – this communication to the parties is a courtesy to establish a mutually acceptable date and time. If you would like to include your availability for the week of March 24th, beginning March 25th, I invite you to provide it by the end of the week. In any case, a filed notice from the Court will follow, with all parties required to appear.

[Quoted text hidden]



T Josephano <josephanotala@gmail.com>

---

## Ayyash et al. v. Gulf Air B.S.C. (c) et al.; Case No. 1:24-cv-03434-ACR

**T Josephano** <josephanotala@gmail.com>                                      Tue, Mar 4, 2025 at 1:44 PM
To: Alexander Burton <Alexander_Burton@dcd.uscourts.gov>

Sure , I will still proceed with my Entry to Default, and I will proceed with my PI.
Unless there is an explanation how the Judge can accept a meeting and conference after the deadline and Orders me to appear.

Other Parties have defaulted; they are not obligated to appear for a conference that is set a month after the deadline just because Gulf Air is putting effort in at the last minute to delay judgment against them before their Final approval to fly.
With that being said, and with their own request I will not Talk to them or notify anyone.

As for American Airlines, they also passed the 21 days, and they just submitted a document verifying they didn't serve on February 12 2025.  So why are we meeting ?

These mistakes are not any mistakes and this delay of the conference that was procedurally wrong in favor of Gulf Air is not right.

I am sorry there is nothing to discuss with Gulf Air from my end, American Airlines also violated all procedural rules.

I will submit a notice to the judge with Points to address any issue that might have not been clear, but Legally I am entitled to entry of Default and judgment.

If a Pro Se made their mistake the case will be already tossed out of the court, not delaying it two more weeks till they get their permits. Sorry

Thank you
[Quoted text hidden]

**BEFORE THE**
**DEPARTMENT OF TRANSPORTATION**
**WASHINGTON, D.C.**

_____
)
In the matter of the application of ) 
)
**GULF AIR B.S.C. (C)** )
)     Docket DOT-OST-2022-0141
for an exemption under 49 U.S.C. § 40109 )
and an amended foreign air carrier permit )
under 49 U.S.C. § 41301 )
_____)

**APPLICATION FOR AN EXEMPTION AND**
**<u>AMENDED FOREIGN AIR CARRIER PERMIT</u>**

Communications with respect to this application should be addressed to:

Drew M. Derco
Evelyn D. Sahr
Tyler R. Myers
Eckert Seamans Cherin & Mellott, LLC
1717 Pennsylvania Avenue, N.W.
12th Floor
Washington, D.C. 20006
Tel: (202) 659-6665
Fax: (202) 659-6699
E-mail: dderco@eckertseamans.com


Counsel for Gulf Air B.S.C. (C)

**DATED**: December 4, 2024

**BEFORE THE
DEPARTMENT OF TRANSPORTATION
WASHINGTON, D.C.**

<table>
<tr><td>

In the matter of the application of

**GULF AIR B.S.C. (C)**

for an exemption under 49 U.S.C. § 40109
and an amended foreign air carrier permit
under 49 U.S.C. § 41301

</td><td>

)
)
)
)
)
)
)
)
)
)

</td><td>Docket DOT-OST-2022-0141</td></tr>
</table>

**APPLICATION FOR AN EXEMPTION AND
AMENDED FOREIGN AIR CARRIER PERMIT**

 Gulf Air B.S.C. (C) ("Gulf Air"), pursuant to 49 U.S.C. § 40109 and §41301, Part 211 of the Department's economic regulations, and the Department's rules of practice, hereby requests that the Department issue an exemption and amend its foreign air carrier permit.  Specifically, Gulf Air requests that the Department remove the condition limiting Gulf Air's operations to the U.S. to codeshare service or wetlease flights operated by a duly authorized and properly supervised U.S. or foreign air carrier and allow Gulf Air to operate using its own aircraft and crews.

 Gulf Air respectfully requests that the Department act promptly on this application. Accordingly, Gulf Air requests that the Department process this application pursuant to its August 23, 2005, Streamlined Licensing Procedures Notice and issue a single order: (1) granting the exemption authority sought herein for a period of two years, or until Gulf Air's requested amended foreign air carrier permit becomes effective; and (2) tentatively awarding Gulf Air an amended foreign air carrier permit under the "show cause" procedures described in the Streamlined Licensing Procedures Notice.

As applicable, Gulf Air incorporates by reference the fitness information submitted in support of its initial application for a foreign air carrier permit, filed in this docket on December 5, 2022. Otherwise, in support of this application, Gulf Air states as follows:

1. *State the name and address of the applicant, the nature of its organization and, if applicable, the name of the country under the laws of which it is organized.*

   The complete name and address of Gulf Air is as follows:

   Gulf Air B.S.C. (C)
   Bldg. 122, Road 2403
   Block 224, Muharraq
   Kingdom of Bahrain

   Gulf Air is organized under the laws of the Kingdom of Bahrain.

2. *Name and official address of the government air transport authority having regulatory jurisdiction over applicant.*

Gulf Air remains subject to the regulatory jurisdiction of the Bahrain Civil Aviation Authority, located at:

   Civil Aviation Affairs
   Ministry of Transportation and Telecommunications
   P.O. Box 586
   Kingdom of Bahrain

3. *Statement of the authority requested, and a description of the services proposed.*

Gulf Air currently holds a foreign air carrier permit authorizing it to engage in: (1) Scheduled foreign air transportation of persons, property, and mail from any point or points behind Bahrain, via any point or points in Bahrain and any intermediate points, to any point or points in the United States and beyond; (2) Scheduled and charter foreign air transportation of cargo between any point or points in the United States and any other point or points; and (3) Charter foreign air transportation of persons, property, and mail between any point or points in Bahrain and any point or points in the United States, and between any point or points in the United States

and any point or points in a third country or countries, provided that, except with respect to cargo charters, such service constitutes part of a continuous operation, with or without a change of aircraft, that includes service to Bahrain for the purpose of carrying local traffic between Bahrain and the United States.[1]  This authority is limited, however, and Gulf Air may only operate through a codeshare and/or wetlease arrangement with a duly authorized and properly supervised U.S. or foreign air carrier, where Gulf Air is not physically operating the flight to and from the United States.

On November 14, 2024, the Federal Aviation Administration ("FAA") announced that Bahrain achieved a Category 1 rating under the FAA's International Aviation Safety Assessment ("IASA") program.[2]  As a result, foreign air carriers of Bahrain are no longer limited to U.S. operations via codeshare and/or using aircraft wetleased from a duly authorized U.S. or foreign air carrier.  In view of the FAA's recent action, Gulf Air respectfully requests amendment of its foreign air carrier permit to remove the codeshare and/or wetlease restriction so that Gulf Air may serve the U.S. with its own aircraft and crews upon receipt of all applicable government approvals.

4. *Ownership and control of the applicant.*

The ownership of Gulf Air is substantially unchanged from its initial application for a foreign air carrier permit.  Gulf Air remains wholly owned by Gulf Air Group Holding B.S.C. (C), which is in turn 100% owned by Bahrain Mumtalakat Holding Company B.S.C., the sovereign wealth fund of the Kingdom of Bahrain.  An updated chart of key management personnel is attached as **Exhibit 1**.

---

[1] *See* Order 2023-4-16.
[2] Statement from the Federal Aviation Administration, "Bahrain Achieves its First Safety Assessment Rating" (Nov. 14, 2024), available at https://www.faa.gov/newsroom/bahrain-achieves-its-first-safety-assessment-rating.

5. *Evidence of the applicant's homeland operating authority.*

Gulf Air holds an Air Operator Certificate and Operations Specifications issued by the Bahrain Civil Aviation Affairs, Ministry of Transportation and Telecommunications, which are attached for the Department's review as **Exhibit 2.**

6. *Amount, type and reason for financial assistance received from the applicant's home country government, if applicable.*

Gulf Air will submit details about any capital contribution it received from the Government of Bahrain under seal (**Exhibit 3**) along with a Motion for Confidential Treatment.

7. *Estimate of total traffic and financial results of intended service.*

Prior to commencing own metal operations, it is difficult for Gulf Air to accurately predict the total number of passengers that will be served.  However, Gulf Air will submit details about its estimated traffic for the first year under seal (**Exhibit 4**) along with a Motion for Confidential Treatment.

8. *Justifications for granting proposed air transportation services.*

The service proposed herein remains consistent with the U.S.-Bahrain Air Transport Agreement, signed May 24, 1999, which permits carriers of the Kingdom of Bahrain to provide scheduled international service "from points behind Bahrain, via Bahrain, and intermediate points to a point or points in the United States and beyond" and provides for scheduled international service "for all-cargo service or services, between the United States and any point or points."[3] Approval of this application is in the public interest, as it will offer additional shipping and transport options between Bahrain and the United States.

---

[3] *See* U.S.-Bahrain Air Transport Agreement, Annex I, Section 1(B)(1).

*9. Policy of applicant's homeland with respect to U.S. carriers' applications for scheduled and charter authority.*

Opportunities for U.S. carriers to provide scheduled and charter service to Bahrain are available pursuant to the U.S.-Bahrain Air Transport Agreement, signed May 24, 1999.

*10. Has applicant been involved in any safety or traffic violations or fatal accidents within the last five years?*

Gulf Air has not been involved in any safety or traffic violations nor fatal aircraft incidents within the last five years.

*11. Statement of compliance with the provisions of ICAO Pilots and Airmen Annexes 1, 6 (Part 1) and 7.*

Gulf Air's maintenance program continues to comply with all relevant ICAO annexes.

*12. Verification.*

The verification required by 14 C.F.R. 302.4(b) is attached as **Exhibit 5**.

*13. Miscellaneous.*

Gulf Air previously filed a family assistance plan with the Department on August 26, 2004, but plans to file an updated document in the appropriate docket.  Gulf Air also filed a passenger manifest statement as required under 14. C.F.R. § 243.13(a) with the Department on June 29, 1998, but plans to file an updated document in the appropriate docket.

**CAPITAL CONTRIBUTION FROM GOVERNMENT OF BAHRAIN**

Gulf Air's capital contribution from the Government of Bahrain is being submitted under seal with a motion for confidential treatment pursuant to 14 C.F.R. Part 302.12.

# EXHIBIT 5

Order 2023-4-16



UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION
OFFICE OF THE SECRETARY
WASHINGTON, D.C.

Issued by the Department of Transportation
on the 22nd day of February, 2023

Served: April 25, 2023

| | |
|---|---|
| Application of<br><br>**GULF AIR B.S.C. (C)**<br><br>for an exemption under 49 U.S.C. §40109 and a foreign air carrier permit under 49 U.S.C. §41301 | Docket DOT-OST-2022-0141 |

## FINAL ORDER

By Order 2023-1-13, issued January 31, 2023, we directed all interested persons to show cause why we should not make final our tentative findings and conclusions stated therein and award a foreign air carrier permit in the form attached to the Order and subject to the conditions attached thereto. We gave interested persons 21 days to file objections to the Order. We said that if no objections are filed, all further procedural steps shall be deemed waived, and the Department will enter an order (subject to Presidential review under 49 USC §41307) which will make final the findings and conclusions of the Order.

No objections were received within the time period provided.

**ACCORDINGLY,**

1. We make final our findings and conclusions as stated in the Order and award to Gulf Air B.S.C. (C) the foreign air carrier permit and conditions attached to the Order (and attached as the Appendix to the present Order);

2. Unless disapproved by the President of the United States under 49 USC § 41307, this order shall become effective on the 61st day after its submission for section 41307 review or upon the date of receipt of advice from the President or his designee under Executive Order 12597 and implementing regulations that he or she does not intend to disapprove the Department's order under that section, whichever occurs earlier;[1]

---

[1] This order was submitted for review under 49 USC §41307 on February 22, 2023. The 61st day is April 24, 2023. Since the President or his designee did not disapprove this order before that date, it became effective on April 24, 2023.

3.  To the extent not acted upon above, we dismiss all remaining requests for relief in Docket DOT-OST-2022-0141; and

4.  We will serve a copy of this order on the applicant; the Embassy of the Kingdom of Bahrain in Washington, D.C.; the Department of State; and the Federal Aviation Administration.

By:

**BENJAMIN J. TAYLOR**
Director
Office of International Aviation

(SEAL)

Appendix

*An electronic version of this document is available on the World Wide Web at:*
*http://www.regulations.gov*



Issued by
Order 2023-4-16

**UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION
OFFICE OF THE SECRETARY
WASHINGTON, D.C.**

---------------------------------------------------------

PERMIT TO FOREIGN AIR CARRIER

---------------------------------------------------------

**GULF AIR B.S.C. (C)**

A Foreign Air Carrier of Bahrain

is authorized, subject to the following provisions, the provisions of Title 49 of the U.S. Code, and the orders, rules, and regulations of the Department of Transportation, to engage in:

**Scheduled foreign air transportation of persons, property, and mail from any point or points behind Bahrain, via any point or points in Bahrain and any intermediate points, to any point or points in the United States and beyond;**

**Scheduled and charter foreign air transportation of cargo between any point or points in the United States and any other point or points; and**

**Charter foreign air transportation of persons, property, and mail between any point or points in Bahrain and any point or points in the United States, and between any point or points in the United States and any point or points in a third country or countries, provided that, except with respect to cargo charters, such service constitutes part of a continuous operation, with or without a change of aircraft, that includes service to Bahrain for the purpose of carrying local traffic between Bahrain and the United States.**

The holder shall also be authorized to engage in other charter trips in foreign air transportation, subject to the terms, conditions, and limitations of the Department's regulations governing charters.

This permit and the exercise of the privileges granted in it shall be subject to the terms, conditions and limitations in both the order issuing this permit and the attachment to this order, and to all applicable provisions of any treaty, convention or agreement affecting international air transportation now in effect, or that may become effective during the period this permit remains in effect, to which the United States and the holder's homeland are or shall become parties.

In addition, in the conduct of the operations authorized, Gulf Air B.S.C. (C) may only operate through a code-share and/or wet-lease arrangement with a duly authorized and properly supervised U.S. or foreign air carrier, where Gulf Air B.S.C. (C) is not physically operating the flight to and from the United States.

This permit shall be effective on April 24, 2023.  Unless otherwise terminated at an earlier date pursuant to the terms of any applicable treaty, convention or agreement, this permit shall terminate (1) upon the dissolution or liquidation of the holder to whom it was issued; (2) upon the effective date of any treaty, convention, or agreement or amendment, which shall have the effect of eliminating the bilateral right for the service authorized by this permit from the service which may be operated by airlines designated by the Government of the Kingdom of Bahrain (or, if the right is partially eliminated, then the authority of this permit shall terminate in like part); (3) upon the effective date of any permit granted by the Department to any other carrier designated by the Government of the Kingdom of Bahrain in lieu of the holder; or (4) upon the termination or expiration of the applicable air services agreement between the United States and the Kingdom of Bahrain.    However, clause (4) of this paragraph shall not apply if prior to such termination or expiration, the foreign air transportation authorized herein becomes the subject of another treaty, convention or agreement to which the United States and the Kingdom of Bahrain become parties.

The Department of Transportation has executed this permit and affixed its seal on February 22, 2023.

By:

**BENJAMIN J. TAYLOR**
Director
Office of International Aviation

(SEAL)

**Foreign Air Carrier Permit Conditions**

In the conduct of the operations authorized, the foreign carrier applicant shall:

(1) Not conduct any operations unless it holds a currently effective authorization from its homeland for such operations, and it has filed a copy of such authorization with the Department;

(2) Comply with all applicable requirements of the Federal Aviation Administration, the Transportation Security Administration, and with all applicable U.S. Government requirements concerning security, including, but not limited to, 14 CFR Parts 129, 91, and 36 and 49 CFR Part 1546 or 1550, as applicable. To assure compliance with all applicable U.S. Government requirements concerning security, the holder shall, before commencing any new service (including charter flights) from a foreign airport that would be the holder's last point of departure for the United States, contact its International Industry Representative (IIR) (formerly referred to as International Principal Security Inspector) to advise the IIR of its plans and to find out whether the Transportation Security Administration has determined that security is adequate to allow such airport(s) to be served;

(3) Comply with the requirements for minimum insurance coverage contained in 14 CFR Part 205, and, prior to the commencement of any operations under this authority, file evidence of such coverage, in the form of a completed OST Form 6411, with the Federal Aviation Administration's Program Management Branch (AFS-260), Flight Standards Service (any changes to, or termination of, insurance also shall be filed with that office);

(4) Not operate aircraft under this authority unless it complies with operational safety requirements at least equivalent to Annex 6 of the Chicago Convention;

(5) Conform to the airworthiness and airman competency requirements of its Government for international air services;

(6) Except as specifically exempted or otherwise provided for in a Department Order, comply with the requirements of 14 CFR Part 203, concerning waiver of Warsaw Convention liability limits and defenses;

(7) Agree that operations under this authority constitute a waiver of sovereign immunity, for the purposes of 28 U.S.C. 1605(a), but only with respect to those actions or proceedings instituted against it in any court or other tribunal in the United States that are: (a) based on its operations in international air transportation that, according to the contract of carriage, include a point in the United States as a point of origin, point of destination, or agreed stopping place, or for which the contract of carriage was purchased in the United States; or (b) based on a claim under any international agreement or treaty cognizable in any court or other tribunal of the United States. In this condition, the term "international air transportation" means "international transportation" as defined by the Warsaw Convention, except that all States shall be considered to be High Contracting Parties for the purpose of this definition;

(8) Except as specifically authorized by the Department, originate or terminate all flights to/from the United States in its homeland;

(9) Comply with the requirements of 14 CFR Part 217, concerning the reporting of scheduled, nonscheduled, and charter data;

(10) If charter operations are authorized, except as otherwise provided in the applicable aviation agreement, comply with the Department's rules governing charters (including 14 CFR Parts 212 and 380); and

(11) Comply with such other reasonable terms, conditions, and limitations required by the public interest as may be prescribed by the Department, with all applicable orders or regulations of other U.S. agencies and courts, and with all applicable laws of the United States.

This authority shall not be effective during any period when the holder is not in compliance with the conditions imposed above. Moreover, this authority cannot be sold or otherwise transferred without explicit Department approval under Title 49 of the U.S. Code.

12/2007