**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | | |
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| _____ | ) | |

**PLAINTIFFS FERAS HINDI, TALA JOSEPHANO, SAMIHA AYYASH JUDICIAL NOTICE IN SUPPORT OF MOTION TO RECUSE JUDGE ANA REYES**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Evidence 201 and the Local Rules of the United States District Court for the District of Columbia, Plaintiffs respectfully request that the Court take judicial notice of the documents described below (SET 1). These materials are submitted to support Plaintiffs' forthcoming motion seeking the recusal of the Honorable Judge Ana C. Reyes, based on concerns of potential personal bias, prejudice, and possible conflicts of interest, as reflected in the procedural history and related records of this case.



RECEIVED

MAY 9 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**Background**

As a judge's mother once advised her:

"You are here today because you have had advantages that most people will never have. There are people who are smarter than you, who work harder than you, and who want it more than you, but who are not here because they have not had your advantages. So while I am proud of you today, know that if you do not use your law degree in some way to help disadvantaged people, I am going to be incredibly disappointed in you." In the present matter, disappointment is indeed the appropriate word. It is deeply concerning when justice appears to be selectively applied. It is troubling when an oath to serve the public may be perceived as being applied unevenly, suggesting that some litigants are deemed more deserving of fair process than others.

The record—including what appears to be inaccuracies in the transcript—reflects multiple procedural irregularities, legal misstatements, and discretionary rulings that deviate from standard judicial practice. These include efforts to prematurely dismiss the case, inconsistencies in the application of the Federal Rules and the Court's own Standing Order, and a series of comments and rulings that may give rise to an appearance of partiality or bias, particularly in interactions with the pro se litigants.

Legal scholarship and case law emphasize that inconsistent rulings—especially those that shift rationale or disregard established procedure—create unpredictability, impede the ability of parties to assert their rights, and erode judicial legitimacy. When courts' rulings

are unpredictable, and their rules are confusing, it impedes these actors' ability to implement judicial policies. Moreover, inconsistency in the interpretation and application of legal doctrine reduces judicial legitimacy.

Crafting an inconsistent doctrine leaves citizens potentially less empowered to assert their rights (since they can't tell when those rights apply). See J. Brandon Duck-Mayr, Explaining Legal Inconsistency, at 5 (2021). Moreover, public confidence in the judiciary is important for good reason—including encouraging parties to resolve disputes through the courts and to abide by court rulings. See also Sara C. Benesh, Understanding Public Confidence in American Courts, 68 J. Pol. 697, 687 (2006) (asserting that people may not abide by court rulings or use courts to settle disputes without public confidence in the judiciary).

This case is not about procedural technicalities—it is about accountability. Additionally, the Court cannot fairly assess prejudice without reviewing the full procedural record, including Plaintiffs' motions and initial causes of action, rather than declining to acknowledge them. It appears that certain rulings have been influenced less by the legal merits and more by the identity of the Defendants, the Plaintiffs' background, and the weight of the Defendants' representations. This raises serious concerns about whether Plaintiffs have been afforded the same neutral, unbiased process typically expected in federal court—and whether procedural discretion has been exercised unevenly in a manner that may reflect underlying systemic disparities.

Rather than requiring correction or imposing any sanction, the Court permitted Defendant American Airlines to withdraw its filing and submit two new motions under Rules

12(b)(2) and 12(b)(6)—44 days after the applicable deadlines. Their original motion to dismiss remains on the docket. This effective reset of procedural timeframes excused noncompliance and provided the Defendant with an opportunity to reframe its defense strategy, bypassing accountability under the Federal Rules. The Court did not acknowledge, let alone remedy, the recorded non compliance that resulted in prejudice to Plaintiffs.

Ignoring this context compounds the prejudice and deprives Plaintiffs of a meaningful opportunity to strengthen their original claims, which are grounded in both fact and public accountability. Procedural rules exist to protect fairness—especially when public safety, the public interest, and institutional trust are at stake.

While Defendants— billion-dollar airlines represented by a full legal team—were excused from their non compliance with basic procedural rules, Plaintiffs, acting pro se, were forced to expend significant time and financial resources preparing corrective motions, navigating case law, and managing deadlines under uncertain procedural conditions. Plaintiffs relied on informal assistance and limited public resources. This unequal application of procedural rules imposed a disproportionate burden on Plaintiffs and raises serious concerns about the fairness and neutrality of these proceedings. The resulting disparity not only undermines public confidence in the integrity of the process, but also contributes to an appearance of judicial bias.

Gulf Air B.S.C. has leveraged significant influence and resources in apparent efforts to hinder Plaintiffs' ability to secure legal representation. This was followed by the Court's on-the-record comment advising pro se Plaintiffs "not to get a lawyer and waste their

money"—a statement that raises concern given the broader context. It now appears that the Court's stated concern for Plaintiffs' financial situation may not have been the sole motivation behind this unsolicited advice, further contributing to an appearance of partiality and undermining Plaintiffs' confidence in receiving a fair opportunity to obtain relief and justice in this case.

Furthermore, the docket reflects irregularities that, in context, raise serious concerns about transparency and fairness. Plaintiffs' original filing—outlining their intent to sue DKT 31—was removed from the public docket, constituting a significant procedural anomaly. These actions, when viewed alongside the Court's handling of Plaintiffs' filings and motions, contribute to the perception that efforts have been made to suppress key aspects of the record in a manner favorable to billion-dollar, influential airlines. Plaintiffs intend to pursue a claim for Fraud Upon the Court and will be filing a formal complaint with the Department of Justice against any individuals or entities whose conduct may have compromised the integrity of these proceedings.

Plaintiffs further assert that such actions appear to have improperly advantaged American Airlines Inc. and Gulf Air B.S.C., undermined judicial impartiality, and contributed to discriminatory treatment in violation of their civil rights. This filing should be considered Plaintiffs' second formal notice of their intent to pursue a claim for Fraud Upon the Court.

### Court Filings and Docket Irregularities

**03/07/2025 – Notice of Hearing:**

 A Notice of Pre-Motion Conference was entered on the docket, scheduling a hearing for March 28, 2025, before Judge Ana C. Reyes. However, no corresponding filing or minute order is

publicly visible.

**03/18/2025 – Docket Entry 31:**

Plaintiffs filed a "Notice of Intent to Sue" (Tala Josephano, Samiha Ayyash, Feras Hindi). The document is inaccessible from the docket and appears to misdirect to Docket Entry 30, which refers instead to an Emergency Motion.

**03/28/2025 – Pre-Motion Conference Held:**

A minute entry reflects that a pre-motion conference took place before Judge Reyes. The Court denied all pending motions for entry of default (Dkts. 17, 18, 19, 22, 26, and 27).

**Subsequent Minute Order:**

The Court issued a Minute Order denying several additional motions as moot without justifications, including:

– Dkt. 13: Motion for Telephone Conference (which was in fact held, as requested by Defendants); Dkt. 14: Motion for Hearing ( was ignored when filed and not addressed at the hearing  ) ; Dkt. 21: Motion for Extension of Time ( Was ignored when filed and not addressed at the hearing ); Dkt. 30: Emergency Motion for Hearing ( was ignored when filed and not addressed at the hearing )

– Dkts. 34, 35, 40, and 41: Motions to Strike, which were neither acknowledged nor addressed at the hearing as they address the False certificate submitted by Defendant American Airlines and Notice of Appearance.

Gulf Air B.S.C. was properly served on January 30, 2025, and Plaintiffs were fully prepared to prove it. Rather than moving to quash service or submit a limited appearance, Gulf Air and its counsel began diluting the factual record—attempting to erase any presence or contact that might establish jurisdiction in the United States. They may wish to revisit Rule 4 of the Federal Rules

of Civil Procedure claiming on record they have no presence in the U.S and later admitting they have a company and registered agent in NY.

Despite proper service, Gulf Air's attorneys waited until the last possible day to file, and did so using expired attorney certifications—demonstrating, at best, a disregard for court rules and timing and negligence in a simple preparation to defend their claim in a predicted reliance of being excused for their negligence . Specifically, attorneys Mark Johnston (who did not appear at the March 28, 2025 hearing despite the transcript stating otherwise ) and lawyer Daria Osta who filed on the last day of the deadline  Dkt. 13—a Motion for Telephone Conference and a Notice of Request to Schedule a Pre-Motion Conference—while their memberships with the U.S. District and Bankruptcy Courts for the District of Columbia were not in good standing.

A court-issued notice dated February 21, 2025—the very day Gulf Air's response was due under Rule 12(a)(1)(A)(i)—confirmed that renewal of their attorney certifications had not been received and that they were not authorized to file under the Local Civil Rules. Counsel had ample time to verify their standing before filing but failed to do so.

Gulf Air's attorneys did not complete their membership renewal with the U.S. District and Bankruptcy Courts for the District of Columbia until February 27, 2025—five days after the filing deadline under Rule 12(a)(1)(A)(i). Despite this clear procedural violation, the Court accepted their filings, including Dkt. 13, and permitted them to proceed after they served and attempted to serve Plaintiffs. According to the Court's own records, it took five days for the attorneys' certifications to be received, placing their compliance outside the permissible window.

Nonetheless, the Court treated their filings as valid and timely, stating on the record that the Defendants had "**appeared**" and had "**done everything in time as they should**." The presiding Judge was aware of the attorneys' non-compliant status at the time, yet permitted the case to proceed under what she described as her own "special rules" without submitting extension—raising serious concerns about inconsistent application of procedure and the appearance of judicial partiality.

The request for an investigation into the conduct of the Clerk's Office and chamber staff (Dkts. 30 and 31) was disregarded, including a detailed account of a revealing conversation to Defendant Gulf Air B.S.C between intake staff and Plaintiff Feras which Gulf Air B.S.C confirmed in their submissions in addition to the intake advising them how to file. The Court's failure to address or acknowledge these requests effectively signaled, at minimum, approval or tolerance of the alleged improper and unlawful conduct by Clerk's Office and chambers personnel. This silence in response to credible procedural concerns further contributes to the appearance of institutional bias and erodes confidence in the Court's impartiality.

The cumulative effect of actions by intake personnel, the Clerk's Office, chamber staff, and courtroom deputies reflects more than isolated error—it reveals a troubling pattern of institutional conduct that has worked collectively to prejudice the Plaintiffs. At critical junctures, these actors appeared to operate in alignment with the interests of the Defendants, creating the appearance of a coordinated effort to obstruct Plaintiffs' access to fair process. The resulting procedural and financial harm cannot be dismissed as coincidence or oversight.

Plaintiffs' motions were not mooted—they were effectively silenced, without explanation or legal justification. The Court exercised its discretion in a manner that excluded Plaintiffs from meaningful participation, offering no rationale that would allow Plaintiffs to understand or respond. On the record, the Court stated, ***"If they didn't file on time, I don't really care. I am giving them the extra time."*** Such a statement reflects a troubling disregard for the rules of procedure, and raises the question: Why is leniency afforded to represented defendants, but not to pro se plaintiffs? Why is only one side's time valued—particularly in a publicly funded court system? Gulf Air B.S.C. was granted months beyond its filing deadline—ample time to secure necessary operating permits

By disregarding established procedural rules and excusing noncompliance without legal justification, the Court has assumed functional responsibility for enabling conduct that may carry regulatory and public safety consequences. If future incidents or regulatory failures involve these carriers, the decisions made in this matter may have direct relevance to the question of accountability. The Court's failure to even acknowledge fraud claims involving government misrepresentations—claims supported by evidence of actual harm—reflects a troubling disregard for public safety and suggests that private or institutional interests may have been placed above the public interest.

First, the Court denied Plaintiffs' motion for entry of default, relying on its own interpretation of "my local rules," despite the Defendants' failure to serve Plaintiffs within the applicable deadlines or to seek an extension based on valid cause. Under Rule 55(a), default may be entered when a party has failed to plead or otherwise defend and serve that defense—not merely based on appearance. Even if the Court viewed default as a harsh remedy, the decision to dismiss the request without engaging with the procedural

violations suggests a broader intent to avoid consideration of the merits. The Court appeared to prematurely agree to the Defendants' framing of referring to the death involved as a "heart attack," calling it an "unfortunate death," and describing the codeshare agreement as merely "a marketing logo." Additionally, the Court concluded that the events did not occur in the District of Columbia, raising serious concerns as to whether the actual claims were reviewed at all.

Second, the Court misstated applicable legal standards on the record, particularly concerning the rules of service—contradicting Federal Rules of Civil Procedure 5, 6, and 12; Local Civil Rule 5.4; and the Court's own Standing Order. These misstatements appeared to favor the Defendants' position and were cited in support of dismissing Plaintiffs' claims. Plaintiffs have attached the relevant federal and local rules to respectfully remind the Court of the applicable procedural framework.

Third, the Court relied on defective filings submitted by the Defendants in denying Plaintiffs' motions for default. It then permitted Defendants to refile multiple, segmented motions to dismiss—contrary to standard procedural norms and without consequence for their earlier noncompliance. This approach reflects an uneven application of rules and further contributes to the appearance of judicial partiality.

Fourth, the Court totally ignored then denied Plaintiff Samiha Ayyash's request for a translator, despite her limited English proficiency and the complexity of the proceedings. This denial raises serious due process concerns, as it effectively impaired her ability to meaningfully participate in her own case. Plaintiffs respectfully submit that the ability to access language assistance is fundamental to equal treatment under the law—especially for pro se litigants navigating federal

procedure. The Court offered no accommodation or inquiry into Plaintiff Ayyash's specific language needs, further reinforcing the perception that procedural protections were selectively withheld from the Plaintiffs.

As pro se litigants, Plaintiffs—particularly Plaintiff Feras—complied with traditional service methods as permitted under the rules, and should not be presumed to have access to, or an understanding of, electronic filing systems they neither utilized nor accessed. Any characterization to the contrary misstates the record and imposes an unfair burden on unrepresented parties. This mischaracterization further underscores the procedural imbalance in these proceedings and highlights the unequal expectations applied to Plaintiffs as compared to represented parties.

The Judge appeared indifferent to the irregularities in docket management and the manner in which her chambers scheduled the hearing—actions that, taken together, suggested a coordinated effort that benefitted the Defendants. Initially, Plaintiffs gave the benefit of the doubt, believing the Judge might have been unaware of these procedural deviations, trusting that such "court irregularities" would not occur in a U.S. federal courtroom. However, it has since become clear that Judge Ana C. Reyes was not only aware of these actions, but either implicitly or explicitly endorsed them by failing to address—let alone acknowledge—Plaintiffs' related filings. This persistent inaction has only deepened the perception that the Court is not functioning as a neutral and impartial adjudicator, but is instead aligned with the interests of the Defendants.

Among other evidence of bias, during the March 28, 2025 hearing, the Court stated: **"You all** sent an email to my courtroom deputy saying that you no longer wanted to receive

emails." See Transcript, p. 6. This statement was factually incorrect as it pertains to Plaintiff Feras and Plaintiff Samiha who never sent any such communication, never opted into or out of CM/ECF electronic service, and have never held a PACER account, nor has they emailed the Court at any point. As a distinct pro se litigant, Plaintiff Feras is unfamiliar with electronic docketing procedures and was not served—neither by the February 12, 2025 deadline nor at any later time. This misstatement by the Court, left uncorrected, further illustrates the disregard shown toward Plaintiff Feras and contributes to the appearance of judicial bias. Sending an envelope eight days after hte deadline addressed to multiple Plaintiffs with one copy is not serving. Feras wasn't notified of the Defendant filings till days after the deadline.

Moreover, the court concern of Plaintiff preferred method of serving was irregular rather than addressing the motions and requests by the Plaintiffs, the Court's comment describing Plaintiff Tala's service position in requesting service by mail as "**really quite odd**" (Transcript, p. 6) further reflects an improper shifting of blame to the Plaintiffs, while excusing the Defendants' clear failure to serve.

This mischaracterization obscured the central issue: Plaintiff Feras was never served, Plaintiff Samiha was improperly served, Plaintiff Tala was not notified till a day after the deadline due to " clerk error in turning off her notifications". Federal Rules of Civil Procedure 12 and 5, along with Local Civil Rule 5.4, do not permit presumed or collective notice to substitute for formal, individual service. These deficiencies undermine due process and create grounds for appeal. On March 4, 2025, Defendant American Airlines Inc. admitted that it had not served any of the Plaintiffs by the required deadline, instead offering the excuse that filing documents on the docket was sufficient service—a position

the Court later adopted. It is not. Nor is a notice and improper service issued eight days after the deadline a valid substitute for service under any applicable rule.

Defendant's notice six days after the applicable deadline, effectively shortened Plaintiffs' time to respond by 14 days—while Defendant American Airlines continued to rely on a knowingly inaccurate certificate of service to set that deadline. Judge Ana C. Reyes's standard order prohibits extensions between parties, one of many that were described on the record as part of her "unique and special" rules, compounded this imbalance. What initially caused procedural prejudice has now escalated into a structural denial of Plaintiffs' right to fair litigation. The cumulative effect of these actions has materially altered the course of this case—favoring the Defendants and rendering any meaningful opportunity for Plaintiffs to fairly present their case fairly impossible.

This was not a harmless error. The Court never verified whether Plaintiff Feras had actually received the filings at issue by the applicable deadlines. Had it done so, the record would have confirmed a clear failure of service and a violation of non-discretionary procedural rules. Instead, the Court treated this non-service as compliance and permitted the Defendant to reset its procedural posture on their terms without addressing the underlying defect. As a result, the public record now inaccurately reflects that the Defendants complied with the rules, when in fact they did not.

**Judicial Intervention and Improper Service**

During the March 28, 2025 hearing, the Court improperly instructed defense counsel: ***"Can you all add mail service to your pleadings, so that our courtroom deputy doesn't have to do this?"*** (Transcript, p. 9). This directive suggests that the courtroom deputy had previously assumed a

role in serving Plaintiffs—raising procedural concerns, as court staff are not responsible for effectuating service between parties under the Federal Rules of Civil Procedure. Moreover, this directive improperly reassigned service duties to non compliant opposing counsels, further blurring procedural responsibilities and contributing to a pattern of confusion and disadvantage for the Plaintiffs. Plaintiffs remain unaware of what "pleadings" court staff were expected to serve and question the propriety and legality of this approach under Rule 5 and Local Rule 5.4.

It is now clear to the Plaintiffs by doing so the Court intervened specifically to ensure that Plaintiffs received Defendant's filings, apparently operating under the mistaken assumption that Plaintiffs were seeking default on a technicality. In reality, Defendant refused to correct a defective certificate of service and correct the deadline time for the Plaintiffs to have the full 14 days and repeatedly assured Plaintiff Tala that all Plaintiffs had been served individually by the deadline—when in fact, Plaintiff Feras had not, and thereby lost the 14-day response period guaranteed under the Federal Rules. Defendants also submitted a late and procedurally invalid Pre-Motion Notice days after the deadline, without filing a motion to extend or offering any excusable reason. The Court nonetheless granted this request without first addressing Plaintiffs' outstanding motions, service objections, or documented irregularities in the docket.

Plaintiffs relied on this pattern—specifically the false certificate of service and the Court's failure to confirm its contents—as part of their claim of Violations of Federal Rules and laws, systemic negligence, misrepresentation, and procedural noncompliance by the Defendants. It is particularly troubling that both Defendants have admitted in filings and statements that they misunderstood basic service requirements: confusing docket filing with actual service, sending documents to the wrong email, filing with expired Attorney certificates and deliberately misleading the court that this was a joint claim despite each Plaintiff having distinct causes of

action. Plaintiff Feras's claims differ from those of Plaintiff Tala, and Co-Plaintiff Samiha is pursuing a separate IIED action. Yet Defendants filed on the last permissible day, listed a single service address, and provided one shared copy days after the deadline required by 12(a)(1)(A)(i).

This kind of procedural carelessness might go unnoticed or be excused in litigation involving parties from industries like graphic design or advertising, where strict regulatory compliance is not central to the core of their operations. But that standard cannot apply to Defendants like American Airlines and Defendant Gulf Air—commercial carriers whose primary business is built on compliance, public safety, federal regulation, and the public trust.

Both airlines have experienced fatal crashes, American Airlines Inc. has been sanctioned by the Department of Transportation, and face multiple complaints involving discrimination and violations of the False Claims Act with documented oversight by the FAA to American Airlines non compliance. Gulf Air, in particular, has a documented history of operational accidents and incidents, including the recent, back-to-back deaths of two crew members on duty—one of whom was the brother of Plaintiff Samiha Ayyash mainly stems from simple non compliance. When these same entities demonstrate a pattern of procedural negligence and misrepresentation compliance in federal court—mirroring the very conduct alleged in Plaintiffs' claims—and the Court ignores these violations, it does more than prejudice the Plaintiffs. It calls into question the integrity of the judicial process itself.

As For Gulf Air B.S.C we can start with the basics: **Rule 5(a)(1)** requires service on **every party**—not "some," not "whichever names were grouped," but **each named Party**. That

includes Samiha Ayyash, Feras Hindi, and Tala Josephano. Only after this threshold does **Rule 5(b)** explain *how* service can be made, such as by mail. Gulf Air ignored this structure entirely. Mailing a single copy addressed to two plaintiffs does not fulfill this requirement, as each party is entitled to their own copy of the pleadings in order to respond since each Plaintiff has separate causes of actions ( NIED, IIED) and separate relief , evidence and witnesses.

Plaintiffs do not raise this service issue to dwell on a technical error, but because even this simple procedural misstep reflects the broader reality at the center of their claims. Defendant Gulf Air was informed of the need to serve each Plaintiff individually—yet it chose not to correct the mistake. That refusal to acknowledge or address a basic rule is not an isolated event; it is consistent with a pattern of minimizing responsibility and deflecting compliance, both in this litigation and in the conduct that gave rise to it. This is not about envelopes or "we caught your mistake"—it's about a Airline that resists accountability for their own negligence and non compliance with simple rules at every step, even when the remedy is simple. That behavior is exactly what Plaintiffs have alleged throughout: that Gulf Air does not follow the rules unless forced to, and often not even then.

Regardless of how the Court ultimately views the service record, Plaintiff Feras has returned the most recent envelope sent by Defendants and will no longer accept mailings jointly addressed to him and another Plaintiff. As Co-Plaintiff Samiha Ayyash is currently traveling and unavailable to personally receive documents, While Co-Plaintiff Samiha Ayyash was willing to accept constructive notice for the sake of efficiency, that willingness has changed in light of the persistent procedural unfairness and the repeated marginalization of her efforts to seek justice.

The uneven treatment in this matter has caused her to reassess the process. As such, Plaintiff Feras Hindi respectfully declines to accept any mail on her behalf going forward.

Plaintiffs further note that, while the Court stated on record that "**we are over the deadlines**" and that Defendant filed everything they are supposed to file on time, Plaintiffs raise this not to relitigate the point, but to preserve their objection and clarify that this irregularity contributed to the procedural imbalance that has characterized the handling of this case.

Plaintiffs note that Defendant **American Airlines Inc.** has since begun serving pleadings properly, acknowledging the need for correction and respecting each Plaintiff's individual procedural rights. This stands in contrast to **Gulf Air B.S.C.**, which continues to resist basic compliance and maintains a position inconsistent with both the letter and spirit of the Federal Rules. The differing conduct between Defendants further illustrates that proper service is not only possible but expected—and that Gulf Air's approach reflects a deliberate litigation strategy accompanied with the attitude of promises of a secured outcome and certainty of being excused, not an unavoidable mistake.

Furthermore, the Court's intervention served to rehabilitate a represented defendant while burdening an unrepresented pro se litigant with fragmented, delayed, and strategically sequenced motion practice. This tactical sequencing substantially prejudiced Plaintiff by allowing Defendant to reset its litigation posture and avoid addressing its initial service and filing failures. As a result of the bifurcated motion practice, the case has been prolonged unnecessarily.

The contradiction is fatal: the Court accepted Defendant American Airlines Inc. **February 12 2025 appearance** and filings as procedurally effective for defeating default, but simultaneously allowed them to **abandon that filing** and submit **new motions** post-deadline without excuse

aside from continuous lawyers' mistakes. This dual-track treatment conferred every strategic advantage to a represented defendant and imposed every procedural burden on a pro se litigant. American Airlines' original defected Notice for Pre-motion conference, and in only two lines requested  to withdraw their original motion and submit new one, or move on with the motion that was filed. It is puzzling why the court would choose the withdrawal and submission of a new one, while all they had to do is serve the original one properly. Seems that the court in attempts to dismiss Plaintiffs claims wasn't satisfied with their argument in the first motion, gave them a chance to target the FAA certificate in Jurisdiction motion, which is an argument available when they filed their first motion to dismiss. Although  Rule 12(g)2 addresses " new defenses" but law cases also include " new arguments" which ultimately is a defense.

If Defendant's original motion was sufficient to avoid entry of default, then it should have bound them procedurally and been treated as their operative response. But if the motion was defective and not properly served, then it should not have been considered—and default should have entered under Rule 55(a). The Court cannot treat the same filing as both valid enough to block Plaintiffs' rights and yet insufficient enough to discard in favor of a new, strategically revised motion submitted well after the deadline. That contradiction reflects more than procedural inconsistency—it signals a breakdown in neutral adjudication and the desire of the court to dismiss the Plaintiffs claims which explains why the court advised the Plaintiffs not to retain legal representations. It's easier to dismiss Pro Se Plaintiffs claims without a lawyer objecting.

**How many inexcusable mistakes can be excused under the court's discretion ?**

"If a simple mistake made by counsel were to excuse an untimely filing, it would be hard to fathom the kind of neglect that we would not deem excusable." See *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996). The court further warned that "[i]f the court allows litigants to continually ignore deadlines and seek never-ending extensions without consequence, soon the court's scheduling orders would become meaningless." *Id.* Similarly, in *Cobell v. Norton*, 213 F.R.D. 42, 42–43 (D.D.C. 2003), the court noted that "[i]t is only fair to require all parties to the present case to comply with the Federal Rules of Civil Procedure and Local Rules."

If the Court has concluded that Defendant American Airlines "filed everything on time and as they should have," -which they didn't- then there is no legal basis for permitting them to submit a **new two** motions to dismiss. A party that has already filed a motion under Rule 12 and is deemed  by the court ( "they appeared under the Judge's local rules to have complied procedurally _should not be allowed to file a second, revised version of that same motion raising new arguments.

If the Court intended to reach the merits of the case—which, respectfully, it clearly has no intentions—the proper course would have been to require Defendant American Airlines to serve its original February 12, 2025 motion in compliance with Rule 5. Instead, the Court permitted Defendant to withdraw and replace that motion after gaining insight into the defenses raised by Gulf Air and the positions advanced by Plaintiffs. In doing so, the Court effectively conferred the benefit of a timely filing while also granting Defendant a second opportunity to reframe its arguments—as though the original motion had never been filed.

This approach not only contradicts the Court's own statements that Defendant "complied with procedural requirements," but also prejudices the Plaintiffs by enabling delay and allowing piecemeal litigation. That prejudice has not been limited to litigation strategy—it has imposed real stress, uncertainty,  out-of-pocket financial costs on pro se Plaintiffs and mainly the loss of the trust in the Checks and balances and the justice system.

## JOSEPHANO v. AMERICAN AIRLINES INC., 1:25-cv-00753, (D.D.C.)

In the March 28 2025 hearing, the judge in hostility attitude to Plaintiff Tala specifically for unknown reason, attempted to serve the Defendant counsel on behalf of Plaintiff Tala on a different case (1:25-cv-00753) that Plaintiff has filed against Defendant American Airlines Inc. and their counsel for misrepresentation of compliance in a basic, simple service procedure, this court seems to not understand the type of damage that Plaintiff Tala had to encounter due to Defendant's actions which went beyond litigations delay and uncertainty. It is clear that The registering of the case on the dockets and  routing and the way the second case was handled by the Clerks are another indicator of the influence displayed by the court. Despite filing the case in person the delays and reassigning was deliberate and not procedural.

At one point, the judge told the Defendant, "**We will** get this taken care of **as well**." That statement demands clarification: who is "we"? It did not appear to refer to justice, the rule of law, or an impartial process. If "we" meant the Judge's chambers, staff, or the clerk's office, it only reinforces the troubling impression that the hearing—and indeed the entire handling of this case—has functioned as a coordinated effort to serve the interests of the Defendants from the moment it was filed. From the clerks to the chamber and ultimately

the bench, the process has felt less like a neutral proceeding and more like a full-service

defense operation. The hearing was simply staged with indications the Judge had

communications with the Defendants while Plaintiffs were not included. Did the court read

the case prior to determining it has no merits? That is not what the Transcript reveals.

It is difficult to reconcile how the Court could find merit in a subsequent case involving

misrepresentation of a Certificate of Service that went unacknowledged in this one, while having

previously ignored or dismissed those same issues when raised in this case. If the second case is

deemed to have merit, it necessarily implies that the Judge either erred in this case or knowingly

disregarded clear instances of misrepresentation by the Defendants. This inconsistency raises

serious concerns about the fairness and integrity of the proceedings, suggesting bias in favor of

the Defendants and a failure to apply the law equally.

### The Defendant's counsel's statement of " Presence"  March 28 2025 Hearing

It is hard to understand how the judge doesn't think American Airlines have a presence in

DC. The judge's focus on Place of incorporation, Jurisdiction ignoring other rules and

statutes that can prove personal jurisdiction. Defendant American Airlines Inc. initially

claimed it had no presence in the District of Columbia. Plaintiffs could have demonstrated

otherwise. Plaintiffs were also entitled to jurisdictional discovery and to amend their

claims, including to name the parent company, American Airlines Group Inc., if necessary.

However, after repeated procedural irregularities, delays, and unexplained inconsistencies

in docketing and the Judge clear stance and dismissal intentions, Plaintiffs are no longer

confident that their filings are being entered as submitted. At minimum, filings appear to

be delayed or selectively posted, and Plaintiffs have received no confirmation or transparency regarding their handling.

It is difficult to comprehend why the relief Plaintiffs seek—focused primarily on securing correction, protection, and accountability - over $500 Million Dollars to Federal Programs and to the Public-  mainly for the citizens of the District of Columbia that Plaintiffs are not included in —has been met with such persistent resistance. The presiding Judge has not only demonstrated an eagerness to dismiss the case but has, at times, appeared to advocate for the Defendants as their Defense lawyer rather than maintain judicial impartiality.

## Accusations Of Harassment

Defendant American Airlines' counsel is fully capable of advocating for himself if he believes he has experienced "harassment" from a  pro se litigant who has, in fact, communicated with him civilly—albeit assertively, given the significant imbalance of power between the parties. Plaintiff has never harassed Defendant's counsel. The Judge had no evidence or reasonable cause to conclude otherwise. During the March 28, 2025 hearing, when Plaintiff Tala stated her intent to file a police report regarding Defendant's misconduct, the Judge responded by warning that she had "all the power in the world to impose [sanctions]." This statement, combined with the Court's repeated dismissal of procedural concerns and the denial of Plaintiffs' right to fairly litigate their claims, created not only an **appearance of intimidation** but also raised serious concerns that the Judge was attempting to use her judicial authority to dissuade Plaintiffs from pursuing valid claims against American Airlines Inc. The Judge's statement that Plaintiffs "will not get anywhere" contributed to the perception that the outcome was predetermined and that

further efforts would be futile. This left Plaintiffs with serious doubt about their ability to receive a fair and impartial hearing in this courtroom.

When the Court stated that filing a police report "will not get you anywhere," it was not in response to any objection or argument raised by the Defendant. From Plaintiffs' perspective, this unsolicited comment appeared to dismiss a lawful course of action and, unintentionally, to preemptively defend the Defendant's position before it was even stated. Plaintiffs raise this not as a criticism of the Court's intent, but to express concern that such remarks contribute to the perception that the proceeding is no longer neutral.

Furthermore, If the Court is concerned about Gulf Air B.S.C.'s claims of feeling "harassed," such concerns are entirely unfounded. In contrast, Gulf Air's own conduct—including sending a man armed with a stick to intimidate Plaintiff Tala at the doors of a court in Bangladesh to prevent her from filing a claim against them, dispatching individuals to threaten her if she continued to hold press conferences, and other acts of intimidation and actual delaying litigations avoiding accountability—demonstrates a clear pattern of harassment and misconduct. This is further compounded by Gulf Air B.S.C. illegal surveillance activities targeting a U.S. citizen on U.S. soil, regardless of whether such actions have received personal or governmental approval which are now appearing more that it's based on personal interest. Plaintiff initially sought justice and protection from this Court; tragically, she now finds herself seeking protection *from* the Court itself.  Similarly, Gulf Air B.S.C. was reportedly under audit by the U.S. Department of Transportation (DOT), and the manipulation of this docket may have impeded the DOT and FAA's ability to conduct a fair and informed review. Gulf Air has now been granted a permit to operate flights to the U.S., using its influence to deceive the public—a deception that, alarmingly, now appears to be supported by the Court itself.

## <u>Recusal Pursuant to 28 U.S.C. § 455(a) Appearance of Bias and Lack of Judicial Impartiality</u>

At first, the conduct in this case appeared to reflect a form of judicial overreach—perhaps even a misuse of authority under enforcing procedural discretion. The phrase "they appeared under **my** local rules" raises an important question: Is there such a thing as a judge's *own* local rules that extends 12(a)(1)(A)(i) eight days without an excuse? Are there different rules apart from those formally adopted by the district and applicable to all parties equally? This kind of discretionary framing, especially when inconsistently applied, contributes to a clear bias and unequal treatment.

Furthermore, the comment, "In American law…" was both unnecessary and patronizing, implying that Plaintiffs are foreigners unfamiliar with the U.S. legal system—an assumption that is both incorrect and inappropriate. Plaintiff Feras has lived in the United States since the age of 11 and attended military school in Virginia. Plaintiff Tala passed the Army and National Guard qualification exams in her effort to serve her new home country. Such remarks reflect, at a minimum, an **appearance of bias or "minority power" dynamics**, seemingly intended to diminish and patronize the Plaintiffs while favoring powerful entities like American Airlines and Gulf Air B.S.C. Plaintiffs have followed and respected the law in this process to a degree that, frankly, surpasses what was witnessed in this courtroom. Patronizing discriminatory remarks have no place in a federal proceeding and only serve to undermine confidence in the fairness of the process.

Plaintiffs' claims arise from a pattern of regulatory noncompliance, misrepresentation, and procedural misconduct—allegations directly mirrored by Defendants' litigation conduct in this

case. Since February 12, 2025, Defendant has failed to comply with the most basic federal procedural obligations. While the Court excused these failures as procedural missteps, they are substantively relevant. They demonstrate a continuing disregard for both federal rules and the very regulatory frameworks at issue in Plaintiffs' claims.

The Court cannot, as a matter of law or fairness, isolate Defendant's litigation conduct from the broader allegations of misconduct in the case. To do so would improperly shield behavior that is both procedurally defective and evidentiary in nature. When a party accused of regulatory abuse engages in parallel procedural abuse, that pattern becomes probative—not dismissible. It strengthens the Plaintiffs' claims of showing the pattern of misrepresentation of compliance that is awarded due to influence and power by billion dollar companies.

The Court's failure to acknowledge this context further compounds the pattern of procedural errors and creates evidence that exceeds the appearance of bias that deprives Plaintiffs of a fair opportunity to present claims grounded in both fact and experience. Recusal is therefore necessary, not only to address the ongoing lack of impartiality, but also to preserve the evidentiary integrity and fairness of these proceedings in favor of equal Justice.

## Recusal Pursuant to 28 U.S.C. § 455(b): Potential Conflict of Interest and Personal Involvement

Plaintiffs must raise a serious concern regarding a potential conflict of interest. American Airlines Inc. is not only a leading member of Airlines for America (A4A) based in Washington D.C, but its Chief Executive Officer also serves on A4A's Board of Directors, providing direct leadership and influence over the association's activities. A4A has actively participated in regulatory matters before the FAA and DOT, including filings related to pilot working hours and

standards and views of safety in regards of IASA—issues that overlap with the claims Plaintiffs

have raised concerning airline safety, compliance, and negligence and their purpose in protecting

the Public.

Judge Ana Reyes, appointed as Federal Judge in February **2023**, served as a partner and member

of the Executive Committee at Williams & Connolly LLP from **2001-2023** . Given these

associations, there is a direct line between the Defendants in this case specifically American

Airlines, the airline industry's primary lobbying organization, and the Judge's former law firm.

This connection accompanied with stated factors, presents not only a **potential conflict of**

**interest**, but also creates a strong **appearance of impropriety**. Under 28 U.S.C. § 455, a

reasonable person would question the Judge's impartiality in this case, particularly in light of the

procedural irregularities already documented in the record. The Judge's 22-year tenure with

possible retirement plan at a law firm that have a direct "or indirect" stake in the outcome of this

case reasonably raises concerns of alignment—particularly given the differential posture toward

noncompliant Defendants, the dismissive hostile tone toward pro se Plaintiffs and determination

of dismissal Plaintiff's Tala second case against American Airlines and their counsel.

For these reasons, recusal is necessary to preserve fairness and public confidence in the judicial

process. Plaintiff Tala respectfully advises Defendants' counsel to review applicable regulatory

dockets and publicly available news articles before opposing this notice. Plaintiffs were fully

prepared to establish jurisdiction; however, the presiding Judge's apparent eagerness to dismiss

the case on jurisdictional grounds—regardless of any evidence that might be

presented—demonstrates that the possibility of receiving a fair trial has effectively vanished

from this courtroom. Before proceeding with a formal motion to recuse Judge Ana C. Reyes,

Plaintiffs respectfully request that the Court reconsider its current posture and that Judge Reyes

voluntarily recuse herself from further handling of this matter. If voluntary recusal is declined, Plaintiffs will be compelled to prepare and file a formal motion to recuse that exceeds 40 pages with very extensive evidence and requirement in Discovery as needed , along with a potential motion to stay, motion for extension, while filing an appeal. These efforts will not only further strain judicial efficiency and public resources, but will impose additional procedural and financial burdens on Plaintiffs—burdens that may ultimately give rise to additional claims should the pattern of harm continue.

Plaintiffs can and will  no longer accept assignment to a single judge given the extensive and improper influence the Defendants have demonstrated within this Court, as well as the harassment Plaintiffs have experienced outside the courtroom. Plaintiff will require an investigation before this case is assigned to another judge chosen by the current staff handling this case.  Additionally, Plaintiffs were never provided the opportunity to consent to or decline the assignment of a magistrate judge, further infringing upon their procedural rights. The irregular routing of this case raises serious concerns that such assignments may have been intentionally manipulated and directed to this courtroom.

Since the court has entertained these acts and is refusing to order investigation, Plaintiffs affirm that they will pursue all available legal avenues  against any individuals or entities who have violated their rights—including their constitutional rights—and will hold accountable those who have misused taxpayer-funded judicial resources to deprive pro se litigants of full and fair access to justice. Despite the Judge's warning that she "has all the power in the world to impose sanctions" should Plaintiff file a police report, Plaintiffs respectfully assert that **the law and the Constitution stand above the authority of any individual judge or clerk**, both of whom are entrusted to serve the public—not to suppress lawful claims or shield biased conduct.

**I. HEARING / RULES / CASES / JUDGE**

**Exhibit 1:**
Transcript of the hearing held March 28, 2025, concerning American Airlines.

**Exhibit 2:**
Motion to Dismiss filed by American Airlines on February 12, 2025, containing a defective and false Certificate of Service.

**Exhibit 3:**
Case Information: *Josephano v. American Airlines*, Case No. 1:25-cv-00753.

**Exhibit 4:**
Federal Rules cited Rule 4; Rule 5; Rule 6; Rule 12

**Exhibit 5:**
2021 Amendment to Local Rule 5.4.

**Exhibit 6:**
Department of Transportation (DOT) Order for Audit of codeshare partners and required certificate submissions.

**Exhibit 7:**
DOT Application submitted by American Airlines and Eckert Seamans Cherin & Mellott, LLC (counsel for Gulf Air B.S.C.), demonstrating both parties' knowledge of American Airlines offices in Washington, D.C., concerning codeshare operations. Despite this, both lawyers stated on the record that their clients had no presence in the U.S.A.

**Exhibit 8:**
Evidence of Gulf Air B.S.C.'s incorporation in New York.

**Exhibit 9:**
Gulf Air Captain's Exhibits supporting the claim of "no presence" in the U.S.A.

**Exhibit 10:**
Airlines for America publication: "Who We Are."

**Exhibit 11:**
Case Manager Notice Filing Docket (DKT) by Plaintiffs.

**Exhibit 12:**
Judge Ana Reyes' Standing Order.

Submitted by Pro Se Plaintiffs


May 9 2025


**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980


Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955


**Samiha Ayyash**

7823 New London Dr.
Springfield VA 22153
703-623-3767

## CERTIFICATE OF SERVICE

I hereby certify that on May 9 2025, Plaintiff Feras Hindi  and Plaintiff Tala will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Judicial Notice & Exhibits

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Service Processor ABC Legal service

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Service Processor ABC Legal service

May 9 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash

7823 New London Dr.
Springfield VA 22153
703-980-6955