**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

**Samiha Ayysah, Feras Hindi,**

**Tala Josephano** ) **Case No.: 1:24-cv-03434-ACR**

)

Plaintiff )

**American Airlines Inc. ,** )

**Gulf Air B.S.C** )

Defendant )

_________________________________)

## EXHIBITS For Judicial Notice

**Exhibit 1:**
Transcript of the hearing held March 28, 2025, concerning American Airlines.

**Exhibit 2:**
Motion to Dismiss filed by American Airlines on February 12, 2025, containing a defective and false Certificate of Service.

**Exhibit 3:**
Case Information: *Josephano v. American Airlines*, Case No. 1:25-cv-00753.

**Exhibit 4:**
Federal Rules cited Rule 4; Rule 5; Rule 6; Rule 12

**Exhibit 5:**
2021 Amendment to Local Rule 5.4.

**Exhibit 6:**
Department of Transportation (DOT) Order for Audit of codeshare partners and required certificate submissions.

**Exhibit 7:**
DOT Application submitted by American Airlines and Eckert Seamans Cherin & Mellott, LLC (counsel for Gulf Air B.S.C.), demonstrating both parties' knowledge of American Airlines offices in Washington, D.C., concerning codeshare operations. Despite this, both lawyers stated on the record that their clients had no presence in the U.S.A.

**Exhibit 8:**
 Evidence of Gulf Air B.S.C.'s incorporation in New York.

**Exhibit 9:**
Gulf Air Captain's Exhibits supporting the claim of "no presence" in the U.S.A.

**Exhibit 10:**
Airlines for America publication: "Who We Are."

**Exhibit 11:**
Case Manager Notice Filing Docket (DKT) by Plaintiffs.

**Exhibit 12:**
Judge Ana Reyes' Standing Order.


May 7 2025


**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

SAMIHA AYYASH, et al., ) CIVIL NO.:
) 24-3434-ACR
Plaintiff, )
vs. )
)
AMERICAN AIRLINES, INC., ) Via: Zoom
et al., ) March 28, 2025
Defendant. ) Washington, D.C.
_________________________________) 2:00 p.m.

Transcript of Pre-motion Conference
Before the Honorable Ana C. Reyes
United States District Judge

APPEARANCES:

For the Plaintiff:

Samiha Ayyash, Pro se
Feras Hindi, Pro se
Tala Josephano, Pro se

For the Defendant American Airlines:

Micah E. Ticatch, Esquire
Isler Dare, P.C.
1945 Old Gallows Road
Suite 650
Vienna, VA 22182

For the Defendant Gulf Air:

Mark A. Johnston, Esquire
Darcy Osta, Esquire
Eckert Seamans Cherin & Mellott, LLC
1717 Pennsylvania Avenue, NW
Suite 1200
Washington, D.C. 20006

Reported by: Christine T. Asif, RPR, FCRR
Federal Official Court Reporter
333 Constitution Avenue, NW
Washington, D.C. 20001
(202) 354-3247

P R O C E E D I N G S

THE CLERK: We are on the record in civil action 24-3434, Ayyash, et al., versus American Airlines Inc., et al.

THE COURT: All right. Plaintiffs could you please state your names and defendant's counsel could you please state your appearances.

MS. JOSEPHANO: Tala Josephano.

THE COURT: All right. Defense counsel.

MR. TICATCH: Good afternoon, Micah Ticatch on behalf of American Airlines.

MS. OSTA: Good afternoon. Darcy Osta and Mark Johnston on behalf of defendant Gulf Air.

THE COURT: All right. And Ms. Josephano is Feras Hindi on?

MR. HINDI: Yes, I'm here.

THE COURT: Okay. So I looked over your various motions. I'm denying all the motions for default, because the plaintiffs have -- defendants have appeared. And they've appeared appropriately under my local rules. So those are getting denied today.

Secondly, I think there's an issue with the case for the plaintiffs that I just want to explain to you all, which is it is not possible for individuals to file lawsuits in any state that they want to. They are required, under American

law to file a state -- an action either where the events occurred or where the defendants are incorporated, that's the broad swath. And if those things don't -- if either of those aren't present then the Court cannot hear the case. And so American Airlines has not yet filed a motion to dismiss for lack of personal jurisdiction, that's what it's called because of my unique rules. But what they've told me is they plan to file a motion to dismiss the case because the actions did not happen in the District and because neither or none of the defendants are incorporated in D.C.

And that's correct; right, defense counsel?

MS. OSTA: Yes, Your Honor.

MR. TICATCH: That's correct.

THE COURT: So there's really very little that I can do. And I just wanted to explain that to you because I'm going to give the plaintiff -- the defense an opportunity to file their motion. And if you want a lawyer, you know, I'm happy to let you find one. But this isn't a close call. This obviously does not belong in this courtroom. So I don't want you wasting money on this case. Where are you all headquartered or incorporated?

MR. TICATCH: American Airlines is incorporated in Delaware and its headquarters are in Texas.

MS. OSTA: Gulf Air is a corporation under the republic of -- or sorry, the Kingdom of Bahrain and that's

where its headquarters is located as well. It's in Bahrain.

THE COURT: Okay. All right. So you don't have a U.S. presence?

MS. OSTA: Currently that's correct, Your Honor.

THE COURT: All right. So the plaintiffs, Gulf Air would be difficult to sue anywhere in the U.S., I think. Although, I can't say that for sure. American, you could sue in Delaware or you could sue in Texas, but you cannot sue in the District.

MS. JOSEPHANO: May I speak when you're finished with this, the personal --

THE COURT: Yes. Go ahead.

MS. JOSEPHANO: I believe that after studying the jurisdiction, I believe American Airlines fits under general and personal. And Gulf Air for sure they fit under personal. The other thing is they've already participated in the case, which means they filed oppositions, they filed quite a few things. And I don't know if that's a rule or not, but filing I believe that would waive that. But I am ready, we are ready to present their jurisdiction proof that they both -- and Gulf Air just stated that they have no presence in the U.S. which is not accurate, which I can prove as well for both jurisdiction.

And for D.C. the venue, I also can because the cause of action, the fraud specifically and the negligence per se

arise from D.C. It's about the code share agreement and their misrepresentation to the Department of Transportation. It's not about the death only. There's two parts to the case. There is the personal injury with the death. And there is the personal -- the claims as part of the public that actually were caused harm. Can I be given a chance to prove the jurisdiction?

THE COURT: Yes, of course. Yes. All right. Well, if you want to try to oppose, by all means. They have not waived personal jurisdiction. They're permitted to raise the issue in an initial -- they were allowed to file everything they filed and they raised personal jurisdiction at the right time. So I'm not going to say they were late on that. But if you want to proceed, by all means.

So what we'll do is set a briefing schedule for motions to dismiss. So what happens, ma'am, is they will file a motion, you will have an opportunity to respond. They will file a reply brief and then we will have a hearing.

I understand that for some reason you no longer are receiving emails and that you would wish to be contacted by mail. That's really quite --

MS. JOSEPHANO: I think the picture is not really clear here where we have not discussed -- we're willing to like pass over it, but we have not discussed the way that they approached the service and the way they served or not served

plaintiffs. We have --

THE COURT: Well, they're not required to serve you, ma'am. You're required to serve them.

MS. JOSEPHANO: I did serve them.

THE COURT: Right. But they're not required to serve you.

MS. JOSEPHANO: How are they not req- -- yes, go ahead. Sorry.

THE COURT: So what they do is they file their papers on the docket, on the electronic docket. And then usually what happens is that all of the lawyers and the parties get emails from the docket automatically. But for some reason -- so they're not required to send you anything at all. All they're required to do is file their papers on the public docket, which they have done.

MS. JOSEPHANO: Aren't they supposed to serve us an answer on the 21 days for our claims? They're supposed to serve us that.

THE COURT: No. No, they're not. But, ma'am, that's wrong. They have 21 days to file an answer or a motion to dismiss. Each judge has different rules. My particular rules say that within the time line for service, they have to file a pre-motion conference paper, which is what they did, laying out what their motion will be. And that was timely filed and that is on the docket currently.

MS. JOSEPHANO: So it was filed on the last day and if it's goes with the rules of your -- the outstanding orders it's -- they should have conferred with the plaintiffs, No. 1. And No. 2, she did have an expired attorney certificate on filing, which we were willing to confer the motion to dismiss before filing, but we were not approached for that. So even though she did --

THE COURT: Ma'am -- ma'am. They are not required to meet and confer for a dispositive motion. A dispositive motion is one that gets rid of the case, like a motion to dismiss. They are only required to meet and confer with respect to a discovery motion. So if the trial -- if the case moves forward and you all have fights about documents, then that they have to meet and confer about. Under the general rules, there's no duty to meet and confer before you file a motion to dismiss, which is what they plan to do.

The reason I have the pre-motion conference requirement is because I think conferences are good before motions. But that's what they pursued and that's what we're doing right now and that includes me as the judge. So they've done everything procedurally correctly.

MS. JOSEPHANO: Okay. May I ask here, American Airline, they certified that they did serve the 21-day motion. And they submitted their motion conference despite me pretty much almost begging them to fix the certificate so we can

submit in a position to his motion to dismiss. He totally ignored it and filed the meet and confer eight days after the deadline. Is that procedure --

THE COURT: Ma'am, I'm not quite sure what -- what is it that you want right now that you think you don't have?

MS. JOSEPHANO: I think we -- to be honest, I read his motion to dismiss. And even the motion to dismiss and their meet to confer is about the merits, it's not even about their jurisdiction or any of this. And even with that, they both -- both defendants did not follow the procedure to serve or serve on time.

THE COURT: Ma'am --

MS. JOSEPHANO: And she did file with an expired attorney certificate. And he did admit that he served on the 13th, which is day after the deadline he did admit to his --

THE COURT: Ma'am -- ma'am, those deadlines are rules that are a discretion of the judge. If they did not file on time, I don't really care, I'm giving them the extra time. So I'm denying the motion for default on timing. So that's gone. Forget about the timing. We are past the timing.

MS. JOSEPHANO: No, no, we're not worried about that.

THE COURT: Ma'am, we are because I said we are. All right. When I say we are past something, we are past it.

So we're fine, we're done, we're past the deadlines.

Now, they did file a motion to dismiss, but then they realized that I have special rules, so then they withdrew the motion to dismiss and they filed a pre-motion conference document. And then that's why we set this hearing, because those are my rules.

Now, for some reason that I do not understand, you all sent an email to my courtroom deputy saying that you no longer wanted to receive emails and you took your emails off of the automatic ECF filing, which is why we had to mail you the information for this call. Now, I want to understand first, why you don't want to get emails. And second, explain to you that what I'm now going to allow is allow the defendants to file motions to dismiss, I will let you have the opportunity to oppose, they will get a reply and then we will have a hearing.

MS. JOSEPHANO: I'm good with that. But I do not wish to receive emails, because my phone gets either sometimes does and sometimes doesn't, that's reason No. 1. No. 2 is they did not -- I don't want to say the word "respect," but they didn't use it in the right way. So I prefer to be mailed like you mailed me a letter from the Court and here I am, I appeared. You mailed --

THE COURT: All right. That's -- ma'am, that's totally fine. If you want mail, that's totally fine. That

just means that you're going to get things three or four days after they've been put on the public docket. If that's what you want, that's totally fine. I don't care.

Counsel, can you all add mail service to your pleadings, so that our courtroom deputy doesn't have to do this?

MS. OSTA: Yes, Your Honor.

MR. TICATCH: Yes.

THE COURT: Okay. So after you docket it on the ECF docket, please do so with our traditional, you know, certificate of service that we haven't done in a while, that you've actually mailed it out and make sure it gets mailed out, all right?

MS. OSTA: Yes, Your Honor.

THE COURT: All right. How long would you guys like for a motion to dismiss briefing? When do you want to file?

MS. OSTA: Your Honor, Gulf Air would request two to three weeks, please.

THE COURT: Okay.

MR. TICATCH: Your Honor, that schedule works for us as well.

THE COURT: All right. Ma'am, how long would you like to file an opposition? Do you want 30 days? That's what, you know, usually people ask for is 30 days.

MS. JOSEPHANO: Is it possible that we get it in a

month, like them submitting that, so we can have time to get legal representation.

THE COURT: Yeah. So what I will do is -- what's today, the 28th? You guys okay with April 18th, that's eight weeks -- that's three weeks.

MS. OSTA: Yes, Your Honor.

MR. TICATCH: Yes.

THE COURT: All right. So I'm going to make their motion due on April 18th. And then I'm going to give you all two months, -- I'm going to give you until May 16 to oppose, so you get 60 days to try to find a lawyer. And then I will give them until June 6th to reply. And then we will set a hearing.

Counsel, I don't need a briefing on the 12(b)(6) at this point, just jurisdiction for now. If I find that they have jurisdiction, I'll let you file a 12(b)(6) later, all right?

MS. OSTA: Thank you, Your Honor.

THE COURT: All right. Ma'am, does that -- did you understand that schedule?

MS. JOSEPHANO: Yes, I did.

THE COURT: All right. So we will send out a minute order with the schedule on it. Can you guys print it out and send it to her, please?

MR. TICATCH: Yes, we can do that.

THE COURT: All right. Anything else at this time?

MR. TICATCH: Your Honor, I have been alerted that one of the plaintiffs in this case has filed a lawsuit against me, personally, and my client American Airlines, based on the same issue that was addressed here today. I'm not sure if there's anything we can do on that today, but --

THE COURT: What's the issue? What's the issue?

MR. TICATCH: That -- the claim is for fraud and abuse of process, again, on the certificate of service.

THE COURT: Okay. Ma'am --

MS. JOSEPHANO: No, it's not about the certificate of service. Don't say -- you have to give the picture correctly.

THE COURT: Okay. What's the correct picture. Ma'am, what's the correct picture?

MS. JOSEPHANO: I emailed him twice and I spoke to him like four times, and every time he actually misled me that he did serve -- send papers and that he did do all -- everything correctly. And I pretty much begged him to fix it. And I gave him a chance and I said, I want to argue the merits. We do not want this on procedures. And he still refused. And then he was so sure that the judge is not going to care for your case. That's exactly what he told me.

THE COURT: All right. Well, I'm not going to get into he said, she said, I think what he meant was --

MS. JOSEPHANO: This is a different case. This has nothing to do with --

THE COURT: All right. Ma'am. Ma'am. Where was that case filed, Mr. Ticatch?

MR. TICATCH: Here. And I believe it's been assigned to you, I think maybe because it's a related case, but I have not been served with it yet. I just found it on the docket.

THE COURT: All right. Ma'am, I still don't understand what you think that he did incorrectly, he -- everything that I have seen that he has done, he has done correctly. He is under no obligation to talk you about the merits of the case. None. There's no rule that requires him to talk about the merits of the case. He doesn't even have to take your phone call if he doesn't want to.

MS. JOSEPHANO: I'm -- I'm sorry here, I think I deserve a chance in my other case, which is not related to this case, it has nothing to do and it's against him personally, it's not against the defendants in this case. This man --

THE COURT: Ma'am. Ma'am, it is related in this case under our rules, it is my case, so if you, you know, -- Mr. Ticatch if you want to --

MS. JOSEPHANO: Dismiss it and I'll just appeal, because that's separate case, has nothing to do with this one,

that's personal.

THE COURT: One second.

All right. Ma'am, I mean, I'm telling you right now that this second complaint, I'm looking at it right now, has no basis in it whatsoever.

Mr. Ticatch, file a short brief motion to dismiss with your other motion.

MS. JOSEPHANO: But it wasn't served on him yet. I haven't served him yet because I plan to hire a lawyer for it.

THE COURT: I can --

MS. JOSEPHANO: You can dismiss it from your end and I can appeal it.

THE COURT: Ma'am, I'm not going to dismiss it from my end without giving you a chance to respond to a motion.

Mr. Ticatch, you've officially been served. I just served you. Will you please file a motion.

MS. JOSEPHANO: But I'm going to amend the claim, I'm not ready to submit the claim as it is.

THE COURT: Well, I'm not going to --

MS. JOSEPHANO: I have 21 days to amend the claim. How can you serve him on me if I have a lawyer, I want to get a lawyer for it.

THE COURT: All right. Ma'am, you know what, fine. You have until -- when do you have until -- to amend do you

think? When does she have to amend, do you guys know?

MS. JOSEPHANO: 19 days or maybe 15 days.

MR. TICATCH: I think the only deadline right now is the service deadline, which I think is 60 days or 90 days.

MS. JOSEPHANO: I'm actually thinking of filing criminally on you, just so you understand the position we're in, because he did actually --

THE COURT: All right. Ma'am, you cannot file criminal charges against anyone, only a prosecutor can do that. All right. I'm not going to have you harass the lawyer. If I start seeing that you're harassing the lawyer, there are going to be consequences. All right?

MS. JOSEPHANO: That's what I -- filing a police report. That's what I meant. Not filing criminal charges, sorry, for my --

THE COURT: All right. Well, you file the police report and it will go absolutely nowhere. And if I find that Mr. Ticatch is getting harassed by you, I have all the power in the world to impose --

MS. JOSEPHANO: Why are you -- why are you -- why are you, like, being rough on me only? Why?

THE COURT: Ma'am --

MS. JOSEPHANO: I'm on every step of your rules, they didn't. Why are you being rough on me, like, I don't understand.

THE COURT: Ma'am, I'm not being rough on you, I'm trying to -- in fact, I've been far more patient than about 99 percent of judges would be under the circumstances. You are -- you missed -- your complaints are based on a misconstruction of the rules. All right. What you are saying, and I looked at the complaint that Mr. Ticatch did incorrectly, he did not do incorrectly. Now, if you want to file a lawyer and file an amended complaints, by all means do so.

Mr. Ticatch, after you get served with a complaint, file your motion, two, three weeks, then we will set a briefing schedule and then we will get that taken care of as well. And, ma'am, you will have every opportunity to oppose that motion.

MS. JOSEPHANO: Thank you.

THE COURT: All right.

MS. JOSEPHANO: Thank you very much.

MR. TICATCH: I'm sorry, Your Honor, just to clarify, you want a letter, like we did in this case, or you want me to skip that step?

THE COURT: Don't -- you don't need a PMC in this one, just file your motion.

MR. TICATCH: Okay. Thank you, Your Honor.

THE COURT: Just wait until you get served and then, you know, file within some reasonable time after you get

served. I'll set a briefing schedule to let her know when to oppose, all right?

MR. TICATCH: Sounds good. Thank you, Your Honor.

THE COURT: All right. Mr. -- if any party here is abusing the system, or harassing the other side, please bring it to my attention and we will get it dealt with, okay?

All right. Thank you.

All right. Thank you, everyone.

MR. TICATCH: Thank you.

MS. OSTA: Thank you.

MR. JOHNSTON: Thank you, Your Honor.

(The proceedings were concluded at 2:21 p.m.)

I, Christine Asif, RPR, FCRR, do hereby certify that the foregoing is a correct transcript from the stenographic record of proceedings in the above-entitled matter.

_________/s/______________
Christine T. Asif
Official Court Reporter

EXHIBIT 2

**IN IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Samiha Ayyash, Tala Josephano**

**)**

**Plaintiffs, )**

**)**

**v. ) Case No.**
**1:24-cv-3434-ACR )**

**)**

**Defendants. )**

**)**

**DEFENDANT AMERICAN AIRLINES, INC.'S MOTION TO DISMISS** Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant American Airlines Inc., by counsel, hereby moves to dismiss the Amended Complaint because: (i) this Court lacks personal jurisdiction over American Airlines; and (ii) because Plaintiffs have failed to properly allege any of the claims asserted against American Airlines in their pleading. The grounds for this motion are set forth in the accompanying Memorandum of Support. Pursuant to Local Rule 7(f), Defendant requests an oral hearing for this motion.

Dated: February 12, 2025 Respectfully submitted,

/s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Group, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of February 2025 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system and will also serve a copy of the foregoing via electronic mail upon the following:

Tala Josephano
615 Catalina Ave, #233
Redondo Beach, CA 90277
joesphanotala@gmail.com
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Dr,
Springfield, Fairfax
VA 22153
703-980-6955
ayyashsamiha@gmail.com

*Pro Se Plaintiffs*

/s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Group, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**SAMIHA AYYASH, et al. )**
**)**
**Plaintiffs, )**
**)**
**v. ) Case No. 1:24-cv-3434-ACR )**
**GULF AIR B.S.C. et al., )**
**)**
**Defendants. )**
**)**

**AMERICAN AIRLINES INC.'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)

ntica@usendare.com

*Counsel for American Airlines Inc.*

Defendant American Airlines Inc.("American Airlines") submits this Memorandum in Support of its Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, each of Plaintiffs' claims asserted against American Airlines in their Amended Complaint (Dkt. 2) ("Amended Complaint") should be dismissed.

**BACKGROUND**[1]

On December 14, 2022, a pilot for Gulf Air, Capt. Mohannad Alhindi, suffered a heart attack at an airport in Bangladesh. (*See* Dkt. 2 at 4 of 123, III.) Eight hours after suffering the heart attack, Capt. Alhindi died in a Bangladeshi hospital. (*See id.* at 10 of 123, 4.)

Plaintiffs are the deceased Capt. Alhindi's mother (Ms. Ayyash), brother (Mr. Hindi), and sister (Ms. Josephano). (*Id.* at 8 of 123, ¶¶ 1-3.) Ms. Ayyash and Mr. Hindi reside in Virginia, and Ms. Josephano resides in California.

Plaintiffs allege that Gulf Air's negligence "contributed to Captain Alhindi's death" by failing to provide timely medical care. (*Id.* at 10 of 123, 6.) As best as can be discerned, although Capt. Alhindi was not an employee of American Airlines, Plaintiffs seek to hold it liable for his death because the Gulf Air flight that Capt. Alhindi was scheduled to pilot (but did not pilot because of his heart attack) was allegedly one in which Gulf Air had a codesharing agreement[2]

with American Airlines. (*Id.*, 3.)

[1] In light of the standard of a motion to dismiss, this section presents the facts as alleged in the Amended Complaint. Defendant reserves the right to contest the alleged facts in any future pleadings.

[2] "[A] codeshare agreement is an agreement between two airlines whereby a flight is listed under one airline's two-letter identification code but operated by the other airline." *Rehman v. Etihad Airways*, 2019 WL 12095414, at *7, FN 7 (M.D. Pa. 2019).

Plaintiffs assert three claims against American Airlines: negligence, negligence per se, and constructive fraud. (*Id.* at 109, 111, and 116 of 123.) All three claims appear premised on the allegation that because of the codeshare agreement, American Airlines had a duty to audit Gulf Air, which American Airlines allegedly performed inadequately. It is not clear from Plaintiffs' allegations what a properly performed audit would have revealed that would have prevented Capt. Alhindi's heart attack before his flight or his subsequent death.

The Amended Complaint fails to establish a connection between the claims and the District of Columbia— Capt. Alhindi's death occurred in Bangladesh, and American Airlines is a Delaware corporation with its principal places of business in Texas. (Dkt. 2 at 4 of 123, III; *id.* at 7 of 123, III.) Consequently, this Court lacks jurisdiction over American Airlines. Further, even if jurisdiction did exist, the claims against American Airlines must be dismissed because Plaintiffs fail to state a claim for which relief may be granted.

**ARGUMENT**

**I. The Court Lacks Personal Jurisdiction Over American Airlines.** In order to exercise personal jurisdiction over a defendant, the Court must have either general jurisdiction or specific jurisdiction. *See, e.g., Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1780 (2017); *Crear v. Am. Airlines Grp., Inc.*, 2025 WL 35931, at *2 (D.D.C. 2025). Because, as explained in more detail below, this Court has neither, the claims against American Airlines must be dismissed.

**A. Standard of review.**

When a defendant objects to a court's personal jurisdiction under Rule 12(b)(2), the

plaintiff, not the defendant, bears the "burden of establishing a factual basis for the court's exercise of personal jurisdiction." *Williams v. Romarm, SA*, 756 F.3d 777, 785 (D.C. Cir. 2014).

**B. The Court does not have general jurisdiction because Defendant is not "at home" in the District of Columbia.**

When a court has general jurisdiction over a defendant, a plaintiff can properly assert any lawsuit against the defendant in that forum. This extensive power, however, is limited only to those courts in the forums where a defendant is said to be "at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The Supreme Court has held that, outside extraordinary circumstances, a corporate entity is at home only in the jurisdiction in which it is incorporated or where it has its principal place of business. *See id.* at 137-138; *Crear* 2025 WL 35931 at *3.

American Airlines is a Delaware corporation, with its principal place of business in Texas. (Dkt. 2 at 7 of 123, III.) Consequently, this Court lacks general jurisdiction over American Airlines.

**C. Because Plaintiff's claims do not arise in the District of Columbia, the Court lacks specific jurisdiction.**

When a court lacks general jurisdiction, it can still exercise specific jurisdiction over a claim, but Constitutional Due Process limits such jurisdiction to only those instances where there is an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Meyers,* 137 S. Ct. at 1781. Furthermore, to establish jurisdiction, the suit-related activity or occurrence must represent a "substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). A connection that is only tangential to the claim does not create jurisdiction. *See id.* at 288-289.

Because Plaintiffs bear the burden, they are required to plead sufficient facts in their Amended Complaint to establish that each of their claims are sufficiently connected to the

District of Columbia to establish specific jurisdiction. *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 175 (D.D.C. 2018).

Plaintiffs have not met that burden. There is nothing in the Amended Complaint to suggest a substantial connection to D.C. Capt. Alhindi had his heart attack in an airport in Bangladesh, and later died in a hospital in the same country. Plaintiffs' claims against American Airlines are based upon the supposed failure to properly audit Gulf Air. However, as Gulf Air is based out of Bahrain, any audit of the airline would presumably take place in that country, . Plaintiffs have not (and cannot) allege that any audit took place in D.C.

In fact, the only allegation connecting American Airlines to D.C. is the assertion that in April 2023, American Airlines electronically submitted a certification to the FAA, which has its headquarters in Washington D.C. (Dkt. 2 at 91 of 123, 530.) However, this certification happened four months *after* Capt. Alhindi's death. Therefore, the allegation appears to be irrelevant to the claims, which as best as can be discerned, appear to be an effort to assert liability against American Airlines for that death.

Because there is no other alleged connection to D.C. in the Amended Complaint, Plaintiff cannot establish specific jurisdiction. And because there is neither general nor specific jurisdiction, the Court should dismiss the claims against American Airlines for lack of personal jurisdiction.

**II. Plaintiff Has Failed to State a Claim Against American Airlines.** Even if Plaintiffs could establish personal jurisdiction against American Airlines, the Amended Complaint should be dismissed because Plaintiffs have failed to sufficiently state any of the three claims asserted against American Airlines.

**A. Standard of review.**

On a motion to dismiss under Rule 12(b)(6), the Court determines whether the complaint contains sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). The allegations "must be enough to raise a right to relief above the speculative level." *Id*. The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It requires the plaintiff to articulate sufficient facts to "show" that the plaintiff has the "plausibility of entitlement to relief." *Id*.

**B. Plaintiffs do not state a claim for negligence.**

In "Claim 3," Plaintiffs purport to allege a claim for negligence. (Dkt. 2 at 109 of 123). Plaintiffs' claim is difficult to parse, but as best as can be discerned, the theory underlying this claim is that: (i) American Airlines has an FAA requirement to periodically audit Gulf Air's safety protocols; (ii) American Airlines' audit of Gulf Air was allegedly performed inadequately; (iii) Capt. Alhindi, who died before getting the chance to operate Gulf Air's aircraft, somehow would not have had a heart attack, or not have died, if American Airlines had performed a better audit of Gulf Air. To start, this line of factual causation is implausible, and there are no facts alleged in the Amended Complaint to plausibly suggest anything American Airlines could have reasonably done in an audit would have affected Capt. Alhindi's survival.

However, even if the implausible causation theory were accepted, the claim still clearly fails. In order to properly state a claim for negligence, Plaintiffs would need to allege "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff." *Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1098 (D.C. 1994).

Plaintiffs cannot demonstrate the first element. To start with, a safety audit does not generally give rise to a duty of care to third parties. *Casey v. Ward*, 211 F. Supp. 3d 107, 121 (D.D.C. 2016). To the extent that an audit mandated by the FAA, did somehow give rise to a duty

of care to third parties — any such duty would be owed to *passengers*. To state the obvious, the FAA audit requirement is not designed to ensure that pilots of foreign airlines are prevented from experiencing heart attacks during times when they are not even operating an airplane. American Airline owed no duty of care to Capt. Alhindi, and it certainly did not owe a duty of care to the Plaintiffs.

Likewise, Plaintiffs cannot establish the other two elements of the claim either. The Amended Complaint does not plausibly allege that American Airlines failed to use reasonable care in performing their audit. Furthermore, even if there was a showing of breach of reasonable care, the foreseeable damage is an accident or safety issue arising while the plane is being *operated*. A heart attack *before* the operation of the plan is not a foreseeable risk associated with a safety audit.

In sum, Plaintiffs have failed to allege any of the elements of negligence claim, and it should be dismissed with prejudice.

**C. The claim for negligence per se must be dismissed.**

In "Claim 5" Plaintiffs assert a claim of negligence per se based on alleged violations of the FAA Codeshare Safety Guidelines. (Dkt. 2 at 111 of 123.) "However, negligence per se is not in and of itself a separate legal claim—rather, it permits a plaintiff under certain circumstances and under specified conditions to rely on a statute or regulation as proof of the applicable standard of care." *Hunter v. D.C.*, 64 F. Supp. 3d 158, 188–89 (D.D.C. 2014) (cleaned up).

Because, as explained above, American Airlines' alleged audit was not the proximate cause of Capt. Alhindi or Plaintiffs' injuries, Plaintiffs cannot state a negligence per se claim any more than a negligence claim.

Moreover, negligence per se can only be used when the "the statute or regulation promotes public safety and was enacted to protect persons in the plaintiff's position or to prevent the type of

accident that occurred." *Id.* As previously noted, Plaintiffs cannot point to any relevant statute or regulation that was enacted to protect pilots of foreign airlines during the time they are not operating a plane. Nor can Plaintiffs point to any statute or regulation that was enacted to protect the *family members* of such pilots. Consequently, this claim must be dismissed as well.

**D. Plaintiffs cannot state a claim for constructive fraud.**

In "Claim 6"against American Airlines, Plaintiffs assert a claim for constructive fraud. (Dkt. 2 at 116 of 123.) This claim must be dismissed as well.

To state a claim for constructive fraud a plaintiff must demonstrate: (1) the defendant made a false representation; (2) in reference to material fact; (3) with knowledge of its falsity; (4) the plaintiff acted in reasonable reliance on that representation; (5) which consequently resulted in provable damages. *Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49, 59 (D.D.C. 2012). Additionally, a constructive fraud claim can only be made when the defendant has a "confidential relationship . . which the defendant is able to exercise extraordinary influence over plaintiff." *Id.*

American Airlines does not have a confidential relationship with any of the Plaintiffs, nor did it have one with Capt. Alhindi. As such, this claim fails for this reason alone. Additionally,

the claim fails because Plaintiffs cannot allege the other factors. As best as can be discerned, the alleged “false representation” is an April 28, 2023 “fraudulent certification” that American Airlines electronically submitted to the FAA. (Dkt. 2 at 91 of 123, 530.) But this was submitted *after* Capt. Alhindi’s death, and therefore, the submission cannot be responsible for his death.

Moreover, to the extent Plaintiffs are alleging that they personally were misled by the April 28, 2023 certification, such an allegation is contradicted by their own allegations which

allege that a few days before American Airlines’ certification, “plaintiffs sent detailed court documents and correspondence to AA’s U.S. offices, providing evidence of Gulf Air’s systemic safety violations. These included unreported crew incapacitations, medical examination failures, and breaches of ICAO safety standards.” (*Id.*, 529.) In other words, Plaintiffs were aware that the American Airlines’ certification was allegedly inaccurate, meaning they did not reasonably rely on that certification. Moreover, there is no plausible claim of injury related to a certification made *after* Capt. Alhindi’s death.

In sum, Plaintiffs have not come close to alleging a claim for constructive fraud and it should be dismissed with prejudice.

**CONCLUSION**

As stated above, Plaintiffs’ Amended Complaint should be dismissed because this Court lacks personal jurisdiction over American Airlines. Furthermore, even if the Court had such jurisdiction, the Amended Complaint should still be dismissed American Airlines because it fails to state a claim against it.

Dated: February 12, 2025 Respectfully submitted,

/s/ Micah E. Ticatch

Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of February 2025 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system and will also serve a copy of the foregoing via electronic mail upon the following:

Tala Josephano
615 Catalina Ave, #233
Redondo Beach, CA 90277
joesphanotala@gmail.com
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Dr,
Springfield, Fairfax
VA 22153
703-980-6955
ayyashsamiha@gmail.com

*Pro Se Plaintiffs*

/s/ Micah E. Ticatch

Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690

(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

**IN IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SAMIHA AYYASH, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:24-cv-3434-ACR** |
| | ) | |
| **GULF AIR B.S.C. et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**DEFENDANT AMERICAN AIRLINES, INC.'S MOTION TO DISMISS**

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant American Airlines Inc., by counsel, hereby moves to dismiss the Amended Complaint because: (i) this Court lacks personal jurisdiction over American Airlines; and (ii) because Plaintiffs have failed to properly allege any of the claims asserted against American Airlines in their pleading. The grounds for this motion are set forth in the accompanying Memorandum of Support. Pursuant to Local Rule 7(f), Defendant requests an oral hearing for this motion.

Dated: February 12, 2025

Respectfully submitted,

/s/ Micah E. Ticatch

Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Group, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of February 2025 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system and will also serve a copy of the foregoing via electronic mail upon the following:

Tala Josephano
615 Catalina Ave, #233
Redondo Beach, CA 90277
joesphanotala@gmail.com
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Dr,
Springfield, Fairfax
VA 22153
703-980-6955
ayyashsamiha@gmail.com

*Pro Se Plaintiffs*

/s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Group, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SAMIHA AYYASH, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:24-cv-3434-ACR** |
| | ) | |
| **GULF AIR B.S.C. et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**AMERICAN AIRLINES INC.'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

Defendant American Airlines Inc.("American Airlines") submits this Memorandum in Support of its Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, each of Plaintiffs' claims asserted against American Airlines in their Amended Complaint (Dkt. 2) ("Amended Complaint") should be dismissed.

## BACKGROUND[1]

On December 14, 2022, a pilot for Gulf Air, Capt. Mohannad Alhindi, suffered a heart attack at an airport in Bangladesh. (*See* Dkt. 2 at 4 of 123, ¶ III.) Eight hours after suffering the heart attack, Capt. Alhindi died in a Bangladeshi hospital. (*See id.* at 10 of 123, ¶ 4.)

Plaintiffs are the deceased Capt. Alhindi's mother (Ms. Ayyash), brother (Mr. Hindi), and sister (Ms. Josephano). (*Id.* at 8 of 123, ¶¶ 1-3.) Ms. Ayyash and Mr. Hindi reside in Virginia, and Ms. Josephano resides in California.

Plaintiffs allege that Gulf Air's negligence "contributed to Captain Alhindi's death" by failing to provide timely medical care. (*Id.* at 10 of 123, ¶ 6.) As best as can be discerned, although Capt. Alhindi was not an employee of American Airlines, Plaintiffs seek to hold it liable for his death because the Gulf Air flight that Capt. Alhindi was scheduled to pilot (but did not pilot because of his heart attack) was allegedly one in which Gulf Air had a codesharing agreement[2] with American Airlines. (*Id.*, ¶ 3.)

---

[1] In light of the standard of a motion to dismiss, this section presents the facts as alleged in the Amended Complaint. Defendant reserves the right to contest the alleged facts in any future pleadings.

[2] "[A] codeshare agreement is an agreement between two airlines whereby a flight is listed under one airline's two-letter identification code but operated by the other airline." *Rehman v. Etihad Airways*, 2019 WL 12095414, at *7, FN 7 (M.D. Pa. 2019).

Plaintiffs assert three claims against American Airlines: negligence, negligence per se, and constructive fraud. (*Id.* at 109, 111, and 116 of 123.) All three claims appear premised on the allegation that because of the codeshare agreement, American Airlines had a duty to audit Gulf Air, which American Airlines allegedly performed inadequately. It is not clear from Plaintiffs' allegations what a properly performed audit would have revealed that would have prevented Capt. Alhindi's heart attack before his flight or his subsequent death.

The Amended Complaint fails to establish a connection between the claims and the District of Columbia— Capt. Alhindi's death occurred in Bangladesh, and American Airlines is a Delaware corporation with its principal places of business in Texas. (Dkt. 2 at 4 of 123, ¶ III; *id.* at 7 of 123, ¶ III.) Consequently, this Court lacks jurisdiction over American Airlines. Further, even if jurisdiction did exist, the claims against American Airlines must be dismissed because Plaintiffs fail to state a claim for which relief may be granted.

## ARGUMENT

### I. The Court Lacks Personal Jurisdiction Over American Airlines.

In order to exercise personal jurisdiction over a defendant, the Court must have either general jurisdiction or specific jurisdiction. *See, e.g., Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1780 (2017); *Crear v. Am. Airlines Grp., Inc.*, 2025 WL 35931, at *2 (D.D.C. 2025). Because, as explained in more detail below, this Court has neither, the claims against American Airlines must be dismissed.

#### A. Standard of review.

When a defendant objects to a court's personal jurisdiction under Rule 12(b)(2), the plaintiff, not the defendant, bears the "burden of establishing a factual basis for the court's exercise of personal jurisdiction." *Williams v. Romarm, SA*, 756 F.3d 777, 785 (D.C. Cir. 2014).

**B.      The Court does not have general jurisdiction because Defendant is not "at home" in the District of Columbia.**

When a court has general jurisdiction over a defendant, a plaintiff can properly assert any lawsuit against the defendant in that forum.  This extensive power, however, is limited only to those courts in the forums where a defendant is said to be "at home."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  The Supreme Court has held that, outside extraordinary circumstances, a corporate entity is at home only in the jurisdiction in which it is incorporated or where it has its principal place of business.  *See id.* at 137-138; *Crear* 2025 WL 35931 at *3.

American Airlines is a Delaware corporation, with its principal place of business in Texas. (Dkt. 2 at 7 of 123, ¶ III.)  Consequently, this Court lacks general jurisdiction over American Airlines.

**C.      Because Plaintiff's claims do not arise in the District of Columbia, the Court lacks specific jurisdiction.**

When a court lacks general jurisdiction, it can still exercise specific jurisdiction over a claim, but Constitutional Due Process limits such jurisdiction to only those instances where there is an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State."  *Bristol-Meyers,* 137 S. Ct. at 1781. Furthermore, to establish jurisdiction, the suit-related activity or occurrence must represent a "substantial connection with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  A connection that is only tangential to the claim does not create jurisdiction.  *See id.* at 288-289.

Because Plaintiffs bear the burden, they are required to plead sufficient facts in their Amended Complaint to establish that each of their claims are sufficiently connected to the District of Columbia to establish specific jurisdiction. *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 175 (D.D.C. 2018).

Plaintiffs have not met that burden. There is nothing in the Amended Complaint to suggest a substantial connection to D.C. Capt. Alhindi had his heart attack in an airport in Bangladesh, and later died in a hospital in the same country. Plaintiffs' claims against American Airlines are based upon the supposed failure to properly audit Gulf Air. However, as Gulf Air is based out of Bahrain, any audit of the airline would presumably take place in that country, . Plaintiffs have not (and cannot) allege that any audit took place in D.C.

In fact, the only allegation connecting American Airlines to D.C. is the assertion that in April 2023, American Airlines electronically submitted a certification to the FAA, which has its headquarters in Washington D.C. (Dkt. 2 at 91 of 123, ¶ 530.) However, this certification happened four months *after* Capt. Alhindi's death. Therefore, the allegation appears to be irrelevant to the claims, which as best as can be discerned, appear to be an effort to assert liability against American Airlines for that death.

Because there is no other alleged connection to D.C. in the Amended Complaint, Plaintiff cannot establish specific jurisdiction. And because there is neither general nor specific jurisdiction, the Court should dismiss the claims against American Airlines for lack of personal jurisdiction.

## II. Plaintiff Has Failed to State a Claim Against American Airlines.

Even if Plaintiffs could establish personal jurisdiction against American Airlines, the Amended Complaint should be dismissed because Plaintiffs have failed to sufficiently state any of the three claims asserted against American Airlines.

### A. Standard of review.

On a motion to dismiss under Rule 12(b)(6), the Court determines whether the complaint contains sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). The allegations "must be enough to raise a right to relief above the speculative level." *Id*. The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It requires the plaintiff to articulate sufficient facts to "show" that the plaintiff has the "plausibility of entitlement to relief." *Id*.

**B. Plaintiffs do not state a claim for negligence.**

In "Claim 3," Plaintiffs purport to allege a claim for negligence. (Dkt. 2 at 109 of 123). Plaintiffs' claim is difficult to parse, but as best as can be discerned, the theory underlying this claim is that: (i) American Airlines has an FAA requirement to periodically audit Gulf Air's safety protocols; (ii) American Airlines' audit of Gulf Air was allegedly performed inadequately; (iii) Capt. Alhindi, who died before getting the chance to operate Gulf Air's aircraft, somehow would not have had a heart attack, or not have died, if American Airlines had performed a better audit of Gulf Air. To start, this line of factual causation is implausible, and there are no facts alleged in the Amended Complaint to plausibly suggest anything American Airlines could have reasonably done in an audit would have affected Capt. Alhindi's survival.

However, even if the implausible causation theory were accepted, the claim still clearly fails. In order to properly state a claim for negligence, Plaintiffs would need to allege "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff." *Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1098 (D.C. 1994).

Plaintiffs cannot demonstrate the first element. To start with, a safety audit does not generally give rise to a duty of care to third parties. *Casey v. Ward*, 211 F. Supp. 3d 107, 121 (D.D.C. 2016). To the extent that an audit mandated by the FAA, did somehow give rise to a duty

of care to third parties — any such duty would be owed to *passengers*. To state the obvious, the FAA audit requirement is not designed to ensure that pilots of foreign airlines are prevented from experiencing heart attacks during times when they are not even operating an airplane. American Airline owed no duty of care to Capt. Alhindi, and it certainly did not owe a duty of care to the Plaintiffs.

Likewise, Plaintiffs cannot establish the other two elements of the claim either. The Amended Complaint does not plausibly allege that American Airlines failed to use reasonable care in performing their audit. Furthermore, even if there was a showing of breach of reasonable care, the foreseeable damage is an accident or safety issue arising while the plane is being *operated*. A heart attack *before* the operation of the plan is not a foreseeable risk associated with a safety audit.

In sum, Plaintiffs have failed to allege any of the elements of negligence claim, and it should be dismissed with prejudice.

**C. The claim for negligence per se must be dismissed.**

In "Claim 5" Plaintiffs assert a claim of negligence per se based on alleged violations of the FAA Codeshare Safety Guidelines. (Dkt. 2 at 111 of 123.) "However, negligence per se is not in and of itself a separate legal claim—rather, it permits a plaintiff under certain circumstances and under specified conditions to rely on a statute or regulation as proof of the applicable standard of care." *Hunter v. D.C.*, 64 F. Supp. 3d 158, 188–89 (D.D.C. 2014) (cleaned up). Because, as explained above, American Airlines' alleged audit was not the proximate cause of Capt. Alhindi or Plaintiffs' injuries, Plaintiffs cannot state a negligence per se claim any more than a negligence claim.

Moreover, negligence per se can only be used when the "the statute or regulation promotes public safety and was enacted to protect persons in the plaintiff's position or to prevent the type of

accident that occurred." *Id.* As previously noted, Plaintiffs cannot point to any relevant statute or regulation that was enacted to protect pilots of foreign airlines during the time they are not operating a plane. Nor can Plaintiffs point to any statute or regulation that was enacted to protect the *family members* of such pilots. Consequently, this claim must be dismissed as well.

**D. Plaintiffs cannot state a claim for constructive fraud.**

In "Claim 6"against American Airlines, Plaintiffs assert a claim for constructive fraud. (Dkt. 2 at 116 of 123.) This claim must be dismissed as well.

To state a claim for constructive fraud a plaintiff must demonstrate: (1) the defendant made a false representation; (2) in reference to material fact; (3) with knowledge of its falsity; (4) the plaintiff acted in reasonable reliance on that representation; (5) which consequently resulted in provable damages. *Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49, 59 (D.D.C. 2012). Additionally, a constructive fraud claim can only be made when the defendant has a "confidential relationship . . which the defendant is able to exercise extraordinary influence over plaintiff." *Id.*

American Airlines does not have a confidential relationship with any of the Plaintiffs, nor did it have one with Capt. Alhindi. As such, this claim fails for this reason alone.

Additionally, the claim fails because Plaintiffs cannot allege the other factors. As best as can be discerned, the alleged "false representation" is an April 28, 2023 "fraudulent certification" that American Airlines electronically submitted to the FAA. (Dkt. 2 at 91 of 123, ¶ 530.) But this was submitted *after* Capt. Alhindi's death, and therefore, the submission cannot be responsible for his death.

Moreover, to the extent Plaintiffs are alleging that they personally were misled by the April 28, 2023 certification, such an allegation is contradicted by their own allegations which

Case 1:24-cv-03434-ACR Document 47 Filed 02/10/25 Page 14 of 271

allege that a few days before American Airlines' certification, "plaintiffs sent detailed court documents and correspondence to AA's U.S. offices, providing evidence of Gulf Air's systemic safety violations. These included unreported crew incapacitations, medical examination failures, and breaches of ICAO safety standards." (*Id.*, ¶ 529.) In other words, Plaintiffs were aware that the American Airlines' certification was allegedly inaccurate, meaning they did not reasonably rely on that certification. Moreover, there is no plausible claim of injury related to a certification made *after* Capt. Alhindi's death.

In sum, Plaintiffs have not come close to alleging a claim for constructive fraud and it should be dismissed with prejudice.

**CONCLUSION**

As stated above, Plaintiffs' Amended Complaint should be dismissed because this Court lacks personal jurisdiction over American Airlines. Furthermore, even if the Court had such jurisdiction, the Amended Complaint should still be dismissed American Airlines because it fails to state a claim against it.

Dated: February 12, 2025

Respectfully submitted,

/s/ Micah E. Ticatch

Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of February 2025 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system and will also serve a copy of the foregoing via electronic mail upon the following:

Tala Josephano
615 Catalina Ave, #233
Redondo Beach, CA 90277
joesphanotala@gmail.com
*Pro Se Plaintiff*

Samiha Ayyash
Feras Hindi
7823 New London Dr,
Springfield, Fairfax
VA 22153
703-980-6955
ayyashsamiha@gmail.com

*Pro Se Plaintiffs*

/s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for American Airlines Inc.*

Case 1:24-cv-03407-ACR Document 4-1 Filed 05/09/25 Page 15 of 35

EXHIBIT 3

# UNITED STATES DISTRICT COURT

for the

District of Columbia

Civil Division

Case: 1:25-cv-00753 JURY DEMAND
Assigned To : Walton, Reggie B.
Assign. Date : 3/14/2025
Description: Pro Se Gen. Civ. (F-DECK)

Tala Josephano

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**-v-**

American Airlines INC.,
Micah E. Ticatch

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Jury Trial: *(check one)* ☑ Yes ☐ No

## COMPLAINT FOR A CIVIL CASE

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Tala Josephano |
| Street Address | 615 S Catalina Ave #233 |
| City and County | Redondo Beach, LA county |
| State and Zip Code | CA 90277 |
| Telephone Number | 347-749-4980 |
| E-mail Address | josephanotala@gmail.com |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

RECEIVED
MAR 14 2025
Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

Defendant No. 1

| | |
|---|---|
| Name | American Airlines INC. |
| Job or Title *(if known)* | Corperate Service Company |
| Street Address | 1090 Vermont Ave. NW |
| City and County | Washington |
| State and Zip Code | DC 20005 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Micah E. Ticatch |
| Job or Title *(if known)* | Counsel |
| Street Address | 1945 Old Gallows Rd. Suite 650 |
| City and County | Vieena |
| State and Zip Code | VA 22182 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question ☑ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

see attachment

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

a. If the plaintiff is an individual

The plaintiff, *(name)* Tala Josephano, is a citizen of the State of *(name)* California.

b. If the plaintiff is a corporation

The plaintiff, *(name)* ______, is incorporated under the laws of the State of *(name)* ______, and has its principal place of business in the State of *(name)* ______.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

a. If the defendant is an individual

The defendant, *(name)* Micah E. Ticatch, is a citizen of the State of *(name)* Virginia. Or is a citizen of *(foreign nation)* ______.

      b. If the defendant is a corporation

The defendant, *(name)* AmericanAirlinesInc, is incorporated under the laws of the State of *(name)* Delaware, and has its principal place of business in the State of *(name)* Delaware.
Or is incorporated under the laws of *(foreign nation)* ______,
and has its principal place of business in *(name)* ______.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:
See Attachement

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.
See Attachement

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See Attachement

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 03/10/2025

Signature of Plaintiff

Printed Name of Plaintiff Tala Josephano

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

**Tala Josephano** )

Plaintiff, )

**American Airlines, INC. ,**

**Micah Ephram Ticatch**, )

Defendant )

____________________________________ )

**CIVL COMPLAINT ATTACHEMENT**

**JURISDICTION AND VENUE**

This Court has jurisdiction under **28 U.S.C. § 1332 (Diversity Jurisdiction)** because Plaintiff Tala Josephano is a citizen of California; Defendant American Airlines, Inc. is a Delaware corporation with its principal place of business in Texas; Defendant Micah Ephram Ticatch, American Airlines' lawyer is a citizen of Virginia; The amount in controversy exceeds $75,000, exclusive of interest and costs.

This Court has **personal jurisdiction** over Defendants because they availed themselves;  American Airlines filed a fraudulent Certificate of Service in this Court (D.D.C.) on February 12, 2025, materially affecting litigation in Case No. 1:24-cv-03434; Ticatch, acting as American Airlines' counsel availed himself of this Court by submitting multiple filings in D.D.C. and making fraudulent misrepresentations that directly impacted litigation within this forum. Defendant's acts had foreseeable and intentional consequences in this District, warranting personal jurisdiction. A February 13, 2025, phone call in which he affirmed service was completed; A February 18, 2025, email reconfirming the same misrepresentation.

**Venue** is proper in this Court because: The fraudulent Certificate of Service was filed in this Court, materially affecting ongoing litigation; Defendant Ticatch's misrepresentations were made while engaged in D.C. litigation, directly influencing court deadlines and procedural decisions;  Defendants fraudulent actions directly impacted judicial proceedings in D.C., creating intentional harm in the forum.

The underlying case (1:24-cv-03434ACR) remains pending in D.D.C., making this the proper venue.

## TABLE OF CONTENT

**December 30, 2024** :Plaintiff Tala Josephano and Co-Plaintiffs Samiha & Feras filed a claim against American Airlines & Gulf Air for wrongful death, negligence, negligence per se, and fraud for falsifying Certificates of Compliance.

**January 22, 2025** :American Airlines was properly served with a deadline of February 12, 2025, to file an answer or appearance.

**February 12, 2025** – Defendant's Fraudulent Certification : Defendants filed a fraudulent Certificate of Service on the last day after 5:00 PM, knowingly misrepresenting that all three Plaintiffs had been served via email; Despite knowing that the email address for Plaintiff Tala was incorrect and that Co-Plaintiffs Feras and Samiha had not been served, Defendants filed the Certificate to mislead the court into believing service was complete.

**February 13, 2025** – Initial Discovery of Misrepresentation :Plaintiff Tala calls the court and confirms she was never served; Plaintiff immediately calls Defendant Ticatch, who knowingly misrepresents that service was completed; Despite knowing the email was undelivered, Ticatch reaffirms service without providing proof.

**February 18, 2025** – Continued Fraudulent Representations :Plaintiff requests proof of service. Defendant Ticatch fails to provide tracking information but falsely reassures that service was completed on February 12 2025; Plaintiff, relying on Defendant's

representations, does not take immediate action, delaying her ability to challenge the defective service and seek default.

**February 20, 2025** – Defendants Escalate Abuse of Process: Plaintiffs confirm that no individual service was completed for Co-Plaintiffs Feras and Samiha; Rather than correcting the fraudulent Certificate of Service or service and the misrepresented statements,

**February 24, 2025** – Defendant Feigns Confusion but Admits Misconduct: Plaintiff Tala emails Defendant Ticatch requesting correction of the procedural record; Defendant Ticatch initially feigns confusion but later admits he never complied with the judge's standing order; Despite admitting non-compliance, Defendant refuses to amend the Certificate of Service or notify the court.

**February 25, 2025** – Plaintiff Tala warns Defendant Ticatch that Plaintiffs will pursue legal consequences; After previously ignoring multiple requests, Defendant Ticatch immediately responds, attempting to downplay his misconduct.

**February 26–March 3, 2025** – Defendants Exploit Court System to Shield Fraud: Defendants use internal court connections to bypass default motions and improperly schedule their defective Meet and Confer meeting; This tactic ensures their fraudulent Statements remain unchallenged and prevents judicial scrutiny.

**March 4, 2025** – Defendants Admit Fraud but Refuse Correction :In opposition to Plaintiffs' motion for default, Defendants admit that service was not completed on February 12, contradicting their prior sworn statements; Despite this admission,

Defendants refuse to amend the fraudulent Certificate of Service, ensuring the false record remains in place.

**March 5, 2025** – Court Official Intervenes in Favor of Defendants: Deputy Alexander Burton, from different chambers, gets involved and improperly schedules Defendants' Meet and Confer motion, skipping Co-Plaintiffs' pending motions for default; This intervention fast-tracks Defendants' defective filings while delaying Plaintiffs' attempts to challenge service fraud.

**March 6, 2025** – Defendant Ticatch Explicitly Confirms Intent to Deceive :Defendant Ticatch calls Plaintiff Tala, arrogantly dismissing the fraudulent service issue and stating: "No one cares, I am pretty confident the judge won't care" about the misrepresented Certificate of Service & Co-Plaintiffs' Entry to Default Motion; Defendant Ticatch pressures Tala to agree to the defective Meet & Confer rather than challenging the fraudulent service issue; This statement demonstrates Defendants' knowledge of their misconduct and their belief that they could avoid judicial accountability through procedural manipulation.

1. **INTRODUCTION**

2. Plaintiff Tala Josephano brings this action against Defendants American Airlines and its legal counsel for their deliberate misrepresentation and omission regarding procedural compliance, directly interfering with Plaintiff's ability to assert her legal rights.

3. On February 12 and February 18, 2025, Defendant Ticatch, acting as legal counsel for American Airlines, knowingly misrepresented the status of service to Plaintiff, inducing reliance on procedural deadlines that were not met.

4. At the time of the statements, Defendants were aware that service had not been completed in accordance with procedural rules, yet they continued to assert otherwise.

5. Defendants' misrepresentation was not an oversight but a deliberate act designed to induce Plaintiff into procedural inaction, obstruct her ability to file timely motions, and ensure Defendants retained an unfair litigation advantage.

6. Defendants' statements made in direct communications—through phone calls on February 13 and emails on February 18—were knowingly inconsistent with the facts available to them. By reinforcing these misrepresentations, Defendants misled Plaintiff, interfering with her ability to make informed legal decisions and causing direct harm, including financial strain and emotional distress.

7. **FACTUAL BACKGROUND**

8.  **February 12, 2025 – Certificate of Service**

9. On February 12, 2025, Defendant American Airlines and its legal counsel, Defendant Micah Ephram Ticatch, submitted a Certificate of Service in the U.S. District Court for the District of Columbia (Case No. 1:24-CV-03434), certifying that service had been effectuated on all three Plaintiffs via electronic mail.

10. Defendant Ticatch, acting on behalf of Defendant American Airlines, filed the Certificate of Service through the CM/ECF system, alongside:

    a.  NOTICE of Appearance at 5:19 PM EDT,

    b.  MOTION to Dismiss at 5:21 PM EDT,

    c.  CERTIFICATE OF DISCLOSURE at 5:25 PM EDT.

11. The Certificate of Service filed by Defendants on February 12, 2025, affirmed compliance with FRCP 12(a)(1)(A)(i), stating that service was completed within the 21-day deadline. However, this certification was inconsistent with court records, misrepresenting compliance and impacting Plaintiffs' ability to respond within required deadlines.

12. Defendant American Airlines, as the principal party, is liable for the actions of its legal counsel, Defendant Ticatch, whose misrepresentation obstructed Plaintiff's ability to seek procedural relief and caused her harm. The filing of the Certificate of Service created a misleading procedural record, delaying legal actions and providing Defendants with an unfair advantage

13. Court records indicate several discrepancies in Defendants' service representations Plaintiff Tala Josephano's email was entered incorrectly (JoEssephanotala@gmail.com instead of JoSephanotala@gmail.com); Tala's electronic notification remained inactive until February 18, 2025; Gulf Air, a named party, was omitted from the Certificate of Service; Co-Plaintiffs Feras Hindi and Samiha Ayyash had not consented to electronic service, were not enrolled in CM/ECF, and had not received individual service; No email address was listed for Feras, and Samiha lacked access to the email used.

14. Despite these defects, Defendants relied on the Certificate of Service as the official service record to assert procedural compliance. Courts depend on the accuracy of such certifications to establish response timelines and ensure due process. Defendants' actions directly impacted Plaintiff's ability to receive proper notice and respond accordingly.

15. **FRAUD 1**

16. **FEBRUARY 13 2025**

17. On February 13, 2025, when Plaintiff first became aware of the motion, she immediately called Defendant Ticatch to clarify service. Instead of admitting the service failure, Defendant Ticatch intentionally misrepresented that service had been completed via email and mail on February 12, 2025. Plaintiff directly requested proof of service, which Defendant failed to provide. He doubled down on this misrepresentation on February 18, 2025,

reinforcing Plaintiff's reliance on the belief that procedural deadlines had already passed, causing her to delay corrective action.

18. Later that day, Plaintiff called Defendant Micah Ephram Ticatch, counsel for Defendant American Airlines, at his office to confirm whether she had been served. Plaintiff explicitly informed Defendant Ticatch that she had not received service and requested confirmation.

19. Defendant Ticatch, acting on behalf of American Airlines, misrepresented that service had been completed via email and mail on February 12, 2025. Plaintiff directly requested proof of service, including any email confirmation from the court or tracking details. Defendant failed to provide documentation or verification, instead assuring Plaintiff that all parties had been served.

20. Defendant Ticatch then sent an email with attachments, expecting Plaintiff to download them from the opposing party, while falsely stating, "Sending for the third time."

21. Despite having real-time access to PACER and CM/ECF, which showed no record of service, Defendant Ticatch continued to affirm that service had been completed. Additionally, he received instant notification of an undelivered email from the misspelled address he used when filing the Certificate of Service on February 12, 2025.

22. Defendant Ticatch made this misrepresentation on behalf of and in the course of his legal representation of Defendant American Airlines. Plaintiff, relying on Ticatch's statement, assumed that all co-plaintiffs had been formally served and that responses could be coordinated after the weekend.

23. Defendant American Airlines, through its counsel, failed to ensure that service had been properly effectuated before asserting compliance. Plaintiff only received formal service from the court on February 18, 2025.

24. Even if Defendant Ticatch's misrepresentation resulted in only a one-day delay, the failure to correct the record materially impacted Plaintiff's ability to prepare a timely response. The court calculated Plaintiff's 14-day response deadline from February 12, 2025, despite Plaintiff not receiving formal service until February 18, 2025.

25. As Ticatch's client and the primary defendant, American Airlines is liable for the misrepresentation made by its attorney. Defendants Ticatch and American Airlines' conduct constitutes fraudulent misrepresentation and an abuse of process.

26. The judge in that case does not allow extensions except with formal filing requests.

27. **FRAUD 2**

28.  **FEBRUARY 18, 2025: DEFENDANTS' MISREPRESENTATION & OMISSION**

29. Between February 13 and 18, 2025, Plaintiff Tala Josephano justifiably relied on Defendant Ticatch's assurance that service had been completed on February 12, 2025. Believing all co-plaintiffs had been served, Plaintiff delayed necessary actions and made decisions based on this misrepresentation.

30. By February 18, 2025, Plaintiff had still not received the mailed service that Defendant Ticatch claimed was sent on February 12, 2025. Initially attributing the delay to postal issues, Plaintiff took no immediate action. However, upon learning

that co-plaintiffs Feras Hindi and Samiha Ayyash had also not been served, she sought to verify service directly.

31. At 1:30 PM (VA Time), February 18, 2025, Plaintiff called Defendant Ticatch's office requesting proof of service. The secretary failed to provide verification over the phone. Following the call, Plaintiff emailed Defendant Ticatch, again requesting tracking information or proof of service.

32. In response, Defendant Ticatch misrepresented in his February 18, 2025, email that he had served Plaintiff and all co-plaintiffs by both email and mail on February 12, 2025. However, in the same email, Defendant undermined his own statement, admitting that no tracking number was used and implying that Plaintiff had a responsibility to retrieve filings herself.

33. Defendant Ticatch's email stated:

34. *"I understand you are pro se and the court process is not necessarily easy to understand. We filed and served you by email and first-class mail along with the rest of the plaintiffs on February 12… so even if you somehow did not receive the email or mailed copies, you could have simply downloaded it from PACER. We are not required to serve with a tracking number, and we did not do so. "If you have not done so already, I would suggest you sign up for electronic noticing, so that you do not have this problem each and every time we file something."*

35. Despite certifying service via electronic mail on February 12, 2025, Defendant
    Ticatch's own email contradicts his prior representation, suggesting that Plaintiff
    may not have received service at all and shifting responsibility onto Plaintiff to
    retrieve filings she was never properly notified of.

36. Defendant Ticatch's misrepresentation directly harmed Plaintiff by causing undue
    stress, wasted time, and financial burden. Plaintiff relied on the misrepresented
    assurance and expended resources preparing based on inaccurate information.
    The confusion and delayed confirmation forced Plaintiff to take additional
    corrective measures, increasing costs and mental distress.

37. **FRAUD 3 & Abuse Of Process 1**

38. **FEBRUARY 20 2025**

39. By February 20, 2025, Defendants had still not served any plaintiff on February
    12, 2025, despite repeated assurances from Defendant Ticatch. Plaintiff Tala
    Josephano requested that he correct the service record, but Defendant Ticatch
    deliberately ignored multiple follow-up emails for days.

40. Instead of addressing the misrepresentation, Defendant Ticatch filed a Meet and
    Confer Motion and a Motion to Amend American Airlines' Motion to Dismiss,
    without responding to Plaintiff, demonstrating that the filings were a pretext rather
    than a genuine legal step.

41. On the same day, Gulf Air also filed an invalid Meet and Confer Motion,
    confirming a coordinated effort to delay proceedings and manipulate procedural
    requirements.

42. "Rather than addressing the fraudulent Certificate of Service, Defendant Ticatch filed a Meet & Confer motion without consulting Plaintiff, securing a procedural ruling that obstructed her ability to correct the record. This was not a routine litigation maneuver but an intentional tactic to cement the fraudulent misrepresentation into the court's procedural framework, preventing Plaintiff from seeking timely default judgment. By securing a hearing on the defective Meet & Confer motion before Plaintiff had a chance to challenge service, Defendants effectively blocked her from asserting her legal rights and forced her to litigate based on a false procedural record."

43. **Abuse Of Process 2**

44. **February 24 2025**

45. Between February 20 and February 24, 2025, Defendant Ticatch ignored multiple emails from Plaintiff Tala Josephano, refusing to respond or acknowledge Plaintiff's concerns about Defendants' misrepresentation in the Certificate of Service.

46. Additionally, Defendant Ticatch failed to contact any co-plaintiffs, despite being instructed by the court to do so before filing. Rather than following the judge's standing order to individually consult with each plaintiff before submitting motions, Defendant proceeded unilaterally, ensuring that neither Plaintiff nor the co-plaintiffs were properly engaged in the required process.

47. On February 24, 2025, after four days of ignoring Plaintiff's emails, Defendant Ticatch finally responded via email. Instead of addressing the misrepresentation

in the Certificate of Service, Defendant attempted to shift the burden onto Plaintiff by encouraging her to request an extension rather than correcting his own procedural violations.

48. In his email, Defendant Ticatch acknowledged that the judge required a formal request for an extension, yet refused to take responsibility for the procedural errors Defendants had committed. By doing so, Defendant sought to manipulate Plaintiff into legitimizing a procedural defect rather than addressing the fraudulent service certification & Misrepresentation

49. By ignoring all emails from February 20 to 24 and failing to contact plaintiff as required, Defendant Ticatch deliberately obstructed the required procedural process, reinforcing his intent to evade accountability for Defendants' misrepresentation.

50. Furthermore, Defendant Ticatch's told the Plaintiff if she wants to file for an extension instead of addressing Defendants' procedural violations served only to delay the case and protect American Airlines' interests. This delay ensured that American Airlines and Gulf Air's codeshare renewal proceeded without immediate legal scrutiny, while forcing Plaintiff into unnecessary procedural maneuvers that diverted attention away from the misrepresentation issue.

51. Defendant's failure to engage with  plaintiffs as required, refusal to correct their misrepresented Certificate of Service, and deliberate strategy of shifting procedural burden onto Plaintiff constitute intentional misrepresentation, omission, and abuse of process

52. Between February 24 and March 5, 2025, Defendants escalated their misconduct, not merely to delay proceedings but to suppress Plaintiff's ability to hold them accountable. Defendants exerted influence over judicial scheduling, ensuring that their procedural violations remained unchallenged while simultaneously shielding American Airlines from scrutiny.

53. On February 24, 2025, Co-Plaintiff Feras Hindi filed for entry of default against Defendants due to their failure to properly serve Plaintiffs; On February 27, 2025, Co-Plaintiff Samiha Ayyash also filed for entry of default, reinforcing that Defendants had failed to comply with service requirements; On February 28, 2025, Plaintiff Tala Josephano submitted a formal request for a hearing to address the service defects. By this time, Defendants were fully aware that two default entries ad a hearing request had been filed

54. Rather than correcting the misrepresentation in the Certificate of Service or addressing their violations of service obligations, Defendant Ticatch deliberately obstructed Plaintiff's efforts to take corrective action. He intentionally suppressed Plaintiff's ability to respond effectively by manipulating court procedures as a weapon against her, knowing the increased burden would drain her resources, time, and mental well-being.

55. Defendants' actions were not mere litigation tactics; they directly impacted Plaintiff's personal and financial stability. The stress, uncertainty, and emotional toll of being forced into unnecessary legal maneuvers directly harmed Plaintiff's ability to focus on her life, personal responsibilities, and financial well-being.

Case 1:24-cv-03437-ACR Document 41 Filed 03/19/25 Page 16 of 33

56. At all relevant times, Defendant Ticatch acted on behalf of Defendant American Airlines, ensuring that the airline's interests remained protected while Plaintiff was left struggling with the burdens of Defendants' calculated deception. Defendant American Airlines was fully aware of these abuses and failed to intervene, instead benefiting from the suppression of Plaintiff's efforts to expose the truth.

57. The result of Defendants' actions was not just legal frustration but an orchestrated campaign to suppress Plaintiff's rights, wear her down, and force her into an impossible position where she was overwhelmed with unnecessary burdens—all while Defendants strategically evaded scrutiny and accountability.

58. **ABUSE OF PROCESS 3**

59. **MARCH 4 2025 Defendants Submitted Opposition to Co-Plaintiffs Motion to Entry to Default.**

60. **Defendants Contradictory Statements on Service Dates**.

61. Only after Co-Plaintiffs Feras Hindi and Samiha Ayyash filed a Motion for Entry of Default, Defendant Micah Ephram Ticatch, counsel for Defendant American Airlines, submitted an Opposition through the CM/ECF system in the U.S. District Court for the District of Columbia (D.D.C.), deliberately timing the filing to block Co-Plaintiffs in Feras & Samiha Entry to Default

62. This Opposition was not filed to remedy any procedural defects or provide a legitimate defense. Instead, it was a calculated maneuver to obstruct judicial review, delay entry of default, and manipulate the court into accepting a procedurally defective service record. This filing was part of a

coordinated effort to suppress Co-Plaintiffs' ability to obtain relief, submitted immediately before Defendants secured an improperly granted Meet & Confer order on March 6, 2025.

63. Rather than correcting the record or seeking leave to amend the Certificate of Service, Defendant Ticatch deliberately continued to rely on the February 12, 2025, service date—despite contradicting this claim in later filings and communications. This ensured that the court proceeded under a false assumption of compliance, reinforcing Defendants' procedural advantage.

64. In the Opposition, Defendant Ticatch deliberately manipulated procedural rules to fabricate the appearance of compliance, knowingly asserting that a single Pro Se Plaintiff's consent applied to all Plaintiffs. This was an intentional exploitation of court procedure, calculated to obscure Defendants' failure to properly serve all Plaintiffs and prevent judicial scrutiny of their procedural violations.

65. Despite knowing that the Certificate of Service misrepresented the dates and had been contradicted by their own later statements, Defendants refused to amend the record or correct the procedural error. Instead, they allowed the false filing to stand, fully aware that this would obstruct default proceedings and shield them from judicial scrutiny.

66. **Misrepresentation of the February 13, 2025, Phone Call**

67. In the Opposition, Defendant Ticatch deliberately misrepresented the nature of his February 13, 2025, phone call with Plaintiff Tala Josephano, falsely describing it as "extensive" to create the impression that a substantive discussion of the Motion to Dismiss took place.

68. This misrepresentation was strategic, as the call was brief, dominated by Defendant Ticatch's interruptions, and devoid of any meaningful discussion of the Motion to Dismiss or the Preliminary Injunction (PI) motion. Instead, Defendant Ticatch used the call to threaten Plaintiff with attorneys' fees should she proceed with additional filings.

69. In the Opposition, Defendant Ticatch falsely asserted that he "believed" service to Co-Plaintiffs was effectuated through a joint email, despite knowing that Co-Plaintiff Samiha Ayyash had separate claims, separate legal standing, and had never consented to electronic service. Defendants choose displaying a laughable incompetence to defend alleged misrepresentation.

70. Defendant Ticatch's Opposition directly contradicts his prior statements to Plaintiff Tala Josephano, exposing a deliberate effort to manipulate procedural records. While he repeatedly certified that all Plaintiffs were served on February 12, 2025, he later admitted to mailing Plaintiff Tala a "copy" separately—an action that directly undermines his claim that service was completed on February 12.

71. If service had truly been effectuated on that date, there would have been no need to mail an additional copy. Plaintiff Tala did not receive any mailing until February 25, 2025, further disproving Defendant Ticatch's assertion that service was completed within the required timeframe.

72. Defendant Ticatch's calculated misrepresentation in the Opposition led the court to disregard Plaintiff Tala's pending request for a hearing on the defective Certificate of Service. This directly deprived her of the opportunity to correct the record before further procedural rulings. By falsely creating the appearance that service concerns had been resolved, the court improperly granted a Meet & Confer order, securing procedural relief for himself while ensuring that his misconduct remained unchallenged. This granted Defendant an unjust opportunity to amend his claims while simultaneously obstructing Plaintiff Tala's ability to address the procedural defects that had already disadvantaged her

73. This was not an oversight—it was an intentional deception designed to obscure Defendant's failure to serve all Plaintiffs. Defendant knew that Co-Plaintiffs Feras Hindi and Samiha Ayyash had never been served, yet he assured Plaintiff Tala that service was completed. By reinforcing this false claim, Defendant ensured that Plaintiff Tala remained unaware of the issue until it was too late to take timely corrective action.

74. As a result, Plaintiff Tala suffered additional financial and emotional damages due to Defendant's abuse of process and intentional misrepresentation.

75. **ABUSE OF PROCESS  5**

76. **MARCH 6 2025**

77. Plaintiff Tala Josephano, a pro se litigant, is engaged in litigation against American Airlines and Gulf Air, two corporations represented by experienced legal counsel. Unlike Defendants, who have unlimited

resources and legal teams, Plaintiff is litigating without representation, making her particularly vulnerable to misrepresentation and deceptive tactics intended to obstruct her ability to defend her claims.

78. For over two years, Gulf Air (Co-Defendant in Case 1:24-cv-03434) has engaged in a documented pattern of harassment and suppression against Plaintiff. Defendant American Airlines, through its attorney Micah Ephram Ticatch, has now adopted similar tactics, using misrepresentation to deceive Plaintiff about service completion and obstruct her ability to challenge the false record.

79. On March 6, 2025, Plaintiff Tala Josephano emailed Defendant Ticatch in his capacity as legal counsel for American Airlines, seeking clarification on misrepresentations in the submitted Opposition.

80. Rather than responding directly, Ticatch carefully crafted his replies to be evasive, attempting to maneuver Plaintiff into statements that could later be used against her in litigation taking advantage of her lack of legal knowledge.

81. Recognizing the deception, Plaintiff called Ticatch directly to confront him about the false claims regarding service. This was not a casual discussion—it was a pro se litigant demanding accountability for a legal representative's misrepresentations that affected her ability to defend her case

82. He falsely assured Plaintiff that "the judge doesn't care about the Certificate of Service or the defaults," misleading her into believing that challenging the service failure was futile.

83. He framed his statements as certain outcomes—not legal predictions—falsely portraying the judge's stance to obstruct Plaintiff's ability to seek judicial review.

84. He insisted that the Meet & Confer hearing would be scheduled—before the order was even issued—reinforcing his misrepresentation that Plaintiff's challenges to service defects were meaningless and would not be considered.

85. This confirms that Ticatch's statements were not speculative but were part of a deliberate misrepresentation strategy designed to suppress Plaintiff's objections to the fraudulent service record. By misleading Plaintiff into believing the issue was already decided, he attempted to prevent her from protecting her claims.

86. This was not an isolated event. Prior to this, Ticatch had twice attempted to mislead Plaintiff into not responding to the Motion to Dismiss—both verbally and in writing. He knowingly exploited Plaintiff's pro se status and financial constraints, understanding that delays would pressure her into abandoning her claims. By misrepresenting the service completion and discouraging Plaintiff from contesting it, Ticatch ensured that Defendants could evade accountability for the false record.

87. Surely enough on March 6 2025 **Deputy Alexander Burton**—from another judge's chamber—issued an order scheduling the Meet & Confer hearing, exactly as Ticatch had assured Plaintiff. Plaintiff can show evidence of the improper interference by Alexander.

**88.    Justifiable Reliance & Inducement of Procedural Inaction**

89. As a pro se litigant without access to independent verification, Tala had no alternative but to rely on Defendants' assurances. Defendants controlled the procedural record, had exclusive knowledge of service defects, and withheld material information that would have allowed her to challenge the defective service.

90. Tala justifiably relied on Defendants' misrepresentations This reliance locked her into a misrepresented timeline, placing her at a strategic disadvantage and directly causing financial and emotional damages.

91. The delayed litigation benefited American Airlines and Gulf Air by preventing regulatory scrutiny into their codeshare renewal and FAA compliance failures.

92. But for Defendants' intentional misrepresentation and abuse of process, Plaintiff would not have suffered financial losses, emotional distress, or the loss of critical legal opportunities. Defendants knowingly misrepresented service completion, reinforcing false claims to induce Plaintiff into inaction. As a direct and foreseeable result:

93. Plaintiff incurred out-of-pocket expenses due to Defendants' misrepresentation, as she was forced to respond to misleading service claims and take corrective action that would not have been necessary had Defendants disclosed the truth.

94. Plaintiff suffered emotional distress due to Defendants' deliberate deception, which caused unnecessary uncertainty and legal disadvantage.

95. Plaintiff was deprived of the opportunity to seek timely default judgment, a remedy that was obstructed through Defendants' misrepresentation of service completion

96. Defendants' false assurances ensured that by the time Plaintiff discovered the misrepresentation, she had already lost the ability to take timely legal action, making it significantly harder to assert her rights and recover damages.

97. Had Defendants accurately disclosed the incomplete service and not engaged in deceptive tactics, Plaintiff would have immediately pursued available legal remedies, preserved strategic legal options, and avoided unnecessary financial and emotional harm. Instead, Defendants' fraudulent misrepresentation misled Plaintiff into relying on false information, which directly resulted in financial loss and emotional distress.

98. **HARM CAUSED BY DEFENDANTS' FRAUD & ABUSE OF PROCESS**

99. TThe harm in this case is not about the ultimate outcome of the original litigation but rather the direct financial, emotional, and personal damages caused by Defendants' fraudulent misrepresentations and abuse of process.

100. As a direct and foreseeable result of Defendants' intentional misrepresentations:

101. Lost Professional Income: Plaintiff was forced to allocate significant work hours to correcting Defendants' fraudulent misrepresentations, drafting responses, and researching legal solutions—time that otherwise would have been spent on income-generating work.

      a. Estimated financial loss: Around 200 hours at $25/hour, reflecting

         industry-standard compensation for legal drafting and research).

102.    Unnecessary Financial Expenditures: Plaintiff incurred $2,500 in legal

     resources and writing assistance costs to address filings affected by Defendants'

     fraudulent misrepresentations.

103.    Increased Psychological Distress: Defendants' deliberate deception

     intensified Plaintiff's anxiety, stress, and exhaustion, significantly worsening her

     mental health.

104.    Emotional Harm Due to Betrayal of Trust: Plaintiff, relying on Defendants'

     false assurances, structured her actions based on incorrect information, leading

     to prolonged stress and hardship.

105.    Deterioration of Health: The emotional and financial strain from Defendants'

     deception caused severe sleep deprivation, loss of concentration, and

     heightened anxiety.

106.    Foreseeable Mental Harm: Defendants knew or should have known that

     misleading Plaintiff would cause significant emotional harm, knowing she was a

     pro se litigant with limited legal resources.

107.    Diverted Resources: Plaintiff had to redirect significant time and effort away

     from professional obligations and personal responsibilities to address the

     misrepresentation, causing substantial disruption and financial hardship.

108.    Had Defendants Not Engaged in Fraudulent Misrepresentation and Abuse of

     Process:

8. Plaintiff would not have suffered financial harm through lost billable hours and unnecessary expenditures.

9. Plaintiff would not have endured prolonged emotional distress from being deliberately misled.

10. Plaintiff's professional stability would not have been disrupted by Defendants' intentional deception.

**FIRST CAUSE OF ACTION**

Fraudulent Misrepresentation

1) Defendants made a statement of existing fact; on February 13 2025 Verbally,
February 18 2025, February 20 2025

2) that fact was material in nature;

3) the statement about the fact was false;

4) The Defendants knew it was false;

5) Plaintiff did not know the statement was false; and even after the truth was revealed,
Defendants refused to amend the Certificate of Service and dismissed concerns about
the misrepresentation.

6) The Defendants wanted Plaintiff to rely on their statement;

7) Plaintiff had a right to rely on the statement;

8) Plaintiff did rely on the statement; and

9) Plaintiff was damaged as a result of relying on the statement. the plaintiff *relied* on
the defendants' misrepresentations and that this reliance *caused* specific, identifiable
harm.

Case 1:24-cv-03434-ACR Document 41 Filed 03/14/25 Page 27 of 35

## SECOND CAUSE OF ACTION

### Abuse Of Process

**Improper Use of Process:**

The Defendants did not use the legal processes (Certificate of Service, Opposition, Meet and Confer motion) for their intended, legitimate purposes, but instead used them for an improper purpose – to gain a strategic advantage in the litigation by obstructing Plaintiff's ability to effectively pursue her claims.

**Ulterior Motive or Improper Purpose:**

The defendants had an ulterior motive or acted with an improper purpose in using the legal process and attempted coercion

**Willful Act:**

The Defendants engaged in willful acts in the use of legal processes that were not proper or legitimate in the regular conduct of the proceeding. These acts deviated from established legal procedures and standards of conduct.

**Harm to the Plaintiff:**

The plaintiff suffered harm as a result of the defendants' misuse of the legal process. This includes financial loss, emotional distress, damage to the underlying case, and other forms of harm.

**THIRD CAUSE OF ACTION**

Fraudulent Inducement

A false statement is made with the specific intent to cause Plaintiff Tala to act (or not act) in a certain way. Plaintiff Tala  took actions based on the misrepresentation

The action caused her harm as Defendants misrepresented statements were not just errors they were made to prevent Plaintiff from filing a motion for default judgment or objecting to procedural defects .

**Relief Requested**

**1. Compensatory Damages:** Defendants shall pay $75,000 in compensatory damages for financial losses directly caused by fraudulent misrepresentation, including costs incurred due to reliance on Defendants' false statements.

5. **Punitive Damages (To Deter Future Misrepresentation & Procedural Misconduct):** Defendants shall pay punitive damages due to their willful, knowing, and malicious misrepresentation

**7. Pro Se Litigation Support Fund Contribution:** To support access to fair legal proceedings for unrepresented litigants, Defendant American Airline shall contribute **$5,000,000** to the D.C. Pro Se Litigation Assistance Program.Defendant's misconduct exploited a pro se litigant's lack of access to procedural resources, warranting a court-directed contribution to enhance fairness in legal access.

**8. Leave to Amend:** Plaintiff shall be granted leave to amend claims to fully address procedural fraud and damages caused by Defendants.

**9. Any Further Relief:** The Court may grant any additional relief deemed necessary to uphold fairness and accountability in these proceedings.

March 10, 2025

Pro SE Plaintiff

Tala Josephano

615 S Catalina Ave #233

Redondo Beach, CA 90277

347-749-4980

Josephanotala@gmail.com

EXHIBIT 4

# Rule 4. Summons

(a) CONTENTS; AMENDMENTS.

(1) *Contents.* A summons must:

(A) name the court and the parties;

(B) be directed to the defendant;

(C) state the name and address of the plaintiff's attorney or—if unrepresented—of the plaintiff;

(D) state the time within which the defendant must appear and defend;

(E) notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint;

(F) be signed by the clerk; and

(G) bear the court's seal.

(2) *Amendments.* The court may permit a summons to be amended.

(b) ISSUANCE. On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant. A summons—or a copy of a summons

that is addressed to multiple defendants—must be issued for each defendant to be served.

(c) SERVICE.

(1) *In General.* A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.

(2) *By Whom.* Any person who is at least 18 years old and not a party may serve a summons and complaint.

(3) *By a Marshal or Someone Specially Appointed.* At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. §1915 or as a seaman under 28 U.S.C. §1916 .

(d) WAIVING SERVICE.

(1) *Requesting a Waiver.* An individual, corporation, or association that is subject to service under Rule 4(e) , (f) , or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons. The notice and request must:

(A) be in writing and be addressed:

(i) to the individual defendant; or

(ii) for a defendant subject to service under Rule 4(h) , to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process;

(B) name the court where the complaint was filed;

(C) be accompanied by a copy of the complaint, 2 copies of the waiver form appended to this Rule 4, and a prepaid means for returning the form;

(D) inform the defendant, using the form appended to this Rule 4, of the consequences of waiving and not waiving service;

(E) state the date when the request is sent;

(F) give the defendant a reasonable time of at least 30 days after the request was sent—or at least 60 days if sent to the defendant outside any judicial district of the United States—to return the waiver; and

(G) be sent by first-class mail or other reliable means.

(2) *Failure to Waive.* If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:

(A) the expenses later incurred in making service; and

(B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

(3) *Time to Answer After a Waiver.* A defendant who, before being served with process, timely returns a waiver need not serve an answer to the complaint until 60 days after the request was sent—or until 90 days after it was sent to the defendant outside any judicial district of the United States.

(4) *Results of Filing a Waiver.* When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver.

(5) *Jurisdiction and Venue Not Waived.* Waiving service of a summons does not waive any objection to personal jurisdiction or to venue.

(e) SERVING AN INDIVIDUAL WITHIN A JUDICIAL DISTRICT OF THE UNITED STATES. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

(f) SERVING AN INDIVIDUAL IN A FOREIGN COUNTRY. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

(B) as the foreign authority directs in response to a letter rogatory or letter of request; or

(C) unless prohibited by the foreign country's law, by:

(i) delivering a copy of the summons and of the complaint to the individual personally; or

(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

(g) SERVING A MINOR OR AN INCOMPETENT PERSON. A minor or an incompetent person in a judicial district of the United States must be served by following state law for serving a summons or like process on such a defendant in an action brought in the courts of general jurisdiction of the state where service is made. A minor or an incompetent person who is not within any judicial district of the United States must be served in the manner prescribed by Rule 4(f)(2)(A) , (f)(2)(B) , or (f)(3) .

(h) SERVING A CORPORATION, PARTNERSHIP, OR ASSOCIATION. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:

(1) in a judicial district of the United States:

(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

(B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant; or

(2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i) .

(i) SERVING THE UNITED STATES AND ITS AGENCIES, CORPORATIONS, OFFICERS, OR EMPLOYEES.

(1) *United States.* To serve the United States, a party must:

(A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or

(ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

(B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

(C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

(2) *Agency; Corporation; Officer or Employee Sued in an Official Capacity.* To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

(3) *Officer or Employee Sued Individually.* To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e) , (f) , or (g) .

(4) *Extending Time.* The court must allow a party a reasonable time to cure its failure to:

(A) serve a person required to be served under Rule 4(i)(2) , if the party has served either the United States attorney or the Attorney General of the United States; or

(B) serve the United States under Rule 4(i)(3) , if the party has served the United States officer or employee.

(j) Serving a Foreign, State, or Local Government.

(1) *Foreign State.* A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. §1608 .

(2) *State or Local Government.* A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:

(A) delivering a copy of the summons and of the complaint to its chief executive officer; or

(B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

(k) Territorial Limits of Effective Service.

(1) *In General.* Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:

(A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;

(B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or

(C) when authorized by a federal statute.

(2) *Federal Claim Outside State-Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

(B) exercising jurisdiction is consistent with the United States Constitution and laws.

( *l* ) Proving Service.

(1) *Affidavit Required.* Unless service is waived, proof of service must be made to the court. Except for service by a United States marshal or deputy marshal, proof must be by the server's affidavit.

(2) *Service Outside the United States.* Service not within any judicial district of the United States must be proved as follows:

(A) if made under Rule 4(f)(1) , as provided in the applicable treaty or convention; or

(B) if made under Rule 4(f)(2) or (f)(3) , by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee.

(3) *Validity of Service; Amending Proof.* Failure to prove service does not affect the validity of service. The court may permit proof of service to be amended.

(m) Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) , 4(h)(2) , or 4(j)(1) , or to service of a notice under Rule 71.1(d)(3)(A).

(n) Asserting Jurisdiction over Property or Assets.

(1) *Federal Law.* The court may assert jurisdiction over property if authorized by a federal statute. Notice to claimants of the property must be given as provided in the statute or by serving a summons under this rule.

(2) *State Law.* On a showing that personal jurisdiction over a defendant cannot be obtained in the district where the action is brought by reasonable efforts to serve a summons under this rule, the court may assert jurisdiction over the defendant's assets found in the district. Jurisdiction is acquired by seizing the assets under the circumstances and in the manner provided by state law in that district.

---

## Rule 4 Notice of a Lawsuit and Request to Waive Service of Summons.

(Caption)

To (name the defendant or — if the defendant is a corporation, partnership, or association — name an officer or agent authorized to receive service):

Why are you getting this?

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within (give at least 30 days or at least 60 days if the defendant is outside any judicial district of the United States) from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

What happens next?

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: __________ ________________________

(Signature of the attorney or unrepresented party)

________________________

(Printed name)

________________________

(Address)

___________________________

(E-mail address)

___________________________

(Telephone number)

---

## Rule 4 Waiver of the Service of Summons.

(Caption)

To (name the plaintiff's attorney or the unrepresented plaintiff):

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____________________, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: ___________

___________________________

(Signature of the attorney or unrepresented party)

_______________________

(Printed name)

_______________________

(Address)

_______________________

(E-mail address)

_______________________

(Telephone number)

---

(Attach the following)

## Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does not include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had

been served.

## Notes

(As amended Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Apr. 29, 1980, eff. Aug. 1, 1980; Pub. L. 97–462, §2, Jan. 12, 1983, 96 Stat. 2527; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 29, 2015, eff. Dec. 1, 2015; Apr. 28, 2016, eff. Dec 1, 2016.)

### Notes of Advisory Committee on Rules—1937

*Note to Subdivision (a)* . With the provision permitting additional summons upon request of the plaintiff compare [former] Equity Rule 14 (Alias Subpoena) and the last sentence of [former] Equity Rule 12 (Issue of Subpoena—Time for Answer).

*Note to Subdivision (b)* . This rule prescribes a form of summons which follows substantially the requirements stated in [former] Equity Rules 12 (Issue of Subpoena—Time for Answer) and 7 (Process, Mesne and Final).

U.S.C., Title 28, §721 [now 1691] (Sealing and testing of writs) is substantially continued insofar as it applies to a summons, but its requirements as to teste of process are superseded. U.S.C., Title 28, [former] §722 (Teste of process, day of), is superseded.

See Rule 12(a) for a statement of the time within which the defendant is required to appear and defend.

*Note to Subdivision (c)* . This rule does not affect U.S.C., Title 28, §503 [see 566], as amended June 15, 1935 (Marshals; duties) and such statutes as the following insofar as they provide for service of process by a marshal, but modifies them insofar as they may imply service by a marshal only:

U.S.C., Title 15:

§5 (Bringing in additional parties) (Sherman Act)

§10 (Bringing in additional parties)

§25 (Restraining violations; procedure)

U.S.C., Title 28:

§45 [former] (Practice and procedure in certain cases under the interstate commerce laws)

Compare [former] Equity Rule 15 (Process, by Whom Served).

*Note to Subdivision (d)* . Under this rule the complaint must always be served with the summons.

Paragraph (1). For an example of a statute providing for service upon an agent of an individual see U.S.C., Title 28, §109 [now 1400, 1694] (Patent cases).

Paragraph (3). This enumerates the officers and agents of a corporation or of a partnership or other unincorporated association upon whom service of process may be made, and permits service of process only upon the officers, managing or general agents, or agents authorized by appointment or by law, of the corporation, partnership or unincorporated association against which the action is brought. See *Christian v. International Ass'n of Machinists* , 7 F.(2d) 481 (D.C.Ky., 1925) and *Singleton v. Order of Railway Conductors of America* , 9 F.Supp. 417 (D.C.Ill., 1935). Compare *Operative Plasterers' and Cement Finishers' International Ass'n of the United States and Canada v. Case* , 93 F.(2d) 56 (App.D.C., 1937).

For a statute authorizing service upon a specified agent and requiring mailing to the defendant, see U.S.C., Title 6, §7 [now Title 31, §9306] (Surety companies as sureties; appointment of agents; service of process).

Paragraphs (4) and (5) provide a uniform and comprehensive method of service for all actions against the United States or an officer or agency thereof. For statutes providing for such service, see U.S.C., Title 7, §§217 (Proceedings for suspension of orders), 499k (Injunctions; application of injunction laws governing orders of Interstate Commerce Commission), 608c(15)(B) (Court review of ruling of Secretary of Agriculture), and 855 (making §608c(15)(B) applicable to orders of the Secretary of Agriculture as to handlers of anti-hog-cholera serum and hog-cholera virus); U.S.C., Title 26, [former] §1569 (Bill in chancery to clear title to realty on which the United States has a lien for taxes); U.S.C., Title 28, [former] §§45

(District Courts; practice and procedure in certain cases under the interstate commerce laws), [former] 763 (Petition in suit against the United States; service; appearance by district attorney), 766 [now 2409] (Partition suits where United States is tenant in common or joint tenant), 902 [now 2410] (Foreclosure of mortgages or other liens on property in which the United States has an interest). These and similar statutes are modified insofar as they prescribe a different method of service or dispense with the service of a summons.

For the [former] Equity Rule on service, see [former] Equity Rule 13 (Manner of Serving Subpoena).

*Note to Subdivision (e)* . The provisions for the service of a summons or of notice or of an order in lieu of summons contained in U.S.C., Title 8, §405 [see 1451] (Cancellation of certificates of citizenship fraudulently or illegally procured) (service by publication in accordance with State law); U.S.C., Title 28, §118 [now 1655] (Absent defendants in suits to enforce liens); U.S.C., Title 35, §72a [now 146, 291] (Jurisdiction of District Court of United States for the District of Columbia in certain equity suits where adverse parties reside elsewhere) (service by publication against parties residing in foreign countries); U.S.C., Title 38, §445 [now 1984] (Action against the United States on a veteran's contract of insurance) (parties not inhabitants of or not found within the District may be served with an order of the court, personally or by publication) and similar statutes are continued by this rule. Title 24, §378 [now Title 13, §336] of the Code of the District of Columbia (Publication against nonresident; those absent for six months; unknown heirs or devisees; for divorce or in rem; actual service beyond District) is continued by this rule.

*Note to Subdivision (f)* . This rule enlarges to some extent the present rule as to where service may be made. It does not, however, enlarge the jurisdiction of the district courts.

U.S.C., Title 28, §§113 [now 1392] (Suits in States containing more than one district) (where there are two or more defendants residing in different districts), [former] 115 (Suits of a local nature), 116 [now 1392] (Property in different districts in same State), [former] 838 (Executions run in all districts of State); U.S.C., Title 47, §13 (Action for damages against a railroad or telegraph company whose officer or agent in control of a telegraph line refuses or fails to operate such line in a certain manner—“upon any agent of the company found in such

state"); U.S.C., Title 49, §321(c) [see 13304(a)] (Requiring designation of a process agent by interstate motor carriers and in case of failure so to do, service may be made upon any agent in the State) and similar statutes, allowing the running of process throughout a State, are substantially continued.

U.S.C., Title 15, §§5 (Bringing in additional parties) (Sherman Act), 25 (Restraining violations; procedure); U.S.C., Title 28, §§44 [now 2321] (Procedure in certain cases under interstate commerce laws; service of processes of court), 117 [now 754, 1692] (Property in different States in same circuit; jurisdiction of receiver), 839 [now 2413] (Executions; run in every State and Territory) and similar statutes, providing for the running of process beyond the territorial limits of a State, are expressly continued.

*Note to Subdivision (g)* . With the second sentence compare [former] Equity Rule 15 (Process, by Whom Served).

*Note to Subdivision (h)* . This rule substantially continues U.S.C., Title 28, [former] §767 (Amendment of process).

**Notes of Advisory Committee on Rules—1963 Amendment**

*Subdivision (b)* . Under amended subdivision (e) of this rule, an action may be commenced against a nonresident of the State in which the district court is held by complying with State procedures. Frequently the form of the summons or notice required in these cases by State law differs from the Federal form of summons described in present subdivision (b) and exemplified in Form 1. To avoid confusion, the amendment of subdivision (b) states that a form of summons or notice, corresponding "as nearly as may be" to the State form, shall be employed. See also a corresponding amendment of Rule 12(a) with regard to the time to answer.

*Subdivision (d)(4)* . This paragraph, governing service upon the United States, is amended to allow the use of certified mail as an alternative to registered mail for sending copies of the papers to the Attorney General or to a United States officer or agency. Cf. N.J. Rule 4:5–2. See also the amendment of Rule 30(f)(1).

*Subdivision (d)(7)* . Formerly a question was raised whether this paragraph, in the context of the rule as a whole, authorized service in original Federal actions pursuant to State statutes permitting service on a State official as a means of bringing a nonresident motorist defendant into court. It was argued in *McCoy v. Siler* , 205 F.2d 498, 501–2 (3d Cir.) (concurring opinion), *cert. denied* , 346 U.S. 872, 74 S.Ct. 120, 98 L.Ed. 380 (1953), that the effective service in those cases occurred not when the State official was served but when notice was given to the defendant outside the State, and that subdivision (f) (Territorial limits of effective service), as then worded, did not authorize out-of-State service. This contention found little support. A considerable number of cases held the service to be good, either by fixing upon the service on the official within the State as the effective service, thus satisfying the wording of subdivision (f) as it then stood, see *Holbrook v. Cafiero* , 18 F.R.D. 218 (D.Md. 1955); *Pasternack v. Dalo* , 17 F.R.D. 420; (W.D.Pa. 1955); cf. *Super Prods. Corp. v. Parkin* , 20 F.R.D. 377 (S.D.N.Y. 1957), or by reading paragraph (7) as not limited by subdivision (f). See *Griffin v. Ensign* , 234 F.2d 307 (3d Cir. 1956); 2 *Moore's Federal Practice* ,    4.19 (2d ed. 1948); 1 Barron & Holtzoff, *Federal Practice & Procedure* §182.1 (Wright ed. 1960); Comment, 27 U. of Chi.L.Rev. 751 (1960). See also *Olberding v. Illinois Central R.R* ., 201 F.2d 582 (6th Cir.), *rev'd on other grounds* , 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953); *Feinsinger v. Bard* , 195 F.2d 45 (7th Cir. 1952).

An important and growing class of State statutes base personal jurisdiction over nonresidents on the doing of acts or on other contacts within the State, and permit notice to be given the defendant outside the State without any requirement of service on a local State official. See, e.g., Ill.Ann.Stat. ch. 110, §§16, 17 (Smith-Hurd 1956); Wis.Stat. §262.06 (1959). This service, employed in original Federal actions pursuant to paragraph (7), has also been held proper. See *Farr & Co. v. Cia. Intercontinental de Nav. de Cuba* , 243 F.2d 342 (2d Cir. 1957); *Kappus v. Western Hills Oil, Inc* ., 24 F.R.D. 123 (E.D.Wis. 1959); *Star v. Rogalny* , 162 F.Supp. 181 (E.D.Ill. 1957). It has also been held that the clause of paragraph (7) which permits service "in the manner prescribed by the law of the state," etc., is not limited by subdivision (c) requiring that service of all process be made by certain designated persons. See *Farr & Co. v. Cia. Intercontinental de Nav. de Cuba, supra. But cf. Sappia v. Lauro Lines* , 130 F.Supp. 810 (S.D.N.Y. 1955).

The salutary results of these cases are intended to be preserved. See paragraph (7), with a clarified reference to State law, and amended subdivisions (e) and (f).

*Subdivision (e)* . For the general relation between subdivisions (d) and (e), see 2 Moore, *supra* , 4.32.

The amendment of the first sentence inserting the word "thereunder" supports the original intention that the "order of court" must be authorized by a specific United States statute. See 1 Barron & Holtzoff, supra, at 731. The clause added at the end of the first sentence expressly adopts the view taken by commentators that, if no manner of service is prescribed in the statute or order, the service may be made in a manner stated in Rule 4 . See 2 Moore, *supra* , 4.32, at 1004; Smit, *International Aspects of Federal Civil Procedure* , 61 Colum.L.Rev. 1031, 1036–39 (1961). *But see* Commentary, 5 Fed. Rules Serv. 791 (1942).

Examples of the statutes to which the first sentence relates are 28 U.S.C. §2361 (Interpleader; process and procedure); 28 U.S.C. §1655 (Lien enforcement; absent defendants).

The second sentence, added by amendment, expressly allows resort in original Federal actions to the procedures provided by State law for effecting service on nonresident parties (as well as on domiciliaries not found within the State). See, as illustrative, the discussion under amended subdivision (d)(7) of service pursuant to State nonresident motorist statutes and other comparable State statutes. Of particular interest is the change brought about by the reference in this sentence to State procedures for commencing actions against nonresidents by attachment and the like, accompanied by notice. Although an action commenced in a State court by attachment may be removed to the Federal court if ordinary conditions for removal are satisfied, see 28 U.S.C. §1450; *Rorick v. Devon Syndicate, Ltd* ., 307 U.S. 299, 59 S.Ct. 877, 83 L.Ed. 1303 (1939); *Clark v. Wells* , 203 U.S. 164, 27 S.Ct. 43, 51 L.Ed. 138 (1906), there has heretofore been no provision recognized by the courts for commencing an original Federal civil action by attachment. See Currie, *Attachment and Garnishment in the Federal Courts* , 59 Mich.L.Rev. 337 (1961), arguing that this result came about through historical anomaly. Rule 64 , which refers to attachment, garnishment, and similar procedures under State law, furnishes only provisional remedies in actions otherwise validly commenced.

See *Big Vein Coal Co. v. Read* , 229 U.S. 31, 33 S.Ct. 694, 57 L.Ed. 1953 (1913); *Davis v. Ensign-Bickford Co* ., 139 F.2d 624 (8th Cir. 1944); 7 *Moore's Federal Practice* 64.05 (2d ed. 1954); 3 Barron & Holtzoff, *Federal Practice & Procedure* §1423 (Wright ed. 1958); but cf. Note, 13 So.Calif.L.Rev. 361 (1940). The amendment will now permit the institution of original Federal actions against nonresidents through the use of familiar State procedures by which property of these defendants is brought within the custody of the court and some appropriate service is made up them.

The necessity of satisfying subject-matter jurisdictional requirements and requirements of venue will limit the practical utilization of these methods of effecting service. Within those limits, however, there appears to be no reason for denying plaintiffs means of commencing actions in Federal courts which are generally available in the State courts. See 1 Barron & Holtzoff, *supra* , at 374–80; Nordbye, *Comments on Proposed Amendments to Rules of Civil Procedure for the United States District Courts* , 18 F.R.D. 105, 106 (1956); Note, 34 Corn.L.Q. 103 (1948); Note, 13 So.Calif.L.Rev. 361 (1940).

If the circumstances of a particular case satisfy the applicable Federal law (first sentence of Rule 4(e), as amended) and the applicable State law (second sentence), the party seeking to make the service may proceed under the Federal or the State law, at his option.

See also amended Rule 13(a), and the Advisory Committee's Note thereto.

*Subdivision (f)* . The first sentence is amended to assure the effectiveness of service outside the territorial limits of the State in all the cases in which any of the rules authorize service beyond those boundaries. Besides the preceding provisions of Rule 4 , see Rule 71A(d)(3). In addition, the new second sentence of the subdivision permits effective service within a limited area outside the State in certain special situations, namely, to bring in additional parties to a counterclaim or cross-claim (Rule 13(h)), impleaded parties (Rule 14), and indispensable or conditionally necessary parties to a pending action (Rule 19); and to secure compliance with an order of commitment for civil contempt. In those situations effective service can be made at points not more than 100 miles distant from the courthouse in which the action is commenced, or to which it is assigned or transferred for trial.

The bringing in of parties under the 100-mile provision in the limited situations enumerated is designed to promote the objective of enabling the court to determine entire controversies. In the light of present-day facilities for communication and travel, the territorial range of the service allowed, analogous to that which applies to the service of a subpoena under Rule 45(e)(1), can hardly work hardship on the parties summoned. The provision will be especially useful in metropolitan areas spanning more than one State. Any requirements of subject-matter jurisdiction and venue will still have to be satisfied as to the parties brought in, although these requirements will be eased in some instances when the parties can be regarded as "ancillary." See *Pennsylvania R.R. v. Erie Avenue Warehouse Co*., 5 F.R.Serv.2d 14a.62, Case 2 (3d Cir. 1962); *Dery v. Wyer*, 265 F.2d 804 (2d Cir. 1959); *United Artists Corp. v. Masterpiece Productions, Inc*., 221 F.2d 213 (2d Cir. 1955); *Lesnik v. Public Industrials Corp*., 144 F.2d 968 (2d Cir. 1944); *Vaughn v. Terminal Transp. Co*., 162 F.Supp. 647 (E.D.Tenn. 1957); and compare the fifth paragraph of the Advisory Committee's Note to Rule 4(e), as amended. The amendment is but a moderate extension of the territorial reach of Federal process and has ample practical justification. See 2 Moore, *supra*. §4.01[13] (Supp. 1960); 1 Barron & Holtzoff, supra, §184; Note, 51 Nw.U.L.Rev. 354 (1956). *But cf*. Nordbye, *Comments on Proposed Amendments to Rules of Civil Procedure for the United States District Courts*, 18 F.R.D. 105, 106 (1956).

As to the need for enlarging the territorial area in which orders of commitment for civil contempt may be served, see *Graber v. Graber*, 93 F.Supp. 281 (D.D.C. 1950); *Teele Soap Mfg. Co. v. Pine Tree Products Co., Inc*., 8 F.Supp. 546 (D.N.H. 1934); *Mitchell v. Dexter*, 244 Fed. 926 (1st Cir. 1917); *in re Graves*, 29 Fed. 60 (N.D. Iowa 1886).

As to the Court's power to amend subdivisions (e) and (f) as here set forth, see *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185 (1946).

*Subdivision (i)*. The continual increase of civil litigation having international elements makes it advisable to consolidate, amplify, and clarify the provisions governing service upon parties in foreign countries. See generally Jones, *International Judicial Assistance: Procedural Chaos and*

*a Program for Reform* , 62 Yale L.J. 515 (1953); Longley, *Serving Process, Subpoenas and Other Documents in Foreign Territory* , Proc. A.B.A., Sec. Int'l & Comp. L. 34 (1959); Smit, *International Aspects of Federal Civil Procedure* , 61 Colum.L.Rev. 1031 (1961).

   As indicated in the opening lines of new subdivision (i), referring to the provisions of subdivision (e), the authority for effecting foreign service must be found in a statute of the United States or a statute or rule of court of the State in which the district court is held providing in terms or upon proper interpretation for service abroad upon persons not inhabitants of or found within the State. See the Advisory Committee's Note to amended Rule 4(d)(7) and Rule 4(e). For examples of Federal and State statutes expressly authorizing such service, see 8 U.S.C. §1451(b); 35 U.S.C. §§146, 293; Me.Rev.Stat., ch. 22, §70 (Supp. 1961); Minn.Stat.Ann. §303.13 (1947); N.Y.Veh. & Tfc.Law §253. Several decisions have construed statutes to permit service in foreign countries, although the matter is not expressly mentioned in the statutes. See, e.g., *Chapman v. Superior Court* , 162 Cal.App.2d 421, 328 P.2d 23 (Dist.Ct.App. 1958); *Sperry v. Fliegers* , 194 Misc. 438, 86 N.Y.S.2d 830 (Sup.Ct. 1949); *Ewing v. Thompson* , 233 N.C. 564, 65 S.E.2d 17 (1951); *Rushing v. Bush* , 260 S.W.2d 900 (Tex.Ct.Civ.App. 1953). Federal and State statutes authorizing service on nonresidents in such terms as to warrant the interpretation that service abroad is permissible include 15 U.S.C. §§77v(a), 78aa, 79y; 28 U.S.C. §1655; 38 U.S.C. §784(a); Ill.Ann.Stat. ch. 110, §§16, 17 (Smith-Hurd 1956); Wis.Stat. §262.06 (1959).

   Under subdivisions (e) and (i), when authority to make foreign service is found in a Federal statute or statute or rule of court of a State, it is always sufficient to carry out the service in the manner indicated therein. Subdivision (i) introduces considerable further flexibility by permitting the foreign service and return thereof to be carried out in any of a number of other alternative ways that are also declared to be sufficient. Other aspects of foreign service continue to be governed by the other provisions of Rule 4 . Thus, for example, subdivision (i) effects no change in the form of the summons, or the issuance of separate or additional summons, or the amendment of service.

Service of process beyond the territorial limits of the United States may involve difficulties not encountered in the case of domestic service. Service abroad may be considered by a foreign country to require the performance of judicial, and therefore "sovereign," acts within its territory, which that country may conceive to be offensive to its policy or contrary to its law. See Jones, *supra* , at 537. For example, a person not qualified to serve process according to the law of the foreign country may find himself subject to sanctions if he attempts service therein. See Inter-American Judicial Committee, *Report on Uniformity of Legislation on International Cooperation in Judicial Procedures* 20 (1952). The enforcement of a judgment in the foreign country in which the service was made may be embarrassed or prevented if the service did not comport with the law of that country. See *ibid.*

One of the purposes of subdivision (i) is to allow accommodation to the policies and procedures of the foreign country. It is emphasized, however, that the attitudes of foreign countries vary considerably and that the question of recognition of United States judgments abroad is complex. Accordingly, if enforcement is to be sought in the country of service, the foreign law should be examined before a choice is made among the methods of service allowed by subdivision (i).

*Subdivision (i)(1)* . Subparagraph (a) of paragraph (1), permitting service by the method prescribed by the law of the foreign country for service on a person in that country in a civil action in any of its courts of general jurisdiction, provides an alternative that is likely to create least objection in the place of service and also is likely to enhance the possibilities of securing ultimate enforcement of the judgment abroad. See *Report on Uniformity of Legislation on International Cooperation in Judicial Procedures, supra.*

In certain foreign countries service in aid of litigation pending in other countries can lawfully be accomplished only upon request to the foreign court, which in turn directs the service to be made. In many countries this has long been a customary way of accomplishing the service. See *In re Letters Rogatory out of First Civil Court of City of Mexico* , 261 Fed. 652 (S.D.N.Y. 1919); *Jones, supra* , at 543; Comment, 44 Colum.L.Rev. 72 (1944); Note, 58 Yale L.J. 1193 (1949). Subparagraph (B) of paragraph (1), referring to a letter rogatory, validates this method. A

proviso, applicable to this subparagraph and the preceding one, requires, as a safeguard, that the service made shall be reasonably calculated to give actual notice of the proceedings to the party. See *Milliken v. Meyer* , 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

Subparagraph (C) of paragraph (1), permitting foreign service by personal delivery on individuals and corporations, partnerships, and associations, provides for a manner of service that is not only traditionally preferred, but also is most likely to lead to actual notice. Explicit provision for this manner of service was thought desirable because a number of Federal and State statutes permitting foreign service do not specifically provide for service by personal delivery abroad, see e.g., 35 U.S.C. §§146, 293; 46 [App.] U.S.C. §1292; Calif.Ins.Code §1612; N.Y.Veh. & Tfc.Law §253, and it also may be unavailable under the law of the country in which the service is made.

Subparagraph (D) of paragraph (1), permitting service by certain types of mail, affords a manner of service that is inexpensive and expeditious, and requires a minimum of activity within the foreign country. Several statutes specifically provide for service in a foreign country by mail, e.g., Hawaii Rev.Laws §§230–31, 230–32 (1955); Minn.Stat.Ann. §303.13 (1947); N.Y.Civ.Prac.Act, §229–b; N.Y.Veh. & Tfc.Law §253, and it has been sanctioned by the courts even in the absence of statutory provision specifying that form of service. *Zurini v. United States* , 189 F.2d 722 (8th Cir. 1951); *United States v. Cardillo* , 135 F.Supp. 798 (W.D.Pa. 1955); *Autogiro Co. v. Kay Gyroplanes, Ltd* ., 55 F.Supp. 919 (D.D.C. 1944). Since the reliability of postal service may vary from country to country, service by mail is proper only when it is addressed to the party to be served and a form of mail requiring a signed receipt is used. An additional safeguard is provided by the requirement that the mailing be attended to be the clerk of the court. See also the provisions of paragraph (2) of this subdivision (i) regarding proof of service by mail.

Under the applicable law it may be necessary, when the defendant is an infant or incompetent person, to deliver the summons and complaint to a guardian, committee, or similar fiduciary. In such a case it would be advisable to make service under subparagraph (A), (B), or (E).

Subparagraph (E) of paragraph (1) adds flexibility by permitting the court by order to tailor the manner of service to fit the necessities of a particular case or the peculiar requirements of the law of the country in which the service is to be made. A similar provision appears in a number of statutes, e.g., 35 U.S.C. §§146, 293; 38 U.S.C. §784(a); 46 [App.] U.S.C. §1292.

The next-to-last sentence of paragraph (1) permits service under (C) and (E) to be made by any person who is not a party and is not less than 18 years of age or who is designated by court order or by the foreign court. Cf. Rule 45(c); N.Y.Civ.Prac.Act §§233, 235. This alternative increases the possibility that the plaintiff will be able to find a process server who can proceed unimpeded in the foreign country; it also may improve the chances of enforcing the judgment in the country of service. Especially is the alternative valuable when authority for the foreign service is found in a statute or rule of court that limits the group of eligible process servers to designated officials or special appointees who, because directly connected with another "sovereign," may be particularly offensive to the foreign country. See generally Smit, *supra* , at 1040–41. When recourse is had to subparagraph (A) or (B) the identity of the process server always will be determined by the law of the foreign country in which the service is made.

The last sentence of paragraph (1) sets forth an alternative manner for the issuance and transmission of the summons for service. After obtaining the summons from the clerk, the plaintiff must ascertain the best manner of delivering the summons and complaint to the person, court, or officer who will make the service. Thus the clerk is not burdened with the task of determining who is permitted to serve process under the law of a particular country or the appropriate governmental or nongovernmental channel for forwarding a letter rogatory. Under (D), however, the papers must always be posted by the clerk.

*Subdivision (i)(2)* . When service is made in a foreign country, paragraph (2) permits methods for proof of service in addition to those prescribed by subdivision (g). Proof of service in accordance with the law of the foreign country is permitted because foreign process servers, unaccustomed to the form or the requirement of return of service prevalent in the United States, have on occasion been unwilling to execute the affidavit required by Rule 4(g). See Jones, *supra* , at 537; Longley, *supra* , at 35. As a corollary of the alternate manner of service in subdivision (i)(1)(E), proof of service as directed by order of the court is permitted. The special

provision for proof of service by mail is intended as an additional safeguard when that method is used. On the type of evidence of delivery that may be satisfactory to a court in lieu of a signed receipt, see *Aero Associates, Inc. v. La Metropolitana* , 183 F.Supp. 357 (S.D.N.Y. 1960).

### Notes of Advisory Committee on Rules—1966 Amendment

The wording of Rule 4(f) is changed to accord with the amendment of Rule 13(h) referring to Rule 19 as amended.

### Notes of Advisory Committee on Rules—1980 Amendment

*Subdivision (a)* . This is a technical amendment to conform this subdivision with the amendment of subdivision (c).

*Subdivision (c)* . The purpose of this amendment is to authorize service of process to be made by any person who is authorized to make service in actions in the courts of general jurisdiction of the state in which the district court is held or in which service is made.

There is a troublesome ambiguity in Rule 4 . Rule 4(c) directs that all process is to be served by the marshal, by his deputy, or by a person specially appointed by the court. But Rule 4(d)(7) authorizes service in certain cases "in the manner prescribed by the law of the state in which the district court is held. . . ." And Rule 4(e), which authorizes service beyond the state and service in *quasi in rem* cases when state law permits such service, directs that "service may be made . . . under the circumstances and in the manner prescribed in the [state] statute or rule." State statutes and rules of the kind referred to in Rule 4(d)(7) and Rule 4(e) commonly designate the persons who are to make the service provided for, *e.g* ., a sheriff or a plaintiff. When that is so, may the persons so designated by state law make service, or is service in all cases to be made by a marshal or by one specially appointed under present Rule 4(c)? The commentators have noted the ambiguity and have suggested the desirability of an amendment. See 2 *Moore's Federal Practice* 4.08 (1974); Wright & Miller, *Federal Practice and Procedure: Civil* §1092 (1969). And the ambiguity has given rise to unfortunate results. See *United States for the use of Tanos v. St. Paul Mercury Ins. Co* ., 361 F. 2d 838 (5th Cir. 1966); *Veeck v. Commodity Enterprises, Inc* ., 487 F. 2d 423 (9th Cir. 1973).

The ambiguity can be resolved by specific amendments to Rules 4(d)(7) and 4(e), but the Committee is of the view that there is no reason why Rule 4(c) should not generally authorize service of process in all cases by anyone authorized to make service in the courts of general jurisdiction of the state in which the district court is held or in which service is made. The marshal continues to be the obvious, always effective officer for service of process.

**Legislative Statement—1983 Amendment**

128 Congressional Record H9848, Dec. 15, 1982

Mr. EDWARDS of California. Mr. Speaker, in July Mr. McClory and I brought before the House a bill to delay the effective date of proposed changes in rule 4 of the Federal Rules of Civil Procedure, dealing with service of process. The Congress enacted that legislation and delayed the effective date so that we could cure certain problems in the proposed amendments to rule 4.

Since that time, Mr. McClory and I introduced a bill, H.R. 7154, that cures those problems. It was drafted in consultation with representatives of the Department of Justice, the Judicial Conference of the United States, and others.

The Department of Justice and the Judicial Conference have endorsed the bill and have urged its prompt enactment. Indeed, the Department of Justice has indicated that the changes occasioned by the bill will facilitate its collection of debts owned to the Government.

I have a letter from the Office of Legislative Affairs of the Department of Justice supporting the bill that I will submit for the Record. Also, I am submitting for the Record a section-by-section analysis of the bill.

H.R. 7154 makes much needed changes in rule 4 of the Federal Rules of Civil Procedure and is supported by all interested parties. I urge my colleagues to support it.

U.S. Department of Justice.

Office of Legislative Affairs,

*Washington, D.C., December 10, 1982.*

Hon. Peter W. Rodino, Jr.,

*Chairman, Committee on the Judiciary, House of Representatives, Washington, D.C.*

Dear Mr. Chairman: This is to proffer the views of the Department of Justice on H.R. 7154, the proposed Federal Rules of Civil Procedure Amendments Act of 1982. While the agenda is extremely tight and we appreciate that fact, we do reiterate that this Department strongly endorses the enactment of H.R. 7154. We would greatly appreciate your watching for any possible way to enact this legislation expeditiously.

H.R. 7154 would amend Rule 4 of the Federal Rules of Civil Procedure to relieve effectively the United States Marshals Service of the duty of routinely serving summonses and complaints for private parties in civil actions and would thus achieve a goal this Department has long sought. Experience has shown that the Marshals Service's increasing workload and limited budget require such major relief from the burdens imposed by its role as process-server in all civil actions.

The bill would also amend Rule 4 to permit certain classes of defendants to be served by first class mail with a notice and acknowledgment of receipt form enclosed. We have previously expressed a preference for the service-by-mail provisions of the proposed amendments to Rule 4 which the Supreme Court transmitted to Congress on April 28, 1982.

The amendments proposed by the Supreme Court would permit service by registered or certified mail, return receipt requested. We had regarded the Supreme Court proposal as the more efficient because it would not require and affirmative act of signing and mailing on the part of a defendant. Moreover, the Supreme Court proposal would permit the entry of a default judgment if the record contained a returned receipt showing acceptance by the defendant or a returned envelope showing refusal of the process by the defendant and subsequent service and notice by first class mail. However, critics of that system of mail service have argued that certified mail is not an effective method of providing actual notice to defendants of claims against them because signatures may be illegible or may not match the name of the defendant, or because it may be difficult to determine whether mail has been “unclaimed” or “refused,” the latter providing the sole basis for a default judgment.

As you know, in light of these criticisms the Congress enacted Public Law 97–227 (H.R. 6663) postponing the effective date of the proposed amendments to Rule 4 until October 1, 1983, so as to facilitate further review of the problem. This Department opposed the delay in the effective date, primarily because the Supreme Court's proposed amendments also contained urgently needed provisions designed to relieve the United States Marshals of the burden of serving summonses and complaints in private civil actions. In our view, these necessary relief provisions are readily separable from the issues of service by certified mail and the propriety of default judgment after service by certified mail which the Congress felt warranted additional review.

During the floor consideration of H.R. 6663 Congressman Edwards and other proponents of the delayed effective date pledged to expedite the review of the proposed amendments to Rule 4 , given the need to provide prompt relief for the Marshals Service in the service of process area. In this spirit Judiciary Committee staff consulted with representatives of this Department, the Judicial Conference, and others who had voiced concern about the proposed amendments.

H.R. 7154 is the product of those consultations and accommodated the concerns of the Department in a very workable and acceptable manner.

Accordingly, we are satisfied that the provisions of H.R. 7154 merit the support of all three branches of the Federal Government and everyone else who has a stake in the fair and efficient service of process in civil actions. We urge prompt consideration of H.R. 7154 by the Committee. [1]

The Office of Management and Budget has advised that there is no objection to the submission of this report from the standpoint of the Administration's program.

Sincerely,

Robert A. McConnell,

*Assistant Attorney General.*

---

[1] In addition to amending Rule 4 , we have previously recommended: (a) amendments to 28 U.S.C. §569(b) redefining the Marshals traditional role by eliminating the statutory requirement that they serve subpoenas, as well as summonses and complaints, and; (b) amendments to 28 U.S.C. §1921 changing the manner and level in which marshal fees are charged for serving private civil process. These legislative changes are embodied in Section 10 of S. 2567 and the Department's proposed fiscal year 1983 Appropriations Authorization bill. If, in the Committee's judgment, efforts to incorporate these suggested amendments in H.R. 7154 would in any way impede consideration of the bill during the few remaining legislative days in the 97th Congress, we would urge that they be separately considered early in the 98th Congress.

## H.R. 7154— Federal Rules of Civil Procedure Amendments Act of 1982

### BACKGROUND

The Federal Rules of Civil Procedure set forth the procedures to be followed in civil actions and proceedings in United States district courts. These rules are usually amended by a process established by 28 U.S.C. 2072, often referred to as the “Rules Enabling Act”. The Rules Enabling Act provides that the Supreme Court can propose new rules of “practice and procedure” and amendments to existing rules by transmitting them to Congress after the start of a regular session but not later than May 1. The rules and amendments so proposed take effect 90 days after transmittal unless legislation to the contrary is enacted. [1]

On April 28, 1982, the Supreme Court transmitted to Congress several proposed amendments to the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure (which govern criminal cases and proceedings in Federal courts), and the Rules and Forms Governing Proceedings in the United States District Courts under sections 2254 and 2255 of Title 28, United States Code (which govern habeas corpus proceedings). These amendments were to have taken effect on August 1, 1982.

The amendments to Rule 4 of the Federal Rules of Civil Procedure were intended primarily to relieve United States marshals of the burden of serving summonses and complaints in private civil actions. Appendix II, at 7 (Report of the Committee on Rules of Practice and

Procedure), 16 (Advisory Committee Note). The Committee received numerous complaints that the changes not only failed to achieve that goal, but that in the process the changes saddled litigators with flawed mail service, deprived litigants of the use of effective local procedures for service, and created a time limit for service replete with ambiguities that could only be resolved by costly litigation. See House Report No. 97–662, at 2–4 (1982).

In order to consider these criticisms, Congress enacted Public Law 97–227, postponing the effective date of the proposed amendments to Rule 4 until October 1, 1983. [2] Accordingly, in order to help shape the policy behind, and the form of, the proposed amendments, Congress must enact legislation before October 1, 1983. [3]

With that deadline and purpose in mind, consultations were held with representatives of the Judicial Conference, the Department of Justice, and others who had voiced concern about the proposed amendments. H.R. 7154 is the product of those consultations. The bill seeks to effectuate the policy of relieving the Marshals Service of the duty of routinely serving summonses and complaints. It provides a system of service by mail modeled upon a system found to be effective in California, and finally, it makes appropriate stylistic, grammatical, and other changes in Rule 4 .

**NEED FOR THE LEGISLATION**

*1. Current Rule 4*

Rule 4 of the Federal Rules of Civil Procedure relates to the issuance and service of process. Subsection (c) authorizes service of process by personnel of the Marshals Service, by a person specially appointed by the Court, or "by a person authorized to serve process in an action brought in the courts of general jurisdiction of the state in which the district court is held or in which service is made." Subsection (d) describes how a summons and complaint must be served and designates those persons who must be served in cases involving specified categories of defendants. Mail service is not directly authorized. Subsection (d)(7), however, authorizes service under the law of the state in which the district court sits upon defendants described in subsections (d)(1) (certain individuals) and (d)(3) (organizations). Thus, if state law

authorizes service by mail of a summons and complaint upon an individual or organization described in subsections (d)(1) or (3), then subsection (d)(7) authorizes service by mail for United States district courts in that state. [4]

*2. Reducing the role of marshals*

The Supreme Court's proposed modifications of Rule 4 were designed to alleviate the burden on the Marshals Service of serving summonses and complaints in private civil actions. Appendix II, at 7 (Report of the Committee on Rules of Practice and Procedure), 16 (Advisory Committee Note). While the Committee received no complaints about the goal of reducing the role of the Marshals Service, the Court's proposals simply failed to achieve that goal. See House Report No. 97–662, at 2–3 (1982).

The Court's proposed Rule 4(c)(2)(B) required the Marshals Service to serve summonses and complaints "pursuant to any statutory provision expressly providing for service by a United States Marshal or his deputy." [5] One such statutory provision is 28 U.S.C. 569(b), which compels marshals to "execute *all* lawful writs, process and orders issued under authority of the United States, *including those of the courts* * * *." (emphasis added). Thus, any party could have invoked 28 U.S.C. 569(b) to utilize a marshal for service of a summons and complaint, thereby thwarting the intent of the new subsection to limit the use of marshals. The Justice Department acknowledges that the proposed subsection did not accomplish its objectives. [6]

Had 28 U.S.C. 569(b) been inconsistent with proposed Rule 4(c)(2)(B), the latter would have nullified the former under 28 U.S.C. 2072, which provides that "All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Since proposed Rule 4(c)(2)(B) specifically referred to statutes such as 28 U.S.C. 569(b), however, the new subsection did not conflict with 28 U.S.C. 569(b) and did not, therefore, supersede it.

H.R. 7154 cures this problem and achieves the desired reduction in the role of the Marshals Service by authorizing marshals to serve summonses and complaints "on behalf of the United States". By so doing, H.R. 7154 eliminates the loophole in the Court's proposed language and still provides for service by marshals on behalf of the Government. [7]

*3. Mail service*

The Supreme Court's proposed subsection (d)(7) and (8) authorized, as an alternative to personal service, mail service of summonses and complaints on individuals and organizations described in subsection (d)(1) and (3), but only through registered or certified mail, restricted delivery. Critics of that system of mail service argued that registered and certified mail were not necessarily effective methods of providing actual notice to defendants of claims against them. This was so, they argued, because signatures may be illegible or may not match the name of the defendant, or because it may be difficult to determine whether mail has been “unclaimed” or “refused”, the latter apparently providing the sole basis for a default judgment. [8]

H.R. 7154 provides for a system of service by mail similar to the system now used in California. See Cal. Civ. Pro. §415.30 (West 1973). Service would be by ordinary mail with a notice and acknowledgment of receipt form enclosed. If the defendant returns the acknowledgment form to the sender within 20 days of mailing, the sender files the return and service is complete. If the acknowledgment is not returned within 20 days of mailing, then service must be effected through some other means provided for in the Rules.

This system of mail service avoids the notice problems created by the registered and certified mail procedures proposed by the Supreme Court. If the proper person receives the notice and returns the acknowledgment, service is complete. If the proper person does not receive the mailed form, or if the proper person receives the notice but fails to return the acknowledgment form, another method of service authorized by law is required. [9] In either instance, however, the defendant will receive actual notice of the claim. In order to encourage defendants to return the acknowledgment form, the court can order a defendant who does not return it to pay the costs of service unless the defendant can show good cause for the failure to return it.

*4. The local option*

The Court's proposed amendments to Rule 4 deleted the provision in current subsection (d)(7) that authorizes service of a summons and complaint upon individuals and organizations “in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in

the courts of general jurisdiction of that state." The Committee received a variety of complaints about the deletion of this provision. Those in favor of preserving the local option saw no reason to forego systems of service that had been successful in achieving effective notice. [10]

H.R. 7154 carries forward the policy of the current rule and permits a party to serve a summons and complaint upon individuals and organizations described in Rule 4(d)(1) and (3) in accordance with the law of the state in which the district court sits. Thus, the bill authorizes four methods of serving a summons and complaint on such defendants: (1) service by a nonparty adult (Rule 4(c)(2)(A)); (2) service by personnel of the Marshals Service, if the party qualifies, such as because the party is proceeding in forma pauperis (Rule 4(c)(2)(B)); (3) service in any manner authorized by the law of the state in which the district court is held (Rule 4(c)(2)(C)(i)); or (4) service by regular mail with a notice and acknowledgment of receipt form enclosed (Rule 4(c)(2)(C)(ii)). [11]

*5. Time limits*

Rule 4 does not currently provide a time limit within which service must be completed. Primarily because United States marshals currently effect service of process, no time restriction has been deemed necessary. Appendix II, at 18 (Advisory Committee Note). Along with the proposed changes to subdivisions (c) and (d) to reduce the role of the Marshals Service, however, came new subdivision (j), requiring that service of a summons and complaint be made within 120 days of the filing of the complaint. If service were not accomplished within that time, proposed subdivision (j) required that the action "be dismissed as to that defendant without prejudice upon motion or upon the court's own initiative". Service by mail was deemed made for purposes of subdivision (j) "as of the date on which the process was accepted, refused, or returned as unclaimed". [12]

H.R. 7154 adopts a policy of limiting the time to effect service. It provides that if a summons and complaint have not been served within 120 days of the filing of the complaint and the plaintiff fails to show "good cause" for not completing service within that time, then the court must dismiss the action as to the unserved defendant. H.R. 7154 ensures that a plaintiff will be notified of an attempt to dismiss the action. If dismissal for failure to serve is raised by the

court upon its own motion, the legislation requires that the court provide notice to the plaintiff. If dismissal is sought by someone else, Rule 5(a) of the Federal Rules of Civil Procedure requires that the motion be served upon the plaintiff.

Like proposed subsection (j), H.R. 7154 provides that a dismissal for failure to serve within 120 days shall be "without prejudice". Proposed subsection (j) was criticized by some for ambiguity because, it was argued, neither the text of subsection (j) nor the Advisory Committee Note indicated whether a dismissal without prejudice would toll a statute of limitation. *See* House Report 97–662, at 3–4 (1982). The problem would arise when a plaintiff files the complaint within the applicable statute of limitation period but does not effect service within 120 days. If the statute of limitation period expires during that period, and if the plaintiff's action is dismissed "without prejudice", can the plaintiff refile the complaint and maintain the action? The answer depends upon how the statute of limitation is tolled. [13]

If the law provides that the statute of limitation is tolled by filing and service of the complaint, then a dismissal under H.R. 7154 for failure to serve within the 120 days would, by the terms of the law controlling the tolling, bar the plaintiff from later maintaining the cause of action. [14] If the law provides that the statute of limitation is tolled by filing alone, then the status of the plaintiff's cause of action turns upon the plaintiff's diligence. If the plaintiff has not been diligent, the court will dismiss the complaint for failure to serve within 120 days, and the plaintiff will be barred from later maintaining the cause of action because the statute of limitation has run. A dismissal without prejudice does not confer upon the plaintiff any rights that the plaintiff does not otherwise possess and leaves a plaintiff whose action has been dismissed in the same position as if the action had never been filed. [15] If, on the other hand, the plaintiff has made reasonable efforts to effect service, then the plaintiff can move under Rule 6(b) to enlarge the time within which to serve or can oppose dismissal for failure to serve. A court would undoubtedly permit such a plaintiff additional time within which to effect service. Thus, a diligent plaintiff can preserve the cause of action. This result is consistent with the policy behind the time limit for service and with statutes of limitation, both of which are designed to encourage prompt movement of civil actions in the federal courts.

*6. Conforming and clarifying subsections (d)(4) and (5)*

Current subsections (d)(4) and (5) prescribe which persons must be served in cases where an action is brought against the United States or an officer or agency of the United States. Under subsection (d)(4), where the United States is the named defendant, service must be made as follows: (1) personal service upon the United States attorney, an assistant United States attorney, or a designated clerical employee of the United States attorney in the district in which the action is brought; (2) registered or certified mail service to the Attorney General of the United States in Washington, D.C.; and (3) registered or certified mail service to the appropriate officer or agency if the action attacks an order of that officer or agency but does not name the officer or agency as a defendant. Under subsection (d)(5), where an officer or agency of the United States is named as a defendant, service must be made as in subsection (d)(4), except that personal service upon the officer or agency involved is required. [16]

The time limit for effecting service in H.R. 7154 would present significant difficulty to a plaintiff who has to arrange for personal service upon an officer or agency that may be thousands of miles away. There is little reason to require different types of service when the officer or agency is named as a party, and H.R. 7154 therefore conforms the manner of service under subsection (d)(5) to the manner of service under subsection (d)(4).

### Section-by-Section Analysis

#### section 1

Section 1 provides that the short title of the bill is the " Federal Rules of Civil Procedure Amendments Act of 1982".

#### section 2

Section 2 of the bill consists of 7 numbered paragraphs, each amending a different part of Rule 4 of the Federal Rules of Civil Procedure.

Paragraph (1) deletes the requirement in present Rule 4(a) that a summons be delivered for service to the marshal or other person authorized to serve it. As amended by the legislation, Rule 4(a) provides that the summons be delivered to "the plaintiff or the plaintiff's attorney,

who shall be responsible for prompt service of the summons and complaint". This change effectuates the policy proposed by the Supreme Court. See Appendix II, at — (Advisory Committee Note).

Paragraph (2) amends current Rule 4(c), which deals with the service of process. New Rule 4(c)(1) requires that all process, other than a subpoena or a summons and complaint, be served by the Marshals Service or by a person especially appointed for that purpose. Thus, the Marshals Service or persons specially appointed will continue to serve all process other than subpoenas and summonses and complaints, a policy identical to that proposed by the Supreme Court. See Appendix II, at 8 (Report of the Judicial Conference Committee on Rules of Practice and Procedure). The service of subpoenas is governed by Rule 45 , [17] and the service of summonses and complaints is governed by new Rule 4(c)(2).

New Rule 4(c)(2)(A) sets forth the general rule that summonses and complaints shall be served by someone who is at least 18 years old and not a party to the action or proceeding. This is consistent with the Court's proposal. Appendix II, at 16 (Advisory Committee Note). Subparagraphs (B) and (C) of new Rule 4(c)(2) set forth exceptions to this general rule.

Subparagraph (B) sets forth 3 exceptions to the general rule. First, subparagraph (B)(i) requires the Marshals Service (or someone specially appointed by the court) to serve summonses and complaints on behalf of a party proceeding in forma pauperis or a seaman authorized to proceed under 28 U.S.C. 1916. This is identical to the Supreme Court's proposal. *See* Appendix II, at 3 (text of proposed rule), 16 (Advisory Committee Note). Second, subparagraph (B)(ii) requires the Marshals Service (or someone specially appointed by the court) to serve a summons and complaint when the court orders the marshals to do so in order properly to effect service in that particular action. [18] This, except for nonsubstantive changes in phrasing, is identical to the Supreme Court's proposal. See Appendix II, at 3 (text of proposed rule), 16 (Advisory Committee Note).

Subparagraph (C) of new Rule 4(c)(2) provides 2 exceptions to the general rule of service by a nonparty adult. These exceptions apply only when the summons and complaint is to be served upon persons described in Rule 4(d)(1) (certain individuals) or Rule 4(d)(3) (organizations). [19] First, subparagraph (C)(i) permits service of a summons and complaint in a

manner authorized by the law of the state in which the court sits. This restates the option to follow local law currently found in Rule 4(d)(7) and would authorize service by mail if the state law so allowed. The method of mail service in that instance would, of course, be the method permitted by state law.

Second, subparagraph (C)(ii) permits service of a summons and complaint by regular mail. The sender must send to the defendant, by first-class mail, postage prepaid, a copy of the summons and complaint, together with 2 copies of a notice and acknowledgment of receipt of summons and complaint form and a postage prepaid return envelope addressed to the sender. If a copy of the notice and acknowledgment form is not received by the sender within 20 days after the date of mailing, then service must be made under Rule 4(c)(2)(A) or (B) (i.e., by a nonparty adult or, if the person qualifies, [20] by personnel of the Marshals Service or a person specially appointed by the court) in the manner prescribed by Rule 4(d)(1) or (3) (i.e., personal or substituted service).

New Rule 4(c)(2)(D) permits a court to penalize a person who avoids service by mail. It authorizes the court to order a person who does not return the notice and acknowledgment form within 20 days after mailing to pay the costs of service, unless that person can show good cause for failing to return the form. The purpose of this provision is to encourage the prompt return of the form so that the action can move forward without unnecessary delay. Fairness requires that a person who causes another additional and unnecessary expense in effecting service ought to reimburse the party who was forced to bear the additional expense.

Subparagraph (E) of rule 4(c)(2) requires that the notice and acknowledgment form described in new Rule 4(c)(2)(C)(ii) be executed under oath or affirmation. This provision tracks the language of 28 U.S.C. 1746, which permits the use of unsworn declarations under penalty of perjury whenever an oath or affirmation is required. Statements made under penalty of perjury are subject to 18 U.S,C. 1621(2), which provides felony penalties for someone who “willfully subscribes as true any material matter which he does not believe to be true”. The requirement that the form be executed under oath or affirmation is intended to encourage truthful submissions to the court, as the information contained in the form is important to the parties. [21]

New Rule 4(c)(3) authorizes the court freely to make special appointments to serve summonses and complaints under Rule 4(c)(2)(B) and all other process under Rule 4(c)(1). This carries forward the policy of present Rule 4(c).

Paragraph (3) of section 2 of the bill makes a non-substantive change in the caption of Rule 4(d) in order to reflect more accurately the provisions of Rule 4(d). Paragraph (3) also deletes a provision on service of a summons and complaint pursuant to state law. This provision is redundant in view of new Rule 4(c)(2)(C)(i).

Paragraph (4) of section 2 of the bill conforms Rule 4(d)(5) to present Rule 4(d)(4). Rule 4(d)(5) is amended to provide that service upon a named defendant agency or officer of the United States shall be made by "sending" a copy of the summons and complaint "by registered or certified mail" to the defendant. [22] Rule 4(d)(5) currently provides for service by "delivering" the copies to the defendant, but 28 U.S.C. 1391(e) authorizes delivery upon a defendant agency or officer outside of the district in which the action is brought by means of certified mail. Hence, the change is not a marked departure from current practice.

Paragraph (5) of section 2 of the bill amends the caption of Rule 4(e) in order to describe subdivision (e) more accurately.

Paragraph (6) of section 2 of the bill amends Rule 4(g), which deals with return of service. Present rule 4(g) is not changed except to provide that, if service is made pursuant to the new system of mail service (Rule 4(c)(2)(C)(ii)), the plaintiff or the plaintiff's attorney must file with the court the signed acknowledgment form returned by the person served.

Paragraph (7) of section 2 of the bill adds new subsection (j) to provide a time limitation for the service of a summons and complaint. New Rule 4(j) retains the Supreme Court's requirement that a summons and complaint be served within 120 days of the filing of the complaint. See Appendix II, at 18 (Advisory Committee Note). [23] The plaintiff must be notified of an effort or intention to dismiss the action. This notification is mandated by subsection (j) if the dismissal is being raised on the court's own initiative and will be provided pursuant to Rule 5 (which requires service of motions upon the adverse party) if the dismissal is sought by someone else. [24] The plaintiff may move under Rule 6(b) to enlarge the time period. See

Appendix II, at 1d. (Advisory Committee Note). If service is not made within the time period or enlarged time period, however, and if the plaintiff fails to show "good cause" for not completing service, then the court must dismiss the action as to the unserved defendant. The dismissal is "without prejudice". The term "without prejudice" means that the dismissal does not constitute an adjudication of the merits of the complaint. A dismissal "without prejudice" leaves a plaintiff whose action has been dismissed in the position in which that person would have been if the action had never been filed.

**SECTION 3**

Section 3 of the bill amends the Appendix of Forms at the end of the Federal Rules of Civil Procedure by adding a new form 18A, "Notice and Acknowledgment for Service by Mail". This new form is required by new Rule 4(c)(2)(C)(ii), which requires that the notice and acknowledgment form used with service by regular mail conform substantially to Form 18A.

Form 18A as set forth in section 3 of the bill is modeled upon a form used in California. [25] It contains 2 parts. The first part is a notice to the person being served that tells that person that the enclosed summons and complaint is being served pursuant to Rule 4(c)(2)(C)(ii); advises that person to sign and date the acknowledgment form and indicate the authority to receive service if the person served is not the party to the action (e.g., the person served is an officer of the organization being served); and warns that failure to return the form to the sender within 20 days may result in the court ordering the party being served to pay the expenses involved in effecting service. The notice also warns that if the complaint is not responded to within 20 days, a default judgment can be entered against the party being served. The notice is dated under penalty of perjury by the plaintiff or the plaintiff's attorney. 26

The second part of the form contains the acknowledgment of receipt of the summons and complaint. The person served must declare on this part of the form, under penalty of perjury, the date and place of service and the person's authority to receive service.

**SECTION 4**

Section 4 of the bill provides that the changes in Rule 4 made by H.R. 7154 will take effect 45 days after enactment, thereby giving the bench and bar, as well as other interested persons and organizations (such as the Marshals Service), an opportunity to prepare to implement the changes made by the legislation. The delayed effective date means that service of process issued before the effective date will be made in accordance with current Rule 4 . Accordingly, all process in the hands of the Marshals Service prior to the effective date will be served by the Marshals Service under the present rule.

**SECTION 5**

Section 5 of the bill provides that the amendments to Rule 4 proposed by the Supreme Court (whose effective date was postponed by Public Law 97–227) shall not take effect. This is necessary because under Public Law 97–227 the proposed amendments will take effect on October 1, 1983.

---

[1] The drafting of the rules and amendments is actually done by a committee of the Judicial Conference of the United States. In the case of the Federal Rules of Civil Procedure, the initial draft is prepared by the Advisory Committee on Civil Rules. The Advisory Committee's draft is then reviewed by the Committee on Rules of Practice and Procedure, which must give its approval to the draft. Any draft approved by that committee is forwarded to the Judicial Conference. If the Judicial Conference approves the draft, it forwards the draft to the Supreme Court. The Judicial Conference's role in the rule-making process is defined by 28 U.S.C. 331.

For background information about how the Judicial Conference committees operate, see Wright, “Procedural Reform: Its Limitation and Its Future,” 1 Ga.L.Rev. 563, 565–66 (1967) (civil rules); statement of United States District Judge Roszel C. Thomsen, Hearings on Proposed Amendments to the Federal Rules of Criminal Procedure Before the Subcommittee on Criminal Justice of the House Committee on the Judiciary, 93d Cong., 2d Sess. at 25 (1974)

(criminal rules); statement of United States Circuit Judge J. Edward Lumbard, id. at 203 (criminal rules); J. Weinstein, Reform of Federal Court Rulemaking Procedure (1977); Weinstein, "Reform of Federal Rulemaking Procedures," 76 Colum.L.Rev. 905 (1976).

[2] All of the other amendments, including all of the proposed amendments to the Federal Rules of Criminal Procedure and the Rules and Forms Governing Proceedings in the United States District Courts under sections 2254 and 2255 of Title 28, United States Code, took effect on August 1, 1982, as scheduled.

[3] The President has urged Congress to act promptly. See President's Statement on Signing H.R. 6663 into Law, 18 Weekly Comp. of Pres. Doc. 982 (August 2, 1982).

[4] Where service of a summons is to be made upon a party who is neither an inhabitant of, nor found within, the state where the district court sits, subsection (e) authorizes service under a state statute or rule of court that provides for service upon such a party. This would authorize mail service if the state statute or rule of court provided for service by mail.

[5] The Court's proposal authorized service by the Marshals Service in other situations. This authority, however, was not seen as thwarting the underlying policy of limiting the use of marshals. *See* Appendix II, at 16, 17 (Advisory Committee Note).

[6] Appendix I, at 2 (letter of Assistant Attorney General Robert A. McConnell).

[7] The provisions of H.R. 7154 conflict with 28 U.S.C. 569(b) because the latter is a broader command to marshals to serve all federal court process. As a later statutory enactment, however, H.R. 7154 supersedes 28 U.S.C. 569(b), thereby achieving the goal of reducing the role of marshals.

[8] Proposed Rule 4(d)(8) provided that "Service . . . shall not be the basis for the entry of a default or a judgment by default unless the record contains a return receipt showing acceptance by the defendant or a returned envelope showing refusal of the process by the defendant." This provision reflects a desire to preclude default judgments on unclaimed mail. See Appendix II, at 7 (Report of the Committee on Rules of Practice and Procedure).

The interpretation of Rule 4(d)(8) to require a refusal of delivery in order to have a basis for a default judgment, while undoubtedly the interpretation intended and the interpretation that reaches the fairest result, may not be the only possible interpretation. Since a default judgment can be entered for defendant's failure to respond to the complaint once defendant has been served and the time to answer the complaint has run, it can be argued that a default judgment can be obtained where the mail was unclaimed because proposed subsection (j), which authorized dismissal of a complaint not served within 120 days, provided that mail service would be deemed made "on the date on which the process was accepted, refused, or *returned as unclaimed* " (emphasis added).

[9] See p. 15 infra.

[10] Proponents of the California system of mail service, in particular, saw no reason to supplant California's proven method of mail service with a certified mail service that they believed likely to result in default judgments without actual notice to defendants. See House Report No. 97–662, at 3 (1982).

[11] The parties may, of course, stipulate to service, as is frequently done now.

[12] While return of the letter as unclaimed was deemed service for the purpose of determining whether the plaintiff's action could be dismissed, return of the letter as unclaimed was not service for the purpose of entry of a default judgment against the defendant. See note 8 supra.

[13] The law governing the tolling of a statute of limitation depends upon the type of civil action involved. In adversity action, state law governs tolling. *Walker v. Armco Steel Corp* ., 446 U.S. 740 (1980). In *Walker* , plaintiff had filed his complaint and thereby commenced the action under Rule 3 of the Federal Rules of Civil Procedure within the statutory period. He did not, however, serve the summons and complaint until after the statutory period had run. The Court held that state law (which required both filing and service within the statutory period) governed, barring plaintiff's action.

In the federal question action, the courts of appeals have generally held that Rule 3 governs, so that the filing of the complaint tolls a statute of limitation. *United States v. Wahl* , 538 F.2d 285 (6th Cir. 1978); *Windbrooke Dev. Co. v. Environmental Enterprises Inc. of Fla* ., 524 F.2d 461 (5th Cir. 1975); *Metropolitan Paving Co. v. International Union of Operating Engineers* , 439 F.2d 300 (10th Cir. 1971); *Moore Co. v. Sid Richardson Carbon & Gasoline Co* ., 347 F.2d 921 (8th Cir.), cert. denied, 383 U.S. 925, reh. denied, 384 U.S. 914 (1965); *Hoffman v. Halden* , 268 F.2d 280 (9th Cir. 1959). The continued validity of this line of cases, however, must be questioned in light of the *Walker* case, even though the Court in that case expressly reserved judgment about federal question actions, *see Walker v. Armco Steel Corp* ., 446 U.S. 741, 751 n.11 (1980).

[14] The same result obtains even if service occurs within the 120 day period, if the service occurs after the statute of limitation has run.

[15] See p. 19 infra.

[16] See p. 17 infra.

[17] Rule 45(c) provides that “A subpoena may be served by the marshal, by his deputy, or by any other person who is not a party and is not less than 18 years of age.”

[18] Some litigators have voiced concern that there may be situations in which personal service by someone other than a member of the Marshals Service may present a risk of injury to the person attempting to make the service. For example, a hostile defendant may have a history of injuring persons attempting to serve process. Federal judges undoubtedly will consider the risk of harm to private persons who would be making personal service when deciding whether to order the Marshals Service to make service under Rule 4(c)(2)(B)(iii).

[19] The methods of service authorized by Rule 4(c)(2)(C) may be invoked by any person seeking to effect service. Thus, a nonparty adult who receives the summons and complaint for service under Rule 4(c)(1) may serve them personally or by mail in the manner authorized by Rule 4(c)(2)(C)(ii). Similarly, the Marshals Service may utilize the mail service authorized by Rule 4(c)(2)(C)(ii) when serving a summons and complaint under Rule 4(c)(2)(B)(i)(iii). When serving a summons and complaint under Rule 4(c)(2)(B)(ii), however, the Marshals Service must serve in the manner set forth in the court's order. If no particular manner of service is specified, then

the Marshals Service may utilize Rule 4(c)(2)(C)(ii). It would not seem to be appropriate, however, for the Marshals Service to utilize Rule 4(c)(2)(C)(ii) in a situation where a previous attempt to serve by mail failed. Thus, it would not seem to be appropriate for the Marshals Service to attempt service by regular mail when serving a summons and complaint on behalf of a plaintiff who is proceeding in forma pauperis if that plaintiff previously attempted unsuccessfully to serve the defendant by mail.

[20] To obtain service by personnel of the Marshals Service or someone specially appointed by the court, a plaintiff who has unsuccessfully attempted mail service under Rule 4(c)(2)(C)(ii) must meet the conditions of Rule 4(c)(2)(B)—for example, the plaintiff must be proceeding *in forma pauperis.*

[21] For example, the sender must state the date of mailing on the form. If the form is not returned to the sender within 20 days of that date, then the plaintiff must serve the defendant in another manner and the defendant may be liable for the costs of such service. Thus, a defendant would suffer the consequences of a misstatement about the date of mailing.

[22] See p. 12 supra.

[23] The 120 day period begins to run upon the filing of each complaint. Thus, where a defendant files a cross-claim against the plaintiff, the 120 day period begins to run upon the filing of the cross-complaint, not upon the filing of the plaintiff's complaint initiating the action.

[24] The person who may move to dismiss can be the putative defendant (i.e., the person named as defendant in the complaint filed with the court) or, in multi-party actions, another party to the action. (If the putative defendant moves to dismiss and the failure to effect service is due to that person's evasion of service, a court should not dismiss because the plaintiff has “good cause” for not completing service.)

[25] See Cal. Civ. Pro. §415.30 (West 1973).

[26] See p. 16 supra.

### Notes of Advisory Committee on Rules—1987 Amendment

The amendments are technical. No substantive change is intended.

### Notes of Advisory Committee on Rules—1993 Amendment

Purposes of Revision. The general purpose of this revision is to facilitate the service of the summons and complaint. The revised rule explicitly authorizes a means for service of the summons and complaint on any defendant. While the methods of service so authorized always provide appropriate notice to persons against whom claims are made, effective service under this rule does not assure that personal jurisdiction has been established over the defendant served.

First, the revised rule authorizes the use of any means of service provided by the law not only of the forum state, but also of the state in which a defendant is served, unless the defendant is a minor or incompetent.

Second, the revised rule clarifies and enhances the cost-saving practice of securing the assent of the defendant to dispense with actual service of the summons and complaint. This practice was introduced to the rule in 1983 by an act of Congress authorizing "service-by-mail," a procedure that effects economic service with cooperation of the defendant. Defendants that magnify costs of service by requiring expensive service not necessary to achieve full notice of an action brought against them are required to bear the wasteful costs. This provision is made available in actions against defendants who cannot be served in the districts in which the actions are brought.

Third, the revision reduces the hazard of commencing an action against the United States or its officers, agencies, and corporations. A party failing to effect service on all the offices of the United States as required by the rule is assured adequate time to cure defects in service.

Fourth, the revision calls attention to the important effect of the Hague Convention and other treaties bearing on service of documents in foreign countries and favors the use of internationally agreed means of service. In some respects, these treaties have facilitated service in foreign countries but are not fully known to the bar.

Finally, the revised rule extends the reach of federal courts to impose jurisdiction over the person of all defendants against whom federal law claims are made and who can be constitutionally subjected to the jurisdiction of the courts of the United States. The present territorial limits on the effectiveness of service to subject a defendant to the jurisdiction of the court over the defendant's person are retained for all actions in which there is a state in which personal jurisdiction can be asserted consistently with state law and the Fourteenth Amendment. A new provision enables district courts to exercise jurisdiction, if permissible under the Constitution and not precluded by statute, when a federal claim is made against a defendant not subject to the jurisdiction of any single state.

The revised rule is reorganized to make its provisions more accessible to those not familiar with all of them. Additional subdivisions in this rule allow for more captions; several overlaps among subdivisions are eliminated; and several disconnected provisions are removed, to be relocated in a new Rule 4.1 .

*The Caption of the Rule* . Prior to this revision, Rule 4 was entitled “Process” and applied to the service of not only the summons but also other process as well, although these are not covered by the revised rule. Service of process in eminent domain proceedings is governed by Rule 71A. Service of a subpoena is governed by Rule 45 , and service of papers such as orders, motions, notices, pleadings, and other documents is governed by Rule 5 .

The revised rule is entitled “Summons” and applies only to that form of legal process. Unless service of the summons is waived, a summons must be served whenever a person is joined as a party against whom a claim is made. Those few provisions of the former rule which relate specifically to service of process other than a summons are relocated in Rule 4.1 in order to simplify the text of this rule.

*Subdivision (a)* . Revised subdivision (a) contains most of the language of the former subdivision (b). The second sentence of the former subdivision (b) has been stricken, so that the federal court summons will be the same in all cases. Few states now employ distinctive requirements of form for a summons and the applicability of such a requirement in federal court can only serve as a trap for an unwary party or attorney. A sentence is added to this

subdivision authorizing an amendment of a summons. This sentence replaces the rarely used former subdivision 4(h). *See* 4A Wright & Miller, *Federal Practice and Procedure* §1131 (2d ed. 1987).

*Subdivision (b)* . Revised subdivision (b) replaces the former subdivision (a). The revised text makes clear that the responsibility for filling in the summons falls on the plaintiff, not the clerk of the court. If there are multiple defendants, the plaintiff may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified.

*Subdivision (c)* . Paragraph (1) of revised subdivision (c) retains language from the former subdivision (d)(1). Paragraph (2) retains language from the former subdivision (a), and adds an appropriate caution regarding the time limit for service set forth in subdivision (m).

The 1983 revision of Rule 4 relieved the marshals' offices of much of the burden of serving the summons. Subdivision (c) eliminates the requirement for service by the marshal's office in actions in which the party seeking service is the United States. The United States, like other civil litigants, is now permitted to designate any person who is 18 years of age and not a party to serve its summons.

The court remains obligated to appoint a marshal, a deputy, or some other person to effect service of a summons in two classes of cases specified by statute: actions brought *in forma pauperis* or by a seaman. 28 U.S.C. §§1915, 1916. The court also retains discretion to appoint a process server on motion of a party. If a law enforcement presence appears to be necessary or advisable to keep the peace, the court should appoint a marshal or deputy or other official person to make the service. The Department of Justice may also call upon the Marshals Service to perform services in actions brought by the United States. 28 U.S.C. §651.

*Subdivision (d)* . This text is new, but is substantially derived from the former subdivisions (c)(2)(C) and (D), added to the rule by Congress in 1983. The aims of the provision are to eliminate the costs of service of a summons on many parties and to foster cooperation among adversaries and counsel. The rule operates to impose upon the defendant those costs that could have been avoided if the defendant had cooperated reasonably in the manner

prescribed. This device is useful in dealing with defendants who are furtive, who reside in places not easily reached by process servers, or who are outside the United States and can be served only at substantial and unnecessary expense. Illustratively, there is no useful purpose achieved by requiring a plaintiff to comply with all the formalities of service in a foreign country, including costs of translation, when suing a defendant manufacturer, fluent in English, whose products are widely distributed in the United States. *See Bankston v. Toyota Motor Corp* ., 889 F.2d 172 (8th Cir. 1989).

The former text described this process as service-by-mail. This language misled some plaintiffs into thinking that service could be effected by mail without the affirmative cooperation of the defendant. *E.g., Gulley v. Mayo Foundation* , 886 F.2d 161 (8th Cir. 1989). It is more accurate to describe the communication sent to the defendant as a request for a waiver of formal service.

The request for waiver of service may be sent only to defendants subject to service under subdivision (e), (f), or (h). The United States is not expected to waive service for the reason that its mail receiving facilities are inadequate to assure that the notice is actually received by the correct person in the Department of Justice. The same principle is applied to agencies, corporations, and officers of the United States and to other governments and entities subject to service under subdivision (j). Moreover, there are policy reasons why governmental entities should not be confronted with the potential for bearing costs of service in cases in which they ultimately prevail. Infants or incompetent persons likewise are not called upon to waive service because, due to their presumed inability to understand the request and its consequences, they must generally be served through fiduciaries.

It was unclear whether the former rule authorized mailing of a request for "acknowledgement of service" to defendants outside the forum state. *See* 1 R. Casad, *Jurisdiction in Civil Actions* (2d Ed.) 5–29, 30 (1991) and cases cited. But, as Professor Casad observed, there was no reason not to employ this device in an effort to obtain service outside the state, and there are many instances in which it was in fact so used, with respect both to defendants within the United States and to defendants in other countries.

The opportunity for waiver has distinct advantages to a foreign defendant. By waiving service, the defendant can reduce the costs that may ultimately be taxed against it if unsuccessful in the lawsuit, including the sometimes substantial expense of translation that may be wholly unnecessary for defendants fluent in English. Moreover, a foreign defendant that waives service is afforded substantially more time to defend against the action than if it had been formally served: under Rule 12 , a defendant ordinarily has only 20 days after service in which to file its answer or raise objections by motion, but by signing a waiver it is allowed 90 days after the date the request for waiver was mailed in which to submit its defenses. Because of the additional time needed for mailing and the unreliability of some foreign mail services, a period of 60 days (rather than the 30 days required for domestic transmissions) is provided for a return of a waiver sent to a foreign country.

It is hoped that, since transmission of the notice and waiver forms is a private nonjudicial act, does not purport to effect service, and is not accompanied by any summons or directive from a court, use of the procedure will not offend foreign sovereignties, even those that have withheld their assent to formal service by mail or have objected to the "service-by-mail" provisions of the former rule. Unless the addressee consents, receipt of the request under the revised rule does not give rise to any obligation to answer the lawsuit, does not provide a basis for default judgment, and does not suspend the statute of limitations in those states where the period continues to run until service. Nor are there any adverse consequences to a foreign defendant, since the provisions for shifting the expense of service to a defendant that declines to waive service apply only if the plaintiff and defendant are both located in the United States.

With respect to a defendant located in a foreign country like the United Kingdom, which accepts documents in English, whose Central Authority acts promptly in effecting service, and whose policies discourage its residents from waiving formal service, there will be little reason for a plaintiff to send the notice and request under subdivision (d) rather than use convention methods. On the other hand, the procedure offers significant potential benefits to a plaintiff when suing a defendant that, though fluent in English, is located in a country where, as a condition to formal service under a convention, documents must be translated into another language or where formal service will be otherwise costly or time-consuming.

Paragraph (1) is explicit that a timely waiver of service of a summons does not prejudice the right of a defendant to object by means of a motion authorized by Rule 12(b)(2) to the absence of jurisdiction over the defendant's person, or to assert other defenses that may be available. The only issues eliminated are those involving the sufficiency of the summons or the sufficiency of the method by which it is served.

Paragraph (2) states what the present rule implies: the defendant has a duty to avoid costs associated with the service of a summons not needed to inform the defendant regarding the commencement of an action. The text of the rule also sets forth the requirements for a Notice and Request for Waiver sufficient to put the cost-shifting provision in place. These requirements are illustrated in Forms 1A and 1B, which replace the former Form 18–A.

Paragraph (2)(A) is explicit that a request for waiver of service by a corporate defendant must be addressed to a person qualified to receive service. The general mail rooms of large organizations cannot be required to identify the appropriate individual recipient for an institutional summons.

Paragraph (2)(B) permits the use of alternatives to the United States mails in sending the Notice and Request. While private messenger services or electronic communications may be more expensive than the mail, they may be equally reliable and on occasion more convenient to the parties. Especially with respect to transmissions to foreign countries, alternative means may be desirable, for in some countries facsimile transmission is the most efficient and economical means of communication. If electronic means such as facsimile transmission are employed, the sender should maintain a record of the transmission to assure proof of transmission if receipt is denied, but a party receiving such a transmission has a duty to cooperate and cannot avoid liability for the resulting cost of formal service if the transmission is prevented at the point of receipt.

A defendant failing to comply with a request for waiver shall be given an opportunity to show good cause for the failure, but sufficient cause should be rare. It is not a good cause for failure to waive service that the claim is unjust or that the court lacks jurisdiction. Sufficient cause not to shift the cost of service would exist, however, if the defendant did not receive the request or was insufficiently literate in English to understand it. It should be noted that the

provisions for shifting the cost of service apply only if the plaintiff and the defendant are both located in the United States, and accordingly a foreign defendant need not show "good cause" for its failure to waive service.

Paragraph (3) extends the time for answer if, before being served with process, the defendant waives formal service. The extension is intended to serve as an inducement to waive service and to assure that a defendant will not gain any delay by declining to waive service and thereby causing the additional time needed to effect service. By waiving service, a defendant is not called upon to respond to the complaint until 60 days from the date the notice was sent to it—90 days if the notice was sent to a foreign country—rather than within the 20 day period from date of service specified in Rule 12 .

Paragraph (4) clarifies the effective date of service when service is waived; the provision is needed to resolve an issue arising when applicable law requires service of process to toll the statute of limitations. *E.g., Morse v. Elmira Country Club* , 752 F.2d 35 (2d Cir. 1984). *Cf. Walker v. Armco Steel Corp* ., 446 U.S. 740 (1980).

The provisions in former subdivision (c)(2)(C)(ii) of this rule may have been misleading to some parties. Some plaintiffs, not reading the rule carefully, supposed that receipt by the defendant of the mailed complaint had the effect both of establishing the jurisdiction of the court over the defendant's person and of tolling the statute of limitations in actions in which service of the summons is required to toll the limitations period. The revised rule is clear that, if the waiver is not returned and filed, the limitations period under such a law is not tolled and the action will not otherwise proceed until formal service of process is effected.

Some state limitations laws may toll an otherwise applicable statute at the time when the defendant receives notice of the action. Nevertheless, the device of requested waiver of service is not suitable if a limitations period which is about to expire is not tolled by filing the action. Unless there is ample time, the plaintiff should proceed directly to the formal methods for service identified in subdivisions (e), (f), or (h).

The procedure of requesting waiver of service should also not be used if the time for service under subdivision (m) will expire before the date on which the waiver must be returned. While a plaintiff has been allowed additional time for service in that situation, *e.g., Prather v. Raymond Constr. Co* ., 570 F. Supp. 278 (N.D. Ga. 1983), the court could refuse a request for additional time unless the defendant appears to have evaded service pursuant to subdivision (e) or (h). It may be noted that the presumptive time limit for service under subdivision (m) does not apply to service in a foreign country.

Paragraph (5) is a cost-shifting provision retained from the former rule. The costs that may be imposed on the defendant could include, for example, the cost of the time of a process server required to make contact with a defendant residing in a guarded apartment house or residential development. The paragraph is explicit that the costs of enforcing the cost-shifting provision are themselves recoverable from a defendant who fails to return the waiver. In the absence of such a provision, the purpose of the rule would be frustrated by the cost of its enforcement, which is likely to be high in relation to the small benefit secured by the plaintiff.

Some plaintiffs may send a notice and request for waiver and, without waiting for return of the waiver, also proceed with efforts to effect formal service on the defendant. To discourage this practice, the cost-shifting provisions in paragraphs (2) and (5) are limited to costs of effecting service incurred after the time expires for the defendant to return the waiver. Moreover, by returning the waiver within the time allowed and before being served with process, a defendant receives the benefit of the longer period for responding to the complaint afforded for waivers under paragraph (3).

*Subdivision (e)* . This subdivision replaces former subdivisions (c)(2)(C)(i) and (d)(1). It provides a means for service of summons on individuals within a judicial district of the United States. Together with subdivision (f), it provides for service on persons anywhere, subject to constitutional and statutory constraints.

Service of the summons under this subdivision does not conclusively establish the jurisdiction of the court over the person of the defendant. A defendant may assert the territorial limits of the court's reach set forth in subdivision (k), including the constitutional limitations that may be imposed by the Due Process Clause of the Fifth Amendment.

Paragraph (1) authorizes service in any judicial district in conformity with state law. This paragraph sets forth the language of former subdivision (c)(2)(C)(i), which authorized the use of the law of the state in which the district court sits, but adds as an alternative the use of the law of the state in which the service is effected.

Paragraph (2) retains the text of the former subdivision (d)(1) and authorizes the use of the familiar methods of personal or abode service or service on an authorized agent in any judicial district.

To conform to these provisions, the former subdivision (e) bearing on proceedings against parties not found within the state is stricken. Likewise stricken is the first sentence of the former subdivision (f), which had restricted the authority of the federal process server to the state in which the district court sits.

*Subdivision (f)* . This subdivision provides for service on individuals who are in a foreign country, replacing the former subdivision (i) that was added to Rule 4 in 1963. Reflecting the pattern of Rule 4 in incorporating state law limitations on the exercise of jurisdiction over persons, the former subdivision (i) limited service outside the United States to cases in which extraterritorial service was authorized by state or federal law. The new rule eliminates the requirement of explicit authorization. On occasion, service in a foreign country was held to be improper for lack of statutory authority. *E.g., Martens v. Winder* , 341 F.2d 197 (9th Cir.), *cert. denied* , 382 U.S. 937 (1965). This authority, however, was found to exist by implication. *E.g., SEC v. VTR, Inc* ., 39 F.R.D. 19 (S.D.N.Y. 1966). Given the substantial increase in the number of international transactions and events that are the subject of litigation in federal courts, it is appropriate to infer a general legislative authority to effect service on defendants in a foreign country.

A secondary effect of this provision for foreign service of a federal summons is to facilitate the use of federal long-arm law in actions brought to enforce the federal law against defendants who cannot be served under any state law but who can be constitutionally subjected to the jurisdiction of the federal court. Such a provision is set forth in paragraph (2) of subdivision (k) of this rule, applicable only to persons not subject to the territorial jurisdiction of any particular state.

Paragraph (1) gives effect to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, which entered into force for the United States on February 10, 1969. See 28 U.S.C.A., Fed.R.Civ.P. 4 (Supp. 1986). This Convention is an important means of dealing with problems of service in a foreign country. *See generally* 1 B. Ristau, *International Judicial Assistance* §§4–1–1 to 4–5–2 (1990). Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service. *See Volkswagenwerk Aktiengesellschaft v. Schlunk* , 486 U.S. 694 (1988) (noting that voluntary use of these procedures may be desirable even when service could constitutionally be effected in another manner); J. Weis, *The Federal Rules and the Hague Conventions: Concerns of Conformity and Comity* , 50 *U. Pitt. L. Rev* . 903 (1989). Therefore, this paragraph provides that, when service is to be effected outside a judicial district of the United States, the methods of service appropriate under an applicable treaty shall be employed if available and if the treaty so requires.

The Hague Convention furnishes safeguards against the abridgment of rights of parties through inadequate notice. Article 15 provides for verification of actual notice or a demonstration that process was served by a method prescribed by the internal laws of the foreign state before a default judgment may be entered. Article 16 of the Convention also enables the judge to extend the time for appeal after judgment if the defendant shows a lack of adequate notice either to defend or to appeal the judgment, or has disclosed a prima facie case on the merits.

The Hague Convention does not specify a time within which a foreign country's Central Authority must effect service, but Article 15 does provide that alternate methods may be used if a Central Authority does not respond within six months. Generally, a Central Authority can be expected to respond much more quickly than that limit might permit, but there have been occasions when the signatory state was dilatory or refused to cooperate for substantive reasons. In such cases, resort may be had to the provision set forth in subdivision (f)(3).

Two minor changes in the text reflect the Hague Convention. First, the term “letter of request” has been added. Although these words are synonymous with “letter rogatory,” “letter of request” is preferred in modern usage. The provision should not be interpreted to

authorize use of a letter of request when there is in fact no treaty obligation on the receiving country to honor such a request from this country or when the United States does not extend diplomatic recognition to the foreign nation. Second, the passage formerly found in subdivision (i)(1)(B), "when service in either case is reasonably calculated to give actual notice," has been relocated.

Paragraph (2) provides alternative methods for use when internationally agreed methods are not intended to be exclusive, or where there is no international agreement applicable. It contains most of the language formerly set forth in subdivision (i) of the rule. Service by methods that would violate foreign law is not generally authorized. Subparagraphs (A) and (B) prescribe the more appropriate methods for conforming to local practice or using a local authority. Subparagraph (C) prescribes other methods authorized by the former rule.

Paragraph (3) authorizes the court to approve other methods of service not prohibited by international agreements. The Hague Convention, for example, authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances. Other circumstances that might justify the use of additional methods include the failure of the foreign country's Central Authority to effect service within the six-month period provided by the Convention, or the refusal of the Central Authority to serve a complaint seeking punitive damages or to enforce the antitrust laws of the United States. In such cases, the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement. Inasmuch as our Constitution requires that reasonable notice be given, an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law. A court may in some instances specially authorize use of ordinary mail. *Cf. Levin v. Ruby Trading Corp* ., 248 F. Supp. 537 (S.D.N.Y. 1965).

*Subdivision (g)* . This subdivision retains the text of former subdivision (d)(2). Provision is made for service upon an infant or incompetent person in a foreign country.

*Subdivision (h)* . This subdivision retains the text of former subdivision (d)(3), with changes reflecting those made in subdivision (e). It also contains the provisions for service on a corporation or association in a foreign country, as formerly found in subdivision (i).

Frequent use should be made of the Notice and Request procedure set forth in subdivision (d) in actions against corporations. Care must be taken, however, to address the request to an individual officer or authorized agent of the corporation. It is not effective use of the Notice and Request procedure if the mail is sent undirected to the mail room of the organization.

*Subdivision (i)* . This subdivision retains much of the text of former subdivisions (d)(4) and (d)(5). Paragraph (1) provides for service of a summons on the United States; it amends former subdivision (d)(4) to permit the United States attorney to be served by registered or certified mail. The rule does not authorize the use of the Notice and Request procedure of revised subdivision (d) when the United States is the defendant. To assure proper handling of mail in the United States attorney's office, the authorized mail service must be specifically addressed to the civil process clerk of the office of the United States attorney.

Paragraph (2) replaces former subdivision (d)(5). Paragraph (3) saves the plaintiff from the hazard of losing a substantive right because of failure to comply with the complex requirements of multiple service under this subdivision. That risk has proved to be more than nominal. *E.g., Whale v. United States* , 792 F.2d 951 (9th Cir. 1986). This provision should be read in connection with the provisions of subdivision (c) of Rule 15 to preclude the loss of substantive rights against the United States or its agencies, corporations, or officers resulting from a plaintiff's failure to correctly identify and serve all the persons who should be named or served.

*Subdivision (j)* . This subdivision retains the text of former subdivision (d)(6) without material change. The waiver-of-service provision is also inapplicable to actions against governments subject to service pursuant to this subdivision.

The revision adds a new paragraph (1) referring to the statute governing service of a summons on a foreign state and its political subdivisions, agencies, and instrumentalities, the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §1608. The caption of the subdivision reflects that change.

*Subdivision (k)* . This subdivision replaces the former subdivision (f), with no change in the title. Paragraph (1) retains the substance of the former rule in explicitly authorizing the exercise of personal jurisdiction over persons who can be reached under state long-arm law, the "100-mile bulge" provision added in 1963, or the federal interpleader act. Paragraph (1)(D) is new, but merely calls attention to federal legislation that may provide for nationwide or even world-wide service of process in cases arising under particular federal laws. Congress has provided for nationwide service of process and full exercise of territorial jurisdiction by all district courts with respect to specified federal actions. *See* 1 R. Casad, *Jurisdiction in Civil Actions* (2d Ed.) chap. 5 (1991).

Paragraph (2) is new. It authorizes the exercise of territorial jurisdiction over the person of any defendant against whom is made a claim arising under any federal law if that person is subject to personal jurisdiction in no state. This addition is a companion to the amendments made in revised subdivisions (e) and (f).

This paragraph corrects a gap in the enforcement of federal law. Under the former rule, a problem was presented when the defendant was a non-resident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under state long-arm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction. In such cases, the defendant was shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts, which was incorporated into the federal practice by the former rule. In this respect, the revision responds to the suggestion of the Supreme Court made in *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd* ., 484 U.S. 97, 111 (1987).

There remain constitutional limitations on the exercise of territorial jurisdiction by federal courts over persons outside the United States. These restrictions arise from the Fifth Amendment rather than from the Fourteenth Amendment, which limits state-court reach and which was incorporated into federal practice by the reference to state law in the text of the former subdivision (e) that is deleted by this revision. The Fifth Amendment requires that any defendant have affiliating contacts with the United States sufficient to justify the exercise of

personal jurisdiction over that party. *Cf. Wells Fargo & Co. v. Wells Fargo Express Co* ., 556 F.2d 406, 418 (9th Cir. 1977). There also may be a further Fifth Amendment constraint in that a plaintiff's forum selection might be so inconvenient to a defendant that it would be a denial of “fair play and substantial justice” required by the due process clause, even though the defendant had significant affiliating contacts with the United States. *See DeJames v. Magnificent Carriers* , 654 F.2d 280, 286 n.3 (3rd Cir.), *cert. denied* , 454 U.S. 1085 (1981). *Compare World-Wide Volkswagen Corp. v. Woodson* , 444 U.S. 286, 293 –294 (1980); *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee* , 456 U.S. 694, 702 –03 (1982); *Burger King Corp. v. Rudzewicz* , 471 U.S. 462, 476 –78 (1985); *Asahi Metal Indus. v. Superior Court of Cal., Solano County* , 480 U.S. 102, 108 –13 (1987). *See generally* R. Lusardi, *Nationwide Service of Process: Due Process Limitations on the Power of the Sovereign* , 33 *Vill. L. Rev* . 1 (1988).

This provision does not affect the operation of federal venue legislation. *See generally* 28 U.S.C. §1391. Nor does it affect the operation of federal law providing for the change of venue. 28 U.S.C. §§1404, 1406. The availability of transfer for fairness and convenience under §1404 should preclude most conflicts between the full exercise of territorial jurisdiction permitted by this rule and the Fifth Amendment requirement of “fair play and substantial justice.”

The district court should be especially scrupulous to protect aliens who reside in a foreign country from forum selections so onerous that injustice could result. “[G]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.” *Asahi Metal Indus. v. Superior Court of Cal., Solano County* , 480 U.S. 102, 115 (1987), quoting *United States v. First Nat'l City Bank* , 379 U.S. 378, 404 (1965) (Harlan, J., dissenting).

This narrow extension of the federal reach applies only if a claim is made against the defendant under federal law. It does not establish personal jurisdiction if the only claims are those arising under state law or the law of another country, even though there might be diversity or alienage subject matter jurisdiction as to such claims. If, however, personal jurisdiction is established under this paragraph with respect to a federal claim, then 28 U.S.C.

§1367(a) provides supplemental jurisdiction over related claims against that defendant, subject to the court's discretion to decline exercise of that jurisdiction under 28 U.S.C. §1367(c).

*Subdivision (l)* . This subdivision assembles in one place all the provisions of the present rule bearing on proof of service. No material change in the rule is effected. The provision that proof of service can be amended by leave of court is retained from the former subdivision (h). *See generally* 4A Wright & Miller, *Federal Practice and Procedure* §1132 (2d ed. 1987).

*Subdivision (m)* . This subdivision retains much of the language of the present subdivision (j).

The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown. Such relief formerly was afforded in some cases, partly in reliance on Rule 6(b). Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service. *E.g., Ditkof v. Owens-Illinois, Inc* ., 114 F.R.D. 104 (E.D. Mich. 1987). A specific instance of good cause is set forth in paragraph (3) of this rule, which provides for extensions if necessary to correct oversights in compliance with the requirements of multiple service in actions against the United States or its officers, agencies, and corporations. The district court should also take care to protect *pro se* plaintiffs from consequences of confusion or delay attending the resolution of an *in forma pauperis* petition. *Robinson v. America's Best Contacts & Eyeglasses* , 876 F.2d 596 (7th Cir. 1989).

The 1983 revision of this subdivision referred to the “party on whose behalf such service was required,” rather than to the “plaintiff,” a term used generically elsewhere in this rule to refer to any party initiating a claim against a person who is not a party to the action. To simplify the text, the revision returns to the usual practice in the rule of referring simply to the plaintiff even though its principles apply with equal force to defendants who may assert claims against non-parties under Rules 13(h), 14, 19, 20, or 21.

*Subdivision (n)* . This subdivision provides for in rem and quasi-in-rem jurisdiction. Paragraph (1) incorporates any requirements of 28 U.S.C. §1655 or similar provisions bearing on seizures or liens.

Paragraph (2) provides for other uses of quasi-in-rem jurisdiction but limits its use to exigent circumstances. Provisional remedies may be employed as a means to secure jurisdiction over the property of a defendant whose person is not within reach of the court, but occasions for the use of this provision should be rare, as where the defendant is a fugitive or assets are in imminent danger of disappearing. Until 1963, it was not possible under Rule 4 to assert jurisdiction in a federal court over the property of a defendant not personally served. The 1963 amendment to subdivision (e) authorized the use of state law procedures authorizing seizures of assets as a basis for jurisdiction. Given the liberal availability of long-arm jurisdiction, the exercise of power quasi-in-rem has become almost an anachronism. Circumstances too spare to affiliate the defendant to the forum state sufficiently to support long-arm jurisdiction over the defendant's person are also inadequate to support seizure of the defendant's assets fortuitously found within the state. *Shaffer v. Heitner* , 433 U.S. 186 (1977).

### Committee Notes on Rules—2000 Amendment

Paragraph (2)(B) is added to Rule 4(i) to require service on the United States when a United States officer or employee is sued in an individual capacity for acts or omissions occurring in connection with duties performed on behalf of the United States. Decided cases provide uncertain guidance on the question whether the United States must be served in such actions. *See Vaccaro v. Dobre* , 81 F.3d 854, 856–857 (9th Cir. 1996); *Armstrong v. Sears* , 33 F.3d 182, 185–187 (2d Cir. 1994); *Ecclesiastical Order of the Ism of Am v. Chasin* , 845 F.2d 113, 116 (6th Cir. 1988); *Light v. Wolf* , 816 F.2d 746 (D.C. Cir. 1987); *see also Simpkins v. District of Columbia* , 108 F.3d 366, 368–369 (D.C. Cir. 1997). Service on the United States will help to protect the interest of the individual defendant in securing representation by the United States, and will expedite the process of determining whether the United States will provide representation. It has been understood that the individual defendant must be served as an

individual defendant, a requirement that is made explicit. Invocation of the individual service provisions of subdivisions (e), (f), and (g) invokes also the waiver-of-service provisions of subdivision (d).

Paragraph 2(B) reaches service when an officer or employee of the United States is sued in an individual capacity "for acts or omissions occurring in connection with the performance of duties on behalf of the United States." This phrase has been chosen as a functional phrase that can be applied without the occasionally distracting associations of such phrases as "scope of employment," "color of office," or "arising out of the employment." Many actions are brought against individual federal officers or employees of the United States for acts or omissions that have no connection whatever to their governmental roles. There is no reason to require service on the United States in these actions. The connection to federal employment that requires service on the United States must be determined as a practical matter, considering whether the individual defendant has reasonable grounds to look to the United States for assistance and whether the United States has reasonable grounds for demanding formal notice of the action.

An action against a former officer or employee of the United States is covered by paragraph (2)(B) in the same way as an action against a present officer or employee. Termination of the relationship between the individual defendant and the United States does not reduce the need to serve the United States.

Paragraph (3) is amended to ensure that failure to serve the United States in an action governed by paragraph 2(B) does not defeat an action. This protection is adopted because there will be cases in which the plaintiff reasonably fails to appreciate the need to serve the United States. There is no requirement, however, that the plaintiff show that the failure to serve the United States was reasonable. A reasonable time to effect service on the United States must be allowed after the failure is pointed out. An additional change ensures that if the United States or United States attorney is served in an action governed by paragraph 2(A), additional time is to be allowed even though no officer, employee, agency, or corporation of the United States was served.

*GAP Report* . The most important changes were made to ensure that no one would read the seemingly independent provisions of paragraphs 2(A) and 2(B) to mean that service must be made twice both on the United States and on the United States employee when the employee is sued in both official and individual capacities. The word "only" was added in subparagraph (A) and the new phrase "whether or not the officer or employee is sued also in an individual capacity" was inserted in subparagraph (B).

Minor changes were made to include "Employees" in the catchline for subdivision (i), and to add "or employee" in paragraph 2(A). Although it may seem awkward to think of suit against an employee in an official capacity, there is no clear definition that separates "officers" from "employees" for this purpose. The published proposal to amend Rule 12(a)(3) referred to actions against an employee sued in an official capacity, and it seemed better to make the rules parallel by adding "employee" to Rule 4(i)(2)(A) than by deleting it from Rule 12(a)(3)(A).

### Committee Notes on Rules—2007 Amendment

The language of Rule 4 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Rule 4(d)(1)(C) corrects an inadvertent error in former Rule 4(d)(2)(G). The defendant needs two copies of the waiver form, not an extra copy of the notice and request.

Rule 4(g) changes "infant" to "minor." "Infant" in the present rule means "minor." Modern word usage suggests that "minor" will better maintain the intended meaning. The same change from "infant" to "minor" is made throughout the rules. In addition, subdivision (f)(3) is added to the description of methods of service that the court may order; the addition ensures the evident intent that the court not order service by means prohibited by international agreement.

Rule 4(i)(4) corrects a misleading reference to "the plaintiff" in former Rule 4(i)(3). A party other than a plaintiff may need a reasonable time to effect service. Rule 4(i)(4) properly covers any party.

Former Rule 4(j)(2) refers to service upon an "other governmental organization subject to suit." This is changed to "any other state-created governmental organization that is subject to suit." The change entrenches the meaning indicated by the caption ("Serving a Foreign, State, or Local Government"), and the invocation of state law. It excludes any risk that this rule might be read to govern service on a federal agency, or other entities not created by state law.

The former provision describing service on interpleader claimants [former subd. (k)(1)(C)] is deleted as redundant in light of the general provision in (k)(1)(C) recognizing personal jurisdiction authorized by a federal statute.

### Amendment by Public Law

**1983** —Subd. (a). Pub. L. 97–462, §2(1), substituted "deliver the summons to the plaintiff or the plaintiff's attorney, who shall be responsible for prompt service of the summons and a copy of the complaint" for "deliver it for service to the marshal or to any other person authorized by Rule 4(c) to serve it".

Subd. (c). Pub. L. 97–462, §2(2), substituted provision with subd. heading "Service" for provision with subd. heading "By Whom Served" which read: "Service of process shall be made by a United States marshal, by his deputy, or by some person specially appointed by the court for that purpose, except that a subpoena may be served as provided in Rule 45 . Special appointments to serve process shall be made freely. Service of process may also be made by a person authorized to serve process in an action brought in the courts of general jurisdiction of the state in which the district court is held or in which service is made."

Subd. (d). Pub. L. 97–462, §2(3), (4), substituted "Summons and Complaint: Person to be Served" for "Summons: Personal Service" in subd. heading.

Subd. (d)(5). Pub. L. 97–462, §2(4), substituted "sending a copy of the summons and of the complaint by registered or certified mail" for "delivering a copy of the summons and of the complaint".

Subd. (d)(7). Pub. L. 97–462, §2(3)(B), struck out par. (7) which read: "Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.". See subd. (c)(2)(C) of this rule.

Subd. (e). Pub. L. 97–462, §2(5), substituted "Summons" for "Same" as subd. heading.

Subd. (g). Pub. L. 97–462, §2(6), substituted in second sentence "deputy United States marshal" and "such person" for "his deputy" and "he" and inserted third sentence "If service is made under subdivision (c)(2)(C)(ii) of this rule, return shall be made by the sender's filing with the court the acknowledgment received pursuant to such subdivision.".

Subd. (j). Pub. L. 97–462, §2(7), added subd. (j).

## Effective Date of 1983 Amendment

Amendment by Pub. L. 97–462 effective 45 days after Jan. 12, 1983, see section 4 of Pub. L. 97–462, set out as a note under section 2071 of this title.

## Committee Notes on Rules—2015 Amendment

Subdivision (d). Abrogation of Rule 84 and the other official forms requires that former Forms 5 and 6 be directly incorporated into Rule 4.

Subdivision (m). The presumptive time for serving a defendant is reduced from 120 days to 90 days. This change, together with the shortened times for issuing a scheduling order set by amended Rule 16(b)(2), will reduce delay at the beginning of litigation.

Shortening the presumptive time for service will increase the frequency of occasions to extend the time. More time may be needed, for example, when a request to waive service fails, a defendant is difficult to serve, or a marshal is to make service in an in forma pauperis action.

The final sentence is amended to make it clear that the reference to Rule 4 in Rule 71.1(d)(3)(A) does not include Rule 4(m). Dismissal under Rule 4(m) for failure to make timely service would be inconsistent with the limits on dismissal established by Rule 71.1(i)(1)(C).

Shortening the time to serve under Rule 4(m) means that the time of the notice required by Rule 15(c)(1)(C) for relation back is also shortened.

### Committee Notes on Rules—2016 Amendment

Rule 4(m) is amended to correct a possible ambiguity that appears to have generated some confusion in practice . Service in a foreign country often is accomplished by means that require more than the time set by Rule 4(m). This problem is recognized by the two clear exceptions for service on an individual in a foreign country under Rule 4(f) and for service on a foreign state under Rule 4(j)(1) . The potential ambiguity arises from the lack of any explicit reference to service on a corporation, partnership, or other unincorporated association. Rule 4(h)(2) provides for service on such defendants at a place outside any judicial district of the United States "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Invoking service "in the manner prescribed by Rule 4(f)" could easily be read to mean that service under Rule 4(h)(2) is also service "under" Rule 4(f) . That interpretation is in keeping with the purpose to recognize the delays that often occur in effecting service in a foreign country . But it also is possible to read the words for what t hey seem to say — service is under Rule 4(h)(2), albeit in a manner borrowed from almost all, but not quite all, of Rule 4(f).

The amendment resolves this possible ambiguity.

Committee Notes on Rules—2017 Amendment

This is a technical amendment that integrates the intended effect of the amendments adopted in 2015 and 2016.

‹ Rule 3. Commencing an Action Up Rule 4.1. Serving Other Process ›

## Federal Rules of Civil Procedure Toolbox

- Wex: Civil Procedure: Overview

Case 1:24-cv-03434-ACR Document 44-1 Filed 05/09/25 Page 146 of 271

LII > Federal Rules of Civil Procedure
> **Rule 5. Serving and Filing Pleadings and Other Papers**

# Rule 5. Serving and Filing Pleadings and Other Papers

(a) SERVICE: WHEN REQUIRED.

(1) *In General.* Unless these rules provide otherwise, each of the following papers must be served on every party:

(A) an order stating that service is required;

(B) a pleading filed after the original complaint, unless the court orders otherwise under Rule 5(c) because there are numerous defendants;

(C) a discovery paper required to be served on a party, unless the court orders otherwise;

(D) a written motion, except one that may be heard ex parte; and

(E) a written notice, appearance, demand, or offer of judgment, or any similar paper.

(2) *If a Party Fails to Appear.* No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4 .

5/6/25, 1:40 PM Case 1:24-cv-03434-ACR Document 44-1 Filed 05/09/25 Page 147 of 271 Rule 5. Serving and Filing Pleadings and Other Papers | Federal Rules of Civil Procedure | US Law | LII / Legal Information Institute

(3) *Seizing Property.* If an action is begun by seizing property and no person is or need be named as a defendant, any service required before the filing of an appearance, answer, or claim must be made on the person who had custody or possession of the property when it was seized.

(b) SERVICE: HOW MADE.

(1) *Serving an Attorney.* If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party.

(2) *Service in General.* A paper is served under this rule by:

(A) handing it to the person;

(B) leaving it:

(i) at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or

(ii) if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;

(C) mailing it to the person's last known address—in which event service is complete upon mailing;

(D) leaving it with the court clerk if the person has no known address;

(E) sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing—in either of which events service is complete upon filing or sending, but is not effective if the filer or sender learns that it did not reach the person to be served; or

(F) delivering it by any other means that the person consented to in writing—in which event service is complete when the person making service delivers it to the agency designated to make delivery.

(3) *Using Court Facilities.* [Abrogated (Apr._, 2018, eff. Dec. 1, 2018)]

https://www.law.cornell.edu/rules/frcp/rule_5 2/20

(c) SERVING NUMEROUS DEFENDANTS.

(1) *In General.* If an action involves an unusually large number of defendants, the court may, on motion or on its own, order that:

(A) defendants' pleadings and replies to them need not be served on other defendants;

(B) any crossclaim, counterclaim, avoidance, or affirmative defense in those pleadings and replies to them will be treated as denied or avoided by all other parties; and

(C) filing any such pleading and serving it on the plaintiff constitutes notice of the pleading to all parties.

(2) *Notifying Parties.* A copy of every such order must be served on the parties as the court directs.

(d) FILING.

(1) *Required Filings; Certificate of Service.*

(A) *Papers after the Complaint.* Any paper after the complaint that is required to be served—must be filed no later than a reasonable time after service. But disclosures under Rule 26(a)(1) or (2) and the following discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing: depositions, interrogatories, requests for documents or tangible things or to permit entry onto land, and requests for admission.

(B) *Certificate of Service* . No certificate of service is required when a paper is served by filing it with the court's electronic-filing system. When a paper that is required to be served is served by other means:

(i) if the paper is filed, a certificate of service must be filed with it or within a reasonable time after service; and

(ii) if the paper is not filed, a certificate of service need not be filed unless filing is required by court order or by local rule.

(2) *Nonelectronic Filing* . A paper not filed electronically is filed by delivering it:

   (A) to the clerk; or

   (B) to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk.

(3) *Electronic Filing and Signing.*

   (A) *By a Represented Person* —Generally Required; Exceptions. A person represented by an attorney must file electronically, unless nonelectronic filing is allowed by the court for good cause or is allowed or required by local rule.

   (B) *By an Unrepresented Person* —When Allowed or Required. A person not represented by an attorney:

   (i) may file electronically only if allowed by court order or by local rule; and

   (ii) may be required to file electronically only by court order, or by a local rule that includes reasonable exceptions.

   (C) *Signing.* A filing made through a person's electronic-filing account and authorized by that person, together with that person's name on a signature block, constitutes the person's signature.

   (D) *Same as a Written Paper.* A paper filed electronically is a written paper for purposes of these rules.

   (4) *Acceptance by the Clerk.* The clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice.

(As amended Jan. 21, 1963, eff. July 1, 1963; Mar. 30, 1970, eff. July 1, 1970; Apr. 29, 1980, eff. Aug. 1, 1980; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 23, 1996, eff. Dec. 1, 1996; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 23, 2001, eff. Dec. 1, 2001; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 30, 2007, eff. Dec. 1, 2007.)

Notes of Advisory Committee on Rules—1937

5/6/25, 1:40 PM Rule 5. Serving and Filing Pleadings and Other Papers | Federal Rules of Civil Procedure | US Law | LII / Legal Information Institute

*Note to Subdivisions (a) and (b)* . Compare 2 Minn.Stat. (Mason, 1927) §§9240, 9241, 9242; N.Y.C.P.A. (1937) §§163, 164, and N.Y.R.C.P. (1937) Rules 20, 21; 2 Wash.Rev.Stat.Ann. (Remington, 1932) §§244–249.

*Note to Subdivision (d)* . Compare the present practice under [former] Equity Rule 12 (Issue of Subpoena—Time for Answer).

Notes of Advisory Committee on Rules—1963 Amendment

The words "affected thereby," stricken out by the amendment, introduced a problem of interpretation. See 1 Barron & Holtzoff , *Federal Practice & Procedure* 760–61 (Wright ed. 1960). The amendment eliminates this difficulty and promotes full exchange of information among the parties by requiring service of papers on all the parties to the action, except as otherwise provided in the rules. See also subdivision (c) of Rule 5. So, for example, a third-party defendant is required to serve his answer to the third-party complaint not only upon the defendant but also upon the plaintiff. See amended Form 22–A and the Advisory Committee's Note thereto.

As to the method of serving papers upon a party whose address is unknown, see Rule 5(b).

Notes of Advisory Committee on Rules—1970 Amendment

The amendment makes clear that all papers relating to discovery which are required to be served on any party must be served on all parties, unless the court orders otherwise. The present language expressly includes notices and demands, but it is not explicit as to answers or responses as provided in Rules 33, 34, and 36. Discovery papers may be voluminous or the parties numerous, and the court is empowered to vary the requirement if in a given case it proves needlessly onerous.

In actions begun by seizure of property, service will at times have to be made before the absent owner of the property has filed an appearance. For example, a prompt deposition may be needed in a maritime action in rem. See Rules 30(a) and 30(b)(2) and the related notes. A provision is added authorizing service on the person having custody or possession of the property at the time of its seizure.

https://www.law.cornell.edu/rules/frcp/rule_5 5/20

Notes of Advisory Committee on Rules—1980 Amendment

*Subdivision (d)* . By the terms of this rule and Rule 30(f)(1) discovery materials must be promptly filed, although it often happens that no use is made of the materials after they are filed. Because the copies required for filing are an added expense and the large volume of discovery filings presents serious problems of storage in some districts, the Committee in 1978 first proposed that discovery materials not be filed unless on order of the court or for use in the proceedings. But such materials are sometimes of interest to those who may have no access to them except by a requirement of filing, such as members of a class, litigants similarly situated, or the public generally. Accordingly, this amendment and a change in Rule 30(f)(1) continue the requirement of filing but make it subject to an order of the court that discovery materials not be filed unless filing is requested by the court or is effected by parties who wish to use the materials in the proceeding.

Notes of Advisory Committee on Rules—1987 Amendment

The amendments are technical. No substantive change is intended.

Notes of Advisory Committee on Rules—1991 Amendment

*Subdivision (d)* . This subdivision is amended to require that the person making service under the rule certify that service has been effected. Such a requirement has generally been imposed by local rule.

Having such information on file may be useful for many purposes, including proof of service if an issue arises concerning the effectiveness of the service. The certificate will generally specify the date as well as the manner of service, but parties employing private delivery services may sometimes be unable to specify the date of delivery. In the latter circumstance, a specification of the date of transmission of the paper to the delivery service may be sufficient for the purposes of this rule.

*Subdivision (e)* . The words *"pleading and other"* are stricken as unnecessary. Pleadings are papers within the meaning of the rule. The revision also accommodates the development of the use of facsimile transmission for filing.

Several local district rules have directed the office of the clerk to refuse to accept for filing papers not conforming to certain requirements of form imposed by local rules or practice. This is not a suitable role for the office of the clerk, and the practice exposes litigants to the hazards of time bars; for these reasons, such rules are proscribed by this revision. The enforcement of these rules and of the local rules is a role for a judicial officer. A clerk may of course advise a party or counsel that a particular instrument is not in proper form, and may be directed to so inform the court.

Notes of Advisory Committee on Rules—1993 Amendment

This is a technical amendment, using the broader language of Rule 25 of the Federal Rules of Appellate Procedure. The district court—and the bankruptcy court by virtue of a cross-reference in Bankruptcy Rule 7005—can, by local rule, permit filing not only by facsimile transmissions but also by other electronic means, subject to standards approved by the Judicial Conference.

Notes of Advisory Committee on Rules—1996 Amendment

The present Rule 5(e) has authorized filing by facsimile or other electronic means on two conditions. The filing must be authorized by local rule. Use of this means of filing must be authorized by the Judicial Conference of the United States and must be consistent with standards established by the Judicial Conference. Attempts to develop Judicial Conference standards have demonstrated the value of several adjustments in the rule.

The most significant change discards the requirement that the Judicial Conference authorize local electronic filing rules. As before, each district may decide for itself whether it has the equipment and personnel required to establish electronic filing, but a district that wishes to establish electronic filing need no longer await Judicial Conference action.

The role of the Judicial Conference standards is clarified by specifying that the standards are to govern technical matters. Technical standards can provide nationwide uniformity, enabling ready use of electronic filing without pausing to adjust for the otherwise inevitable variations among local rules. Judicial Conference adoption of technical standards should prove superior to specification in these rules. Electronic technology has advanced with great speed. The

process of adopting Judicial Conference standards should prove speedier and more flexible in determining the time for the first uniform standards, in adjusting standards at appropriate intervals, and in sparing the Supreme Court and Congress the need to consider technological details. Until Judicial Conference standards are adopted, however, uniformity will occur only to the extent that local rules deliberately seek to copy other local rules.

It is anticipated that Judicial Conference standards will govern such technical specifications as data formatting, speed of transmission, means to transmit copies of supporting documents, and security of communication. Perhaps more important, standards must be established to assure proper maintenance and integrity of the record and to provide appropriate access and retrieval mechanisms. Local rules must address these issues until Judicial Conference standards are adopted.

The amended rule also makes clear the equality of filing by electronic means with written filings. An electronic filing that complies with the local rule satisfies all requirements for filing on paper, signature, or verification. An electronic filing that otherwise satisfies the requirements of 28 U.S.C. §1746 need not be separately made in writing. Public access to electronic filings is governed by the same rules as govern written filings.

The separate reference to filing by facsimile transmission is deleted. Facsimile transmission continues to be included as an electronic means.

Committee Notes on Rules—2000 Amendment

*Subdivision (d)* . Rule 5(d) is amended to provide that disclosures under Rule 26(a)(1) and (2), and discovery requests and responses under Rules 30, 31, 33, 34, and 36 must not be filed until they are used in the action. "Discovery requests" includes deposition notices and "discovery responses" includes objections. The rule supersedes and invalidates local rules that forbid, permit, or require filing of these materials before they are used in the action. The former Rule 26(a)(4) requirement that disclosures under Rule 26(a)(1) and (2) be filed has been removed. Disclosures under Rule 26(a)(3), however, must be promptly filed as provided in Rule 26(a)(3). Filings in connection with Rule 35 examinations, which involve a motion proceeding when the parties do not agree, are unaffected by these amendments.

Recognizing the costs imposed on parties and courts by required filing of discovery materials that are never used in an action, Rule 5(d) was amended in 1980 to authorize court orders that excuse filing. Since then, many districts have adopted local rules that excuse or forbid filing. In 1989 the Judicial Conference Local Rules Project concluded that these local rules were inconsistent with Rule 5(d), but urged the Advisory Committee to consider amending the rule. *Local Rules Project* at 92 (1989). The Judicial Conference of the Ninth Circuit gave the Committee similar advice in 1997. The reality of nonfiling reflected in these local rules has even been assumed in drafting the national rules. In 1993, Rule 30(f)(1) was amended to direct that the officer presiding at a deposition file it with the court or send it to the attorney who arranged for the transcript or recording. The Committee Note explained that this alternative to filing was designed for "courts which direct that depositions not be automatically filed." Rule 30(f)(1) has been amended to conform to this change in Rule 5(d).

Although this amendment is based on widespread experience with local rules, and confirms the results directed by these local rules, it is designed to supersede and invalidate local rules. There is no apparent reason to have different filing rules in different districts. Even if districts vary in present capacities to store filed materials that are not used in an action, there is little reason to continue expending court resources for this purpose. These costs and burdens would likely change as parties make increased use of audio- and videotaped depositions. Equipment to facilitate review and reproduction of such discovery materials may prove costly to acquire, maintain, and operate.

The amended rule provides that discovery materials and disclosures under Rule 26(a)(1) and (a)(2) must not be filed until they are "used in the proceeding." This phrase is meant to refer to proceedings in court. This filing requirement is not triggered by "use" of discovery materials in other discovery activities, such as depositions. In connection with proceedings in court, however, the rule is to be interpreted broadly; any use of discovery materials in court in connection with a motion, a pretrial conference under Rule 16, or otherwise, should be interpreted as use in the proceeding.

Once discovery or disclosure materials are used in the proceeding, the filing requirements of Rule 5(d) should apply to them. But because the filing requirement applies only with regard to materials that are used, only those parts of voluminous materials that are actually used need be filed. Any party would be free to file other pertinent portions of materials that are so used. *See* Fed. R. Evid . 106; *cf* . Rule 32(a)(4). If the parties are unduly sparing in their submissions, the court may order further filings. By local rule, a court could provide appropriate direction regarding the filing of discovery materials, such as depositions, that are used in proceedings.

"Shall" is replaced by "must" under the program to conform amended rules to current style conventions when there is no ambiguity.

*GAP Report* . The Advisory Committee recommends no changes to either the amendments to Rule 5(d) or the Committee Note as published.

Committee Notes On Rules—2001 Amendment

Rule 5(b) is restyled.

Rule 5(b)(1) makes it clear that the provision for service on a party's attorney applies only to service made under Rules 5(a) and 77(d). Service under Rules 4, 4.1, 45(b), and 71A (d)(3)—as well as rules that invoke those rules—must be made as provided in those rules.

Subparagraphs (A), (B), and (C) of Rule 5(b)(2) carry forward the method-of-service provisions of former Rule 5(b).

Subparagraph (D) of Rule 5(b)(2) is new. It authorizes service by electronic means or any other means, but only if consent is obtained from the person served. The consent must be express, and cannot be implied from conduct. Early experience with electronic filing as authorized by Rule 5(d) is positive, supporting service by electronic means as well. Consent is required, however, because it is not yet possible to assume universal entry into the world of electronic communication. Subparagraph (D) also authorizes service by nonelectronic means. The Rule 5(b)(2)(B) provision making mail service complete on mailing is extended in subparagraph (D)

to make service by electronic means complete on transmission; transmission is effected when the sender does the last act that must be performed by the sender. Service by other agencies is complete on delivery to the designated agency.

Finally, subparagraph (D) authorizes adoption of local rules providing for service through the court. Electronic case filing systems will come to include the capacity to make service by using the court's facilities to transmit all documents filed in the case. It may prove most efficient to establish an environment in which a party can file with the court, making use of the court's transmission facilities to serve the filed paper on all other parties. Transmission might be by such means as direct transmission of the paper, or by transmission of a notice of filing that includes an electronic link for direct access to the paper. Because service is under subparagraph (D), consent must be obtained from the persons served.

Consent to service under Rule 5(b)(2)(D) must be in writing, which can be provided by electronic means. Parties are encouraged to specify the scope and duration of the consent. The specification should include at least the persons to whom service should be made, the appropriate address or location for such service—such as the e-mail address or facsimile machine number, and the format to be used for attachments. A district court may establish a registry or other facility that allows advance consent to service by specified means for future actions.

Rule 6(e) is amended to allow additional time to respond when service is made under Rule 5(b)(2)(D). The additional time does not relieve a party who consents to service under Rule 5(b)(2)(D) of the responsibilities to monitor the facility designated for receiving service and to provide prompt notice of any address change.

Paragraph (3) addresses a question that may arise from a literal reading of the provision that service by electronic means is complete on transmission. Electronic communication is rapidly improving, but lawyers report continuing failures of transmission, particularly with respect to attachments. Ordinarily the risk of non-receipt falls on the person being served, who has consented to this form of service. But the risk should not extend to situations in which the person attempting service learns that the attempted service in fact did not reach the person

to be served. Given actual knowledge that the attempt failed, service is not effected. The person attempting service must either try again or show circumstances that justify dispensing with service.

Paragraph (3) does not address the similar questions that may arise when a person attempting service learns that service by means other than electronic means in fact did not reach the person to be served. Case law provides few illustrations of circumstances in which a person attempting service actually knows that the attempt failed but seeks to act as if service had been made. This negative history suggests there is no need to address these problems in Rule 5(b)(3). This silence does not imply any view on these issues, nor on the circumstances that justify various forms of judicial action even though service has not been made.

*Changes Made After Publication and Comments* Rule 5(b)(2)(D) was changed to require that consent be "in writing."

Rule 5(b)(3) is new. The published proposal did not address the question of failed service in the text of the rule. Instead, the Committee Note included this statement: "As with other modes of service, however, actual notice that the transmission was not received defeats the presumption of receipt that arises from the provision that service is complete on transmission. The sender must take additional steps to effect service. Service by other agencies is complete on delivery to the designated agency." The addition of paragraph (3) was prompted by consideration of the draft Appellate Rule 25(c) that was prepared for the meeting of the Appellate Rules Advisory Committee. This draft provided: "Service by electronic means is complete on transmission, unless the party making service is notified that the paper was not received." Although Appellate Rule 25(c) is being prepared for publication and comment, while Civil Rule 5(b) has been published and otherwise is ready to recommend for adoption, it seemed desirable to achieve some parallel between the two rules.

The draft Rule 5(b)(3) submitted for consideration by the Advisory Committee covered all means of service except for leaving a copy with the clerk of the court when the person to be served has no known address. It was not limited to electronic service for fear that a provision limited to electronic service might generate unintended negative implications as to service by other means, particularly mail. This concern was strengthened by a small number of opinions

that say that service by mail is effective, because complete on mailing, even when the person making service has prompt actual notice that the mail was not delivered. The Advisory Committee voted to limit Rule 5(b)(3) to service by electronic means because this means of service is relatively new, and seems likely to miscarry more frequently than service by post. It was suggested during the Advisory Committee meeting that the question of negative implication could be addressed in the Committee Note. There was little discussion of this possibility. The Committee Note submitted above includes a “no negative implications” paragraph prepared by the Reporter for consideration by the Standing Committee.

The Advisory Committee did not consider at all a question that was framed during the later meeting of the Appellate Rules Advisory Committee. As approved by the Advisory Committee, Rule 5(b)(3) defeats service by electronic means “if the party making service learns that the attempted service did not reach the person to be served.” It says nothing about the time relevant to learning of the failure. The omission may seem glaring. Curing the omission, however, requires selection of a time. As revised, proposed Appellate Rule 25(c) requires that the party making service learn of the failure within three calendar days. The Appellate Rules Advisory Committee will have the luxury of public comment and another year to consider the desirability of this short period. If Civil Rule 5(b) is to be recommended for adoption now, no such luxury is available. This issue deserves careful consideration by the Standing Committee.

Several changes are made in the Committee Note. (1) It requires that consent “be express, and cannot be implied from conduct.” This addition reflects a more general concern stimulated by a reported ruling that an e-mail address on a firm's letterhead implied consent to email service. (2) The paragraph discussing service through the court's facilities is expanded by describing alternative methods, including an “electronic link.” (3) There is a new paragraph that states that the requirement of written consent can be satisfied by electronic means, and that suggests matters that should be addressed by the consent. (4) A paragraph is added to note the additional response time provided by amended Rule 6(e). (5) The final two paragraphs address newly added Rule 5(b)(3). The first explains the rule that electronic service is not effective if the person making service learns that it did not reach the person to be served. The second paragraph seeks to defeat any negative implications that might arise

from limiting Rule 5(b)(3) to electronic service, not mail, not other means consented to such as commercial express service, and not service on another person on behalf of the person to be served.

*Rule 6(e)*

The Advisory Committee recommended that no change be made in Civil Rule 6(e) to reflect the provisions of Civil Rule 5(b)(2)(D) that, with the consent of the person to be served, would allow service by electronic or other means. Absent change, service by these means would not affect the time for acting in response to the paper served. Comment was requested, however, on the alternative that would allow an additional 3 days to respond. The alternative Rule 6(e) amendments are cast in a form that permits ready incorporation in the Bankruptcy Rules. Several of the comments suggest that the added three days should be provided. Electronic transmission is not always instantaneous, and may fail for any of a number of reasons. It may take three days to arrange for transmission in readable form. Providing added time to respond will not discourage people from asking for consent to electronic transmission, and may encourage people to give consent. The more who consent, the quicker will come the improvements that will make electronic service ever more attractive. Consistency with the Bankruptcy Rules will be a good thing, and the Bankruptcy Rules Advisory Committee believes the additional three days should be allowed.

Committee Notes on Rules—2006 Amendment

Amended Rule 5(e) acknowledges that many courts have required electronic filing by means of a standing order, procedures manual, or local rule. These local practices reflect the advantages that courts and most litigants realize from electronic filing. Courts that mandate electronic filing recognize the need to make exceptions when requiring electronic filing imposes a hardship on a party. Under amended Rule 5(e), a local rule that requires electronic filing must include reasonable exceptions, but Rule 5(e) does not define the scope of those exceptions. Experience with the local rules that have been adopted and that will emerge will aid in drafting new local rules and will facilitate gradual convergence on uniform exceptions, whether in local rules or in an amended Rule 5(e).

5/6/25, 1:40 PM Case 1:24-cv-03434-ACR Document 44-1 Filed 05/09/25 Page 160 of 271 Rule 5. Serving and Filing Pleadings and Other Papers | Federal Rules of Civil Procedure | US Law | LII / Legal Information Institute

*Changes Made after Publication and Comment* . This recommendation is of a modified version of the proposal as published. The changes from the published version limit local rule authority to implement a caution stated in the published Committee Note. A local rule that requires electronic filing must include reasonable exceptions. This change was accomplished by a separate sentence stating that a "local rule may require filing by electronic means only if reasonable exceptions are allowed." Corresponding changes were made in the Committee Note, in collaboration with the Appellate Rules Committee. The changes from the published proposal are shown below. [Omitted]

Committee Notes on Rules—2007 Amendment

The language of Rule 5 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Rule 5(a)(1)(E) omits the former reference to a designation of record on appeal. Appellate Rule 10 is a self-contained provision for the record on appeal, and provides for service.

Former Rule 5(b)(2)(D) literally provided that a local rule may authorize use of the court's transmission facilities to make service by non-electronic means agreed to by the parties. That was not intended. Rule 5(b)(3) restores the intended meaning—court transmission facilities can be used only for service by electronic means.

Rule 5(d)(2)(B) provides that "a" judge may accept a paper for filing, replacing the reference in former Rule 5(e) to "the" judge. Some courts do not assign a designated judge to each case, and it may be important to have another judge accept a paper for filing even when a case is on the individual docket of a particular judge. The ministerial acts of accepting the paper, noting the time, and transmitting the paper to the court clerk do not interfere with the assigned judge's authority over the action.

**Committee Note - 2018 Amendment**

https://www.law.cornell.edu/rules/frcp/rule_5 15/20

5/6/25, 1:40 PM Case 1:24-cv-03434-ACR Document 44-1 Filed 05/09/25 Page 161 of 271 Rule 5. Serving and Filing Pleadings and Other Papers | Federal Rules of Civil Procedure | US Law | LII / Legal Information Institute

**Subdivision (b).** Rule 5(b) is amended to revise the provisions for electronic service. Provision for electronic service was first made when electronic communication was not as widespread or as fully reliable as it is now. Consent of the person served to receive service by electronic means was required as a safeguard. Those concerns have substantially diminished, but have not disappeared entirely, particularly as to persons proceeding without an attorney.

The amended rule recognizes electronic service through the court's transmission facilities as to any registered user. A court may choose to allow registration only with the court's permission. But a party who registers will be subject to service through the court's facilities unless the court provides otherwise. With the consent of the person served, electronic service also may be made by means that do not utilize the court's facilities. Consent can be limited to service at a prescribed address or in a specified form, and may be limited by other conditions.

Service is complete when a person files the paper with the court's electronic-filing system for transmission to a registered user, or when one person sends it to another person by other electronic means that the other person has consented to in writing. But service is not effective if the person who filed with the court or the person who sent by other agreed-upon electronic means learns that the paper did not reach the person to be served. The rule does not make the court responsible for notifying a person who filed the paper with the court's electronic-filing system that an attempted transmission by the court's system failed. But a filer who learns that the transmission failed is responsible for making effective service.

Because Rule 5(b)(2)(E) now authorizes service through the court's facilities as a uniform national practice, Rule 5(b)(3) is abrogated. It is no longer necessary to rely on local rules to authorize such service.

**Subdivision (d).** Rule 5(d)(1) has provided that any paper after the complaint that is required to be served "must be filed within a reasonable time after service." Because "within" might be

https://www.law.cornell.edu/rules/frcp/rule_5 16/20

read as barring filing before the paper is served, “no later than” is substituted to ensure that it is proper to file a paper before it is served.

Under amended Rule 5(d)(1)(B), a certificate of service is not required when a paper is served by filing it with the court’s electronic-filing system. When service is not made by filing with the court’s electronic-filing system, a certificate of service must be filed with the paper or within a reasonable time after service, and should specify the date as well as the manner of service. For papers that are required to be served but must not be filed until they are used in the proceeding or the court orders filing, the certificate need not be filed until the paper is filed, unless filing is required by local rule or court order.

Amended Rule 5(d)(3) recognizes increased reliance on electronic filing. Most districts have adopted local rules that require electronic filing, and allow reasonable exceptions as required by the former rule. The time has come to seize the advantages of electronic filing by making it generally mandatory in all districts for a person represented by an attorney. But exceptions continue to be available. Nonelectronic filing must be allowed for good cause. And a local rule may allow or require nonelectronic filing for other reasons.

Filings by a person proceeding without an attorney are treated separately. It is not yet possible to rely on an assumption that pro se litigants are generally able to seize the advantages of electronic filing. Encounters with the court’s system may prove overwhelming to some. Attempts to work within the system may generate substantial burdens on a pro se party, on other parties, and on the court. Rather than mandate electronic filing, filing by pro se litigants is left for governing by local rules or court order. Efficiently handled electronic filing works to the advantage of all parties and the court. Many courts now allow electronic filing by pro se litigants with the court’s permission. Such approaches may expand with growing experience in the courts, along with the greater availability of the systems required for electronic filing and the increasing familiarity of most people with electronic communication. Room is also left for a court to require electronic filing by a pro se

5/6/25, 1:40 PM Case 1:24-cv-03434-ACR Document 44-1 Filed 05/09/25 Page 163 of 271 Rule 5. Serving and Filing Pleadings and Other Papers | Federal Rules of Civil Procedure | US Law | LII / Legal Information Institute

litigant by court order or by local rule. Care should be taken to ensure that an order to file electronically does not impede access to the court, and reasonable exceptions must be included in a local rule that requires electronic filing by a pro se litigant. In the beginning, this authority is likely to be exercised only to support special programs, such as one requiring e-filing in collateral proceedings by state prisoners.

A filing made through a person's electronic-filing account and authorized by that person, together with that person's name on a signature block, constitutes the person's signature.

‹ Rule 4.1. Serving Other Process Up Rule 5.1. Constitutional Challenge to a Statute ›

Federal Rules of Civil Procedure Toolbox

- Wex: Civil Procedure:

https://www.law.cornell.edu/rules/frcp/rule_5 18/20

5/6/25, 1:40 PM Rule 5. Serving and Filing Pleadings and Other Papers | Federal Rules of Civil Procedure | US Law | LII / Legal Information Institute
Case 1:24-cv-03434-ACR Document 44-1 Filed 05/09/25 Page 164 of 271

Overview

https://www.law.cornell.edu/rules/frcp/rule_5 19/20

5/6/25, 1:40 PM Rule 5. Serving and Filing Pleadings and Other Papers | Federal Rules of Civil Procedure | US Law | LII / Legal Information Institute

Accessibility About LII Contact us Advertise here Help Terms of use Privacy

https://www.law.cornell.edu/rules/frcp/rule_5 20/20

Case 1:24-cv-03434-ACR Document 44-1 Filed 05/09/25 Page 166 of 271

# Rule 6. Computing and Extending Time; Time for Motion Papers

(a) COMPUTING TIME. The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.

(1) *Period Stated in Days or a Longer Unit.* When the period is stated in days or a longer unit of time:

(A) exclude the day of the event that triggers the period;

(B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and

(C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

(2) *Period Stated in Hours.* When the period is stated in hours:

(A) begin counting immediately on the occurrence of the event that triggers the period;

(B) count every hour, including hours during intermediate Saturdays, Sundays, and legal holidays; and

(C) if the period would end on a Saturday, Sunday, or legal holiday, the period continues to run until the same time on the next day that is not a Saturday, Sunday, or legal holiday.

(3) *Inaccessibility of the Clerk's Office.* Unless the court orders otherwise, if the clerk's office is inaccessible:

(A) on the last day for filing under Rule 6(a)(1) , then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday; or

(B) during the last hour for filing under Rule 6(a)(2) , then the time for filing is extended to the same time on the first accessible day that is not a Saturday, Sunday, or legal holiday.

(4) *"Last Day" Defined.* Unless a different time is set by a statute, local rule, or court order, the last day ends:

(A) for electronic filing, at midnight in the court's time zone; and

(B) for filing by other means, when the clerk's office is scheduled to close.

(5) *"Next Day" Defined.* The "next day" is determined by continuing to count forward when the period is measured after an event and backward when measured before an event.

(6) *"Legal Holiday" Defined.* "Legal holiday" means:

(A) the day set aside by statute for observing New Year's Day, Martin Luther King Jr.'s Birthday, Washington's Birthday, Memorial Day, Juneteenth National Independence Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, or Christmas Day;

(B) any day declared a holiday by the President or Congress; and

(C) for periods that are measured after an event, any other day declared a holiday by the state where the district court is located.

(b) Extending Time.

5/6/25, 2:07 PM Case 1:24-cv-03434-ACR Document 44-1 Filed 05/09/25 Page 168 of 271 Rule 6. Computing and Extending Time; Time for Motion Papers | Federal Rules of Civil Procedure | US Law | LII / Legal Information Institute

(1) *In General.* When an act may or must be done within a specified time, the court may, for good cause, extend the time:

(A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

(B) on motion made after the time has expired if the party failed to act because of excusable neglect.

(2) *Exceptions.* A court must not extend the time to act under Rules 50(b) and (d) , 52(b) , 59(b) , (d), and (e), and 60(b) .

(c) Motions, Notices of Hearing, and Affidavits.

(1) *In General.* A written motion and notice of the hearing must be served at least 14 days before the time specified for the hearing, with the following exceptions:

(A) when the motion may be heard ex parte;

(B) when these rules set a different time; or

(C) when a court order—which a party may, for good cause, apply for ex parte—sets a different time.

(2) *Supporting Affidavit.* Any affidavit supporting a motion must be served with the motion. Except as Rule 59(c) provides otherwise, any opposing affidavit must be served at least 7 days before the hearing, unless the court permits service at another time.

(d) Additional Time After Certain Kinds of Service. When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to), 3 days are added after the period would otherwise expire under Rule 6(a) .

Notes

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Dec. 4, 1967, eff. July 1, 1968; Mar. 1, 1971, eff. July 1, 1971; Apr. 28, 1983, eff. Aug. 1, 1983; Apr. 29, 1985, eff. Aug. 1, 1985; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 26, 1999, eff.

https://www.law.cornell.edu/rules/frcp/rule_6 3/21

Dec. 1, 1999; Apr. 23, 2001, eff. Dec. 1, 2001; Apr. 25, 2005, eff. Dec. 1, 2005; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 28, 2016, eff. Dec 1, 2016.)

### Notes of Advisory Committee on Rules—1937

*Note to Subdivisions (a) and (b)* . These are amplifications along lines common in state practices, of [former] Equity Rule 80 (Computation of Time—Sundays and Holidays) and of the provisions for enlargement of time found in [former] Equity Rules 8 (Enforcement of Final Decrees) and 16 (Defendant to Answer—Default—Decree Pro Confesso). See also Rule XIII, Rules and Forms in Criminal Cases, 292 U.S. 661, 666 (1934). Compare Ala.Code Ann. (Michie, 1928) §13 and former Law Rule 8 of the Rules of the Supreme Court of the District of Columbia (1924), superseded in 1929 by Law Rule 8, Rules of the District Court of the United States for the District of Columbia (1937).

*Note to Subdivision (c)* . This eliminates the difficulties caused by the expiration of terms of court. Such statutes as U.S.C. Title 28, [former] §12 (Trials not discontinued by new term) are not affected. Compare *Rules of the United States District Court of Minnesota* , Rule 25 (Minn.Stat. (Mason, Supp. 1936), p. 1089).

*Note to Subdivision (d)* . Compare 2 Minn.Stat. (Mason, 1927) §9246; N.Y.R.C.P. (1937) Rules 60 and 64.

### Notes of Advisory Committee on Rules—1946 Amendment

*Subdivision (b)* . The purpose of the amendment is to clarify the finality of judgments. Prior to the advent of the Federal Rules of Civil Procedure, the general rule that a court loses jurisdiction to disturb its judgments, upon the expiration of the term at which they were entered, had long been the classic device which (together with the statutory limits on the time for appeal) gave finality to judgments. See Note to Rule 73(a). Rule 6(c) abrogates that limit on judicial power. That limit was open to many objections, one of them being inequality of operation because, under it, the time for vacating a judgment rendered early in a term was much longer than for a judgment rendered near the end of the term.

The question to be met under Rule 6(b) is: how far should the desire to allow correction of judgments be allowed to postpone their finality? The rules contain a number of provisions permitting the vacation or modification of judgments on various grounds. Each of these rules contains express time limits on the motions for granting of relief. Rule 6(b) is a rule of general application giving wide discretion to the court to enlarge these time limits or revive them after they have expired, the only exceptions stated in the original rule being a prohibition against enlarging the time specified in Rule 59(b) and (d) for making motions for or granting new trials, and a prohibition against enlarging the time fixed by law for taking an appeal. It should also be noted that Rule 6(b) itself contains no limitation of time within which the court may exercise its discretion, and since the expiration of the term does not end its power, there is now no time limit on the exercise of its discretion under Rule 6(b).

Decisions of lower federal courts suggest that some of the rules containing time limits which may be set aside under Rule 6(b) are Rules 25, 50(b), 52(b), 60(b), and 73(g).

In a number of cases the effect of Rule 6(b) on the time limitations of these rules has been considered. Certainly the rule is susceptible of the interpretation that the court is given the power in its discretion to relieve a party from failure to act within the times specified in any of these other rules, with only the exceptions stated in Rule 6(b), and in some cases the rule has been so construed.

With regard to Rule 25(a) for substitution, it was held in *Anderson v. Brady* (E.D.Ky. 1941) 4 Fed.Rules Service 25a.1, Case 1, and in *Anderson v. Yungkau* (C.C.A. 6th, 1946) 153 F.(2d) 685, cert. granted (1946) 66 S.Ct. 1025, that under Rule 6(b) the court had no authority to allow substitution of parties after the expiration of the limit fixed in Rule 25(a).

As to Rules 50(b) for judgments notwithstanding the verdict and 52(b) for amendment of findings and vacation of judgment, it was recognized in *Leishman v. Associated Wholesale Electric Co* . (1943) 318 U.S. 203, that Rule 6(b) allowed the district court to enlarge the time to make a motion for amended findings and judgment beyond the limit expressly fixed in Rule 52(b). See *Coca-Cola v. Busch* (E.D.Pa. 1943) 7 Fed.Rules Service 59b.2, Case 4. Obviously, if the

time limit in Rule 52(b) could be set aside under Rule 6(b), the time limit in Rule 50(b) for granting judgment notwithstanding the verdict (and thus vacating the judgment entered "forthwith" on the verdict) likewise could be set aside.

As to Rule 59 on motions for a new trial, it has been settled that the time limits in Rule 59(b) and (d) for making motions for or granting new trial could not be set aside under Rule 6(b), because Rule 6(b) expressly refers to Rule 59, and forbids it. See *Safeway Stores, Inc. v. Coe* (App.D.C. 1943) 136 F.(2d) 771; *Jusino v. Morales & Tio* (C.C.A. 1st, 1944) 139 F.(2d) 946; *Coca-Cola Co. v. Busch* (E.D.Pa. 1943) 7 Fed.Rules Service 59b.2, Case 4; *Peterson v. Chicago Great Western Ry. Co* . (D.Neb. 1943) 7 Fed.Rules Service 59b.2, Case 1; *Leishman v. Associated Wholesale Electric Co* . (1943) 318 U.S. 203.

As to Rule 60(b) for relief from a judgment, it was held in *Schram v. O'Connor* (E.D.Mich. 1941) 5 Fed.Rules Serv. 6b.31, Case 1, 2 F.R.D. 192, s. c. 5 Fed.Rules Serv. 6b.31, Case 2, F.R.D. 192, that the six-months time limit in original Rule 60(b) for making a motion for relief from a judgment for surprise, mistake, or excusable neglect could be set aside under Rule 6(b). The contrary result was reached in *Wallace v. United States* (C.C.A.2d, 1944) 142 F.(2d) 240, cert. den. (1944) 323 U.S. 712; *Reed v. South Atlantic Steamship Co. of Del* . (D.Del. 1942) 6 Fed.Rules Serv. 60b.31, Case 1.

As to Rule 73(g), fixing the time for docketing an appeal, it was held in *Ainsworth v. Gill Glass & Fixture Co* . (C.C.A.3d, 1939) 104 F.(2d) 83, that under Rule 6(b) the district court, upon motion made after the expiration of the forty-day period, stated in Rule 73(g), but before the expiration of the ninety-day period therein specified, could permit the docketing of the appeal on a showing of excusable neglect. The contrary was held in *Mutual Benefit Health & Accident Ass'n v. Snyder* (C.C.A. 6th, 1940) 109 F.(2d) 469 and in *Burke v. Canfield* (App.D.C. 1940) 111 F.(2d) 526.

The amendment of Rule 6(b) now proposed is based on the view that there should be a definite point where it can be said a judgment is final; that the right method of dealing with the problem is to list in Rule 6(b) the various other rules whose time limits may not be set aside, and then, if the time limit in any of those other rules is too short, to amend that other rule to give a longer time. The further argument is that Rule 6(c) abolished the long standing

device to produce finality in judgments through expiration of the term, and since that limitation on the jurisdiction of courts to set aside their own judgments has been removed by Rule 6(c), some other limitation must be substituted or judgments never can be said to be final.

In this connection reference is made to the established rule that if a motion for new trial is seasonably made, the mere making or pendency of the motion destroys the finality of the judgment, and even though the motion is ultimately denied, the full time for appeal starts anew from the date of denial. Also, a motion to amend the findings under Rule 52(b) has the same effect on the time for appeal. *Leishman v. Associated Wholesale Electric Co* . (1943) 318 U.S. 203. By the same reasoning a motion for judgment under Rule 50(b), involving as it does the vacation of a judgment entered "forthwith" on the verdict (Rule 58), operates to postpone, until an order is made, the running of the time for appeal. The Committee believes that the abolition by Rule 6(c) of the old rule that a court's power over its judgments ends with the term, requires a substitute limitation, and that unless Rule 6(b) is amended to prevent enlargement of the times specified in Rules 50(b), 52(b) and 60(b), and the limitation as to Rule 59(b) and (d) is retained, no one can say when a judgment is final. This is also true with regard to proposed Rule 59(e), which authorizes a motion to alter or amend a judgment, hence that rule is also included in the enumeration in amended Rule 6(b). In consideration of the amendment, however, it should be noted that Rule 60(b) is also to be amended so as to lengthen the six-months period originally prescribed in that rule to one year.

As to Rule 25 on substitution, while finality is not involved, the limit there fixed should be controlling. That rule, as amended, gives the court power, upon showing of a reasonable excuse, to permit substitution after the expiration of the two-year period.

As to Rule 73(g), it is believed that the conflict in decisions should be resolved and not left to further litigation, and that the rule should be listed as one whose limitation may not be set aside under Rule 6(b).

As to Rule 59(c), fixing the time for serving affidavits on motion for new trial, it is believed that the court should have authority under Rule 6(b) to enlarge the time, because, once the motion for new trial is made, the judgment no longer has finality, and the extension of time

for affidavits thus does not of itself disturb finality.

Other changes proposed in Rule 6(b) are merely clarifying and conforming. Thus “request” is substituted for “application” in clause (1) because an application is defined as a motion under Rule 7(b). The phrase “extend the time” is substituted for “enlarge the period” because the former is a more suitable expression and relates more clearly to both clauses (1) and (2). The final phrase in Rule 6(b), “or the period for taking an appeal as provided by law”, is deleted and a reference to Rule 73(a) inserted, since it is proposed to state in that rule the time for appeal to a circuit court of appeals, which is the only appeal governed by the Federal Rules, and allows an extension of time. See Rule 72.

*Subdivision (c)* . The purpose of this amendment is to prevent reliance upon the continued existence of a term as a source of power to disturb the finality of a judgment upon grounds other than those stated in these rules. See *Hill v. Hawes* (1944) 320 U.S. 520; *Boaz v. Mutual Life Ins. Co. of New York* (C.C.A. 8th, 1944) 146 F.(2d) 321; *Bucy v. Nevada Construction Co* . (C.C.A. 9th, 1942) 125 F.(2d) 213.

### Notes of Advisory Committee on Rules—1963 Amendment

*Subdivision (a)* . This amendment is related to the amendment of Rule 77(c) changing the regulation of the days on which the clerk's office shall be open.

The wording of the first sentence of Rule 6(a) is clarified and the subdivision is made expressly applicable to computing periods of time set forth in local rules.

Saturday is to be treated in the same way as Sunday or a “legal holiday” in that it is not to be included when it falls on the last day of a computed period, nor counted as an intermediate day when the period is less than 7 days. “Legal holiday” is defined for purposes of this subdivision and amended Rule 77(c). Compare the definition of “holiday” in 11 U.S.C. §1 (18); also 5 U.S.C. §86a; Executive Order No. 10358, “Observance of Holidays,” June 9, 1952, 17 Fed.Reg. 5269. In the light of these changes the last sentence of the present subdivision, dealing with half holidays, is eliminated.

With Saturdays and State holidays made "dies non" in certain cases by the amended subdivision, computation of the usual 5–day notice of motion or the 2–day notice to dissolve or modify a temporary restraining order may work out so as to cause embarrassing delay in urgent cases. The delay can be obviated by applying to the court to shorten the time, see Rules 6(d) and 65(b).

*Subdivision (b)* . The prohibition against extending the time for taking action under Rule 25 (Substitution of parties) is eliminated. The only limitation of time provided for in amended Rule 25 is the 90–day period following a suggestion upon the record of the death of a party within which to make a motion to substitute the proper parties for the deceased party. See Rule 25(a)(1), as amended, and the Advisory Committee's Note thereto. It is intended that the court shall have discretion to enlarge that period.

### Notes of Advisory Committee on Rules—1968 Amendment

The amendment eliminates the references to Rule 73, which is to be abrogated.

P. L. 88–139, §1, 77 Stat. 248, approved on October 16, 1963, amended 28 U.S.C. §138 to read as follows: "The district court shall not hold formal terms." Thus Rule 6(c) is rendered unnecessary, and it is rescinded.

### Notes of Advisory Committee on Rules—1971 Amendment

The amendment adds Columbus Day to the list of legal holidays to conform the subdivision to the Act of June 28, 1968, 82 Stat. 250, which constituted Columbus Day a legal holiday effective after January 1, 1971.

The Act, which amended Title 5, U.S.C., §6103(a), changes the day on which certain holidays are to be observed. Washington's Birthday, Memorial Day and Veterans Day are to be observed on the third Monday in February, the last Monday in May and the fourth Monday in October, respectively, rather than, as heretofore, on February 22, May 30, and November 11, respectively. Columbus Day is to be observed on the second Monday in October. New Year's Day, Independence Day, Thanksgiving Day and Christmas continue to be observed on the traditional days.

Case 1:24-cv-03434-ACR Document 44-1 Filed 05/09/25 Page 175 of 271

### Notes of Advisory Committee on Rules—1983 Amendment

*Subdivision (b)* . The amendment confers finality upon the judgments of magistrates by foreclosing enlargement of the time for appeal except as provided in new Rule 74(a) (20 day period for demonstration of excusable neglect).

### Notes of Advisory Committee on Rules—1985 Amendment

Rule 6(a) is amended to acknowledge that weather conditions or other events may render the clerk's office inaccessible one or more days. Parties who are obliged to file something with the court during that period should not be penalized if they cannot do so. The amendment conforms to changes made in Federal Rule of Criminal Procedure 45 (a), effective August 1, 1982.

The Rule also is amended to extend the exclusion of intermediate Saturdays, Sundays, and legal holidays to the computation of time periods less than 11 days. Under the current version of the Rule, parties bringing motions under rules with 10-day periods could have as few as 5 working days to prepare their motions. This hardship would be especially acute in the case of Rules 50(b) and (c)(2), 52(b), and 59(b), (d), and (e), which may not be enlarged at the discretion of the court. See Rule 6(b). If the exclusion of Saturdays, Sundays, and legal holidays will operate to cause excessive delay in urgent cases, the delay can be obviated by applying to the court to shorten the time, See Rule 6(b).

The Birthday of Martin Luther King, Jr., which becomes a legal holiday effective in 1986, has been added to the list of legal holidays enumerated in the Rule.

### Notes of Advisory Committee on Rules—1987 Amendment

The amendments are technical. No substantive change is intended.

### Committee Notes on Rules—1999 Amendment

The reference to Rule 74(a) is stricken from the catalogue of time periods that cannot be extended by the district court. The change reflects the 1997 abrogation of Rule 74(a).

### Committee Notes on Rules—2001 Amendment

The additional three days provided by Rule 6(e) is extended to the means of service authorized by the new paragraph (D) added to Rule 5(b), including—with the consent of the person served—service by electronic or other means. The three-day addition is provided as well for service on a person with no known address by leaving a copy with the clerk of the court.

*Changes Made After Publication and Comments* . Proposed Rule 6(e) is the same as the "alternative proposal" that was published in August 1999.

**Committee Notes on Rules—2005 Amendment**

Rule 6(e) is amended to remove any doubt as to the method for extending the time to respond after service by mail, leaving with the clerk of court, electronic means, or other means consented to by the party served. Three days are added after the prescribed period otherwise expires under Rule 6(a). Intermediate Saturdays, Sundays, and legal holidays are included in counting these added three days. If the third day is a Saturday, Sunday, or legal holiday, the last day to act is the next day that is not a Saturday, Sunday, or legal holiday. The effect of invoking the day when the prescribed period would otherwise expire under Rule 6(a) can be illustrated by assuming that the thirtieth day of a thirty-day period is a Saturday. Under Rule 6(a) the period expires on the next day that is not a Sunday or legal holiday. If the following Monday is a legal holiday, under Rule 6(a) the period expires on Tuesday. Three days are then added—Wednesday, Thursday, and Friday as the third and final day to act. If the period prescribed expires on a Friday, the three added days are Saturday, Sunday, and Monday, which is the third and final day to act unless it is a legal holiday. If Monday is a legal holiday, the next day that is not a legal holiday is the third and final day to act.

Application of Rule 6(e) to a period that is less than eleven days can be illustrated by a paper that is served by mailing on a Friday. If ten days are allowed to respond, intermediate Saturdays, Sundays, and legal holidays are excluded in determining when the period expires under Rule 6(a). If there is no legal holiday, the period expires on the Friday two weeks after the paper was mailed. The three added Rule 6(e) days are Saturday, Sunday, and Monday, which is the third and final day to act unless it is a legal holiday. If Monday is a legal holiday, the next day that is not a legal holiday is the final day to act.

*Changes Made After Publication and Comment* . Changes were made to clarify further the method of counting the three days added after service under Rule 5(b)(2)(B), (C), or (D).

### Committee Notes on Rules—2007 Amendment

The language of Rule 6 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

### Committee Notes on Rules—2009 Amendment

*Subdivision (a).* Subdivision (a) has been amended to simplify and clarify the provisions that describe how deadlines are computed. Subdivision (a) governs the computation of any time period found in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time. In accordance with Rule 83(a)(1), a local rule may not direct that a deadline be computed in a manner inconsistent with subdivision (a).

The time-computation provisions of subdivision (a) apply only when a time period must be computed. They do not apply when a fixed time to act is set. The amendments thus carry forward the approach taken in *Violette v. P.A. Days, Inc.* , 427 F.3d 1015, 1016 (6th Cir. 2005) (holding that Civil Rule 6(a) "does not apply to situations where the court has established a specific calendar day as a deadline"), and reject the contrary holding of *In re American Healthcare Management, Inc.* , 900 F.2d 827, 832 (5th Cir. 1990) (holding that Bankruptcy Rule 9006(a) governs treatment of date-certain deadline set by court order). If, for example, the date for filing is "no later than November 1, 2007," subdivision (a) does not govern. But if a filing is required to be made "within 10 days" or "within 72 hours," subdivision (a) describes how that deadline is computed.

Subdivision (a) does not apply when computing a time period set by a statute if the statute specifies a method of computing time. *See, e.g.* , 2 U.S.C. §394 (specifying method for computing time periods prescribed by certain statutory provisions relating to contested elections to the House of Representatives).

*Subdivision (a)(1).* New subdivision (a)(1) addresses the computation of time periods that are stated in days. It also applies to time periods that are stated in weeks, months, or years. *See, e.g.* , Rule 60(c)(1). Subdivision (a)(1)(B)'s directive to "count every day" is relevant only if the period is stated in days (not weeks, months or years).

Under former Rule 6(a), a period of 11 days or more was computed differently than a period of less than 11 days. Intermediate Saturdays, Sundays, and legal holidays were included in computing the longer periods, but excluded in computing the shorter periods. Former Rule 6(a) thus made computing deadlines unnecessarily complicated and led to counterintuitive results. For example, a 10-day period and a 14-day period that started on the same day usually ended on the same day—and the 10-day period not infrequently ended later than the 14-day period. *See Miltimore Sales, Inc. v. Int'l Rectifier, Inc.* , 412 F.3d 685, 686 (6th Cir. 2005).

Under new subdivision (a)(1), all deadlines stated in days (no matter the length) are computed in the same way. The day of the event that triggers the deadline is not counted. All other days—including intermediate Saturdays, Sundays, and legal holidays—are counted, with only one exception: If the period ends on a Saturday, Sunday, or legal holiday, then the deadline falls on the next day that is not a Saturday, Sunday, or legal holiday. An illustration is provided below in the discussion of subdivision (a)(5). Subdivision (a)(3) addresses filing deadlines that expire on a day when the clerk's office is inaccessible.

Where subdivision (a) formerly referred to the "act, event, or default" that triggers the deadline, new subdivision (a) refers simply to the "event" that triggers the deadline; this change in terminology is adopted for brevity and simplicity, and is not intended to change meaning.

Periods previously expressed as less than 11 days will be shortened as a practical matter by the decision to count intermediate Saturdays, Sundays, and legal holidays in computing all periods. Many of those periods have been lengthened to compensate for the change. *See, e.g.* , Rule 14(a)(1).

Most of the 10-day periods were adjusted to meet the change in computation method by setting 14 days as the new period. A 14-day period corresponds to the most frequent result of a 10-day period under the former computation method—two Saturdays and two Sundays were excluded, giving 14 days in all. A 14-day period has an additional advantage. The final day falls on the same day of the week as the event that triggered the period—the 14th day after a Monday, for example, is a Monday. This advantage of using week-long periods led to adopting 7-day periods to replace some of the periods set at less than 10 days, and 21-day periods to replace 20-day periods. Thirty-day and longer periods, however, were generally retained without change.

*Subdivision (a)(2).* New subdivision (a)(2) addresses the computation of time periods that are stated in hours. No such deadline currently appears in the Federal Rules of Civil Procedure. But some statutes contain deadlines stated in hours, as do some court orders issued in expedited proceedings.

Under subdivision (a)(2), a deadline stated in hours starts to run immediately on the occurrence of the event that triggers the deadline. The deadline generally ends when the time expires. If, however, the time period expires at a specific time (say, 2:17 p.m.) on a Saturday, Sunday, or legal holiday, then the deadline is extended to the same time (2:17 p.m.) on the next day that is not a Saturday, Sunday, or legal holiday. Periods stated in hours are not to be "rounded up" to the next whole hour. Subdivision (a)(3) addresses situations when the clerk's office is inaccessible during the last hour before a filing deadline expires.

Subdivision (a)(2)(B) directs that every hour be counted. Thus, for example, a 72-hour period that commences at 10:23 a.m. on Friday, November 2, 2007, will run until 9:23 a.m. on Monday, November 5; the discrepancy in start and end times in this example results from the intervening shift from daylight saving time to standard time.

*Subdivision (a)(3).* When determining the last day of a filing period stated in days or a longer unit of time, a day on which the clerk's office is not accessible because of the weather or another reason is treated like a Saturday, Sunday, or legal holiday. When determining the end

of a filing period stated in hours, if the clerk's office is inaccessible during the last hour of the filing period computed under subdivision (a)(2) then the period is extended to the same time on the next day that is not a weekend, holiday, or day when the clerk's office is inaccessible.

Subdivision (a)(3)'s extensions apply "[u]nless the court orders otherwise." In some circumstances, the court might not wish a period of inaccessibility to trigger a full 24-hour extension; in those instances, the court can specify a briefer extension.

The text of the rule no longer refers to "weather or other conditions" as the reason for the inaccessibility of the clerk's office. The reference to "weather" was deleted from the text to underscore that inaccessibility can occur for reasons unrelated to weather, such as an outage of the electronic filing system. Weather can still be a reason for inaccessibility of the clerk's office. The rule does not attempt to define inaccessibility. Rather, the concept will continue to develop through caselaw, *see, e.g.* , William G. Phelps, *When Is Office of Clerk of Court Inaccessible Due to Weather or Other Conditions for Purpose of Computing Time Period for Filing Papers under Rule 6(a) of Federal Rules of Civil Procedure* , 135 A.L.R. Fed. 259 (1996) (collecting cases). In addition, many local provisions address inaccessibility for purposes of electronic filing, *see, e.g.* , D. Kan. Rule 5.4.11 ("A Filing User whose filing is made untimely as the result of a technical failure may seek appropriate relief from the court.").

*Subdivision (a)(4).* New subdivision (a)(4) defines the end of the last day of a period for purposes of subdivision (a)(1). Subdivision (a)(4) does not apply in computing periods stated in hours under subdivision (a)(2), and does not apply if a different time is set by a statute, local rule, or order in the case. A local rule may, for example, address the problems that might arise if a single district has clerk's offices in different time zones, or provide that papers filed in a drop box after the normal hours of the clerk's office are filed as of the day that is date-stamped on the papers by a device in the drop box.

28 U.S.C. §452 provides that "[a]ll courts of the United States shall be deemed always open for the purpose of filing proper papers, issuing and returning process, and making motions and orders." A corresponding provision exists in Rule 77(a). Some courts have held that these provisions permit an after-hours filing by handing the papers to an appropriate official. *See,*

*e.g.* , *Casalduc v. Diaz* , 117 F.2d 915, 917 (1st Cir. 1941). Subdivision (a)(4) does not address the effect of the statute on the question of after-hours filing; instead, the rule is designed to deal with filings in the ordinary course without regard to Section 452.

*Subdivision (a)(5).* New subdivision (a)(5) defines the "next" day for purposes of subdivisions (a)(1)(C) and (a)(2)(C). The Federal Rules of Civil Procedure contain both forward-looking time periods and backward-looking time periods. A forward-looking time period requires something to be done within a period of time *after* an event. *See, e.g.* , Rule 59(b) (motion for new trial "must be filed no later than 28 days after entry of the judgment"). A backward-looking time period requires something to be done within a period of time *before* an event. *See, e.g.* , Rule 26(f) (parties must hold Rule 26(f) conference "as soon as practicable and in any event at least 21 days before a scheduling conference is held or a scheduling order is due under Rule 16(b)"). In determining what is the "next" day for purposes of subdivisions (a)(1)(C) and (a)(2)(C), one should continue counting in the same direction—that is, forward when computing a forward-looking period and backward when computing a backward-looking period. If, for example, a filing is due within 30 days *after* an event, and the thirtieth day falls on Saturday, September 1, 2007, then the filing is due on Tuesday, September 4, 2007 (Monday, September 3, is Labor Day). But if a filing is due 21 days *before* an event, and the twenty-first day falls on Saturday, September 1, then the filing is due on Friday, August 31. If the clerk's office is inaccessible on August 31, then subdivision (a)(3) extends the filing deadline forward to the next accessible day that is not a Saturday, Sunday, or legal holiday—no later than Tuesday, September 4.

*Subdivision (a)(6).* New subdivision (a)(6) defines "legal holiday" for purposes of the Federal Rules of Civil Procedure, including the time-computation provisions of subdivision (a). Subdivision (a)(6) continues to include within the definition of "legal holiday" days that are declared a holiday by the President or Congress.

For forward-counted periods— *i.e.* , periods that are measured after an event—subdivision (a)(6)(C) includes certain state holidays within the definition of legal holidays. However, state legal holidays are not recognized in computing backward-counted periods. For both forward- and backward-counted periods, the rule thus protects those who may be unsure of the effect

of state holidays. For forward-counted deadlines, treating state holidays the same as federal holidays extends the deadline. Thus, someone who thought that the federal courts might be closed on a state holiday would be safeguarded against an inadvertent late filing. In contrast, for backward-counted deadlines, not giving state holidays the treatment of federal holidays allows filing on the state holiday itself rather than the day before. Take, for example, Monday, April 21, 2008 (Patriot's Day, a legal holiday in the relevant state). If a filing is due 14 days after an event, and the fourteenth day is April 21, then the filing is due on Tuesday, April 22 because Monday, April 21 counts as a legal holiday. But if a filing is due 14 days before an event, and the fourteenth day is April 21, the filing is due on Monday, April 21; the fact that April 21 is a state holiday does not make April 21 a legal holiday for purposes of computing this backward-counted deadline. But note that if the clerk's office is inaccessible on Monday, April 21, then subdivision (a)(3) extends the April 21 filing deadline forward to the next accessible day that is not a Saturday, Sunday or legal holiday—no earlier than Tuesday, April 22.

*Changes Made after Publication and Comment.* The Standing Committee changed Rule 6(a)(6) to exclude state holidays from the definition of “legal holiday” for purposes of computing backward-counted periods; conforming changes were made to the Committee Note.

[ *Subdivisions (b) and (c).* ] The times set in the former rule at 1 or 5 days have been revised to 7 or 14 days. See the Note to Rule 6 [above].

**Committee Notes on Rules—2016 Amendment**

Rule 6(d) is amended to remove service by electronic means under Rule 5(b)(2)(E) from the modes of service that allow 3 added days to act after being served.

Rule 5(b)(2) was amended in 2001 to provide for service by electronic means. Although electronic transmission seemed virtually instantaneous even then, electronic service was included in the modes of service that allow 3 added days to act after being served. There were concerns that the transmission might be delayed for some time, and particular concerns that

incompatible systems might make it difficult or impossible to open attachments. Those concerns have been substantially alleviated by advances in technology and in widespread skill in using electronic transmission.

A parallel reason for allowing the 3 added days was that electronic service was authorized only with the consent of the person to be served. Concerns about the reliability of electronic transmission might have led to refusals of consent; the 3 added days were calculated to alleviate these concerns.

Diminution of the concerns that prompted the decision to allow the 3 added days for electronic transmission is not the only reason for discarding this indulgence. Many rules have been changed to ease the task of computing time by adopting 7- , 14 -, 21 -, and 28- day periods that allow "day - of-the -week" counting. Adding 3 days at the end complicated the counting, and increased the occasions for further complication by invoking the provisions that apply when the last day is a Saturday, Sunday, or legal holiday.

Electronic service after business hours, or just before or during a weekend or holiday, may result in a practical reduction in the time available to respond. Extensions of time may be warranted to prevent prejudice.

Eliminating Rule 5(b) subparagraph (2)(E) from the modes of service that allow 3 added days means that the 3 added days cannot be retained by consenting to service by electronic means. Consent to electronic service in registering for electronic case filing, for example, does not count as consent to service "by any other means" of delivery under subparagraph (F).

What is now Rule 6(d) was amended in 2005 "to remove any doubt as to the method for calculating the time to respond after service by mail, leaving with the clerk of court, electronic means, or by other means consented to by the party served." A potential ambiguity was created by substituting "after service" for the earlier ref erences to acting after service "upon the party" if a paper or notice "is served upon the party" by the specified means. "[A]fter service" could be read to refer not only to a party that has been served but also to a party that has made service. That reading would mean that a party who is allowed a specified time to act after making service can extend the time by choosing one of the means of service specified in

the rule, something that was never intended by the original rule or the amendment. Rules setting a time to act after making service include Rules 14(a)(1), 15(a)(1)(A), and 38(b)(1). "[A]fter being served" is substituted for "after service" to dispel any possible misreading.

Committee Notes on Rules—2023

The amendment adds "Juneteenth National Independence Day" to the list of legal holidays. See Juneteenth National Independence Day Act, P.L. 117-17 (2021) (amending 5 U.S.C. § 6103(a)).

‹ Rule 5.2. Privacy Protection For Filings Made with the Court Up TITLE III. PLEADINGS AND MOTIONS ›

Federal Rules of Civil Procedure Toolbox

- Wex: Civil Procedure:

5/6/25, 2:07 PM Rule 6. Computing and Extending Time; Time for Motion Papers | Federal Rules of Civil Procedure | US Law | LII / Legal Information Institute
Case 1:24-cv-03434-ACR Document 44-1 Filed 05/09/25 Page 185 of 271

Overview

https://www.law.cornell.edu/rules/frcp/rule_6 20/21

5/6/25, 2:07 PM Rule 6. Computing and Extending Time; Time for Motion Papers | Federal Rules of Civil Procedure | US Law | LII / Legal Information Institute
Case 1:24-cv-03434-ACR Document 44-1 Filed 05/09/25 Page 186 of 271

Accessibility About LII Contact us Advertise here Help Terms of use Privacy

https://www.law.cornell.edu/rules/frcp/rule_6 21/21

5/6/25, 1:40 PM Rule 12. Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing | Federal Rules of Civ…

LII > Federal Rules of Civil Procedure
> **Rule 12. Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing**

# Rule 12. Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing

(a) Time to Serve a Responsive Pleading.

Unless another time is specified by a federal statute, the time for serving a responsive pleading is as follows:

*(1) In General.*

(A) A defendant must serve an answer:

(i) within 21 days after being served with the summons and complaint; or

(ii) if it has timely waived service under Rule 4(d) , within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

(B) A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.

https://www.law.cornell.edu/rules/frcp/rule_12 1/18

   (C) A party must serve a reply to an answer within 21 days after being served with an order to reply, unless the order specifies a different time.

   (2) *United States and Its Agencies, Officers, or Employees Sued in an Official Capacity.* The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney.

   (3) *United States Officers or Employees Sued in an Individual Capacity.* A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later.

   (4) *Effect of a Motion.* Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

      (A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or

      (B) if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

   (1) lack of subject-matter jurisdiction;

   (2) lack of personal jurisdiction;

   (3) improper venue;

   (4) insufficient process;

   (5) insufficient service of process;

(6) failure to state a claim upon which relief can be granted; and

(7) failure to join a party under Rule 19 .

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

(c) Motion for Judgment on the Pleadings. After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.

(d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c) , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56 . All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

(e) Motion for a More Definite Statement. A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

(f) Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1) on its own; or

(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

(g) Joining Motions.

(1) *Right to Join.* A motion under this rule may be joined with any other motion allowed by this rule.

(2) *Limitation on Further Motions.* Except as provided in Rule 12(h)(2) or (3) , a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

(h) Waiving and Preserving Certain Defenses.

(1) *When Some Are Waived.* A party waives any defense listed in Rule 12(b)(2) –(5) by:

(A) omitting it from a motion in the circumstances described in Rule 12(g)(2) ; or

(B) failing to either:

(i) make it by motion under this rule; or

(ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

(2) *When to Raise Others.* Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b) , or to state a legal defense to a claim may be raised:

(A) in any pleading allowed or ordered under Rule 7(a) ;

(B) by a motion under Rule 12(c) ; or

(C) at trial.

(3) *Lack of Subject-Matter Jurisdiction.* If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

(i) Hearing Before Trial. If a party so moves, any defense listed in Rule 12(b)(1) –(7)—whether made in a pleading or by motion—and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial.

Notes

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 2, 2024, eff. Dec. 1, 2024.)

**Notes of Advisory Committee on Rules—1937**

*Note to Subdivision (a)* . 1. Compare [former] Equity Rules 12 (Issue of Subpoena—Time for Answer) and 31 (Reply—When Required—When Cause at Issue); 4 Mont.Rev.Codes Ann. (1935) §§9107, 9158; N.Y.C.P.A. (1937) §263; N.Y.R.C.P. (1937) Rules 109–111.

2. U.S.C., Title 28, §763 [now 547] (Petition in action against United States; service; appearance by district attorney) provides that the United States as a defendant shall have 60 days within which to answer or otherwise defend. This and other statutes which provide 60 days for the United States or an officer or agency thereof to answer or otherwise defend are continued by this rule. Insofar as any statutes not excepted in Rule 81 provide a different time for a defendant to defend, such statutes are modified. See U.S.C., Title 28, [former] §45 (District courts; practice and procedure in certain cases under the interstate commerce laws) (30 days).

3. Compare the last sentence of [former] Equity Rule 29 (Defenses—How Presented) and N.Y.C.P.A. (1937) §283. See Rule 15(a) for time within which to plead to an amended pleading.

*Note to Subdivisions (b) and (d)* . 1. See generally [former] Equity Rules 29 (Defenses—How Presented), 33 (Testing Sufficiency of Defense), 43 (Defect of Parties—Resisting Objection), and 44 (Defect of Parties—Tardy Objection); N.Y.C.P.A. (1937) §§277–280; N.Y.R.C.P. (1937) Rules 106–112; *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 25, r.r. 1–4; Clark, *Code Pleading* (1928) pp. 371–381.

2. For provisions authorizing defenses to be made in the answer or reply see *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 25, r.r. 1–4; 1 Miss.Code Ann. (1930) §§378, 379. Compare [former] Equity Rule 29 (Defenses—How Presented); U.S.C., Title 28, [former] §45 (District Courts; practice and procedure in certain cases under the interstate commerce laws). U.S.C., Title 28, [former] §45, substantially continued by this rule, provides:

"No replication need be filed to the answer, and objections to the sufficiency of the petition or answer as not setting forth a cause of action or defense must be taken at the final hearing or by motion to dismiss the petition based on said grounds, which motion may be made at any time before answer is filed." Compare Calif.Code Civ.Proc. (Deering, 1937) §433; 4 Nev.Comp.Laws (Hillyer, 1929) §8600. For provisions that the defendant may demur and answer at the same time, see Calif.Code Civ.Proc. (Deering, 1937) §431; 4 Nev.Comp.Laws (Hillyer, 1929) §8598.

3. [Former] Equity Rule 29 (Defenses—How Presented) abolished demurrers and provided that defenses in point of law arising on the face of the bill should be made by motion to dismiss or in the answer, with further provision that every such point of law going to the whole or material part of the cause or causes stated might be called up and disposed of before final hearing "at the discretion of the court." Likewise many state practices have abolished the demurrer, or retain it only to attack substantial and not formal defects. See 6 Tenn.Code Ann. (Williams, 1934) §8784; Ala.Code Ann. (Michie, 1928) §9479; 2 Mass.Gen.Laws (Ter.Ed., 1932) ch. 231, §§15–18; Kansas Gen.Stat.Ann. (1935) §§60–705, 60–706.

*Note to Subdivision (c)* . Compare [former] Equity Rule 33 (Testing Sufficiency of Defense); N.Y.R.C.P. (1937) Rules 111 and 112.

*Note to Subdivisions (e)* and (f). Compare [former] Equity Rules 20 (Further and Particular Statement in Pleading May Be Required) and 21 (Scandal and Impertinence); *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 19, r.r. 7, 7a, 7b, 8; 4 Mont.Rev.Codes Ann. (1935) §§9166, 9167; N.Y.C.P.A. (1937) §247; N.Y.R.C.P. (1937) Rules 103, 115, 116, 117; Wyo.Rev.Stat.Ann. (Courtright, 1931) §§89–1033, 89–1034.

*Note to Subdivision (g)* . Compare Rules of the District Court of the United States for the District of Columbia (1937), Equity Rule 11; N.M. Rules of Pleading, Practice and Procedure, 38 N.M.Rep. vii [105–408] (1934); Wash.Gen.Rules of the Superior Courts, 1 Wash.Rev.Stat.Ann. (Remington, 1932) p. 160, Rule VI (e) and (f).

*Note to Subdivision (h)* . Compare Calif.Code Civ.Proc. (Deering, 1937) §434; 2 Minn.Stat. (Mason, 1927) §9252; N.Y.C.P.A. (1937) §§278 and 279; Wash.Gen.Rules of the Superior Courts, 1 Wash.Rev.Stat.Ann. (Remington, 1932) p. 160, Rule VI (e). This rule continues U.S.C., Title 28, §80 [now 1359, 1447, 1919] (Dismissal or remand) (of action over which district court lacks jurisdiction), while U.S.C., Title 28, §399 [now 1653] (Amendments to show diverse citizenship) is continued by Rule 15.

**Notes of Advisory Committee on Rules—1946 Amendment**

*Subdivision (a)* . Various minor alterations in language have been made to improve the statement of the rule. All references to bills of particulars have been stricken in accordance with changes made in subdivision (e).

*Subdivision (b)* . The addition of defense (7), “failure to join an indispensable party”, cures an omission in the rules, which are silent as to the mode of raising such failure. See Commentary, *Manner of Raising Objection of Non-Joinder of Indispensable Party* (1940) 2 Fed.Rules Serv. 658 and (1942) 5 Fed.Rules Serv. 820. In one case, *United States v. Metropolitan Life Ins. Co* . (E.D.Pa. 1941) 36 F.Supp. 399, the failure to join an indispensable party was raised under Rule 12(c).

Rule 12(b)(6), permitting a motion to dismiss for failure of the complaint to state a claim on which relief can be granted, is substantially the same as the old demurrer for failure of a pleading to state a cause of action. Some courts have held that as the rule by its terms refers to statements in the complaint, extraneous matter on affidavits, depositions or otherwise, may not be introduced in support of the motion, or to resist it. On the other hand, in many cases the district courts have permitted the introduction of such material. When these cases have reached circuit courts of appeals in situations where the extraneous material so received shows that there is no genuine issue as to any material question of fact and that on the undisputed facts as disclosed by the affidavits or depositions, one party or the other is entitled to judgment as a matter of law, the circuit courts, properly enough, have been reluctant to dispose of the case merely on the face of the pleading, and in the interest of prompt disposition of the action have made a final disposition of it. In dealing with such situations the Second Circuit has made the sound suggestion that whatever its label or

original basis, the motion may be treated as a motion for summary judgment and disposed of as such. *Samara v. United States* (C.C.A.2d, 1942) 129 F.(2d) 594, cert. den. (1942) 317 U.S. 686; *Boro Hall Corp. v. General Motors Corp* . (C.C.A.2d, 1942) 124 F.(2d) 822, cert. den. (1943) 317 U.S. 695. See also *Kithcart v. Metropolitan Life Ins. Co* . (C.C.A.8th, 1945) 150 F.(2d) 997, aff'g 62 F.Supp. 93.

It has also been suggested that this practice could be justified on the ground that the federal rules permit “speaking” motions. The Committee entertains the view that on motion under Rule 12(b)(6) to dismiss for failure of the complaint to state a good claim, the trial court should have authority to permit the introduction of extraneous matter, such as may be offered on a motion for summary judgment, and if it does not exclude such matter the motion should then be treated as a motion for summary judgment and disposed of in the manner and on the conditions stated in Rule 56 relating to summary judgments, and, of course, in such a situation, when the case reaches the circuit court of appeals, that court should treat the motion in the same way. The Committee believes that such practice, however, should be tied to the summary judgment rule. The term “speaking motion” is not mentioned in the rules, and if there is such a thing its limitations are undefined. Where extraneous matter is received, by tying further proceedings to the summary judgment rule the courts have a definite basis in the rules for disposing of the motion.

The Committee emphasizes particularly the fact that the summary judgment rule does not permit a case to be disposed of by judgment on the merits on affidavits, which disclose a conflict on a material issue of fact, and unless this practice is tied to the summary judgment rule, the extent to which a court, on the introduction of such extraneous matter, may resolve questions of fact on conflicting proof would be left uncertain.

The decisions dealing with this general situation may be generally grouped as follows: (1) cases dealing with the use of affidavits and other extraneous material on motions; (2) cases reversing judgments to prevent final determination on mere pleading allegations alone.

Under group (1) are: *Boro Hall Corp. v. General Motors Corp* . (C.C.A.2d, 1942) 124 F.(2d) 822, cert. den. (1943) 317 U.S. 695; *Gallup v. Caldwell* (C.C.A.3d, 1941) 120 F.(2d) 90; *Central Mexico Light & Power Co. v. Munch* (C.C.A.2d, 1940) 116 F.(2d) 85; *National Labor Relations Board v.*

*Montgomery Ward & Co* . (App.D.C. 1944) 144 F.(2d) 528, cert. den. (1944) 65 S.Ct. 134; *Urquhart v. American-La France Foamite Corp* . (App.D.C. 1944) 144 F.(2d) 542; *Samara v. United States* (C.C.A.2d, 1942) 129 F.(2d) 594; *Cohen v. American Window Glass Co* . (C.C.A.2d, 1942) 126 F.(2d) 111; *Sperry Products Inc. v. Association of American Railroads* (C.C.A.2d, 1942) 132 F.(2d) 408; *Joint Council Dining Car Employees Local 370 v. Delaware, Lackawanna and Western R. Co* . (C.C.A.2d, 1946) 157 F.(2d) 417; *Weeks v. Bareco Oil Co* . (C.C.A.7th, 1941) 125 F.(2d) 84; *Carroll v. Morrison Hotel Corp* . (C.C.A.7th, 1945) 149 F.(2d) 404; *Victory v. Manning* (C.C.A.3rd, 1942) 128 F.(2d) 415; *Locals No. 1470, No. 1469, and 1512 of International Longshoremen's Association v. Southern Pacific Co* . (C.C.A.5th, 1942) 131 F.(2d) 605; *Lucking v. Delano* (C.C.A.6th, 1942) 129 F.(2d) 283; *San Francisco Lodge No. 68 of International Association of Machinists v. Forrestal* (N.D.Cal. 1944) 58 F.Supp. 466; *Benson v. Export Equipment Corp* . (N. Mex. 1945) 164 P.2d 380 (construing New Mexico rule identical with Rule 12(b)(6); *F. E. Myers & Bros. Co. v. Gould Pumps, Inc* . (W.D.N.Y. 1946) 9 Fed.Rules Serv. 12b.33, Case 2, 5 F.R.D. 132. Cf. *Kohler v. Jacobs* (C.C.A.5th, 1943) 138 F.(2d) 440; *Cohen v. United States* (C.C.A.8th, 1942) 129 F.(2d) 733.

Under group (2) are: *Sparks v. England* (C.C.A.8th, 1940) 113 F.(2d) 579; *Continental Collieries, Inc. v. Shober* (C.C.A.3d, 1942) 130 F.(2d) 631; *Downey v. Palmer* (C.C.A.2d 1940) 114 F.(2d) 116; *DeLoach v. Crowley's Inc* . (C.C.A.5th, 1942) 128 F.(2d) 378; *Leimer v. State Mutual Life Assurance Co. of Worcester, Mass* . (C.C.A.8th, 1940) 108 F.(2d) 302; *Rossiter v. Vogel* (C.C.A.2d, 1943) 134 F.(2d) 908, compare s. c. (C.C.A.2d, 1945) 148 F.(2d) 292; *Karl Kiefer Machine Co. v. United States Bottlers Machinery Co* . (C.C.A.7th, 1940) 113 F.(2d) 356; *Chicago Metallic Mfg. Co. v. Edward Katzinger Co* . (C.C.A.7th, 1941) 123 F.(2d) 518; *Louisiana Farmers' Protective Union, Inc. v. Great Atlantic & Pacific Tea Co. of America, Inc* . (C.C.A.8th, 1942) 131 F.(2d) 419; *Publicity Bldg. Realty Corp. v. Hannegan* (C.C.A.8th, 1943) 139 F.(2d) 583; *Dioguardi v. Durning* (C.C.A.2d, 1944) 139 F.(2d) 774; *Package Closure Corp. v. Sealright Co., Inc* . (C.C.A.2d, 1944) 141 F.(2d) 972; *Tahir Erk v. Glenn L. Martin Co* . (C.C.A.4th, 1941) 116 F.(2d) 865; *Bell v. Preferred Life Assurance Society of Montgomery, Ala* . (1943) 320 U.S. 238.

The addition at the end of subdivision (b) makes it clear that on a motion under Rule 12(b)(6) extraneous material may not be considered if the court excludes it, but that if the court does not exclude such material the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. It will also be observed that if a motion

under Rule 12(b)(6) is thus converted into a summary judgment motion, the amendment insures that both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking a party by surprise through the conversion of the motion into a motion for summary judgment. In this manner and to this extent the amendment regularizes the practice above described. As the courts are already dealing with cases in this way, the effect of this amendment is really only to define the practice carefully and apply the requirements of the summary judgment rule in the disposition of the motion.

*Subdivision (c)* . The sentence appended to subdivision (c) performs the same function and is grounded on the same reasons as the corresponding sentence added in subdivision (b).

*Subdivision (d)* . The change here was made necessary because of the addition of defense (7) in subdivision (b).

*Subdivision (e)* . References in this subdivision to a bill of particulars have been deleted, and the motion provided for is confined to one for a more definite statement, to be obtained only in cases where the movant cannot reasonably be required to frame an answer or other responsive pleading to the pleading in question. With respect to preparations for trial, the party is properly relegated to the various methods of examination and discovery provided in the rules for that purpose. *Slusher v. Jones* (E.D.Ky. 1943) 7 Fed.Rules Serv. 12e.231, Case 5, 3 F.R.D. 168; *Best Foods, Inc. v. General Mills, Inc* . (D.Del. 1943) 7 Fed.Rules Serv. 12e.231, Case 7, 3 F.R.D. 275; *Braden v. Callaway* (E.D.Tenn. 1943) 8 Fed.Rules Serv. 12e.231, Case 1 (". . . most courts . . . conclude that the definiteness required is only such as will be sufficient for the party to prepare responsive pleadings"). Accordingly, the reference to the 20 day time limit has also been eliminated, since the purpose of this present provision is to state a time period where the motion for a bill is made for the purpose of preparing for trial.

Rule 12(e) as originally drawn has been the subject of more judicial rulings than any other part of the rules, and has been much criticized by commentators, judges and members of the bar. See general discussion and cases cited in 1 *Moore's Federal Practice* (1938), Cum.Supplement §12.07, under "Page 657"; also, Holtzoff, *New Federal Procedure and the Courts* (1940) 35–41. And compare vote of Second Circuit Conference of Circuit and District Judges (June 1940) recommending the abolition of the bill of particulars; *Sun Valley Mfg. Co. v.*

*Mylish* (E.D.Pa. 1944) 8 Fed.Rules Serv. 12e.231, Case 6 ("Our experience . . . has demonstrated not only that 'the office of the bill of particulars is fast becoming obsolete' . . . but that in view of the adequate discovery procedure available under the Rules, motions for bills of particulars should be abolished altogether."); *Walling v. American Steamship Co* . (W.D.N.Y. 1945) 4 F.R.D. 355, 8 Fed.Rules Serv. 12e.244, Case 8 (". . . the adoption of the rule was ill advised. It has led to confusion, duplication and delay.") The tendency of some courts freely to grant extended bills of particulars has served to neutralize any helpful benefits derived from Rule 8, and has overlooked the intended use of the rules on depositions and discovery. The words "or to prepare for trial"—eliminated by the proposed amendment—have sometimes been seized upon as grounds for compulsory statement in the opposing pleading of all the details which the movant would have to meet at the trial. On the other hand, many courts have in effect read these words out of the rule. See *Walling v. Alabama Pipe Co* . (W.D.Mo. 1942) 6 Fed.Rules Serv. 12e.244, Case 7; *Fleming v. Mason & Dixon Lines, Inc* . (E.D.Tenn. 1941) 42 F.Supp. 230; *Kellogg Co. v. National Biscuit Co* . (D.N.J. 1941) 38 F.Supp. 643; *Brown v. H. L. Green Co* . (S.D.N.Y. 1943) 7 Fed.Rules Serv. 12e.231, Case 6; *Pedersen v. Standard Accident Ins. Co* . (W.D.Mo. 1945) 8 Fed.Rules Serv. 12e.231, Case 8; *Bowles v. Ohse* (D.Neb. 1945) 4 F.R.D. 403, 9 Fed.Rules Serv. 12e.231, Case 1; *Klages v. Cohen* (E.D.N.Y. 1945) 9 Fed.Rules Serv. 8a.25, Case 4; *Bowles v. Lawrence* (D.Mass. 1945) 8 Fed.Rules Serv. 12e.231, Case 19; *McKinney Tool & Mfg. Co. v. Hoyt* (N.D.Ohio 1945) 9 Fed.Rules Serv. 12e.235, Case 1; *Bowles v. Jack* (D.Minn. 1945) 5 F.R.D. 1, 9 Fed.Rules Serv. 12e.244, Case 9. And it has been urged from the bench that the phrase be stricken. *Poole v. White* (N.D.W.Va. 1941). 5 Fed.Rules Serv. 12e.231, Case 4, 2 F.R.D. 40. See also *Bowles v. Gabel* (W.D.Mo. 1946) 9 Fed.Rules Serv. 12e.244, Case 10 ("The courts have never favored that portion of the rules which undertook to justify a motion of this kind for the purpose of aiding counsel in preparing his case for trial.").

   *Subdivision (f)* . This amendment affords a specific method of raising the insufficiency of a defense, a matter which has troubled some courts, although attack has been permitted in one way or another. See *Dysart v. Remington-Rand, Inc* . (D.Conn. 1939) 31 F.Supp. 296; *Eastman Kodak Co. v. McAuley* (S.D.N.Y. 1941) 4 Fed.Rules Serv. 12f.21, Case 8, 2 F.R.D. 21; *Schenley Distillers Corp. v. Renken* (E.D.S.C. 1940) 34 F.Supp. 678; *Yale Transport Corp. v. Yellow Truck & Coach Mfg. Co* . (S.D.N.Y. 1944) 3 F.R.D. 440; *United States v. Turner Milk Co* . (N.D.Ill.

1941) 4 Fed.Rules Serv. 12b.51, Case 3, 1 F.R.D. 643; *Teiger v. Stephan Oderwald, Inc* . (S.D.N.Y. 1940) 31 F.Supp. 626; *Teplitsky v. Pennsylvania R. Co* . (N.D.Ill. 1941) 38 F.Supp. 535; *Gallagher v. Carroll* (E.D.N.Y. 1939) 27 F.Supp. 568; *United States v. Palmer* (S.D.N.Y. 1939) 28 F.Supp. 936. And see *Indemnity Ins. Co. of North America v. Pan American Airways, Inc* . (S.D.N.Y. 1944) 58 F.Supp. 338; Commentary, *Modes of Attacking Insufficient Defenses in the Answer* (1939) 1 Fed.Rules Serv. 669 (1940) 2 Fed.Rules Serv. 640.

*Subdivision (g)* . The change in title conforms with the companion provision in subdivision (h).

The alteration of the "except" clause requires that other than provided in subdivision (h) a party who resorts to a motion to raise defenses specified in the rule, must include in one motion all that are then available to him. Under the original rule defenses which could be raised by motion were divided into two groups which could be the subjects of two successive motions.

*Subdivision (h)* . The addition of the phrase relating to indispensable parties is one of necessity.

**Notes of Advisory Committee on Rules—1963 Amendment**

This amendment conforms to the amendment of Rule 4(e). See also the Advisory Committee's Note to amended Rule 4(b).

**Notes of Advisory Committee on Rules—1966 Amendment**

*Subdivision (b)(7)* . The terminology of this subdivision is changed to accord with the amendment of Rule 19. See the Advisory Committee's Note to Rule 19, as amended, especially the third paragraph therein before the caption "Subdivision (c)."

*Subdivision (g)* . Subdivision (g) has forbidden a defendant who makes a preanswer motion under this rule from making a further motion presenting any defense or objection which was available to him at the time he made the first motion and which he could have included, but did not in fact include therein. Thus if the defendant moves before answer to dismiss the complaint for failure to state a claim, he is barred from making a further motion presenting

the defense of improper venue, if that defense was available to him when he made his original motion. Amended subdivision (g) is to the same effect. This required consolidation of defenses and objections in a Rule 12 motion is salutary in that it works against piecemeal consideration of a case. For exceptions to the requirement of consolidation, see the last clause of subdivision (g), referring to new subdivision (h)(2).

*Subdivision (h)* . The question has arisen whether an omitted defense which cannot be made the basis of a second motion may nevertheless be pleaded in the answer. Subdivision (h) called for waiver of "* * * defenses and objections which he [defendant] does not present * * * by motion * * * or, if he has made no motion, in his answer * * *." If the clause "if he has made no motion," was read literally, it seemed that the omitted defense was waived and could not be pleaded in the answer. On the other hand, the clause might be read as adding nothing of substance to the preceding words; in that event it appeared that a defense was not waived by reason of being omitted from the motion and might be set up in the answer. The decisions were divided. Favoring waiver, see *Keefe v. Derounian* , 6 F.R.D. 11 (N.D.Ill. 1946); *Elbinger v. Precision Metal Workers Corp* ., 18 F.R.D. 467 (E.D.Wis. 1956); see also *Rensing v. Turner Aviation Corp* ., 166 F.Supp. 790 (N.D.Ill. 1958); *P. Beiersdorf & Co. v. Duke Laboratories, Inc* ., 10 F.R.D. 282 (S.D.N.Y. 1950); *Neset v. Christensen* , 92 F.Supp. 78 (E.D.N.Y. 1950). Opposing waiver, see *Phillips v. Baker* , 121 F.2d 752 (9th Cir. 1941); *Crum v. Graham* , 32 F.R.D. 173 (D.Mont. 1963) (regretfully following the Phillips case); see also *Birnbaum v. Birrell* , 9 F.R.D. 72 (S.D.N.Y. 1948); *Johnson v. Joseph Schlitz Brewing Co* ., 33 F.Supp. 176 (E.D.Tenn. 1940); cf. *Carter v. American Bus Lines, Inc* ., 22 F.R.D. 323 (D.Neb. 1958).

Amended subdivision (h)(1)(A) eliminates the ambiguity and states that certain specified defenses which were available to a party when he made a preanswer motion, but which he omitted from the motion, are waived. The specified defenses are lack of jurisdiction over the person, improper venue, insufficiency of process, and insufficiency of service of process (see Rule 12(b)(2)–(5)). A party who by motion invites the court to pass upon a threshold defense should bring forward all the specified defenses he then has and thus allow the court to do a reasonably complete job. The waiver reinforces the policy of subdivision (g) forbidding successive motions.

By amended subdivision (h)(1)(B), the specified defenses, even if not waived by the operation of (A), are waived by the failure to raise them by a motion under Rule 12 or in the responsive pleading or any amendment thereof to which the party is entitled as a matter of course. The specified defenses are of such a character that they should not be delayed and brought up for the first time by means of an application to the court to amend the responsive pleading.

Since the language of the subdivisions is made clear, the party is put on fair notice of the effect of his actions and omissions and can guard himself against unintended waiver. It is to be noted that while the defenses specified in subdivision (h)(1) are subject to waiver as there provided, the more substantial defenses of failure to state a claim upon which relief can be granted, failure to join a party indispensable under Rule 19, and failure to state a legal defense to a claim (see Rule 12(b)(6), (7), (f)), as well as the defense of lack of jurisdiction over the subject matter (see Rule 12(b)(1)), are expressly preserved against waiver by amended subdivision (h)(2) and (3).

### Notes of Advisory Committee on Rules—1987 Amendment

The amendments are technical. No substantive change is intended.

### Notes of Advisory Committee on Rules—1993 Amendment

Subdivision (a) is divided into paragraphs for greater clarity, and paragraph (1)(B) is added to reflect amendments to Rule 4. Consistent with Rule 4(d)(3), a defendant that timely waives service is allowed 60 days from the date the request was mailed in which to respond to the complaint, with an additional 30 days afforded if the request was sent out of the country. Service is timely waived if the waiver is returned within the time specified in the request (30 days after the request was mailed, or 60 days if mailed out of the country) and before being formally served with process. Sometimes a plaintiff may attempt to serve a defendant with process while also sending the defendant a request for waiver of service; if the defendant executes the waiver of service within the time specified and before being served with process, it should have the longer time to respond afforded by waiving service.

The date of sending the request is to be inserted by the plaintiff on the face of the request for waiver and on the waiver itself. This date is used to measure the return day for the waiver form, so that the plaintiff can know on a day certain whether formal service of process will be necessary; it is also a useful date to measure the time for answer when service is waived. The defendant who returns the waiver is given additional time for answer in order to assure that it loses nothing by waiving service of process.

### Committee Notes on Rules—2000 Amendment

Rule 12(a)(3)(B) is added to complement the addition of Rule 4(i)(2)(B). The purposes that underlie the requirement that service be made on the United States in an action that asserts individual liability of a United States officer or employee for acts occurring in connection with the performance of duties on behalf of the United States also require that the time to answer be extended to 60 days. Time is needed for the United States to determine whether to provide representation to the defendant officer or employee. If the United States provides representation, the need for an extended answer period is the same as in actions against the United States, a United States agency, or a United States officer sued in an official capacity.

An action against a former officer or employee of the United States is covered by subparagraph (3)(B) in the same way as an action against a present officer or employee. Termination of the relationship between the individual defendant and the United States does not reduce the need for additional time to answer.

*GAP Report* . No changes are recommended for Rule 12 as published.

### Committee Notes on Rules—2007 Amendment

The language of Rule 12 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Former Rule 12(a)(4)(A) referred to an order that postpones disposition of a motion “until the trial on the merits.” Rule 12(a)(4) now refers to postponing disposition “until trial.” The new expression avoids the ambiguity that inheres in “trial on the merits,” which may become

confusing when there is a separate trial of a single issue or another event different from a single all-encompassing trial.

*Changes Made After Publication and Comment* . See Note to Rule 1, supra.

### Committee Notes on Rules—2009 Amendment

The times set in the former rule at 10 or 20 days have been revised to 14 or 21 days. See the Note to Rule 6.

Committee Notes on Rules—2024 Amendment

Rule 12 is amended to make it clear that a federal statute that specifies another time supersedes the times to
serve a responsive pleading set by paragraphs (a)(2) and (3). Paragraph (a)(1) incorporates this provision, but the structure of subdivision (a) does not seem to extend it to paragraphs (2) and (3). There is no reason to supersede an inconsistent statute by any part of Rule 12(a). The amended structure recognizes the priority of any statute for all of paragraphs (1), (2), and (3).

‹ Rule 11. Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions Up Rule 13. Counterclaim and Crossclaim ›



## Federal Rules of Civil Procedure Toolbox

- Wex: Civil Procedure: Overview

5/6/25, 1:40 PM Rule 12. Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing | Federal Rules of Civ…
Case 1:24-cv-03434-ACR Document 44-1 Filed 05/09/25 Page 204 of 271

Accessibility About LII Contact us Advertise here Help Terms of use Privacy

https://www.law.cornell.edu/rules/frcp/rule_12 18/18

FILED
JUN 16 2021
Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

EXHIBIT 5

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Voting: Chief Judge Howell, Judges Kollar-Kotelly, Boasberg, A.B. Jackson, Contreras, K.B. Jackson, Chutkan, Moss, Mehta, Kelly, McFadden, Hogan, Friedman, Walton, Bates and Leon.

**ORDER**

It is the 16th day of June 2021 ordered that effective immediately, the underlisted sections of the Local Rules are amended as follows, with the Clerk of Court being authorized to make technical and conforming changes as necessary.

[New language is underlined; old language is stricken]

## LCvR 5.4

## CASES ASSIGNED TO CASE MANAGEMENT/ELECTRONIC CASE FILING (CM/ECF) SYSTEM

**(a) DOCUMENTS TO BE FILED BY ELECTRONIC MEANS**

Except as otherwise provided in this Rule 5.4, all documents to be filed with the Court must be filed by electronic text-searchable means in a manner authorized by the Clerk.

**(b) OBTAINING AND USING ELECTRONIC FILING PASSWORD; SIGNATURE; CONSENT TO SERVICE BY ELECTRONIC MEANS**

(1) An attorney must obtain a CM/ECF user name and password from the Clerk in order to enter an appearance electronically, to file documents electronically with the Court, or to receive documents filed electronically by other parties or matters entered electronically on the docket by the Court.

(2) A *pro se* party may obtain a CM/ECF user name and password from the Clerk with leave of Court. Whether leave of Court should be granted is within the discretion of the judge to whom the case is assigned. To obtain leave of Court, the *pro se* party must file a written motion entitled "Motion for CM/ECF User Name and Password," describing the party's access to the internet, confirming the capacity to file documents and receive filings electronically on a regular basis, and certifying that he or she either has successfully completed the entire Clerk's Office on-line tutorial or has been permitted to file electronically in other federal courts.

(3) A CM/ECF password may be used only by the person to whom it is assigned, or, in the case of an attorney, by that attorney or an authorized employee or agent of that attorney's law office or organization.

(4) The use of a CM/ECF password to login and submit documents creates an electronic record that operates and serves as the signature of the person to whom

the password is assigned for all purposes under the Federal Rules of Civil Procedure and the Local Rules of this Court.

(5)     Electronically filing a document that contains a declaration, verification, certificate, sworn statement, oath or affidavit certifies that the original signed document is in the possession of the attorney or *pro se* party responsible for the filing and that it is available for review upon request by a party or by the Court.

(6)     An attorney or *pro se* party who obtains a CM/ECF password consents to electronic service of all documents, subsequent to the original complaint, that are filed by electronic means pursuant to Fed. R. Civ. P. 5(b)(2)(E). Such counsel and *pro se* parties are responsible for monitoring their e-mail accounts, and, upon receipt of notice of an electronic filing, for retrieving the noticed filing.

**(c)     FILING BY ELECTRONIC MEANS**

(1)     Filing a document electronically following procedures set forth in this Rule 5.4 constitutes filing for all purposes under the Federal Rules of Civil Procedure and the Local Rules of this Court.

(2)     A person filing a document by electronic means is responsible for insuring the accuracy of the official docket entry generated by the CM/ECF software.

(3)     Any document, order, or notice filed or docketed electronically by the Court or by the Clerk shall have the same binding authority as one filed on paper.

**(d)     SERVICE**

(1)     Electronically filing a document operates to effect service of the document on *pro se* parties who have obtained CM/ECF passwords and on all counsel. *Pro se* parties who have not obtained CM/ECF passwords must serve and be served as otherwise provided in Fed. R. Civ. P. 5(b).

(2)     The requirement of a certificate of service or other proof of service is satisfied by the automatic notice of filing sent by the CM/ECF software to *pro se* parties who have obtained CM/ECF passwords and to counsel. A separate certificate of service or other proof of service showing that a paper copy was served on a party is required when that party does not receive electronic notification of filings.

**(e)     EXCEPTIONS TO REQUIREMENT OF ELECTRONIC FILING**

(1)     Every unsealed document (including an administrative record or a record of state court proceedings) must be filed electronically. Every document filed under seal in a totally sealed case shall be filed in paper form accompanied by an electronic copy in a format deemed compatible by the Clerk's Office with CM/ECF filing in conformity with the requirements of LCvR 5.1. Any document, exhibit, or attachment, including sealed material that (A) is not in a format that readily permits electronic filing, such as a map, chart or DVD, or (B) is illegible when

scanned into electronic format, is to be maintained in the possession of the attorney or *pro se* party responsible for the filing. Such a filing shall be made available for a party or the Court and must be identified in a Notice of Filing filed with the Court. A document or item filed pursuant to this subsection shall be served, if it is necessary to serve it, by mail or by hand delivery, unless the parties have otherwise agreed.

(2) A party appearing *pro se* shall file with the Clerk and serve documents in paper form and must be served with documents in paper form, unless the *pro se* party has obtained a CM/ECF password.

**(f) PRIVACY REQUIREMENTS**

The following personal identifiers shall be excluded, or redacted where inclusion is necessary, from all electronically filed documents unless otherwise ordered by the Court.

(1) Social Security numbers. If an individual's Social Security number must be included in a pleading, only the last four digits of that number should be used.

(2) Names of minor children. If the involvement of a minor child must be mentioned, only the initials of that child should be used.

(3) Dates of birth. If an individual's date of birth must be included in a pleading, only the year should be used.

(4) Financial account numbers. If a financial account number is relevant, only the last four digits should be used.

A party wishing to file a document containing unredacted personal identifiers listed in LCvR 5.4 (f) (1)-(4) may file an unredacted document under seal. This document shall be retained by the Court as part of the record.

**(g) INCORRECT AND NONCONFORMING FILINGS AND TECHNICAL DIFFICULTIES**

(1) If a complaint filed electronically does not conform to the requirements of this Rule, LCvR 5.1 and Fed. R. Civ. P. 10(a), the Clerk will notify the filing party of the identified deficiency and request that the deficiency be corrected by the end of the next business day. If the deficiency is not corrected by the end of the next business day, the Clerk will forward the complaint to the assigned judge with notice of the identified deficiency and a recommendation, if appropriate, for sua sponte dismissal for failure to comply with applicable rules.

~~(1)~~(2) The Clerk may direct a party or non-party to re-file a document that has been incorrectly filed, or to correct an erroneous or inaccurate docket entry.

~~(2)~~(3) If a *pro se* party who has been given leave to file electronically or an attorney presents an unsealed document for filing in paper form, the Clerk may direct the *pro se* party or attorney to file the document electronically or present it in a format deemed by the Clerk's Office to be compatible with CM/ECF filing. The document will be deemed filed on the date it was first presented for filing if, no later than the next business day, the *pro se* party or attorney files the document electronically or presents it in a format deemed by the Clerk's Office to be compatible with CM/ECF filing.

(4) The inability to complete an electronic filing because of technical problems may constitute "cause" for an order enlarging time or "excusable neglect" for the failure to act within the specified time, within the meaning of Fed. R. Civ. P. 6(b). A filer encountering technical problems with a CM/ECF filing shall immediately notify the Clerk's Office of the problem either by email or by telephone, followed promptly by written confirmation. This Rule does not provide authority to extend statutory and jurisdictional time limits.

***COMMENT to LCvR 5.4(a):*** *This Rule does not apply to cases that are filed in paper form and are not assigned to the CM/ECF system. Eventually, however, all new civil cases will be assigned to the CM/ECF system.*

***COMMENT TO LCvR 5.4(c)(3):*** *An opinion, memorandum, order, judgment, default, or other notice issued electronically by the Court or by the Clerk bears an electronic "signature" and does not require a handwritten signature to be official and binding. Also, an order or notice (such as a minute entry or scheduling notice) entered on the docket without an attached document is official and binding.*

***COMMENT to LCvR 5.4(g):*** *Notice to the Clerk that technical problems interfered with electronic filing can provide a contemporaneous record in support of a party's motion under Fed. R. Civ. P. 6(b) for an order enlarging time. Only the Court, not the Clerk, may enlarge time. However, if the filing deadline is statutory and jurisdictional, electronic filers should take care not to wait until the last minute to file since not even technical difficulties will provide a means for the Court to extend the deadline.*

# LCvR 11.1

## NAMES AND ADDRESSES OF PARTIES AND ATTORNEYS

The first filing by or on behalf of a party shall have in the caption the name and full residence address of the party.  Where a person is sued in an official capacity, the person's official address  shall be used.  If the party is appearing *pro se*, the caption shall also include the party's  telephone number.  Those filing *pro se in forma pauperis* must provide in the caption the name  and full residence address or official address of each party.  Failure to provide the address  information within 30 days upon filing may result in the dismissal of the case against the  defendant.  All papers signed by an attorney shall contain the name, address, telephone number,  and bar identification number of the attorney.  Notice of change in address or telephone number  of an attorney or a party not represented by an attorney must be filed within 14 days of the  change.  Unless changed by notice filed with the Clerk, the address and telephone number of a  party or an attorney noted on the first filing shall be conclusively taken as the last known address  and telephone number of the party or attorney.

FOR THE COURT:

Beryl A. Howell
Chief Judge

An official website of the United States government Here's how you know

## In This Section

### Related Documents

- Code Share Report

### Contact Us

**Office of Aviation Analysis**
Office of Aviation and International Affairs
1200 New Jersey Ave, SE
Washington, DC 20590
United States
**Phone:** (202) 366-5903
**Business Hours:**
8:30am-5:00pm ET, M-F

If you are deaf, hard of hearing, or have a speech disability, please dial 7-1-1 to access telecommunications relay services.

# Code Sharing

## Overview

Code sharing is a marketing arrangement in which an airline places its designator code on a flight operated by another airline, and sells tickets for that flight. Airlines throughout the world continue to form code-share arrangements to strengthen or expand their market

from the Department in the form of a Statement of Authorization under Part 212 of the Department's economic regulations, 14 CFR Part 212. The Department approves the application if it determines that it is in the public interest.

## Code Share List

The U.S. Air Carrier Licensing Division's code-share list is an informal compilation of code-share relationships. As such, it does not represent a complete compilation of all code shares. New code-share relationships are continually being negotiated, and the ones reflected in the attached listing may or may not be still in place or be of a continuing nature. Similarly, the list may not reflect all existing code shares of a particular type, or all existing types of code shares. This list is not an official document of the Department of Transportation and, accordingly, should not be relied upon or cited as such.

- Code-Share Report

Note: This list is comprised of only those carriers whose code-share relationships are of a new or continuing basis. Dormant code-share relationships to the extent known have been deleted.

## How Operations Are Assessed

In assessing the public interest benefits, the Department considers whether the code-share operations are provided for in a bilateral agreement between the United States and the homeland government of the foreign air carrier(s) involved, the benefits to the public from expansion of services and fare options, and the the impact the code share would have on airline competition. Before any code-shared operations can be implemented, the U.S. carrier must conduct a safety audit of its foreign carrier code-share partner to ensure that the operations meet acceptable international standards and submit the results of that audit for review by the Federal Aviation Administration.

EXHIBIT 7

**BEFORE THE**
**U.S. DEPARTMENT OF TRANSPORTATION**
**OFFICE OF THE SECRETARY**
**WASHINGTON, D.C.**

| | |
|---|---|
| Joint Application of<br><br>AMERICAN AIRLINES, INC.<br>and<br>FINNAIR OYJ<br><br>under 14 CFR Part 212 for statements of authorization (blanket codesharing) | Docket DOT-OST-1999-6544 |

**JOINT NOTICE OF ADDITIONAL CODESHARING OF AMERICAN AIRLINES, INC. AND FINNAIR OYJ**

Communications with respect to this document should be addressed to:

Arjun Garg
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street NW
Washington, DC 20004-1109
Tel: (202) 637-6423
Fax: (202) 637-5910
arjun.garg@hoganlovells.com

*Counsel for American Airlines, Inc.*

Molly Wilkinson
Vice President - Regulatory Affairs
American Airlines, Inc.
1200 17th Street, NW, Suite 400
Washington, DC 20036

Evelyn D. Sahr
Drew M. Derco
Andrew P. Orr
Eckert Seamans Cherin & Mellott, LLC
1717 Pennsylvania Ave., N.W.
12th Floor
Washington, DC 20006
Tel: 202-659-6622
esahr@eckertseamans.com
dderco@eckertseamans.com
aorr@eckertseamans.com

*Counsel for Finnair OYJ*

November 5, 2024

**BEFORE THE**
**U.S. DEPARTMENT OF TRANSPORTATION**
**OFFICE OF THE SECRETARY**
**WASHINGTON, D.C.**

| | |
|---|---|
| Joint Application of<br><br>AMERICAN AIRLINES, INC.<br>and<br>FINNAIR OYJ<br><br>under 14 CFR Part 212 for statements of authorization (blanket codesharing) | Docket DOT-OST-1999-6544<br><br>November 5, 2024 |

**JOINT NOTICE OF ADDITIONAL CODESHARING OF AMERICAN AIRLINES, INC. AND FINNAIR OYJ**

Pursuant to condition (c) of the Notice of Action Taken issued in this docket on January 7, 2000, American Airlines, Inc. ("American") and Finnair OYJ ("Finnair") hereby jointly notify the Department that, beginning no earlier than 30 days from the date of this Notice, they will introduce codeshare service with Finnair's AY* designator code being displayed on flights on the following non-Open Skies routes operated by American or American Eagle:

Dallas/Fort Worth (DFW) – Leon/Guanajuato, Mexico (BJX)

Dallas/Fort Worth (DFW) – Cancun, Mexico (CUN)

Dallas/Fort Worth (DFW) – Cozumel, Mexico (CZM)

Dallas/Fort Worth (DFW) – Guadalajara, Mexico (GDL)

Dallas/Fort Worth (DFW) – Mexico City, Mexico (MEX)

Dallas/Fort Worth (DFW) – Merida, Mexico (MID)

Dallas/Fort Worth (DFW) – Monterrey, Mexico (MTY)

Dallas/Fort Worth (DFW) – Oaxaca, Mexico (OAX)

Dallas/Fort Worth (DFW) – Puerto Vallarta, Mexico (PVR)

Dallas/Fort Worth (DFW) – Queretaro, Mexico (QRO)

Dallas/Fort Worth (DFW) – San Jose del Cabo, Mexico (SJD)

Dallas/Fort Worth (DFW) – Tampico, Mexico (TAM)

Dallas/Fort Worth (DFW) – Ixtapa/Zihuatanejo, Mexico (ZIH)

These codeshare services are in the public interest and fully consistent with the Air Transport Agreement Between the Government of the United States of America and the Government of the United Mexican States, Article 8.7 (Dec. 18, 2015). American and Finnair will continue to notify the Department no later than 30 days before commencing any additional codeshare services to or from non-Open Skies countries.

Respectfully submitted,

Evelyn D. Sahr

Arjun Garg
Hogan Lovells US LLP

*Counsel for American Airlines, Inc.*

Evelyn D. Sahr
Drew M. Derco
Andrew P. Orr
Eckert Seamans Cherin & Mellott, LLC

*Counsel for Finnair OYJ*

**Certificate of Service**

I certify that, on November 5, 2024, I caused to be served a copy of the foregoing Joint Notice of Additional Codesharing by email upon those addressees listed below:

| Air Carrier | Name | Email Address |
|---|---|---|
| Alaska | David Heffernan | dheffernan@cozen.com |
| Allegiant | Aaron Goerlich | agoerlich@ggh-airlaw.com |
| Amerijet | Roy Leon | rleon@amerijet.com |
| Amerijet | Charles Donley | charles.donley@pillsburylaw.com |
| Atlas | Sascha Van der Bellen | sascha.vanderbellen@atlasair.com |
| Delta Air Lines | Steve Seiden | steven.seiden@delta.com |
| Delta Air Lines | Chris Walker | chris.walker@delta.com |
| Federal Express | Anne Bechdolt | anne.bechdolt@fedex.com |
| Federal Express | Brian Hedberg | brian.hedberg@fedex.com |
| Federal Express | Sandra Lunsford | sllunsford@fedex.com |
| Frontier | Howard Diamond | howard.diamond@flyfrontier.com |
| JetBlue | Robert Land | robert.land@jetblue.com |
| JetBlue | Reese Davidson | reese.davidson@jetblue.com |
| Kalitta Air | Jonathon H. Foglia | jfoglia@cozen.com |
| Polar Air Cargo | Kevin Montgomery | kevin.montgomery@polaraircargo.com |
| Southwest | Leslie Abbott | leslie.abbott@wnco.com |
| Southwest | Dallas Thomas | dallas.thomas@wnco.com |
| Spirit Airlines | David Kirstein | dkirstein@yklaw.com |
| Spirit Airlines | Joanne Young | jyoung@yklaw.com |
| Sun Country | Rose Neale | rose.neale@suncountry.com |
| United | Dan Weiss | dan.weiss@united.com |
| United | Steve Morrissey | steve.morrissey@united.com |
| United | Amna Arshad | aarshad@crowell.com |
| UPS | Dontai Smalls | dsmalls@ups.com |
| UPS | Marina O'Brien | Marina.OBrien@hklaw.com |
| UPS | Anita Mosner | Anita.Mosner@hklaw.com |
| | | |
| | Benjamin Taylor | benjamin.taylor@dot.gov |
| | Robert Finamore | robert.finamore@dot.gov |
| | Brett Kruger | brett.kruger@dot.gov |
| | Kristen Gatlin | kristen.gatlin@dot.gov |
| | Joseph Landart | joseph.landart@dot.gov |
| | Tricia Kubrin | tricia.kubrin@dot.gov |
| | Wesley Mooty | wes.mooty@faa.gov |
| | Kary Hintz-Tate | Hintz-TateK@state.gov |
| | Eugene Alford | eugene.alford@trade.gov |
| | Info | info@airlineinfo.com |

______________________

An official website of New York State.
Here's how you know

EXHIBIT 8

# Department of State
## Division of Corporations

## Entity Information

Return to Results | Return to Search

Entity Details

**ENTITY NAME:** GULF AIR B.S.C.(C)
**DOS ID:** 6801698
**FOREIGN LEGAL NAME:** GULF AIR B.S.C.(C)
**FICTITIOUS NAME:**
**ENTITY TYPE:** FOREIGN BUSINESS CORPORATION
**DURATION DATE/LATEST DATE OF DISSOLUTION:**
**SECTIONOF LAW:** BUSINESS CORPORATION - 1304 BUSINESS CORPORATION LAW - BUSINESS CORPORATION LAW
**ENTITY STATUS:** ACTIVE
**DATE OF INITIAL DOS FILING:** 04/04/2023
**REASON FOR STATUS:**
**EFFECTIVE DATE INITIAL FILING:** 04/04/2023
**INACTIVE DATE:**
**FOREIGN FORMATION DATE:** 04/07/1978
**STATEMENT STATUS:** CURRENT
**COUNTY:** QUEENS
**NEXT STATEMENT DUE DATE:** 04/30/2027
**JURISDICTION:** BAHRAIN
**NFP CATEGORY:**

ENTITY DISPLAY | NAME HISTORY | FILING HISTORY | MERGER HISTORY | ASSUMED NAME HISTORY

Service of Process on the Secretary of State as Agent

**The Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery:**

**Name:** C T CORPORATION

**Address:** 28 LIBERTY ST 42ND FLOOR, NEW YORK, NY, UNITED STATES, 10005

**Electronic Service of Process on the Secretary of State as agent: Not Permitted**

Chief Executive Officer's Name and Address

**Name:** DR. JEFFREY GOH

**Address:** 122, ROAD 2403, BLOCK 224, MUHARRAQ, BAHRAIN

Principal Executive Office Address

**Address:** 122, ROAD 2403, BLOCK 224, MUHARRAQ, BAHRAIN

Registered Agent Name and Address

5/6/25, 4:44 PM Case 1:24-cv-03434-ACR Document 44-1 Public Inquiry Filed 05/09/25 Page 216 of 271

**Name:**

**Address:**

Entity Primary Location Name and Address

**Name:**

**Address:**

Farmcorpflag

**Is The Entity A Farm Corporation:** NO

Stock Information

| Share Value | Number Of Shares | Value Per Share |
| --- | --- | --- |

Agencies • App Directory • Counties • Events • Programs • Services

https://apps.dos.ny.gov/publicInquiry/EntityDisplay 2/2

EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SAMIHA AYYASH, *et al.*,

Plaintiffs,

v.

GULF AIR B.S.C. (C), *et al.*,

Defendants.

Case No. 1:24-cv-03434-ACR

**DECLARATION OF CAPTAIN QASIM GHULOOM ISMAEEL**

I, Captain Qasim Ghuloom Ismaeel, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am employed by Gulf Air B.S.C. (c) ("Gulf Air"), a Defendant in this action, as Chief Operations Officer, and am authorized to make this Declaration in support of Gulf Air's Motion to Dismiss the Amended Complaint.

2. I am over the age of 18 years old and competent to testify on the matters stated herein.

3. I make this Declaration based upon my personal knowledge and my review of Gulf Air's business records, which are kept in the course of Gulf Air's regularly conducted business activity, and which are made at or near the time of the recorded event by someone with personal knowledge or from information transmitted by someone with personal knowledge; and it being the regular practice of Gulf Air to make and keep such business records.

4. Gulf Air is a corporation organized under the laws of the Kingdom of Bahrain ("Bahrain"). Gulf Air is headquartered in Muharraq, Bahrain, and its main hub is at Bahrain International Airport.

Case 1:24-cv-03434-ACR Document 41-3 Filed 05/01/25 Page 2 of 171

5. Gulf Air is the national flag carrier of Bahrain. Founded in 1950, Gulf Air operates scheduled flights to more than 50 destinations across Africa, Asia, the Middle East and Europe.

6. Bahrain's Ministry of Transportation and Telecommunications Civil Aviation Affairs ("BCAA") regulates Gulf Air's air transport operations and is responsible for ensuring that Gulf Air complies with all safety standards set forth in the Bahrain Air Navigation Technical Regulations (ANTR) and the National Civil Aviation Security Program (NCASP).

7. Gulf Air is wholly owned by Gulf Air Group Holding B.S.C. (c), which is in turn 100% owned by Bahrain Mumtalakat Holding Company B.S.C. (c), the sovereign wealth fund of the Kingdom of Bahrain.

8. On December 5, 2022, Gulf Air filed an application ("Application") for a foreign air carrier permit and exemption authority with the U.S. Department of Transportation ("DOT") "to enable it to conduct foreign scheduled and charter air transportation of persons, property and mail to the full extent permitted under the U.S. - Bahrain Air Transport Agreement." As stated therein, "Gulf Air anticipates launching non-stop service from Bahrain to the United States upon receipt of all required government approvals." *See* DOT-OST-2022-0141-0007.[1]

9. On January 31, 2023, DOT granted the exemption request and on February 22, 2023, issued Gulf Air a foreign air carrier permit. Per the Department's Final Order, Gulf Air was authorized to conduct operations only "through a code-share or wet-lease arrangement with a duly authorized and properly supervised U.S. or foreign air carrier, where Gulf Air is not physically operating the flight to and from the United States." This is a standard condition placed on foreign air carriers when their home country has not achieved a Category 1 (in compliance with ICAO safety standards) rating under the Federal Aviation Administration's ("FAA") International

[1] Available at: https://www.regulations.gov/docket/DOT-OST-2022-0141 (last accessed on April 15, 2025).

FK.

Aviation Safety Assessment (IASA) program. Gulf Air's foreign air carrier permit was issued on February 22, 2023, and served on April 25, 2023, by DOT Order 2023-4-16. *See* DOT-OST-2022-0141-0007.

10. Following DOT's issuance of a foreign air carrier permit to Gulf Air, Gulf Air registered with the New York Secretary of State. However, Gulf Air did not at that time, and still does not, have any physical presence in the State of New York; *i.e.*, no office and no employees.

11. On December 4, 2024, Gulf Air filed an application for an exemption and amended foreign air carrier permit with DOT to the extent necessary for it to conduct operations using its own aircraft and crews following the FAA's announcement on November 14, 2024, that Bahrain had achieved a Category 1 (in compliance with ICAO safety standards) rating under the FAA's IASA program. On January 30, 2025, DOT granted Gulf Air exemption authority to conduct operations to/from the United States using its own aircraft and tentatively granted Gulf Air an amended foreign air carrier permit. *See* DOT-OST-2022-0141-0007.

12. Gulf Air does not yet operate scheduled flights to/from the U.S. using its own aircraft and crews.

13. Gulf Air is not a resident of the District of Columbia, is not registered to do business in the District of Columbia, and has no place of business in the District of Columbia.

14. Gulf Air has no employees in the District of Columbia.

15. As required by Title 49 USC, Subtitle VII, Part A, Gulf Air identified Evelyn Sahr, Esq. of the law firm of Eckert Seamans Cherin & Mellott, LLC ("Eckert Seamans") as the individual authorized to receive service on behalf of Gulf Air with respect to notices and process, and all orders, decisions, and requirements of the Department of Transportation. Thus, the

FK.

designation is limited to matters pertaining specifically to proceedings before, and actions of, the Secretary of Transportation.

16. Gulf Air did not designate Ms. Sahr, Eckert Seamans, or any other attorney or individual connected with the firm, to serve as its agent to accept or receive service of process on its behalf for legal actions in the U.S., in general, and specifically, the District of Columbia.

17. Gulf Air does not have a registered agent in the District of Columbia.

18. The Decedent, Mohannad Alhindi ("Decedent"), was employed by Gulf Air as a pilot from February 1999, until the time of his death, December 14, 2022, pursuant to the terms of a written Contract of Services ("Contract"), a true and correct copy of which is attached hereto as Exhibit A. The Contract was renewed on February 18, 2002, and again on October 14, 2004, after which time the terms remained in effect until the time of Decedent's death. True and correct copies of the renewals are attached hereto as part of Exhibit A. The Decedent was initially hired as a First Officer but was later promoted to the rank of Captain in July 2008.

19. As set forth in the Contract, Decedent declared that he was a "national of Jordon" and that his place of domicile was "Jubiaha, Jordon." Decedent never notified Gulf Air that his place of domicile had changed, and there were no documented changes regarding his domicile in any subsequent renewal of the Contract.

20. Decedent was residing in Bahrain at the time of his death, but following his death, and at the request of his daughter, Gulf Air arranged for the Decedent to be transferred back to Jordan where he was buried.

21. The flight that Decedent operated immediately prior to his death was not conducted under Gulf Air's foreign air carrier permit issued by DOT.

FK.

22. The flight that Decedent was scheduled to operate prior to his death was not conducted under Gulf Air's foreign air carrier permit issued by DOT.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated: April 16, 2025
Muharraq, Kingdom of Bahrain

**Captain Qasim Ghuloom Ismaeel**
**Chief Operations Officer**
**Gulf Air B.S.C. (c)**

FK.

# EXHIBIT A



P.O. Box 138
State of Bahrain

C.R. No. 8919

*A Contract of Services is made the day of 22nd Febuary 1999 between Gulf Air Company GSC hereinafter referred to as the Company of the one part and **Mr. Muhannad Yousef Al Hindi** national of **Jordan** born on 20th March 1959 and whose address in his place of normal domicile is **P.O. Box 354 Amman 11941 Jubaiha - Jordan,** herein after known as the Employee of the other part whereby it is agreed that the Company shall employ and the employee shall serve the Company and that such service shall be regulated by the following:*

| | | | |
|---|---|---|---|
| **1.** | ***PERIOD OF CONTRACT*** | : | *This Contract shall subsist for a period of three years commencing from 19th Febuary 1999.* |
| **2.** | ***SALARY*** | : | *The Employee shall be appointed in scale **11M** earning a basic pay **BD.973.500/-** per month.* |
| **3.** | ***NATURE OF EMPLOYMENT*** | : | *The occupation of the Employee on the date of this agreement shall be A320 First Officer. The employee has been notified of the dangers of his profession if any and of the means required of him to protect himself. The Company shall during the subsistence of this Contract notify the Employee in writing of any alteration in his position or place of assignment either as a result of re-organization in the Company or if in the interests of the Company's business.* |
| **4.** | ***ALLOWANCES*** | : | *Allowances shall be as specified in Schedule II of the Terms and Conditions of Employment.* |
| **5.** | ***COMPANY REGULATIONS & GENERAL CONDITIONS*** | : | *The Company's Regulations and General Conditions of Employment shall constitute part and parcel of this contract.* |
| **6.** | ***CONFLICT WITH LAWS OF THE LAND*** | : | *Nothing express or implied in this Contract or in the Company's Regulations and General Conditions of Employment shall be enforceable if contrary to the laws in the country in which the employee is based.* |



7. **RIGHT OF TRANSFER** : *The Company reserves the right to transfer the employee to any place worldwide.*

8. **PLACE OF RECRUITMENT** : *The Employee's place of recruitment for the purpose of annual leave and repatriation shall be Amman.*

9. **TERMINATION OF THE CONTRACT** : *The first three months of employment commencing from the date of first employment shall be on probation during which either party may terminate this contract by one month's notice to the other. After completion of the probationary period either party may terminate this contract by serving three months notice on the other.*

10. **LEAVE** : *Leave shall accrue at the rate of 42 days for every twelve months in service.*

11. **COMPLIANCE WITH GOVERNMENT REQUIREMENTS** : *The entry into force and the continuation of this Contract shall be conditional upon obtaining and retaining any necessary permits and licenses as required by the appropriate Government authorities.*

*IN WITNESS WHEREBY THE PARTIES HERETO HAVE SIGNED THIS AGREEMENT ON THE DAY AND YEAR FIRST ABOVE MENTIONED.*

| **The Employee** | **For Gulf Air Company GSC** |
|---|---|
| [signature] | [signature] |
| | *A. Aziz Ishaq* |
| | *Head of Personnel Services Development* |
| **in the presence of:** | **in the presence of:** |
| **Witness:** | **Witness:** Khaled Al-Tamimi |
| **Occupation:** | **Occupation:** SRC |
| **Address:** | **Address:** G.F |

Golden Jubilee

GULF AIR

*P.O. Box 138*
*State of Bahrain*

*C.R. No. 8919*

*Further to the Contract of Service made on the day 22.02.1999between Gulf Air Company GSC hereinafter referred to as the Company of the one part and Mr. Muhannad Yousef Al Hindi S/No 126004 national of Jordan born on 20.03.1959 and whose address in his/her place of normal domicile is P.O Box 354 Amman 11941 Jubaiha, Jordan herein after known as the 'Employee' of the other part, it is, hereby, agreed that the Company shall renew the employment as detailed below:*

1. ***PERIOD OF CONTRACT*** : *The Contract shall be renewed for a period of THREE YEARS commencing from 18.02.2002*

2. ***SALARY*** : *The Employee scale shall be 11M earning a basic pay BD. 1070.850 per month.*

3. ***NATURE OF EMPLOYMENT*** : *The occupation of the Employee on the date of this agreement shall be First Officer A320. The employee has been notified of the dangers of his profession if any and of the means required of him to protect himself. The Company shall during the subsistence of this Contract notify the Employee in writing of any alteration in his position or place of assignment either as a result of re-organization in the Company or if in the interests of the Company's business.*

*All other terms and conditions of employment shall remain the same. If the above is acceptable to you, please sign and return this document to the undersigned.*

*IN WITNESS WHEREBY THE PARTIES HERETO HAVE SIGNED THIS RENEWAL OF AGREEMENT ON THE DAY (date of signing).*

| | |
|---|---|
| *The Employee* [signature] M. AL HINDI | *For Gulf Air Company GSC* [signature] |
| | *FAWZI MUBARAK* |
| | *Manager Personnel Administration* |
| *in the presence of:* | *in the presence of:* |
| *Witness:* | *Witness:* |
| *Occupation:* | *Occupation:* |
| *Address:* | *Address:* |

Tel: + 973 322200
Cable: GULFAV BAHRAIN
Telex: 8255 GULFHQ BAH BN

www.gulfairco.com

طيـران الخليـج
GULF AIR

C.R. No. :

A Contract of Services is made the day of 18th **October, 2004** between Gulf Air Company GSC (hereinafter referred to as the "Company") of the one part and **Mr. Muhannad Yousef Al Hindi S/No. 126004** national of **Jordon** born on **20th March, 1959** and whose address in **his**/her place of normal domicile is **P.O Box 354 Amman 11941 Jubaiha, Jordon,** (hereinafter referred to as "Employee") of the other part whereby it is agreed that the Company shall employ and the employee shall serve the Company and that such service shall be regulated by the following:

| | | | |
|---|---|---|---|
| **1.** | **PERIOD OF CONTRACT** | : | This Contract shall subsist for **an indefinite period** commencing from **18th February, 2005** This contract supersedes any previous agreement with the company. |
| **2.** | **SALARY** | : | The Employee shall be appointed in scale **11M** earning a basic pay **BD.1,517.988** per month. |
| **3.** | **NATURE OF EMPLOYMENT** | : | The occupation of the Employee on the date of this agreement shall be **Senior First Officer A340.** The employee has been notified of the dangers of his profession if any and of the means required of him to protect him self. The Company shall during the subsistence of this Contract notify the Employee in writing of any alteration in his position or place of assignment either as a result of re-organization in the Company or if in the interests of the Company's business. |
| **4.** | **ALLOWANCES** | : | Allowances shall be as specified in Schedule II of the Terms and Conditions of Employment. |
| **5.** | **COMPANY REGULATIONS & GENERAL CONDITIONS** | : | The Company's Regulations and General Conditions of Employment shall constitute part and parcel of this contract. |
| **6.** | **CONFLICT WITH LAWS OF THE LAND** | : | Nothing express or implied in this Contract or in the Company's Regulations and General Conditions of Employment shall be enforceable if contrary to the laws in the country in which the employee is based. |

Gulf Air Company G.S.C.
P.O. Box 138, Kingdom of Bahrain
Tel: + 973 322200
Cable: GULFAV BAHRAIN
Telex: 8255 GULFHQ BAH BN

www.gulfairco.com



7. **RIGHT OF TRANSFER** : The Company reserves the right to transfer the employee to any place worldwide.

8. **PLACE OF RECRUITMENT** : The Employee's place of recruitment for the purpose of annual leave and repatriation shall be **Amman.**

9. **TERMINATION OF THE CONTRACT** : Either party may terminate this contract by serving three months notice on the other.

10. **LEAVE** : Leave shall accrue at the rate of **50** calendar days inclusive public holidays.

11. **COMPLIANCE WITH GOVERNMENT REQUIREMENTS** : The entry into force and the continuation of this Contract shall be conditional upon obtaining and retaining any necessary permits and licenses as required by the appropriate Government authorities.

12. **GOVERNING LAW** The Laws of the Kingdom of Bahrain shall govern this contract and the courts of Bahrain shall have exclusive jurisdiction over any dispute arising from this Contract.

Signing the contract and the terms and conditions of employment is an integral part of the contract of employment.

IN WITNESS WHEREBY THE PARTIES HERETO HAVE SIGNED THIS AGREEMENT ON THE DAY AND YEAR FIRST ABOVE MENTIONED.

**The Employee**

____________________

**In the presence of:**

____________________

**Witness:** Naheed

**Occupation:** H.R.O.

**For Gulf Air Company GSC**

____________________

**YOSR MOHAMED FAREED**
Manager HR & Employee Relations

**In the presence of:**

____________________

**Witness:**____________________

**Occupation:**____________________

Gulf Air Company G.S.C.
P.O. Box 138, Kingdom of Bahrain
Tel: + 973 322200
Cable: GULFAV BAHRAIN
Telex: 8255 GULFHQ BAH BN

www.gulfairco.com

EXHIBIT 10

THE TIME TO MODERNIZE IS NOW! LEARN MORE.

# WHO
## WE ARE

# ABOUT US





Airlines for America (A4A) is the trade association for the leading U.S. airlines, both passenger and cargo carriers, prioritizing safety and security during this time of record passenger volumes and increased reliance on air cargo shipments. Every day, U.S. airlines operate 27,000 flights carrying 2.7 million travelers and 61,000 tons of cargo while supporting 10 million U.S. jobs and 5 percent of GDP.

# MEMBER AIRLINES

MEMBER AIRLINES ASSOCIATE MEMBER AIRLINES





















# OUR LEADERSHIP

## NICHOLAS E. CALIO

PRESIDENT AND CEO

Nicholas E. Calio is president and CEO of Airlines for America (A4A), the trade association for the country's leading passenger and cargo airlines.

FULL BIO  >>

## PAUL R. ARCHAMBEAULT

SENIOR VICE PRESIDENT, CHIEF FINANCIAL AND OPERATING OFFICER

Paul Archambeault was named Senior Vice President, Chief Financial and Operating Officer of Airlines for America (A4A) in September 2014. In this role, he manages support services; administration, treasury, information technology and business services (e-business, industry audit, high-density airport slot services, publications and the Airlines Clearing House).

FULL BIO >>

## CHRISTINE M. BURGESON

SENIOR VICE PRESIDENT, GLOBAL GOVERNMENT AFFAIRS

In September 2011, Christine Burgeson joined Airlines for America (A4A) as Senior Vice President, Global Government Affairs. A key member of the A4A leadership team, Burgeson leads government affairs with a focus on increasing the advocacy reach and lobbying capabilities of the organization.

FULL BIO  >>

## KEITH A. GLATZ

SENIOR VICE PRESIDENT, INTERNATIONAL AFFAIRS

Glatz brings vast international policy experience to A4A, having successfully negotiated agreements on behalf of the U.S. aviation industry, resulting in unparalleled market access for U.S. carriers worldwide. Before joining A4A, Glatz served as Senior Negotiator for Air Services at the

Department of Transportation. Prior to 2004, Glatz held three Presidential Management Fellow positions, during which he worked at the Department of State in the Office of Aviation Negotiations and the Office of the U.S. Trade Representative as Deputy Director for Russia and newly independent states. Glatz holds a Bachelor of Arts degree in political science from Texas Tech University and a Juris Doctor and Master of Public Policy from the University of Akron.

FULL BIO >>

## KAREN KELLER

SENIOR VICE PRESIDENT & CHIEF OF STAFF

Karen Keller was named Chief of Staff of Airlines for America (A4A) in April 2022 and manages the Executive Office and facilitates all aspects of strategic planning and general coordination across the association.

FULL BIO >>

## SHARON L. PINKERTON

SENIOR VICE PRESIDENT, LEGISLATIVE AND REGULATORY POLICY

Sharon Pinkerton was named Senior Vice President, Legislative and Regulatory Policy for Airlines for America (A4A) in February 2011, and leads policy development on legislative and regulatory matters, working with Capitol Hill and the administration. Pinkerton joined A4A as Vice President, Government Affairs in April 2006, where she was responsible for overseeing all aviation-related issues before federal, state and local governments.

FULL BIO >>

## PAUL RINALDI

SENIOR VICE PRESIDENT, OPERATIONS AND SAFETY

Paul Rinaldi is Airlines for America's Senior Vice President, Operations and Safety. Rinaldi is responsible for A4A's Operations and Safety departments, including Air Traffic Management. He brings to the association more than thirty years of hands-on industry experience and leadership at the highest levels.

FULL BIO >>

## REBECCA SPICER

SENIOR VICE PRESIDENT, COMMUNICATIONS

Rebecca Spicer was named Senior Vice President, Communications at Airlines for America (A4A) in 2018. She is responsible for media relations and communications initiatives that execute key public relations strategies, help advance policy priorities and achieve advocacy objectives

on behalf of the leading U.S. airlines, both passenger and cargo carriers.

FULL BIO >>

## PATRICIA N. VERCELLI

SENIOR VICE PRESIDENT AND CHIEF LEGAL OFFICER

Patricia Vercelli is Senior Vice President and Chief Legal Officer at Airlines for America. She brings to the association more than 20 years of experience in the airline financial services industry. Vercelli is responsible for A4A's legal and corporate governance, overseeing the General Counsel's office and providing corporate secretary functions. Vercelli joins A4A from Universal Air Travel Plan (UATP), the airline-owned travel payment system.

FULL BIO >>

SEE ALL A4A LEADERSHIP

# OUR BOARD OF DIRECTORS

### BEN MINICUCCI

### ROBERT ISOM

### MICHAEL T. STEEN

CEO, ALASKA AIR GROUP

CEO, AMERICAN AIRLINES, INC.

PRESIDENT & CEO, ATLAS AIR WORLDWIDE

### ED BASTIAN

CEO, DELTA AIR LINES

### RICHARD W. SMITH

PRESIDENT & CEO, AIRLINE AND INTERNATIONAL, FEDEX

### JOANNA GERAGHTY

CEO, JETBLUE AIRWAYS CORP.

### BOB JORDAN

PRESIDENT & CEO, SOUTHWEST AIRLINES CO.

### NANDO CESARONE

EVP & PRESIDENT, UPS

### SCOTT KIRBY

CEO, UNITED AIRLINES HOLDINGS, INC.

## CONTACT US

**PHONE**

(202) 626-4000

**EMAIL**

FIRST NAME

LAST NAME

MediaRelations@Airlines.org

Marli Collier (Spokesperson)
Managing Director

Hannah Walden (Spokesperson)
Director

EMAIL

PHONE NUMBER

LEAVE US A MESSAGE...

SUBMIT >>

## A4A PORTAL

The A4A Portal provides resources for councils, committees and taskforces associated with A4A.

© 2025 Airlines for America (A4A). All rights reserved.

Work for A4A

Careers

Media Resources

Glossary

About A4A

Publications & Subscriptions

ATA e-Business Program

Privacy Statement

CONNECT WITH US:

SIGN UP FOR SMARTBRIEF

EMAIL

EXHIBIT 11

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayyash, Feras Hindi** | ) | **Case No.: 1:24-cv-03434-ACR** |
| **Tala Josephano** | ) | |
| Plaintiffs, | ) | |
| **American Airlines, INC. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| ______________________________ | ) | |

**URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE**

Plaintiffs hereby request an urgent hearing pursuant for Entry of Default, Default Judgment, and Summary Judgment. Additionally, Plaintiffs move for the immediate removal of Case Manager Mr. Dwight Patterson and provide notice of intent to file claims against Mr. Patterson and the intake department.

RECEIVED

MAR 18 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

2

The defendants' actions in this case have effectively demonstrated the very negligence and fraud that the plaintiff alleges, thereby strengthening the plaintiff's claims without requiring further proof. Specifically:

1. Negligence: The defendants' failure to maintain a valid attorney certificate and their last-minute filing in violation of court rules clearly show a breach of the duty of care expected in legal proceedings. This aligns with the definition of negligence as "the failure to behave with the level of care that a reasonable person would have exercised under the same circumstances".
2. Fraud: The defendants' misrepresentation of their legal standing and false claims of service demonstrate the key elements of fraudulent misrepresentation, including:
    A. Making a false statement (claiming valid service when not in good standing)
    B. Knowing the statement was false or showing reckless disregard for its truth
    C. Intending for the plaintiff to act on the false information
    D. The plaintiff suffering harm as a result

Among many other actions, these actions satisfy the criteria for both negligence and fraud claims, as they show a clear breach of duty, causation, and resulting harm to the plaintiff. The defendants' conduct goes beyond mere carelessness, approaching the threshold of gross negligence given the severity and obviousness of their oversights

By engaging in these very behaviors, the defendants have essentially proven the plaintiff's case, eliminating the need for additional evidence or argumentation. Their actions serve as a real-time demonstration of the negligence and fraud alleged in the original complaint.

**URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE**

**Explanations For The Requests for Immediate Action**

1.  The initial case documents, including the mandatory magistrate judge consent form, were never received by Plaintiffs. The clerk is legally required to notify all parties of their right to accept or decline magistrate jurisdiction, and failure to do so constitutes a clear procedural violation. This issue must be corrected immediately.

2.  Plaintiffs request written confirmation that all docketed filings have been properly submitted to and received by Judge Ana Reyes. Any failure to ensure accurate docket transmission has directly impacted Plaintiffs' due process rights and procedural fairness. Plaintiffs must be assured that their filings are being reviewed without interference, omission, or procedural manipulation.

3.  Plaintiffs are concerned that their filings may have been altered before being uploaded to the docket. Defendants have previously attempted to introduce the term "contributed" in a way that could weaken Plaintiffs' negligence claims. Given this, Plaintiffs will be reviewing each document submitted over the next week to verify that no unauthorized changes have been made.

4.  **FEBRUARY 20 2025 Deliberate Manipulation by INTAKE or The case manager.**

5.  The filing discrepancy on February 20, 2025, requires immediate investigation as it reflects deliberate interference with plaintiffs' procedural rights and manipulation of court records to favor the defendants. Processing an invalid submission without proper justification and altering filing records undermines court integrity and due process.

6.  **Defendants' Attorneys Were Not in Good Standing**

    At the time of filing on February 20, 2025, at 1:58 PM (DC time), Gulf Air's attorneys were not in good standing and knew they were ineligible to file. Despite this, they

proceeded with an invalid submission and immediately attempted to serve Plaintiff Tala via email, misrepresenting their legal standing to both the court and the opposing party.

7. Gulf Air's attorneys, representing a billion-dollar corporation and promoted as "experienced litigators," were fully aware that they must be in good standing to file a submission. Nonetheless, they filed at 1:58 PM on February 20, 2025, which led to a formal notice of INVALID filing issued by the court on February 21, 2025. However, this notice was not immediately reflected in the docket, suggesting administrative interference or negligence.

8. The court's notice of INVALID filing was issued on February 21, 2025, yet it was somehow backdated to February 20, 2025, on the docket. This raises concerns about who authorized this discrepancy and why the invalidation was concealed from the public record.

9. Plaintiff Tala confirmed with Ms. Hanna from Attorney Admissions that Gulf Air's attorneys were not in good standing on February 20, 2025. Despite this, one of the attorneys deliberately misrepresented their status and attempted to serve Plaintiff Tala via email, knowingly lacking legal authorization to do so. This fraudulent act constitutes an intentional misrepresentation to the court and opposing party.

10. The docket entry for Gulf Air's submission falsely reflects a filing date of February 20, 2025, even though the court officially notified Plaintiff Tala of the invalidation at 10:00 AM on February 21, 2025. The use of the term "RESOLVED" suggests an intentional administrative override, designed to conceal the invalid nature of the filing and create a false impression of compliance with court rules.

11. **Unanswered Questions About Judicial Oversight**

Where is the original filing of the error? The issue was not discovered until February 21, 2025. While it was stated that the Judge was notified, was it actually the Judge, or was it handled internally by chambers or intake personnel? A Judge would not typically allow a Defendant's filing error—especially on the last day of service—to bypass court rules regarding expired attorney certifications.

12. If the Judge approved the correction, a valid reason must have been provided. What justification exists for permitting a last-day filing, allowing a Meet & Confer request without the required Certificate of Plaintiffs' interaction? Most importantly, was this prejudicial to the Plaintiffs? Plaintiffs were not only prejudiced but suffered direct harm as a result of this irregularity

13. The entry modification on February 21, 2025, falsely stated that the issue was "Resolved" and backdated the court's invalid notice from February 21 to February 20, 2025. While seemingly minor, this manipulation directly benefited Gulf Air, shielding them from procedural violations and creating an unjust advantage.

14. The Defendants relied on the Plaintiffs' Pro Se status and their intel from Tala's network, expecting them not to notice or challenge these manipulations. Alternatively, there may be financial incentives influencing court personnel assisting Gulf Air within the system.

15. **Need for DOJ & District Attorney Investigation**

This situation requires immediate investigation by the Department of Justice (DOJ) and the District Attorney's office to determine if procedural misconduct, administrative interference, or judicial bias played a role in altering the docket and suppressing Plaintiffs' rights for some external influence.

**16. GULF AIR FILINGS FEBRUARY 20 2025**

17. All future filings must be handled exclusively by a supervisor, with no further access granted to Mr. Dwight Patterson or any unsupervised clerks. The repeated errors and procedural misconduct exceed human error and have resulted in significant harm to plaintiffs. Everyone involved in improperly entering docket filings must be removed from handling this case.

18. The Meet & Confer request filed on February 21, 2025, was not only procedurally improper but deliberately misleading. It was orchestrated by internal actors assisting Gulf Air within the federal court system and federal agencies. Whether foreign or domestic, those involved appear to have personal or financial motives for influencing the case.

19. The Clerk advised Gulf Air on how to submit a Meet & Confer request in pleading format, while plaintiffs were consistently denied procedural assistance. This active involvement raises serious concerns regarding fairness, impartiality, and procedural integrity. The Clerk's selective assistance directly benefited Gulf Air while undermining plaintiffs' ability to seek default.

20. Plaintiffs followed FRCP Rule 55(a) for an Entry of Default, yet case manager Dwight Patterson misapplied the rule and directed Plaintiff Tala to consult the Pro Se Handbook instead. Instead of verifying whether Rule 55(a) was satisfied, Patterson improperly applied Rule 55(b), shifting the burden onto plaintiffs rather than confirming the default.

21. Rule 55(a) does not require a defendant to file or serve anything except an ANSWER within 21 days. Yet, Patterson ignored this and failed to ensure proper procedural compliance, obstructing plaintiffs' ability to secure an Entry of Default.

7

22. Plaintiffs' motions were delayed from being uploaded or addressed until Defendants secured an improper procedural advantage. Deputy Alexander Burton facilitated this delay, benefiting Gulf Air. As a result, Deputy Burton will be served with Fraud Upon the Court claims this week.

**23. MARCH 6 2025 MEET & CONFER**

24. Defendants, with internal assistance from court staff, deliberately manipulated the Meet & Confer process to evade filing an Answer. Instead, they used the process to improperly gather standing arguments and evidence while attempting to litigate the case's merits through an invalid submission. Deputy Clerk Alexander Burton, despite explicit instructions not to authorize this improper request, proceeded without justification, directly contributing to fraudulent procedural interference. As a result, Deputy Burton, along with Gulf Air's attorneys, now faces claims of Fraud Upon the Court.

25. Plaintiff Tala explicitly warned Deputy Clerk Alexander Burton during a direct phone call that his actions violated the procedural rights of two plaintiffs who had already submitted a motion for Entry of Default. Despite this clear notice, Deputy Burton facilitated an improper Meet & Confer appointment, obstructing plaintiffs' ability to secure a fair ruling. This direct interference constitutes Fraud Upon the Court, meeting the legal threshold for judicial misconduct and procedural fraud.

26. What may appear as mere coincidences to the average person is, in intelligence operations, a clear sign of interference. Every time a procedural irregularity benefits Gulf Air or American Airlines, Mr. Patterson is conveniently out of the office. What official work requires a clerk to be off-site during critical procedural moments? While this could be personal leave, the timing aligns too perfectly with instances of procedural

**URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE**

8

manipulation. Similarly, the unexplained absence of other officials from Judge Reyes' chambers allowed another chamber deputy to approve this misconduct. The level of confidence displayed by Deputy Burton suggests that he is receiving direct backing from influential sources inside the court.

27. We formally demand confirmation on whether Judge Reyes has personally reviewed any of the motions submitted by plaintiffs. There is increasing concern that plaintiffs' filings have not been properly presented to the Judge, while Gulf Air's submissions have been actively processed and facilitated by court staff. This violates fundamental principles of procedural neutrality and due process.

28. If these serious violations are not promptly addressed, we will formally proceed with a negligence claim against Mr. Dwight Patterson and the court intake department. His failure to perform his essential duties as a case manager—whether due to incompetence or deliberate interference—has already caused severe procedural prejudice against plaintiffs. Furthermore, the fraudulent procedural interference carried out by Deputy Alexander Burton and other court staff has resulted in direct financial, emotional, and physical harm to the plaintiffs. Should any additional procedural irregularities occur, this matter will escalate beyond negligence into Fraud Upon the Court and Intentional Interference.

29. To date, Mr. Patterson has committed no fewer than seven documented procedural mistakes, which even the intake department has acknowledged as negligence. However, whether these actions constitute mere negligence or amount to fraud and intentional interference is now a matter for judicial determination.

**URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE**

30. Plaintiffs will be filing Fraud claims against Ms. Darcy and Mr. Mike, Gulf Air's attorneys, for ethical misconduct, intentional obstruction of justice, intentional inducement, and intentional infliction of emotional distress. Plaintiffs are in the process of retaining a criminal law attorney, as this case has now escalated beyond civil litigation.

31. Court staff helping Defendants against Plaintiffs and Playing inside the courts and using the illegal surveillance on one of the Plaintiffs that is initiated by Personal Agenda to serve some foreign government is one thing, and the chance of these Airlines crashing over our heads is another.

**32. PLAINTIFF TALA Opinion as a Security Expert :**

33. TPlaintiff Tala is fully aware of the tactics employed by corrupt entities and their influence within the U.S. government. When courts begin receiving external pressure—whether through diplomatic calls, financial incentives, or undisclosed arrangements—we risk undermining judicial integrity and drifting toward a system where victims are wrongfully categorized as "threats to national security" to suppress legitimate claims. Such a scenario mirrors judicial interference tactics seen in authoritarian regimes, where justice is dictated by personal agendas rather than the rule of law.

34. It is highly questionable what leverage Gulf Air holds over the U.S. government that cannot be achieved through standard diplomatic channels. American taxpayers already contribute substantial financial aid and diplomatic resources to these nations, making any preferential treatment toward Gulf Air unwarranted and alarming. The government's reluctance to act in a case that directly safeguards public interests—and could potentially generate $500 million in federal revenue—raises serious concerns about conflicts of interest, foreign influence, or undisclosed beneficiaries within the system. This demands

closer scrutiny of the decision-making process and whether external forces are shaping judicial outcomes beyond legitimate legal and corporate considerations.

35. Despite our diligent efforts to bring these matters to the Court's attention, our requests have been overlooked, while the Court has continued to entertain the defendants' fraudulent representations and actions. This imbalance in treatment threatens to further prejudice the plaintiff and erode public confidence in the judicial system.

36. The timing of procedural irregularities often coincides with the absence of key clerks and court staff, whether due to natural reasons or orchestrated efforts by external influences assisting Gulf Air. These “intelligence” acts raise concerns about the integrity of case handling and whether certain court personnel are being strategically positioned or removed at critical moments to facilitate procedural advantages for Gulf Air.

37. **JUDGE ANA REYES**

38. This claim was originally filed on December 10, 2024, with only Plaintiff Feras and Plaintiff Samiha listed as parties. At the time, Tala was working separately on her own claims against both Defendants, which were entirely distinct from this case and not included in the current proceedings. She was in the final stages of preparing her filings in New York.

39. Having previously witnessed external interference in judicial proceedings, including calls to judges, Tala was hesitant to file her claims in Washington, D.C., or California, fearing similar tactics would be used to obstruct her case.

40. The assignment of Plaintiff Feras and Samiha’s claims to Judge Ana Reyes appeared to be a calculated move to create a sense of comfort and legitimacy. The goal was for Tala to accept the judge’s assignment without suspicion, believing there was no interference in

the case. Judge Ana's background and ideology share similarities with Tala's, which would naturally make Tala more at ease with the process, discouraging her from questioning court manipulation.

41. However, while Tala's focus was on the judge's reputation for fairness, the real interference was taking place behind the scenes—within court staff. The strategy was to keep Tala reassured and deter her from filing her separate claims in New York against both Defendants and the FAA. This allowed the Defendants and their allies to manipulate procedural matters at the clerk and intake level while Tala remained focused on the judge's perceived neutrality.

42.  We urge the Court to recognize the gravity of this situation and grant this hearing without delay, as it is crucial to preserving the plaintiff's rights and upholding the principles of justice upon which our legal system is founded. The delays, procedural manipulation, and irregularities in court handling necessitate immediate judicial review to ensure fairness and due process

## Requests for Urgent Action

1. Request for an **Urgent Hearing** – Plaintiffs seek in person an expedited hearing within 48 hours due to ongoing procedural irregularities and interference.

2. Immediate Removal of Mr. Dwight Patterson – Plaintiffs request that Mr. Patterson be removed as case manager and that only a supervisor handle all future filings to ensure procedural fairness.

3. Written Confirmation of Judge's Receipt of Filings – Plaintiffs request official confirmation that all docketed filings have been properly submitted to and received by Judge Ana Reyes.
4. Full Investigation and Correction of the February 20, 2025 Filing Discrepancy – Plaintiffs demand a detailed review and correction of the improper docketing, including identifying who authorized the altered entry
5. Verification of Attorney's Status on February 20, 2025 – Plaintiffs request official verification of Gulf Air's attorney's standing on February 20, 2025, and the identity of the individual who authorized and processed the submission on February 20 and 21, 2025
6. Do Not Allow Any Further Filings from Defendants – Plaintiffs request that no additional filings from Gulf Air or American Airlines be accepted until the validity of their legal representation is confirmed.

**Notice of Intent to Sue & Legal Actions**

In an absent of instant resolution, Plaintiffs will pursue claims against:

1. Mr. Patterson for negligence and breach of duty and other related Claims
2. Intake department for negligence, prejudice, and abuse of process

Plaintiffs have suffered:

1. Financial losses and unnecessary legal expenses
2. Physical stress, including back and neck strain
3. Emotional distress and exacerbation of prior trauma
4. Loss of work and productivity
5. Intensified anxiety and distrust in the judicial system

Plaintiffs respectfully request the Court's immediate attention to these urgent matters to prevent further harm and ensure the fair administration of justice.

March 18 2025 By Pro Se Plaintiffs

Feras Hindi

7823 New London Dr

Springfield VA 22153

(703)980-6955

Samiha Ayyash

7823 New London Dr

Springfield VA 22153

(703)623-3767

Tala Josephano

615 S Catalina Ave #233

Redondo Beach CA 90277

(347)749-4980

## CERTIFICATE OF SERVICE

I hereby certify that on March 7th, 2025, Plaintiff Tala Josephano will submit Notice for the Clerk of Federal Court of DC VIA the Intake email " dcd_intake@dcd.uscourts.gov" and send a true and correct copy of the following document to be served upon the parties listed below:

**URGENT REQUEST FOR HEARING ON ENTRY OF DEFAULT, DEFAULT JUDGMENT, AND SUMMARY JUDGMENT; REQUEST FOR CASE MANAGER REMOVAL AND NOTICE OF INTENT TO SUE**

1. Defendant American Airlines

   Registered Agent Registered Office Address CORPORATION SERVICE COMPANY 1090 VERMONT AVE. NW Washington DC 20005.
   Method of Service: Via ABC Legal Services (Process Server)

   Courtesy Copy from Tala will be emailed to Micah E. Ticatch

2. Defendant Gulf Air B.S.C., Inc.

   AT Eckert Seamans Cherin & Mellott, LLC
   1717 Pennsylvania Ave., N.W., 12th Floor
   Washington, D.C. 20006

   Method of Service: Via ABC Legal Services (Process Server)

March 18 2025 by Pro Se Plaintiffs

F.H S.A T

| Feras Hindi | Samiha Ayyash | Tala Josephano |
|---|---|---|
| 7823 New London Dr | 7823 New London Dr | 615 S Catalina Ave #233 |
| Springfield VA 22153 | Springfield VA 22153 | Redondo Beach CA 90277 |
| (703)980-6955 | (703)623-3767 | (347)749-4980 |

EXHIBIT 12

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

## STANDING ORDER IN CIVIL CASES

## THIS ORDER CONTROLS THIS CASE

To help "secure the just, speedy, and inexpensive determination of" this action, FED. R. CIV. P. 1, the parties are hereby **ORDERED** to comply with the following directions:

### 1. REMOVED ACTIONS

a. A defendant removing an action to this Court must refile any answer filed before removal and promptly ensure that all parties receive a copy of this Standing Order.

b. Any motion pending in the court from which the case is removed at the time of removal must be refiled in this Court by the party seeking relief. *See* FED. R. CIV. P. 81(c)(2). Motions that are not refiled will be deemed withdrawn and not considered.

### 2. TRANSFERRED ACTIONS

a. Any motion pending and unresolved in the court from which the case is transferred at the time of transfer must be refiled in this Court by the party seeking relief ***within seven days*** after the transfer order is filed in this Court's docket. Motions that are not refiled will be deemed withdrawn and not considered.

b. A defendant who did not answer the complaint before transfer must answer or make any motion otherwise authorized under Federal Rule of Civil Procedure 12 ***within twenty-one days*** after the transfer order is filed in this Court's docket.

### 3. COMMUNICATIONS WITH CHAMBERS

Except as authorized in this Order, the parties may not contact Chambers by telephone. If extraordinary circumstances or emergencies so require, however, counsel may contact Chambers jointly via telephone conference. Chambers will not provide legal advice of any kind.

### 4. INITIAL STATUS CONFERENCE AND ISSUANCE OF SCHEDULING ORDER

a. After an answer is filed, for those cases covered by Federal Rule of Civil Procedure 26(f) and Local Civil Rule 16.3, the Court will set an Initial Scheduling Conference and order the parties to meet and confer to discuss the matters set forth in Local Civil Rule 16.3(c), and to jointly file a report addressing them.[1] Following the Initial Scheduling Conference, the Court will issue a Scheduling Order governing further proceedings in the case.

[1] The Local Civil Rules are available at http://www.dcd.uscourts.gov/court-info/local-rules-and-orders/local-rules.

b. As part of the joint report, the parties shall propose three alternative dates for a trial in the matter. The Court will set a trial date as part of its Scheduling Order. The trial date *will not be extended* absent extraordinary cause, i.e., the legal equivalent of Armageddon. Counsel should plan accordingly.

**5. FILING GUIDELINES**

a. Courtesy Copies. Counsel for the moving party shall provide Chambers, not the Clerk's Office, with **two** printed courtesy copies, with ECF headers, of any electronic submission that, along with exhibits, numbers fifty (50) pages or more in total length.

i. Briefs:

A. Chambers' copies should not be submitted until briefing is complete and should include any oppositions, replies, or sur-replies. For dispositive motions, the operative complaint should be included.

B. Briefs and exhibits shall be indexed and tabbed for ease of reference. Pages should be **double-sided** and in either black and white or greyscale, unless color would aid the Court's review (e.g., charts and photographs).

C. The Court prefers A5 coil-bound courtesy copies; however, the Court will also accept three-ring binders (no larger than two-inch). Before providing any courtesy copy that would exceed three coil-bound copies or three two-inch binders, counsel shall contact Chambers for instruction.

D. *Pro se*, *in forma pauperis*, and incarcerated plaintiffs are excused from providing courtesy copies.

ii. Key Cases: The moving party shall also provide **one** jointly-prepared, three-ring binder comprised of key cases. The cases should be tabbed and in alphabetical order, and the binder should include an index. Pages should be **single-sided**.

b. Exhibit Index. Each submission that attaches more than one exhibit shall contain an index of exhibits. Exhibits shall be edited properly to exclude irrelevant material and to direct the Court's attention to the pertinent portions.

c. Attachments. Each attachment to a filing (e.g., supporting memorandum, statement of material facts, exhibit, affidavit, and proposed order) must be filed as a separate PDF and appropriately labeled in ECF. If the document has its own pagination, it should be a separate attachment.

d. Joint Status Reports. In FOIA cases, if the parties agree on providing updated status reports to the Court, the parties should inform the Court of their schedule. If the Court does not enter an order to the contrary, the parties should proceed to provide status reports per the agreed-upon schedule.

## 6. APPEARANCES BEFORE THE COURT

a. Attorneys are expected to treat ***all*** courtroom staff, opposing counsel, and parties with civility and respect.

b. Absent leave of Court, the attorney who will serve as principal trial counsel must appear at all conferences with the Court. Any attorney appearing before the Court must enter a notice of appearance on ECF.

c. All attorneys appearing before the Court must have authority to bind the party they represent consistent with the proceeding (for example, by agreeing to a discovery or briefing schedule), and should be prepared to address any matters likely to arise at the proceeding.

d. The Court encourages the participation of less experienced attorneys in all proceedings—including pretrial conferences, hearings on discovery disputes, oral arguments, and examinations of witnesses at trial—particularly where that attorney played a substantial role in drafting the underlying filing or in preparing the relevant witness. The Court will be more likely to grant a request for oral argument if doing so would afford the opportunity for a junior attorney to gain courtroom experience.

## 7. MOTIONS – GENERALLY

The parties shall comply with the following instructions when briefing any motion. Motions filed not in compliance with this Standing Order may be rejected by the Court.

a. Format. Motions and submissions should be double-spaced, in 12-point, Times New Roman font, with page numbers and margins of no less than 1 inch, and two spaces between sentences.[2] All citations must include exact page references (pin citations). Absent leave of the Court, memoranda of points and authorities in support of, and in opposition to, motions may not exceed 45 pages, and reply memoranda may not exceed 25 pages. *See* LCvR 7(e). All electronically filed documents are to be in text-searchable Portable Data Format ("PDF"). Likewise, exhibits that must be scanned because they exist only in paper format should, if possible, be submitted as text-searchable files using Optical Character Recognition ("OCR") technology, available in Adobe Acrobat.

---

[2] The Court is mindful of the raging debate spaces between sentences engenders. *See* James Hamblin, *The Scientific Case for Two Spaces After a Period*, The Atlantic (May 11, 2018). Team Two Spaces champions improved readability and processing speed. *See* Rebecca L. Johnson, et al., *Are two spaces better than one? The effect of spacing following periods and commas during reading*, 80:6 ATTENTION, PERCEPTION, & PSYCHOPHYSICS, 1504–11 (2018). Team One Space questions the science and notes that two space use is the monospaced font relic of a bygone era. *See* Angela Chen, *Please don't use this study to justify your horrible habit of using two spaces after periods*, The Verge (Apr. 28, 2018). Personally finding that one space use makes documents impenetrable, the Court sides squarely with Team Two Spaces.

b. Tables. Every memorandum of points and authorities that is ten pages or longer in length must contain a Table of Contents and Table of Authorities, regardless of whether it is filed in support of or in opposition to a motion.

c. Sur-Replies. A party may not file a sur-reply without first obtaining leave of the Court and may do so only upon a specific showing of good cause. Any motion for leave to file a sur-reply shall ***not*** be accompanied by a copy of the sur-reply that the party wishes to file.

d. Supplemental Authorities. A party may bring supplemental authorities to the Court's attention without seeking prior leave of the Court but should refrain from using the submission of supplemental authorities as an opportunity to reargue issues or to respond to arguments made in an opposing brief. Although the submission of supplemental authorities should not be made by letter to the Clerk, but rather in a pleading filed in the usual manner, the parties are otherwise directed to follow the procedures set forth in Federal Rule of Appellate Procedure 28(j).

e. Proposed Orders. A proposed order should be submitted whenever a party requests relief from the Court, including for matters as routine as proposing a new date for a joint status report (with an exception for FOIA cases, as noted above, *supra* Section 5.d). Proposed orders should be filed on the docket as a PDF attachment to the corresponding motion, and counsel must also submit proposed orders to the Court by emailing a **Microsoft Word version of the draft** to reyes_proposedorders@dcd.uscourts.gov. The subject line of the email must include (1) the case name; (2) the case number; (3) the docket number of the corresponding motion; and (4) the title of the order that is proposed as indicated on the Notice of Electronic Filing. Counsel must serve a copy of a proposed order on all other parties by copying them on the email to the Court. Unless the Court directs otherwise, a party must file a motion asking the Court to enter the proposed order. Submitting a draft to the Court's proposed order inbox is not a substitute for a motion. The Court will consider proposed orders when ruling on motions, but will modify (or disregard altogether) such proposed orders as it deems appropriate, even if all parties agree on the proposed order. Proposed orders (such as stipulated protective orders) require Court approval before they are in effect.

f. Pre-Motion Conference. If a party wishes to file a dispositive motion, it must request that the Court schedule a pre-motion conference. To so request, the moving party shall submit a short notice via ECF, not to exceed **four** double-spaced pages in length, setting forth the basis for the anticipated motion, including the legal standards and the claims at issue. Other parties shall respond by filing, within one week, a document of similar length setting forth their anticipated responses to the proposed motion. The Court will review and discuss with counsel the anticipated motion at the pre-motion conference, which will take place in-person unless the Court grants permission to hold the conference by video. The parties should contact Judge Reyes' Courtroom Deputy to schedule the conference for a date 1-2 weeks after the response is filed. This requirement shall not apply to incarcerated *pro se* litigants or immigration mandamus cases.

For motions to dismiss under Federal Rule of Civil Procedure 12(b), the filing date of the letter will serve as the operative date for determining compliance with Rule 12's timing requirement.

g. Oral Argument.

   i. A party may include a request for oral argument in its motion, opposition, or reply papers and, if this request is granted, counsel will be advised of the argument date. *See* LCvR 7(f). ***See supra* ⁋ *6(d) for further information concerning oral argument.***

   ii. The Court understands that, for reasons passing understanding, not all counsel are fans of the Boston Red Sox. Counsel should be aware, however, that the Court may reference key moments in Red Sox history during oral argument. References may include: (a) Dave Roberts's steal; (b) Carlton Fisk's walk-off homerun; (c) Ted Williams's final at-bat;[3] and, *inter alia*, (d) David Ortiz's "this is our [bleep] city" speech. Any reference to Game 6 of the 1986 World Series is strictly prohibited.

   iii. Upon arrival to the courtroom, counsel may share their preferred pronouns with the Courtroom Deputy.

h. Duty to Confer Regarding Non-Dispositive Motions. Local Civil Rule 7(m), which requires counsel to confer before filing a non-dispositive motion and to include in the motion confirmation that such conferral occurred and a statement whether the motion is opposed, will be strictly enforced. *See* LCvR 7(m). The Court expects counsel to exhaust efforts to confer before bringing before it any such dispute. An adequate certificate of conference almost always requires at least two personal communications between counsel. Un-responded to emails are not enough to satisfy counsel's obligations under this Rule. Failure to comply fully with Local Civil Rule 7(m) when filing a non-dispositive motion will result in the motion being stricken and may also result in further sanctions.

i. Motions to Amend Pleadings. Any amended pleading shall be accompanied by a redline comparison between the original and the amended or proposed amended pleading.

j. Motions for Summary Judgment. This Court strictly enforces Local Civil Rule 7(h) when resolving motions for summary judgment and will "assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h); *see also* FED. R. CIV. P. 56(e).

   i. Pursuant to Local Civil Rule 7(h)(1), the moving party shall include a separate document entitled **Statement of Material Facts Not in Dispute.** This document shall be formatted as a two-column table. In the left column, the moving party shall list in separately numbered rows concise statements of each material fact it

[3] The Court recommends to the reader John Updike's classic, *Hub Fans Bid Kid Adieu*. As Garrison Keillor has highlighted, "No sportswriter ever wrote anything better."

contends is not in dispute, supported by appropriate citations to the record. The statement must contain only one undisputed factual assertion per numbered row.

i. Following the filing of this document with the Court, the moving party shall promptly provide an electronic copy in editable format to the opposing party.

ii. In response, the opposing party shall file a separate document entitled **Counter-Statement of Disputed Facts**. The opposing party shall indicate in the right column whether each corresponding fact in the left column is admitted or denied, and for those denied, provide appropriate citations to the record. If the fact is admitted in part and denied in part, the opposing party shall specifically identify which parts are admitted and which are denied, with appropriate citations to the record.

iii. If the opposing party has additional facts that are not directly relevant to its response to a specific paragraph, it must identify such facts in consecutively numbered rows in the right-hand column at the end of its responsive statement of facts.

iv. At the end of the **Counter-Statement of Disputed Facts**, the opposing party shall list the material facts as to which the opposing party contends there is a genuine issue of material fact for trial in the right column in consecutively numbered rows.

v. Following the filing of this document with the Court, the opposing party shall promptly provide an electronic copy in editable format to the moving party.

vi. In response, the moving party shall file a separate document entitled **Reply to Counter-Statement of Disputed Facts**, responding with appropriate citations in the left column to the additional facts.

vii. The parties are cautioned that failure to comply with this requirement may result in the denial of the motion without prejudice or may result in the Court concluding that facts are not properly controverted and thus undisputed.

k. Motions to Seal. A party must submit a redacted version, suitable for filing on the public docket, of any document that it proposes to seal at the same time the party files a motion to seal. If a party believes that all portions of a sealed document must remain sealed, the party must specifically notify the Court of that belief at the time of filing the motion to seal.

l. Motions to Seal Relying on Protective Orders. Parties may not rely solely on designation under a protective order to file documents under seal. Even when a protective order has been issued in a case, the Court cannot abdicate its responsibility to determine whether filings should be made available to the public, applying the test articulated in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). Before moving to file under seal materials subject to a protective order, the moving party must confer with the opposing party and provide the results of that conferral process in the motion to

seal, as well as analysis of the relevant *Hubbard* factors warranting sealing, to ensure that any requested sealing is appropriate under *Hubbard*.

m. *Pro Se* Parties. In a case involving a *pro se* party, electronic filing procedures will be followed by parties represented by counsel only. Absent separate order of the Court, the party appearing *pro se* shall continue to file documents in paper form with the Clerk's Office. Parties represented by counsel must serve documents upon *pro se* parties in paper form.

n. Requests Other Than Ultimate Relief Referenced in Complaint. Requests other than for ultimate relief that are referenced in the Complaint, such as requests for an extension of time to seek class certification or for a temporary restraining order, shall be made in a motion separate from the Complaint. *See, e.g.*, LCvR 75.1(a). Such motions shall be accompanied by a statement of the specific points of law and authority that support the motion, including, where appropriate, a concise statement of facts. LCvR 7(a).

## 8. MOTIONS FOR RECONSIDERATION

Motions for reconsideration are strongly discouraged. The Court will not entertain a motion that (a) reasserts arguments previously raised and rejected by the Court or (b) raises for the first time arguments that should have been advanced in the original motion.

## 9. MOTIONS FOR EXTENSION OF TIME OR RESCHEDULING HEARING

a. Motion Required. Extensions or enlargements of time will be granted only upon motion, ***and not upon stipulation by the parties***. Motions for extensions of time or for continuances of court proceedings are strongly discouraged. Counsel and parties should work within the time frames set by the Scheduling Order.

b. Timing and Content. When good cause is shown, the Court will consider a motion for time extension or continuance of a proceeding that is filed ***at least 4 days prior*** to the deadline and states:

i. the original date of the deadline the motion is seeking to extend or the date of the scheduled hearing the motion is seeking to continue;
ii. the number of previous extensions of time or continuances granted to each party;
iii. the good cause supporting the motion;
iv. the effect, if any, that the granting of the motion will have on existing deadlines;
v. for motions, suggested deadlines (reached in consultation with the opposing party) for the filing of any opposition and reply papers; for continuances, three alternative dates and times that are convenient to all parties; and
vi. the opposing party's position on the motion, including any reasons given for refusing to consent, *see* LCvR 7(m).

c. Opposition. A party opposing a motion for an extension of time or continuance of a scheduled hearing date must file, **by 5:00 PM of the business day after the motion is filed, the party's reasons for opposing the motion**. If no such explanation is provided to the Court within this time frame, the motion shall be deemed conceded. Informing the opposing party that the motion for an extension or continuance is opposed **does not constitute an explanation to the Court**.

    d. Untimely motions. Untimely motions for an extension must contain an explanation for the failure to comply with the four-day rule. Untimely motions will be denied absent compelling cause.

## 10. DISCOVERY DISPUTES

a. Telephone Conference. The Court expects the parties to follow the requirements of Federal Rule of Civil Procedure 26 and Local Civil Rule 26.2. Before bringing a discovery dispute to the Court's attention, the parties must confer in good faith in an attempt to resolve the dispute informally. If unable to resolve the dispute informally, the parties shall jointly prepare a ***short*** email to send to the Court, at Reyes_Chambers@dcd.uscourts.gov, requesting a teleconference with the Court and including a clear, concise description of the issues in dispute, an explanation of the parties' positions with citations, and responses to opposing arguments.

b. Leave of Court Required. Before filing a motion relating to a discovery dispute, a party must obtain leave of the Court. Failure to comply with this requirement may result in any such motion being stricken.

## 11. SETTLEMENT

The Court expects the parties to evaluate the case for purposes of settlement. Toward that end, the parties may, by motion, request referral for mediation to a Magistrate Judge or the Court's mediation program. The parties may also seek relief, by motion, from a Scheduling Order for arbitration, early neutral evaluation, or any other form of alternative dispute resolution that may be tailored to the needs of the case. If the case settles, in whole or in part, plaintiff's counsel must promptly file a notice with the Court.

## 12. JOINT PRETRIAL STATEMENT

a. Timing. The parties must file with the Court a Joint Pretrial Statement ***at least 14 days before the final pretrial conference unless the Court sets another filing date***. *See* LCvR 16.5(a).

b. Contents. In accordance with Local Civil Rule 16.5(b), (d), and (e), the Joint Pretrial Statement must include:

i. a one-paragraph joint statement of the case that is appropriate to be read to the jury and describes the nature of the case and the identities of the parties;

ii. the estimated length of the evidentiary portion of the trial;

iii. a statement of claims setting forth each claim a party has against any other party and the statutory basis of the Court's jurisdiction for all causes of action;

iv. a statement of defenses setting forth each defense raised by a party to a claim asserted against it;

    v. a list of witnesses (including expert and potential rebuttal witnesses) anticipated to be called by each party, accompanied by a brief description of each witness's expected testimony and the anticipated time for such testimony on direct, followed by specific objections (if any) to each witness;

vi. a list of exhibits that each party intends to offer during trial and separately identifying exhibits that may be offered if the need arises, followed by specific objections (if any) to each exhibit, which exhibit list shall be in a format with six columns, with separate headings for: (1) exhibit number, (2) description of exhibit, (3) marked for identification, (4) admitted in evidence, (5) objection, and (6) witness/date;

vii. a designation of depositions, or portions thereof, to be offered into evidence by each party. To facilitate the Court's review and ensure clarity of the record regarding the Court's ruling on each objection posed by any party to the opposing party's transcript designation or cross-designation, any objections to a designation shall be set out in a chart for each deposition, which chart shall be in a format with eight columns that identifies, for each transcript designation to which objections are lodged, IN TRANSCRIPT PAGE NUMBER ORDER: (1) the sequential number to be associated with the objection; (2) identification of the page and line of the transcript designations offered; (3) the party offering the transcript designation; (4) the party objecting to the transcript designation; (5) the Federal Rule of Evidence relied upon for the objection and a brief explanation by the objecting party; (6) a brief rebuttal by the proponent of the transcript designation; (7) a column, which the parties shall leave blank, with the heading "Sustained"; and (8) a second column, which the parties shall leave blank, with the heading "Overruled";

viii. an itemization of damages setting forth each element of damages and the monetary amount thereof (including prejudgment interest, punitive damages, and attorney's fees) sought;

ix. a description of other relief sought by each party;

x. stipulations concerning authenticity of documents, admissibility of exhibits or testimony, or undisputed facts;

xi. a description of each specific item of demonstrative evidence, physical evidence, or videotape evidence that will be offered at trial and any objections; and

xii. a list of any motions *in limine* that are pending to address issues the parties reasonably anticipate will arise at trial. ***See infra* ¶ 14 regarding the timing for briefing on motions *in limine*.**

c. Jury Cases. In jury cases, the parties must submit as part of the Joint Pretrial Statement:

i. proposed *voir dire* questions that indicate:

I. the *voir dire* questions on which the parties agree; and

       II. the *voir dire* questions on which the parties disagree, with specific objections noted below each disputed question and supporting legal authority (if any);

ii. the text of each proposed jury instruction that indicates:

I. the instructions on which the parties agree;

II. the instructions on which the parties disagree, with specific objections noted below each disputed instruction and supporting legal authority (if any); and

III. the proposed instruction's source (*e.g.*, Standardized Civil Jury Instructions for the District of Columbia) or, for modified or new instructions, the supporting legal authority.

iii. a proposed verdict form, as well as proposed special interrogatories (if any), that includes date and signature lines for the jury foreperson.

d. Non-Jury Cases. In non-jury cases, the plaintiff, or plaintiffs jointly, shall file proposed findings of fact and conclusions of law within one week of the close of evidence, and the defendant, or defendants jointly, shall file proposed findings of fact, which include specification of any facts proposed by the plaintiff that are admitted or controverted, and conclusions of law within one week of the close of evidence, unless otherwise ordered by the Court upon request of the parties.

**13. PRETRIAL CONFERENCE**

a. Attendance. In addition to parties' counsel, all parties or party representatives must be present at the Pretrial Conference.

**14. MOTIONS IN LIMINE.**

a. Timing. Motions *in limine* shall be ***fully briefed at the time of filing of the parties' Joint Pretrial Statement***. Accordingly, the moving party's motion *in limine* and supporting memorandum shall be filed and served upon the opposing party ***at least 21 days*** before the Joint Pretrial Statement is due. The opposition shall be filed and served upon the moving party ***within 14 days*** of service of the motion *in limine*. Any reply shall be due ***within 7 days*** of service of the opposition. Oral argument on motions *in limine*, if necessary, shall occur at the Pretrial Conference.

b. Format. The Court does not accept omnibus motions *in limine*. Parties should file separate motions *in limine* for each discrete issue. The motions should be numbered in sequential order.

**15. JURORS**

a. Confidentiality. The names and personal information of prospective and sitting jurors in any trial of this matter shall be kept confidential and not disclosed outside of open court, except upon order of the Court. *See* D.D.C. JURY SELECTION PLAN ¶ 18.1, available at https://www.dcd.uscourts.gov/jury-selections. Counsel and parties are cautioned that violation of this directive may result in contempt proceedings.

**SO ORDERED**.

*/s/ Ana C. Reyes*
ANA C. REYES
United States District Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9 2025, Plaintiff Feras Hindi and Plaintiff Tala will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Judicial Notice & Exhibits

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Service Processor ABC Legal service

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Service Processor ABC Legal service

Submitted,

May 9 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153