## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

### Civil Division

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | | |
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE DEFENDANT GULF AIR'S EVIDENCE "EXHIBIT A" UNDER COURT INHERENT AUTHORITY**

Plaintiffs Samia Ayyash, Feras Hindi, and Tala Josephano respectfully submit this Memorandum of Law and Authorities in support of their Motion to Strike Exhibit A ("The Contract"), attached to Exhibit 1 ("Declaration") (ECF No. 43-2), on the grounds that it is noncompliant with the Court's Standing Order and applicable rules, and was submitted by Defendant Gulf Air B.S.C. in a manner that misleads the Court regarding the scope of the Decedent's employment and domicile. The exhibit is not merely outdated—it affirmatively omits material facts known to the declarant, including post-2004 promotions, DOT-governed flight assignments, and the Decedent's long-standing relocation to the United States. These omissions—central to the jurisdictional issues before the Court—reflect improper litigation conduct that warrants striking the exhibit in full.

## Table of Authorities

**Statutes**

28 U.S.C. § 1332

D.C. Code § 13-423

**Federal Rules**

- Federal Rule of Civil Procedure 4
- Federal Rule of Civil Procedure 12(b)(1)
- Federal Rule of Civil Procedure 12(b)(2)
- Federal Rule of Evidence 401
- Federal Rule of Evidence 403

**Cases**

- *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016)
- *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995)
- *Ali v. Tolbert*, 636 F.3d 622, 627 (D.C. Cir. 2011) (quoting *Shepherd*, 62 F.3d at 1472)
- *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991))
- *HLFIP Holding, Inc. v. Rutherford Cnty.*, No. 3:19-cv-00714, 2020 WL 6484254, at *2 (M.D. Tenn. Sept. 13, 2020)
- *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)

**Other Authorities**

- U.S. District Court for the District of Columbia, Standing Order (April 2024)
- U.S. Department of Transportation, Codeshare and Open Skies Regulations

**Table of Contents**

**A.** Introduction and Summary of Grounds for Striking Exhibit A

**B.** Defendant's Submission Violates the Court's Standing Order

**C.** Exhibit A Is Irrelevant, Immaterial, and Misleading

**D.** Declarant's Personal Knowledge Contradicts the Submission

**E.** Exhibit A Fails to Reflect Decedent's Actual Employment and Domicile

**F.** Improper Use of the Declaration to Address Merits and Jurisdiction

**G.** Plaintiffs' Request for Relief and Reservation of Rights

**H.** Conclusion

# BACKGROUND

On December 31, 2024, Plaintiffs filed their Amended Complaint (ECF No. 2). Defendant Gulf Air B.S.C. was properly served under Federal Rule of Civil Procedure 4 through delivery to its registered agent in the District of Columbia, who accepted service. A copy was also mailed to Gulf Air's Bahrain headquarters. Defendant was notified of this case on multiple occasions, and service was duly accepted by its D.C. agent. Plaintiffs' Amended Complaint asserts claims under this Court's diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs further note that they are qualified to bring claims under federal law for violations thereof. With respect to personal jurisdiction, and as to each of Plaintiffs' claims, this Court has personal jurisdiction over Defendant Gulf Air pursuant to Federal Rule of Civil Procedure 4, the District of Columbia long-arm statute (D.C. Code § 13-423), and the requirements of due process. Plaintiffs will address these jurisdictional issues in their forthcoming Motion for Limited Jurisdictional Discovery and in their Opposition to Defendant's Motion to Dismiss.

Defendant Gulf Air B.S.C. seeks to challenge subject matter jurisdiction by asserting that the Decedent's domicile was foreign—identical to Defendant's—in an attempt to defeat diversity jurisdiction by grouping all claims and Plaintiffs under the survival act. They also improperly attempt to address merits and factual disputes, including the fact that Captain Mohannad Alhindi's flight was a DOT-governed codeshare, by relying on a declaration from Bahrain that is unverified by counsel, submitted within a motion to dismiss for personal jurisdiction ordered by the Court on March 28, 2025.

Under 28 U.S.C. § 1332 and established precedent, diversity jurisdiction requires complete diversity of citizenship, which is determined by the domicile of the parties at the time the action

is filed. For natural persons, domicile is defined as the place of true, fixed, and permanent home and principal establishment, to which the person intends to return. Plaintiffs assert that the Decedent, Captain Mohannad Alhindi, was domiciled in the State of Illinois, United States since 2011, before and at his time of death and the time relevant to this action. Accordingly, complete diversity exists, and Defendant's attempt to defeat jurisdiction by mischaracterizing Plaintiffs' claims and the Decedent's domicile is without merit and undermines the court's intelligence.

Plaintiffs clarify that the present motion is strictly limited to striking Exhibit A " The Contract" as misleading, immaterial, inadmissible, noncompliant in violation of the Court's Standing Order and the Federal Rules of Evidence. Plaintiff Samiha asserting claim of wrongful death will address her standing in her Opposition to Defendant's motion to dismiss

## ARGUMENT

### A.  Exhibit A Is Affirmatively Misleading and Should Be Stricken or Excluded

On April 18, 2025, Defendant Gulf Air B.S.C. filed its Motion to Dismiss the Amended Complaint at ECF No. 43, and submitted the Declaration of Captain Qasim Ghuloom Ismaeel as ECF No. 43-2, along with Exhibit A "The Contract," a 1999–2004 employment contract and renewals, attached to that declaration. In ¶18 of his declaration Exhibit 1 (ECF No. 43-2), Captain Qasim Ghuloom Ismaeel states that this contract was Captain Alhindi's contract from 1999–2022. The declaration also asserts that Captain Mohannad Alhindi was employed by Gulf Air as a pilot from February 1999 until his death on December 14, 2022. He further states that the Decedent was initially hired as a First Officer, promoted to Captain in July 2008, and that his employment was governed by a written Contract of Services, which was last renewed in 2004. Captain Qasim attaches this contract and its renewals as Exhibit A to his declaration and asserts

that its terms remained in effect until the time of the Decedent's death. In ¶19, Captain Qasim claims that, according to the contract, the Decedent identified himself as a national of Jordan with his place of domicile listed as "Jubiaha, Jordan." He asserts that Gulf Air was never notified of any change in the Decedent's domicile and that no documented updates were made to this designation or contract terms or the existence of any subsequent contract renewal.

Although Captain Qasim acknowledges in ¶18 of his declaration that Captain Mohannad Alhindi was promoted to Captain in July 2008, the contract he submitted as "Exhibit A – The Contract" does not reflect that promotion or any amended terms associated with it. Unlike the earlier renewals from 2002 and 2004, which are attached and labeled as extensions, no similar documentation was provided for the 2008 promotion, despite being referenced in Captain Qasim's sworn declaration (ECF No. 43-2), where he asserts—without attaching supporting evidence—that Captain Alhindi was promoted to Captain in July 2008. At the time, Captain Qasim was Captain Mohannad's direct superior in Gulf Air's pilot training programs.

The employment contract submitted as Exhibit A (between Gulf Air Company G.S.C, not Gulf Air B.S.C) reflects Captain Alhindi's initial hire in 1999, a promotion to First Officer in 2002 with corresponding salary and aircraft assignments, and a further promotion to Senior First Officer in 2004, again with updated pay and responsibilities.

**B. <u>Declarant Captain Qasim's Email to All Gulf Air Pilots – December 17, 2022</u>**

Plaintiffs submit Exhibit 1, an email authored by Captain Qasim—the same individual who submitted a sworn declaration on behalf of Defendant—addressed to all Gulf Air pilots in memory of Captain Mohannad Alhindi. This communication directly contradicts both Exhibit A (the purported final employment contract) and the sworn declaration submitted in support of

Defendant's Motion to Dismiss. The declaration includes no information about Captain Alhindi's salary, aircraft assignments, or job duties after 2004. In contrast, the December 17, 2022 email provides a detailed employment history: initial hire in 1999, promotions in 2002 and 2004, advancement to Captain in 2008, elevation to Senior Captain in 2013, and a 2019 transfer to the Boeing 787 fleet for nonstop U.S. service. (*See Plaintiffs' Exhibit 1 Email From Captain Qasim to All Gulf Air Pilots*.) These facts—clearly within Captain Qasim's personal and professional knowledge—were omitted from the declaration. It appears neither Gulf Air B.S.C. nor its legal team were aware of this email when they submitted the declaration, further undermining the credibility of their evidentiary submission. In the email, Captain Qasim honors Captain Alhindi's long and accomplished career, explicitly referencing promotions, continued employment through 2022, international assignments, and regulatory responsibilities. These acknowledgments undermine Exhibit A, which contains no terms or amendments beyond 2004 and is presented as the operative contract through 2022. The email, authored by the same declarant who attested under oath to Exhibit A's completeness, confirms material employment developments that were omitted from both the contract and the declaration. This contradiction is not a mere oversight—it reflects a selective and misleading presentation of facts.

Plaintiffs respectfully submit that the internal inconsistency between the sworn declaration and the declarant's own email confirms that Exhibit A is neither complete nor reliable. The email acknowledges substantial employment developments omitted from both the contract and declaration, revealing a deliberate omission of material facts and supporting Plaintiffs' position that Exhibit A was submitted to misrepresent the employment relationship central to this case.

Although attesting that Exhibit A is Captain Alhindi's final employment agreement, Captain Qasim's email references promotions and responsibilities omitted entirely from both the declaration and Exhibit A. This inconsistency undermines the credibility of Defendant's submission and reflects a selective, materially incomplete presentation of facts. Exhibit A is a partial, outdated agreement executed between 1999 and 2004 by Gulf Air Company G.S.C., a predecessor that ceased operations over a decade before Captain Alhindi's death. No evidence establishes that the terms of Exhibit A were carried forward or remained in effect under Gulf Air B.S.C., a distinct entity formed in 2012. Submitting a contract from a defunct entity to prove facts about a separate successor—without explanation—further demonstrates the deceptive nature of the filing. Defendant and Declarant submit this document without disclaimer or evidence showing it does reflect the operative employment terms from 2008 to 2022, despite acknowledging Captain Alhindi remained employed during that period. By presenting this contract as current and complete while omitting later agreements, salary increases, promotions, domicile changes, and regulatory obligations—facts well known to both Captain Qasim and Defendant—Defendant misrepresents the nature and scope of the employment relationship. This conduct constitutes intentional abuse of process, going beyond mere omission or error, and reflects bad faith in presenting jurisdictional facts.

These key milestones—within the declarant's personal knowledge—are conspicuously omitted from both his declaration and the attached contract Exhibit A, revealing material inconsistencies and deliberate omissions in Defendant's evidentiary submission, despite their relevance to the issue of Captain Alhindi's domicile at the time of death. Furthermore, the Declaration, Exhibit A ("the contract"), and the motion to dismiss seek to exclude any connection between Captain Mohannad and DOT-governed codeshare flights—a false assertion. The issue is not merely that

the contract is old, but that Defendant uses the absence of updated contracts—exclusively in its possession—to create a misleading appearance of completeness. This violates both the Federal Rules and the Standing Order requiring disclosure of "material and relevant portions" only. The omission of post-2004 contracts shows procedural abuse. promotions and DOT assignments occurred, new contracts must exist. Defendant concealed them, relying instead on an outdated contract to argue dispositive facts. This selective disclosure weaponizes evidence rather than informs the Court, violating basic duties of candor and fairness.

In 2008, Gulf Air Company G.S.C. and American Airlines entered into a new codeshare agreement (*See Plaintiffs Exhibit 2, DOT-OST-2008-0195),* formally approved and governed by the U.S. Department of Transportation (DOT) (*See Plaintiffs Exhibit 3, DOT-OST-2008-0195).* Captain Alhindi's involvement in this agreement reflected his senior position and prior experience flying to the United States, and the assignment was incorporated into his employment package as part of his expanded international duties. Gulf Air's omission of the 2008 employment contract appears calculated to evade liability under U.S. law and DOT regulations. It fails to disclose Captain Alhindi's assignment to DOT-governed codeshare flights—specifically the American Airlines joint codeshare flight in Dhaka during which he became incapacitated at embarkation due to a severe 99% arterial blockage and ultimately died in uniform. Gulf Air seeks to obscure its obligations as a foreign air carrier operating under a DOT-issued exemption and authorization. Under the Montreal Convention, this constitutes an injury occurring during embarkation, as Captain Alhindi was minutes from piloting an aircraft carrying over 200 passengers. Gulf Air and American Airlines contend these agreements apply only to passengers. However, pilots and crew members are legally treated as passengers or individuals on board (*See Plaintiffs Exhibit 4, sample flight operated from Dhaka by Gulf Air*

*B.S.C. and American Airlines Inc., at Bangladesh Dhaka Airport Flight Captain Alhindi was about to Pilot)*. Notably, after Plaintiffs initiated civil aviation claims in Bangladesh, Gulf Air ceased promoting codeshare flights to Washington Dulles (IAD) with Etihad Airways from Bangladesh and stopped promoting codeshare flights with American Airlines from Dhaka. This further evidences its attempt to distance itself from U.S.-governed operations.

The Court possesses broad discretion to strike filings that violate its orders, mislead the Court, or cause procedural prejudice, and Plaintiff respectfully requests that the Court exercise its inherent power to strike Exhibit A in its entirety to prevent further harm and ensure a fair process. Furthermore, the credibility of the declarant who submitted Exhibit A is seriously undermined by his knowing omission of material facts—specifically, the domicile of Captain Alhindi at the time of death and the existence of a detailed codeshare and DOT participation contract. The declarant's close personal relationship with Captain Mohannad Alhindi, as evidenced by his December 17 2022 email referring to him as "more than a friend and like a brother," makes clear that these omissions are intentional.

### C. **The Court's Inherent Authority To Strike Exhibit A**

"[D]istrict courts have the inherent authority . . . to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." Dietz v. Bouldin, 579 U.S. 40, 47 (2016). This broad power includes the authority to strike material from its docket for noncompliance with court orders or rules. Cf. Shepherd v. Am. Broad. Cos., Inc., 62 F.3d 1469, 1472 (D.C. Cir. 1995) ("[T]he inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary . . . ."

(emphasis added)); Ali v. Tolbert, 636 F.3d 622, 627 (D.C. Cir. 2011) (quoting Shepherd, 62 F.3d at 1472); see Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404 (9th Cir. 2010) ("[A] District Court ha[s] jurisdiction to grant . . . motion[s] to strike pursuant to its inherent powers."); HLFIP Holding, Inc. v. Rutherford Cnty., No. 3:19-cv-00714, 2020 WL 6484254, at *2 (M.D. Tenn. Sept. 13, 2020) ("The Court may strike improvident filings based on its inherent authority to manage its own docket. This includes the inherent authority to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances." (citation omitted)). "It necessarily follows that, as part of its power to 'manage [its] own affairs,' a district court can use less drastic measures such as striking documents from the docket to address litigation conduct that does not warrant outright dismissal." Ready Transp., 627 F.3d at 404 (citation omitted) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44– 45 (1991)).

### D. **Exhibit A The Contract Violates and is non compliant with the court Standing order of Judge Ana Reyes**

Pursuant to Section 5(b) of this Court's April 2024 Standing Order in Civil Cases, exhibits "shall be edited properly to exclude irrelevant material and to direct the Court's attention to the pertinent portions." However, Exhibit A contains no current contractual information and terminates in 2004, despite Defendant's concession that the Decedent remained employed as a Captain until his death in 2022. Thus, the exhibit fails to direct the Court to any material facts relevant to the jurisdictional dispute.

Section 7 of the same Standing Order further provides that "[t]he submission of briefs and exhibits not in compliance with this Standing Order may be rejected by the Court." Exhibit A, a 20-year-old employment contract executed by a different legal entity (Gulf Air Company

G.S.C.), is neither tailored to the issues before the Court nor edited to exclude irrelevant and outdated material. Its submission directly contravenes the Court's explicit orders regarding the presentation of evidence.

The central issue in this case is the Decedent's domicile at the time of his death on December 14, 2022. Exhibit A predates the Decedent's relocation to the United States and omits any reference to his participation in international codeshare operations, which became a significant part of his duties after promotion. Aside from being affirmatively misleading and noncompliant, Exhibit A is irrelevant to the jurisdictional question before the Court. It creates confusion and prejudice and strategically deprives Plaintiffs of their claims by presenting selectively omitted information tailored solely to support Defendant's defense.

### E.  Exhibit A Omissions

Exhibit A omits documentation of the Decedent's promotions to Captain in 2008, 2013, and 2019; his salary and benefits; his expatriate employment package; and any employment terms after 2004. The absence of these critical records renders Exhibit A not only incomplete but also affirmatively misleading regarding the Decedent's employment status and domicile during the relevant period. Therefore, the Court should invoke its inherent authority to strike Exhibit A from the record for noncompliance with its Standing Order, as the contract is irrelevant. Striking Exhibit A is necessary to prevent confusion, avoid further prejudice to Plaintiffs, protect the docket, and preserve the integrity of these proceedings, as mandated by the Court's April 2024 Standing Order and the Federal Rules of Evidence.

F.  **Ownership Changes and Contractual Validity: Implications for Employment Terms and Jurisdiction**

**Gulf AIR COMPANY G.S.C VS  DEFENDANT GULF AIR B.S.C**

Exhibit A shows Captain Mohannad Alhindi's employment began in 1999 with Gulf Air Company G.S.C., then jointly owned by Bahrain, Qatar, Abu Dhabi, and Oman. This joint ownership means the original employment agreement was with a consortium, not solely with the current Defendant. In August 2002, Qatar announced its withdrawal from Gulf Air Company G.S.C. but remained a member for six months. This ownership change questions the validity of any 2002 contract extensions, as the consortium's changing composition required new contracts instead of extensions. By 2004, only Bahrain and Oman remained partners, necessitating new employee contracts reflecting this changed ownership structure.  By May 2007, Bahrain became the sole owner after Oman's withdrawal. This shift from consortium to single ownership void the applicability of the 1999 contract absent a new agreement. Exhibit 1 (ECF No. 43–2), the Declaration of Captain Qasim, confirms Mohannad Alhindi's promotion to Captain in 2008, one year after Bahrain gained sole ownership. In March 2012, Gulf Air Company G.S.C. rebranded as Gulf Air B.S.C. (c) *(See Plaintiffs' Exhibit 5 Gulf Air Name change ).* As a prudent and professional airline—especially one providing life insurance, health benefits, and other critical protections to crew members—it would be standard and necessary to execute a new employment contract under the new corporate entity. The absence of any evidence showing such a novation or assignment raises serious concerns of negligence or intentional concealment, undermining the

validity of relying on the outdated 1999 contract to govern employment terms after the corporate transition.

According to Captain Qasim's December 17, 2022 email, Captain Alhindi was promoted to Senior Captain in 2013—a change that would have necessitated a new employment contract under Gulf Air B.S.C. The contract submitted as Exhibit A contains no amendments or addenda addressing the significant ownership and corporate changes from 1999 to 2012. This lack of updates severely undermines its reliability as a true reflection of the employment relationship through 2022. Given Gulf Air's substantial corporate transitions, Exhibit A fails to accurately represent Captain Alhindi's employment terms under the current Defendant, Gulf Air B.S.C. (c). Moreover, Exhibit A is irrelevant under the Court's Standing Order because Gulf Air Company G.S.C. is not a party to this case. The Defendant and declarant have not explained why a contract originally signed under a multi-country consortium—later reduced to Bahrain ownership—is being submitted, nor clarified the absence of any contract with Gulf Air B.S.C. These unexplained discrepancies render Exhibit A noncompliant, irrelevant, and inadmissible, warranting its removal from the record.

### G.  The 2008 Gulf Air and American Airlines Joint Codeshare Agreement

In 2008, the year Captain Mohannad Alhindi was promoted to Captain, Gulf Air and American Airlines jointly filed a new codeshare application with the U.S. Department of Transportation (DOT) from their Washington, D.C. offices. This critical filing established a direct regulatory and contractual relationship linking Gulf Air pilots to DOT-governed international codeshare flights operated jointly with American Airlines. As shown in  (*See Plaintiffs' Exhibit 2 (DOT-OST-2008-0195)*, American Airlines, Inc. and Gulf Air Company G.S.C. submitted the

application on June 17, 2008—just one month prior to Captain Alhindi's promotion, as detailed in Captain Qasim's declaration. The application, filed pursuant to 14 CFR Part 212, 49 U.S.C. § 41109, and international aviation agreements including the Open Skies Treaty cited in the Amended Complaint, sought blanket codeshare authorization and related exemptions. These permitted reciprocal operational authority between the two carriers.

Notably, Co-Defendant American Airlines, Inc., along with Airlines for America, actively lobbied for legislative changes that facilitated the establishment and implementation of the joint codeshare agreement and Safety Acts. This collaborative effort led to the introduction of the Gulf Air, Etihad Airways and American Airlines codeshare products in key markets such as Washington, D.C. The joint application was signed by counsel for American Airlines at their Government Affairs Office in Washington, D.C., and by legal counsel for Gulf Air at their corresponding office, as documented in See Exhibit 3. This filing provides the regulatory and contractual framework governing codeshare operations involving Captain Alhindi in 2008. Despite this, "Exhibit A The Contract" conspicuously omits any reference to the 2008 codeshare agreement or related contractual terms that would have governed Captain Alhindi's flight assignments.

Plaintiffs assert that Captain Alhindi operated codeshare flights under this DOT-approved authority continuously from his promotion in 2008 until his death on December 14, 2022.*( See Plaintiffs' Exhibit 6 (DOT-OST-2008-0195)* contains the 30-Day Notice of Additional Codeshare Services filed by American Airlines on October 23, 2008, under the same docket. This filing confirms that the codeshare agreement between American Airlines and Gulf Air was not speculative or inactive—it was operational and expanding precisely during the period of Captain Alhindi's promotion. This supports the conclusion that his duties fell within the scope of

DOT-regulated operations and that his compensation and responsibilities would have been governed by updated employment terms.

*(See Plaintiffs' Exhibit 5 (DOT-OST-2008-0195)* is the official DOT *Order and Notice of Action Taken*, issued on August 4, 2008, in response to the joint application submitted by the carriers in June 2008. The Order granted Gulf Air an exemption under 49 U.S.C. § 41301 and approved blanket codeshare authority for both Gulf Air and American Airlines under 14 CFR Part 212. Gulf Air's exemption was effective from August 4, 2008, through August 4, 2010, and was subsequently renewed every two years. The blanket codeshare authorization, however, was granted on an indefinite basis, subject to ongoing regulatory compliance. This Order, signed by the Director of the Office of International Aviation, formally recognized and authorized the operational partnership between Gulf Air and American Airlines. It eliminates any doubt regarding the legal status of the codeshare during Captain Alhindi's promotion and flight assignments. The DOT's formal recognition of this partnership—paired with Gulf Air's continued use of the exemption without rejection—further exposes the absence of a corresponding employment contract as a material omission.

Defendant has already asserted that "Exhibit A – The Contract" is the only operative employment agreement governing Captain Alhindi from the date of his promotion in 2008 through the time of his death in 2022. However, the alleged 2008 renewal or amendment page—critical to supporting that claim—is conspicuously absent. By relying on Captain Qasim's declaration while insisting that no other contracts exist, Defendant effectively concedes that it has withheld the only document that could verify the updated terms of Captain Alhindi's employment during this critical period. This omission is not a mere evidentiary lapse—it strongly indicates concealment. Any attempt by Defendant to now produce a retroactive or newly

discovered contract would lack credibility and serve only to reinforce the existing pattern of misrepresentation before this Court. Furthermore, any future declarations submitted by this Defendant—or by corporate officers who have already demonstrated a willingness to provide misrepresentation by omission or false or misleading statements to the Court, to federal regulators such as the DOT, or to the public—should be closely scrutinized or barred entirely. A litigant with a demonstrated pattern of dishonesty cannot be permitted to continue undermining judicial proceedings with impunity.

### H.  Why Is Captain Mohannad Alhindi's 2019 Boeing Transfer Contract Missing?

According to Captain Qasim's internal memorial email dated December 17, 2022 (see Exhibit 1), Captain Mohannad Alhindi was transferred in 2019 from Airbus to Boeing 787 operations. This transfer coincided with Gulf Air's strategic expansion into long-haul service and U.S.-bound codeshare flights governed by U.S. Department of Transportation (DOT) authority. Despite the significance of this career milestone, Defendant has failed to include any 2019 transfer agreement or updated employment terms in either the Declaration or "Exhibit A – The Contract."

Supporting this timeline, Gulf Air B.S.C. and Etihad Airways P.J.S.C. jointly filed a Statement of Authorization and Exemption Application on March 28, 2019 (See Plaintiffs' Exhibit 7, Docket No. DOT-OST-2019-0121). Filed under 14 C.F.R. Part 212 and 49 U.S.C. § 41301, the application sought permission for codeshare services on U.S.-linked routes, identifying Boeing aircraft as the operational platform. This directly implicates Captain Alhindi's transfer to Boeing aircraft as part of Gulf Air's DOT-regulated expansion.

On August 29, 2019, the DOT formally granted this application *(See Plaintiffs' Exhibit 8 DOT Approval Etihad Airways and Gulf Air Codeshare),* authorizing codeshare services between

Bahrain, Abu Dhabi, and the United States. This federal approval confirms that any pilot assigned to these routes—including Captain Alhindi—was operating under DOT authority. Furthermore, Gulf Air submitted a renewal request on August 25, 2021, seeking continued exemption and codeshare authority for another two years, through August 2023 (*See Plaintiffs' Exhibit 9 Gulf Air DOT application for renewal*). This filing reaffirms that DOT-regulated operations were ongoing during the final years of Captain Alhindi's service, including the time immediately preceding his death in December 2022. Yet, despite these developments, Defendant has produced no employment contract, transfer agreement, or supplemental terms reflecting Captain Alhindi's 2019 reassignment to Boeing aircraft. The omission of this material documentation—against the backdrop of an active regulatory partnership with the DOT—raises serious questions of concealment and misrepresentation. Defendant's failure to disclose such a foundational employment document strongly undermines the credibility of their evidentiary submission and calls into question their compliance with both legal and regulatory obligations.

I. **Gulf Air's Repeated Waiver of Sovereign Immunity Under DOT Codeshare Authority**

Defendant Gulf Air's denial that Captain Mohannad Alhindi operated U.S. Department of Transportation (DOT)-governed codeshare flights is not based on a lack of regulatory authority. Rather, it reflects an effort to evade the legal consequences of its own repeated and voluntary waiver of sovereign immunity under U.S. law—particularly in light of its failure to produce any post-2008 employment contracts or records clarifying the scope of Captain Alhindi's role in codeshare operations. Since at least 2008, Gulf Air B.S.C. has applied for and received exemptions and codeshare authorizations from the DOT, each contingent upon a clear and explicit waiver of sovereign immunity. This condition,

repeated in every DOT order renewing Gulf Air's codeshare authority through 2025, states: *"Agree that operations under this authority constitute a waiver of sovereign immunity, for the purposes of 28 U.S.C. § 1605(a), but only with respect to those actions or proceedings instituted against it in any court or other tribunal in the United States that are: (a) based on its operations in international air transportation that, according to the contract of carriage, include a point in the United States as a point of origin, point of destination, or agreed stopping place, or for which the contract of carriage was purchased in the United States; or (b) based on a claim under any international agreement or treaty cognizable in any court or other tribunal of the United States."*

This waiver is not optional. It is a mandatory precondition to entering the U.S market and approving any codeshare that falls under DOT jurisdiction Therefore, by choosing to operate flights under DOT-authorized codeshare agreements—specifically with American Airlines, Inc. and Etihad Airways P.J.S.C.—Gulf Air knowingly and repeatedly consented to waive sovereign immunity for claims arising from such operations. This includes civil actions governed by U.S law and treaties like the Montreal Convention. Furthermore, under these same DOT approvals, co-defendants American Airlines and Etihad Airways are expressly required to audit Gulf Air for compliance with all applicable DOT rules, regulations, and orders. These audit obligations further underscore the binding nature of Gulf Air's consent and its continuing subjection to U.S. aviation standards.

In light of this, Gulf Air's current denial of the codeshare nature of Captain Alhindi's flight is not a legal challenge to jurisdiction—it is a tactical attempt to sidestep the clear legal ramifications of its own consent. The sovereign immunity waiver language is unambiguous, repeatedly affirmed, and directly applicable to the operations at issue. Upon Deceased Captain Alhindi

promotion, Captain Alhindi was selected for codeshare assignments with American Airlines and other partners—positions reserved for elite pilots. He received a salary increase and planned to relocate his family to the U.S., where his American-citizen children would attend college. His prior experience with Royal Jordanian, FAA registration, and extensive U.S. flight hours made him well suited for U.S.-connected operations. Despite the critical events of 2008 and 2019—Captain Alhindi's promotion and expanded codeshare operations—neither Gulf Air nor declarant Captain Qasim has produced any employment contract or related documents confirming his promotion or codeshare assignments. This deliberate omission appears intended to shield Gulf Air from liability by denying that Captain Alhindi's flights fell under U.S. DOT regulations and codeshare agreements.

The DOT's approval and expansion of Gulf Air's codeshare agreements coincide precisely with Captain Alhindi's promotion and transfer to Boeing aircraft, which operate longer-distance flights than the Airbus models he previously flew. If Gulf Air produces a post-2008 employment contract for Captain Mohannad Alhindi, it would conclusively establish that the flight he operated was part of a DOT-authorized codeshare service. Under the terms of Gulf Air's repeated and explicit consent to waive sovereign immunity in connection with such codeshare operations, this evidence would confirm that Gulf Air waived immunity for claims arising from that flight. Consequently, Gulf Air is subject to the jurisdiction of U.S. courts and cannot avoid trial on these claims by denying the flight's connection to its DOT-approved codeshare authority. The failure to produce these documents undermines the credibility of Defendant's Exhibit 1 (Declaration) and Exhibit A (contract), which omit key developments and legal obligations stemming from 2008 onward. Gulf Air and Captain Qasim's refusal to produce the 2008 promotion contract and

related codeshare documents constitutes a deliberate attempt to evade liability under U.S. DOT regulations.

### J.  BACKGROUND OF CAPTAIN MOHANNAD DOMICILE :

The contract Exhibit A identifies Captain Mohannad's address as a P.O. Box in Jubaiha, Jordan, whereas by 2011 the Decedent & his family have already moved to the United States *( See EXHIBIT 10 Truth Finder Report showing Dates of is U.S addresses )* , with final residency  at 1903 Tomahawk Court, Naperville, IL, *( See Exhibit 11 Property Records listing him owner of his IL home )* and referred to this address as his home with his wife and family.

*Facts Omitted by Exhibit A (2004–2022):* Defendant's Exhibit A (2004 contract) omits 18 years of material facts, including Captain Alhindi's employment under DOT-authorized codeshare operations starting in 2008; Captain Alhindi relocated from Jordan to Bahrain in 1999 for employment with Gulf Air Company G.S.C., moving with his wife and children; his siblings, including Plaintiff Tala, had already moved to the U.S.; Prior to relocating, he sold his house and car in Jordan; the 2004 contract lists a Jordanian P.O. Box and vacation destination, but that was in 1999 not in 2022 where he had no substantive ties to Jordan at death; He was promoted to Senior Captain and transferred from Airbus to Boeing, facts absent from Defendant's records; Upon receiving his U.S. Green Card, his employment status changed from "Jordanian Expat" to "U.S.-based Expat," resulting in revised compensation and benefits; He registered his daughter at the University of Chicago and his son at Naperville North High School, where he also attended college, establishing educational ties since at least 2011; By 2011, Captain Alhindi and family resided at 1903 Tomahawk Court, Naperville, IL, supported by property and address records; He purchased a car in Illinois and regularly traveled throughout the U.S., including Virginia,

Washington D.C., Arizona, Nevada, and California, with Gulf Air notified as required; Captain Alhindi was an expatriate in Bahrain with an expat employment package; he completed paying off his Illinois mortgage in November 2022; Gulf Air B.S.C. provided employment verification letters supporting his U.S. residency, necessary for home ownership; He updated Gulf Air employment records to reflect his U.S. address and listed Illinois as his yearly vacation location; He had a U.S phone number; He retained an Illinois lawyers. accountant, filed and paid U.S. income taxes on foreign income, and opened U.S.-based retirement accounts, including a Fidelity 401(k), with plans to retire permanently in the U.S.; He planned retirement and family business expansion plans in Illinois with siblings, including Plaintiff Tala, indicating intent to remain and retire in the U.S.; In Illinois, he maintained substantial, continuous ties: accountant, attorney, mortgage with property tax and insurance payments, U.S. phone number, and close family residing in the U.S.; He had no comparable property, residence, or significant ties to Bahrain or Jordan at death; At death, most personal belongings, including clothing, remained in his Naperville home; Gulf Air arranged and paid for shipment.

During Captain Alhindi home visits in preparation for retirement and return to live in U.S.A where he previously lived when he was in his youth , Captain Mohannad discussed future business plans in Illinois with his siblings in expanding the family business, including Plaintiff Tala, further indicating his intent to remain in and retire in the United States. In contrast, Decedent had no comparable connections to either Bahrain or Jordan: he owned no property in either, maintained no residence, and had no professional, financial, or substantial personal ties in either country. Under well-established legal standards, these facts preclude Bahrain or Jordan from being considered Decedent's domicile, as neither location constituted his permanent home nor reflected the requisite intent to remain or return. The evidence clearly demonstrates that

Captain Alhindi maintained substantial ties to Illinois and the United States. At the time of his death, most of his personal belongings, including his clothing, remained in his closet at his Naperville, IL residence—a fact known to Gulf Air B.S.C., as they arranged and paid for the shipment of these items to Illinois.

Importantly, Plaintiff Tala has direct, personal knowledge of Captain Alhindi's future plans in the United States, including his intention to work at the anticipated Gulf Air B.S.C. station at Chicago O'Hare (ORD) and to open a family business for his son. Captain Alhindi's friend, Captain Qasem, was also aware of and discussed these plans. These facts, known firsthand by Plaintiff Tala, further establish Captain Alhindi's strong and ongoing connections to the U.S., directly refuting any claim that he lacked ties to this jurisdiction. Captain Qasem invited Captain Mohannad many times for events considering his wife is living in the U.S.A already and Plaintiff Tala has met Captain Qasem and most of Captain Alhindi Bahrain friends over Facetime as she was in contact with Captain Alhindi regularly. Plaintiff Tala and Captain Mohannad were financially involved in matters which made Tala privy to Captain Mohannad's financial affairs. She helped him pay his mortgage in 2020-2021 when Gulf Air B.S.C changed the contract with Captain Mohannad cutting his salary in half.

These significant changes triggered an employment contract update or at least a proof of rank promotion contract  raise, location and tax status disclosure. Yet, Gulf Air provides no documentation to support Jordan and Bahrain domicile aside from outdated contracts and inadmissible words that lack credibility from Declarants that are deliberately misleading the court. Under established legal standards, these facts firmly establish Illinois and the United States as Captain Alhindi's domicile, excluding Bahrain or Jordan. Defendant has failed to present any relevant evidence within the contract to support their motion to dismiss for lack of

jurisdiction. Instead, they have offered a flawed and incomplete submission, attempting to shift the burden onto the Court through omission and misrepresentation, in the hope that such a bad faith move will go unnoticed

### K.  Exhibit A "The Contract" Is Not Only Irrelevant—It's a Red Herring

Mischaracterization of Plaintiffs' Claims as Defendant attempts to minimize Plaintiffs' claims by reducing them to trivial issues such as a "logo" dispute over DOT-governed codeshare operations or an isolated medical event in Bangladesh. Deficient and Misleading Declaration Submission as Gulf Air, with counsel's approval, submitted a procedurally and substantively flawed declaration —authored by an unverified individual with a questionable signature. The document shows half wet-ink signature, shows inconsistent ink colors suggesting photocopying and alteration, and was modified with blue ink instead of black. These irregularities cast serious doubt on the declaration's authenticity and reliability, including whether Captain Qasim actually authored it. The declaration appears drafted by counsel to serve Defendant's legal aims rather than provide genuine firsthand testimony.

Captain Qasim claims expertise in the U.S. DOT compliance and administrative law, yet his qualifications do not support Legal or HR background. His background is primarily as a pilot and business graduate with leadership certifications, lacking direct knowledge of legal or regulatory matters relevant to this case including Processing service or diversity jurisdiction. Captain Qasim's relevant knowledge should be limited to Captain Alhindi's domicile, DOT codeshare flight scheduling of Pilots, rank, employment status, promotions, and duties—all of which he misrepresented if he authored the declaration.

Captain Qasim was Captain Alhindi's direct supervisor at Gulf Air's Aviation Academy, overseeing pilot training where Captain Alhindi served as an instructor. Their professional relationship was complemented by a personal friendship, with regular social interactions especially during eased COVID-19 restrictions. Gulf Air is a central institution in Bahrain's small, close-knit aviation community. Captain Qasim's familiarity with Captain Alhindi's family and personal life is expected given their long-standing professional and social ties. As direct supervisor, Captain Qasim managed Captain Alhindi's schedule, promotions, and vacations, and was aware of his family situation, including separation during COVID-19 lockdowns. Captain Qasim knew Captain Alhindi frequently traveled to the U.S. for his Green Card, maintaining continuous entry every six months, consistent with his operational responsibilities and approved multiple trips and documents to support Captain Mohannad residency and matters in IL; Maintaining Green Card eligibility implies Captain Alhindi intended to return to the U.S. upon retirement to be with his family.

Captain Qasim in Exhibit 1 Declaration refers to the contract as a "true and correct copy" and presents it as governing the full period of employment through 2022, yet it provides no evidence of continued contractual validity beyond 2004. Including no evidence of supporting Qasim Declaration Exhibit 1 in his statement of Promotion to Captain in 2008. The last Salary on the 2004 renewal doesn't reflect the Captains Salary which is not the same as Senior First Officer Salary or benefits. Plaintiff Tala had financial matters with the Captain and was close enough with him to know about his income and his raises. The omissions from both Exhibit A and the accompanying declaration are significant and undermine the reliability of the evidence presented. When a declarant fails to disclose facts that he personally authored in a contemporaneous,

official email within the scope of his employment, the resulting declaration cannot be presumed complete or credible.

Such omissions—particularly when they concern material factual matters directly relevant to the issues before the Court—render the declaration, at best, selectively crafted and, at worst, materially misleading. This pattern of omission calls into question the good faith of the declarant and the integrity of the evidence, warranting STRIKING the contract Exhibit A and any reference to it from other filings.  Accordingly, the Court should view both the Declaration and Exhibit A with caution and decline to afford them any evidentiary weight concerning the Decedent's operative employment terms and status at the time of death. Plaintiffs will also submit  motion to strike the declaration and any reference of it in Defendants' motion to dismiss in separate motion due to their lack of legal expertise in combining both and time consumed to write these motions

### L.  Exhibits are Evidence

According to the U.S. Department of Justice, an exhibit is defined as "physical evidence or documents that are presented in a court proceeding." See U.S. Department of Justice, Legal Terms Glossary. If the court finds Striking Exhibit A "the contract" an extreme measure, then the court must exclude the contract Exhibit A from the Exhibits submitted by Defendant to the motion to dismiss under Federal rules of Evidence. The admissibility of such exhibits in federal court is governed by the Federal Rules of Evidence, which require that evidence be relevant (Rule 401), not otherwise inadmissible (Rule 402), and not misleading, confusing, or unduly prejudicial (Rule 403).

**Exhibit A The Contract is irrelevant under Rule 401 and should be excluded, not be given weight or accepted by the court**

The employment contract is irrelevant and non-compliant with the Court's standing order. To be relevant, evidence must meet the threshold of Rule 401 of the Federal Rules of Evidence, which requires that the evidence have any tendency to make a fact of consequence more or less probable than it would be without the evidence. This contract fails to satisfy that standard and therefore does not meet the test for relevancy.

Federal Rule of Evidence 401 states: *"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.*

A partial, unsigned employment contract dated from 1999 to 2004 has no probative value in determining whether Captain Mohannad Alhindi was domiciled in Jordan or the United States at the time of his death in 2022, nor does it shed any light on whether the flight he operated fell under the jurisdiction of the U.S. Department of Transportation (DOT) through a codeshare agreement—circumstances that would trigger Gulf Air's waiver of sovereign immunity under U.S. law. The 18-year gap between the contract's expiration and the relevant date, along with the absence of any amendments or post-2004 employment records, eliminates any logical connection between Exhibit A " The Contract" and these dispositive facts. As such, Exhibit A is irrelevant under Federal Rule of Evidence 401 and should be excluded.

Under Rule 401, relevance is not inherent to any piece of evidence but arises from its relationship to a fact of consequence in the case. Exhibit A " The contract", last revised in 2004, lacks any direct relationship to the core jurisdictional question of Captain Alhindi's domicile at

the time of his death in 2022 or to whether the flight he operated was subject to U.S. Department of Transportation (DOT) jurisdiction through a codeshare agreement in 2008. The absence of any post-2004 employment records or amendments renders Exhibit A irrelevant to both issues and thus inadmissible under Rule 401.

Rule 401 defines relevant evidence as that which has "any tendency to make a fact more or less probable than it would be without the evidence." Exhibit A "The Contract" does not tend to establish the decedent's domicile at the relevant time 2022, or Captain Alhindi real contracts since 2008  and therefore has no probative value under this standard.

Relevancy requires a logical connection validated by law or experience. The 18-year gap between the document's last effective date and the decedent's death, combined with the corporate transition from Gulf Air G.S.C. to Gulf Air B.S.C.(c), Captain Qasim email dated December 17 2022 and DOT order governing the codeshare agreements breaks any such connection. "A brick is not a wall." Even if Exhibit A " The Contract" had marginal value, it cannot—on its own—establish any dispositive fact about domicile or deny that the Captain was assigned for codeshare flights governed by DOT, especially in light of intervening circumstances and undisputed life changes.

Deliberately Omitted Employment history alone does not establish domicile. Exhibit A " The Contract" does not identify the Captain's residence, intentions, or legal status during the relevant period and is thus incapable of proving the fact for which it is offered under Rule 401.

Federal Rule of Evidence 401 directs that relevant evidence must relate to a "fact that is of consequence to the determination of the action. In this matter, the determinative fact at issue in the Defendant's motion to dismiss  is the domicile of the Decedent at the time of death—not his employment status in 1999 or 2004.

A fact of consequence may be ultimate, intermediate, or evidentiary in nature, but it must still bear on the outcome of the action. Exhibit A—an outdated employment contract ending in 2004 and executed by a now-defunct legal entity—does not address the Decedent's domicile at the time of his death in 2022 and therefore fails to support any fact that is "of consequence" in this proceeding of Motion to dismiss for lack of Jurisdiction

When the evidence including Exhibit A serves no function other than to present outdated or incomplete background, and when that background misleads or distracts from the issues properly before the Court's exclusion is appropriate under Rule 403, not Rule 401 alone. Exhibit A the contract does not function as neutral or illustrative background evidence. It is proffered to establish a dispositive jurisdictional fact that Captain Alhindi was domiciled in Jordan. Yet it lacks any reference to his residence, intentions, or legal status after 2004. Its relevance is therefore fundamentally defective under Rule 401. Admitting Exhibit A " The Contract" under the guise of relevance would invite precisely the evidentiary misuse Rule 401 seeks to prevent, reliance on stale, incomplete, or tangential documents to resolve issues of central importance without a proper factual foundation. Because Exhibit A " The Contract" does not tend to prove any fact of consequence—let alone the one for which it is offered—it is inadmissible.

### M. Exhibit A Should Be STRIKEN or  Excluded as Misleading and Prejudicial

Even if Exhibit A were marginally relevant under Rule 401, it must be excluded under Federal Rule of Evidence 403, which permits exclusion of evidence whose "probative value is substantially outweighed by a danger of... misleading the jury, undue delay, or wasting time." Defendant's submission of an outdated, materially incomplete contract—omitting 18 years of promotions, domicile updates, and DOT-governed codeshare assignments—is a textbook example of Rule 403 misuse. Gulf Air offers no legitimate justification for withholding

subsequent contracts or amendments known to exist. This selective production prejudices Plaintiffs by distorting the employment timeline and misrepresenting the Decedent's legal and factual status at the time of death. Admission of this document would confuse the factual record, mislead the Court on dispositive jurisdictional issues, and invite undue weight on a defunct agreement with a now-nonexistent entity. Exclusion under Rule 403 is not only appropriate—it is necessary to preserve the integrity of the proceedings.

### N. PREJUDICE TO PLAINTIFFS AND THE COURT WARRANTS STRIKING EXHIBIT A

Under Federal Rule of Evidence 403, relevant evidence may be excluded if its "probative value is substantially outweighed by a danger of... unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time." The prejudice threshold is met when the evidence improperly influences the factfinder or imposes disproportionate burdens on a party that impair their ability to present a fair case. That standard is satisfied here. Plaintiffs are pro se litigants navigating a complex federal action. Defendant's submission of Exhibit A, a 20-year-old employment contract from a dissolved entity, forces Plaintiffs to expend substantial time and effort to rebut irrelevant and misleading evidence—rather than focus on the core jurisdictional and legal questions. This includes drafting A motion to strike Exhibit A (already 40+ pages), A forthcoming motion to strike the declaration (estimated 40+ pages), An opposition to the motion to dismiss (which itself cites dozens of inapplicable legal precedents and relies on Exhibit A), Jurisdictional Discovery Motion ( estimated 25 pages). This multiplies the litigation workload unreasonably and asymmetrically. Courts have held that prejudice exists where a party "injects confusion into proceedings" or imposes an undue evidentiary burden on the opposing party.  The misleading nature of Exhibit A—submitted as the "operative" employment contract through

2022—when it indisputably ends in 2004, falsely frames the employment relationship and domicile of the decedent and denies codeshare DOT governed . By relying on outdated and incomplete documentation, Gulf Air seeks to obscure the Captain's involvement in U.S.-regulated codeshare flights—despite the fact that such operations, and Gulf Air's participation in them, are the very basis for its repeated waiver of sovereign immunity under U.S. law. The exclusion of post-2008 employment records—when Gulf Air's DOT-authorized codeshare agreements were in full effect—appears calculated to deny jurisdiction and dismantle the legal foundation of Plaintiffs' claims. This mischaracterization threatens to collapse Plaintiffs' independent tort and federal violations claims into a survival action framework, which would eliminate claims for fraud, negligence per se, IIED, and NIED, among others. If accepted, the exhibit would function not as background but as a procedural trap, preemptively nullifying Plaintiffs' causes of action.

Additionally, Exhibit A is used to manufacture jurisdictional confusion, causing undue delay in resolving Defendant's motion to dismiss. The longer this confusion persists, the more Gulf Air exploits it to argue for outright dismissal—despite having withheld material documents (e.g., post-2004 contracts) that would clarify the record. This pattern constitutes a bad-faith litigation tactic that meets the standard for inherent judicial intervention.  Prejudice is also compounded by Defendant's attempt to mislead the Court by presenting Exhibit A—authored under Gulf Air G.S.C.—as governing employment with Gulf Air B.S.C., without evidentiary support for a legal novation. This creates a false appearance of continuity where none exists and invites the Court to make factual findings on an incorrect legal foundation. For these reasons, Exhibit A should be stricken or excluded in full under Rule 403, Standing Order Section 5(b), and the Court's

inherent authority to "ensure the integrity of its proceedings" and "prevent undue hardship and prejudice.

**O.  Pattern of Omission and Misrepresented Statements to Authorities and the Public**

This timeline below reveals a deliberate pattern of misrepresentation, obstruction, and bad faith conduct by Gulf Air. The company repeatedly uses selective, unverified statements from unavailable witnesses to create a one-sided record while actively avoiding judicial scrutiny in both Bangladesh and the United States. This conduct directly supports the argument that Gulf Air is acting in bad faith to deny jurisdiction, and evade liability, especially where its waiver of sovereign immunity under U.S. DOT codeshare authority is at issue. In July 16, 2023 – Gulf Air's Country Manager in Bangladesh, Mr. Issa Shaah, submitted a written statement to the Civil Aviation Authority of Bangladesh (CAAB) falsely claiming that Captain Mohannad Alhindi arrived at United Hospital at 5:30 AM. This contradicts The co-pilot's statement (arrival at 5:00 AM); The airport medical report (collapse at 3:50 AM); The hospital intake log,; The court; the court-appointed investigator's findings and hospital ECG reports.

 This false statement was intended to minimize liability for missing the "golden hour" of medical response. June 24, 2023 – The Metropolitan Magistrate Court of Dhaka issued an order directing Gulf Air, through Mr. Shaah, to produce the co-pilot for examination. Instead, Gulf Air submitted a written statement while the co-pilot was outside the country (in Bahrain) and failed to make him available—similar to the current case, where Captain Qasim has submitted a declaration but is unavailable for deposition in the U.S. Post-mortem investigation (CR Case No. 1011 of 2023) – After the Captain's death, the court initiated an investigation. Gulf Air and Mr. Shaah failed to comply with court orders to produce the co-pilot or explain his absence. July 6, 2023 – A judicial reminder order was issued, warning that noncompliance would be treated as

contempt of court. Gulf Air again ignored the order and refused to comply. Gulf Air promised

they would present the witness only to obstruct the investigation and they didn't. September 11,

2023 – A second formal court order was issued, with service confirmed via Memo No. 2401 and

Memo No. 5537. Gulf Air again refused to produce the witness, violating a direct court

command; September 19, 2023 – The Police Bureau of Investigation formally reported

"deliberate obstruction of justice" by Gulf Air for repeated failure to comply with witness

production orders. This led to the filing of Writ Petition No. 12120 of 2023 before the High

Court Division in Bangladesh. Throughout these proceedings, Gulf Air has followed a consistent

pattern: it submits declarations and witness statements from individuals it knows will not be

made available for cross-examination. In this case, Plaintiff Tala confirmed with Gulf Air's

counsel that Captain Qasim's declaration was submitted, but counsel could not confirm his

identity or availability for deposition in the United States or that they verified his statement with

him directly.

Defendant Gulf Air has irrevocably bound itself to the representation that the 1999–2004

employment contract submitted as Exhibit A remained operative until Captain Alhindi's death in

2022. This sworn assertion, made in the declaration by Captain Qasim, affirmatively disclaims

the existence of any subsequent contracts, amendments, or revisions. As a result, Defendant

cannot now supplement the record without directly contradicting its own verified statement

under penalty of perjury.

This admission renders the submitted contract affirmatively misleading and fatally incomplete.

Any attempt to now produce new documents would only confirm that Exhibit A was knowingly

submitted in violation of the Federal Rules of Evidence and this Court's Standing Order. The

evidentiary damage is already done. Nothing Defendant can now submit will cure the prejudice

or rehabilitate the credibility of Exhibit A or the declaration. The only appropriate remedy is to strike or exclude Exhibit A in its entirety.

Plaintiffs have been caused damages by this submission, the time spent on researching and typing while Gulf Air continuous harassment to Plaintiff Tala in order to submit any further motions. In addition to the inability of finding legal representation.  Plaintiff Tala has left her work and her preparation to Motion for Discovery for both Defendants to write this despite the strong unfair obstacles placed by Gulf Air B.S.C on her. Plaintiff Tala has lost to jobs in her assessment work that she could have made a living in considering her single income status. The emotional toll on how Defendant throws his captains under the bus rather than addressing their mistakes. Plaintiff Tala conferred with Ms. Darcy Gulf Air counsel, who doesn't seem to know her client's actions yet still accepted an outdated contract without verifying the relevance of it. More than 10 days Tala Spent writing this motion, with attempts to ask Gulf Air B.S.C lawyer to reconsider it. Gulf Air B.S.C asserted this is the last contract, any attempts now to present anything is going to be another attempt to underestimate the intelligence of the court therefore they should not be given any chance to submit any further items or decorations to consume Plaintiff's time .

(See Plaintiffs Exhibit 11 Tala's Affidavit  Plaintiff Tala  submitted an affidavit to support this motion. Plaintiffs are prepared to call witnesses to support their motion located in DC. Nesrin Abaza and Ruba Hindi to testify of the domicile of Captain Alhindi. Plaintiffs are willing to submit further affidavits and witnesses to support the updated contracts with Captain Alhindi and his plans to retire in IL.

## **CONCLUSION**

For the reasons stated above, Exhibit A must be stricken in its entirety under the Court's inherent authority for non compliance and violation of its own Standing Order, as well as the Federal Rules of Evidence. The document is materially misleading, affirmatively incomplete, and factually irrelevant to the dispositive jurisdictional issues before the Court. It omits critical employment milestones—including Captain Mohannad Alhindi's promotion to Captain, his 2019 transfer to Boeing aircraft under DOT-governed codeshare assignments, and his transition to employment under a different legal entity. It was submitted by a declarant who had personal knowledge of these facts yet concealed them while presenting a two-decade-old contract executed by a now-defunct company with different ownership. The contract fails to reflect the decedent's true employment status, duties, or domicile at the time of death, and its submission violates the Court's express directive to provide only material and relevant portions of evidence. Accordingly, the Court should strike Exhibit A and any mention of it in the Declaration and Defendant's motion to dismiss in full to preserve the integrity of these proceedings and prevent further prejudice and quantifiable damages.

Plaintiffs respectfully ask the Court to strike not only Exhibit A, but also any reference to it in the declaration and in Defendant's motion to dismiss. Otherwise, Plaintiffs will be compelled to submit separate motions addressing those filings. If the court finds STRIKING is an extreme measure despite Plaintiffs meeting the threshold, Plaintiffs request the court to exclude related points in EXHIBIT 1 the declarations and Exhibit A entirety from evidence. Plaintiffs understand that Motion for limited jurisdictional Discovery needs to be submitted separately, Plaintiffs plead to the court to order Jurisdictional discovery through this motion to reduce

prejudice and damages to Plaintiffs. Plaintiffs upon order can give a list of items needed for their limited jurisdictional discovery.

As pro se litigants swimming against the current in complex proceedings, Plaintiffs also respectfully request that if the Court finds any procedural defect in this motion, they be granted leave to amend or correct before dismissal on technical grounds. Plaintiffs are acting in good faith to protect the integrity of the record and ensure a fair adjudication of this matter. Plaintiff Tala will file to request Sanctions and fees for her time that she spends addressing Gulf Air irrelevant defense and exhibits when submitting a motion to Strike Declaration that contains false statement given under Perjury.

Submitted,

May 29 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

## CERTIFICATE OF SERVICE

I hereby certify that on May 29 2025, Plaintiff Feras Hindi  and Plaintiff Tala Plaintiff Samiha will be sending a true and correct copy of the following documents to be served upon the parties listed below:


1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Service Processor ABC Legal service



Submitted,

May 29 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980


Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955


Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767