**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Civil Division**

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | | |
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiff | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendant | ) | |
| _____ | ) | |

# EXHIBITS

May 29 2025

**Exhibit 1:**

 **Email from Captain Qasim** – Supports his deliberate omission of Captain Mohannad's contracts under the codeshare agreement.

**Exhibit 2:**

 **DOT Docket No. DOT-OST-2008-0195** – Department of Transportation filing relevant to codeshare agreements.

**EXHIBITS**

**Exhibit 3:**

**DOT-OST-2008-0195 (Continuation)** – Additional filings and details from the DOT docket.

**Exhibit 4:**

**Sample Flight Record** – A flight operated from Dhaka by Gulf Air B.S.C. and American Airlines Inc., at Bangladesh Dhaka Airport.

**Exhibit 5:**

**Gulf Air Name Change Documentation** – Official record showing Gulf Air's name change.

**Exhibit 6:**

**30-Day Notice of Additional Codeshare Services** – Filed by American Airlines on October 23, 2008, under DOT-OST-2008-0195.

**Exhibit 7:**

**DOT Docket No. DOT-OST-2019-0121** – Additional filings and communications relevant to the codeshare agreement.

**Exhibit 8:**

**DOT Approval of Etihad Airways and Gulf Air Codeshare Agreement** – Formal authorization for codeshare cooperation.

**Exhibit 9:**

**Gulf Air DOT Application for Renewal** – Filed application seeking renewal of operational authority.

**EXHIBITS**

**Exhibit 10:**

 **TruthFinder Report** – Showing dates and records of Captain Mohannad's U.S. addresses.


**Exhibit 11:**

 **Property Records** – Listing Captain Mohannad as the owner of his Illinois residence.


**Exhibit 12:** Plaintiff Tala's Affidavit

**EXHIBITS**

# EXHIBIT 1

Gmail

# In Loving Memory of our Colleague Mohannad AlHindi
1 message

**Capt. Qasim Ghuloom Ismaeel** <qasim.ismaeel@gulfair.com>            Sat, 17 Dec 2022 at 22:37
To: All Pilots <All.Pilots@gulfair.com>

Dear all,

It is with a heavy heart that we all mourn the passing of our beloved colleague and friend, Capt. Mohannad AlHindi.

At only 63 years young, Capt. Mohannad's unexpected passing was a shock to us all. He was patient, kind and adored by us all. It is certain that we all have one thing in common: our admiration of a man who was more than a colleague, but a friend, brother and part of our family.

We were lucky to have had Capt. Mohannad join us in 1999 as an A320 First Officer, he was then transferred to an A340 first Officer, promoted to a Captain in 2008 and on to a Senior Captain in 2013. He went on the be transferred to B787 in 2019. In his career, he was steadfast and passionate. Always willing to lend a helping hand and provide support and mentorship to the pilot and training community.

Mohannad's ability to impart his undivided attention to everyone, no matter the circumstance, and his insistence on making everyone feel comfortable, secure and loved were among his greatest strengths.

His generous spirit, contagious smile and humorous personality is how he will always be remembered and remain alive in our hearts.

May Allah rest his soul in peace. Ameen.

Kind Regards,



# EXHIBIT 2

**BEFORE THE**

**DEPARTMENT OF TRANSPORTATION**

**WASHINGTON, D. C.**

```
-----------------------------------------
Joint Application of                      :
                                          :
      AMERICAN AIRLINES, INC.             :
            and                           :   DOT-OST-2008-
      GULF AIR COMPANY                    :
                                          :
under 14 CFR Part 212 for statements of   :
authorization and under 49 USC 41109      :
for related exemption (blanket code-      :
sharing)                                  :
-----------------------------------------
```

**JOINT APPLICATION OF AMERICAN AIRLINES, INC.**
**AND GULF AIR COMPANY**

Communications with respect to this document should be sent to:

For Gulf Air Company:

MOFFETT B. ROLLER
Roller & Bauer, PLLC
1020 Nineteenth Street, N.W.
Suite 400
Washington, D.C. 20036
(202) 331-3300
mroller@rollerbauer.com

For American Airlines:

WILLIAM K. RIS, JR.
Senior Vice President –
   Government Affairs
American Airlines, Inc.
1101 17th Street, N.W.
Suite 600
Washington, D.C.  20036

HENRY C. JOYNER
Senior Vice President –
   Planning
American Airlines, Inc.
P.O. Box 619616, MD 5628
DFW Airport, Texas 75261

DON CASEY
Managing Director –
   International Planning
American Airlines, Inc.
P.O. Box 619616, MD 5635
DFW Airport, Texas 75261

ROBERT A. WIRICK
Manager, International
  Planning
American Airlines, Inc.
P.O. Box 619616, MD 5635
DFW Airport, Texas 75261
(817) 963-0394
robert.wirick@aa.com

CARL B. NELSON, JR.
Associate General Counsel
American Airlines, Inc.
1101 17th Street, N.W.
Suite 600
Washington, D.C. 20036
(202) 496-5647
carl.nelson@aa.com

June 17, 2008

**BEFORE THE**

**DEPARTMENT OF TRANSPORTATION**

**WASHINGTON, D. C.**

```
-----------------------------------------
Joint Application of                     :
                                         :
     AMERICAN AIRLINES, INC.             :
            and                          :   DOT-OST-2008-
     GULF AIR COMPANY                    :
                                         :
under 14 CFR Part 212 for statements of  :
authorization and under 49 USC 41109     :
for related exemption (blanket code-     :
sharing)                                 :
-----------------------------------------
```

### JOINT APPLICATION OF AMERICAN AIRLINES, INC. AND GULF AIR COMPANY

American Airlines, Inc. (and its affiliates American Eagle Airlines, Inc. and Executive Airlines, Inc. d/b/a American Eagle) applies for a statement of authorization, and Gulf Air Company applies for a statement of authorization and related exemption authority in order to engage in reciprocal codeshare operations (subject to 30-day notice) pursuant to the open skies agreements between the United States, on the one hand, and Bahrain, Oman, Qatar, and the United Arab Emirates, on the other.[1]

---

[1]    The American-Gulf Air Codeshare Agreement is on file in No. 98-104 (undocketed).

Specifically, American and Gulf Air are seeking the following:

(A)   American requests a statement of authorization, and Gulf Air requests any necessary underlying exemption authority (including the right to integrate such authority with Gulf Air's other permit and/or exemption authority)[2], in order to display Gulf Air's GF* designator code in conjunction with foreign air transportation of persons, property, and mail on flights operated by American or American Eagle between (1) points in the United States; (2) points in the United States and points in Abu Dhabi, Bahrain, Oman, and Qatar (either nonstop or via intermediate points in third countries); (3) points in the United States and points in third countries; and (4) points in Abu Dhabi, Bahrain, Oman, and Qatar and points in third countries.[3]

(B)   Gulf Air requests a statement of authorization to display American's AA* designator code in conjunction with

---

[2]   Although Gulf Air currently holds an exemption to serve a point or points in the United States by codesharing with American (DOT-OST-2005-20097, July 23, 2007), that exemption does not include the behind and beyond authority included in American's request, ¶¶ (A)(3) and (A)(4).  Gulf Air therefore requests that the exemption granted here should incorporate all route authority necessary for Gulf Air to operate to all points listed in ¶ (A).  This new exemption will then supersede the authority that Gulf Air currently holds in DOT-OST-2005-20097.

[3]   The authority requested herein for American will replace the limited codeshare rights to display the GF* code on specific transatlantic flights operated by American.  See Statement of Authorization No. 99-07 (March 8, 1999, undocketed), as amended by Department Action, DOT-OST-2004-19923 (January 5, 2005).

foreign air transportation of persons, property, and mail on flights operated by Gulf Air between (1) points in Abu Dhabi, Bahrain, Oman, and Qatar; (2) points in Abu Dhabi, Bahrain, Oman, and Qatar and points in the United States (either nonstop or via intermediate points in third countries); (3) points in Abu Dhabi, Bahrain, Oman, and Qatar and points in third countries; and (4) points in the United States and points in third countries.[4]  American holds underlying certificate authority on its open skies certificate for Route 835 issued by Order 2007-4-2, April 1, 2007.  Gulf Air holds the requisite charter authority to display the AA* code (DOT-OST-1999-309).

The blanket codeshare authorizations requested herein are fully consistent with the applicable open skies agreements, and with the public interest.[5]  Such authority is also consistent with the Department's policy of granting blanket rights to other codeshare partnerships in open skies regimes. See, e.g.,

---

[4]   Gulf Air currently holds a statement of authorization (granted by Notice of Action Taken in DOT-OST-1996-1055 on February 8, 2007) to display the AA* code on Gulf Air flights between London, Paris, and Frankfurt, on the one hand, and Abu Dhabi, Bahrain, Oman, and Qatar, on the other, and beyond to Kuwait.  The statement of authorization that Gulf Air seeks herein will supersede that route-specific authority.

[5]   Although the Governments of Abu Dhabi, Oman, and Qatar no longer hold ownership interests in Gulf Air, the terms of the open skies Air Transport Agreements between the United States and the United Arab Emirates (of which Abu Dhabi is a constituent emirate), Oman, and Qatar are identical to those of the Agreement between the United States and Bahrain.  As Gulf Air has previously requested and the Department has previously approved (see DOT-OST-2005-20097), Gulf Air requests, based on its longstanding history of operations to Abu Dhabi, Oman, and Qatar, that its codeshare and exemption authority include Abu Dhabi, Oman, and Qatar as co-terminal points with Bahrain.

Department Action, DOT-OST-99-6547, January 7, 2000 (Ameri-
can/Lan Chile); Department Action, DOT-OST-99-6544, January 7,
2000 (American/Finnair); Order 98-4-8, April 5, 1998 (United/
Lufthansa).

American and Gulf Air will accept the Department's
standard condition on third-country services. See, e.g.,
Notice of Action Taken, DOT-OST-99-5944, November 2, 1999
(American/Swissair), condition (e).

Blanket authorizations are in the public interest
because they enable codeshare partners to develop the full
range of services permitted under applicable bilateral agree-
ments. The services contemplated by American and Gulf Air will
provide a more efficient use of capacity in the marketplace,
and will help maximize the range of service options available
to the traveling and shipping public.

The additional codeshare services to be operated by
American and Gulf Air in the initial phase are shown in the
attached Notice. Consistent with standard practice, American
and Gulf Air will notify the Department no later than 30 days
before commencing any additional codeshare services under the
blanket authorizations we are seeking. We will inform the
Department of the market(s) to be served, the identity of the

carrier operating the aircraft in the codeshare market(s) being added, and the date on which the service will begin.  American and Gulf Air will conduct all of their codeshare operations in compliance with 14 CFR Part 257.

In response to the Department's letter of June 1, 1995 to participants in the Civil Reserve Air Fleet Program, American states that the codeshare arrangement at issue will have no impact on American's CRAF commitments.

American and Gulf Air request that blanket statements of authorization be granted for an indefinite period, consistent with the Department's practice in other codeshare proceedings, and that Gulf Air's related exemption authority be granted for at least one year.

Respectfully submitted,

MOFFETT B. ROLLER
Roller & Bauer PLLC
Attorneys for Gulf Air Company

CARL B. NELSON, JR.
Associate General Counsel
American Airlines, Inc.

June 17, 2008

# **NOTICE OF INITIAL CODESHARE POINTS**

Between GF* U.S. Gateways And

> Atlanta
> Austin
> Baltimore
> Corpus Christi
> Denver
> Detroit
> Houston
> Jackson
> Jacksonville
> Kansas City
> Las Vegas
> Memphis
> Minneapolis/St. Paul
> Newark
> New Orleans
> Norfolk
> Oklahoma City
> Orlando
> Philadelphia
> Phoenix
> Portland OR
> Raleigh/Durham
> St. Louis
> San Antonio
> San Diego
> San Francisco
> Seattle
> Tampa

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing document by email on the following persons:

scott.mcclain@delta.com
sametta.c.barnett@delta.com
kquinn@pillsburywinthrop.com
bkeiner@crowell.com
sascha.vanderbellen@nwa.com
bruce.rabinovitz@wilmerhale.com
jonathan.moss@wilmerhale.com
jeffrey.manley@united.com
bob.kneisley@wnco.com
robert.land@jetblue.com
msinick@ssd.com
cdonley@ssd.com
anbird@fedex.com
dvaughan@kelleydrye.com
kevin.montgomery@polaraircargo.com
jrichardson@johnlrichardson.com
lhalloway@crowell.com
efaberman@wileyrein.com
mroller@rollerbauer.com
howard_kass@usairways.com
benjamin.slocum@usairways.com
jhill@dlalaw.com
bill@mietuslaw.com
mgoldman@sgbdc.com
rsilverberg@sgbdc.com
dhainbach@ggh-airlaw.com
mcmillin@woa.com
mchopra@jamhoff.com
russell.bailey@alpa.org
dkirstein@yklaw.com
jyoung@yklaw.com
donna.kooperstein@usdoj.gov
dwight.moore@ustranscom.mil
jim.ballough@faa.gov
byerlyjr@state.gov

*Cal B Nelson Jr*

CARL B. NELSON, JR.

June 17, 2008

# EXHIBIT 3



**UNITED STATES OF AMERICA**
**DEPARTMENT OF TRANSPORTATION**
**OFFICE OF THE SECRETARY**
**WASHINGTON, D.C.**

Issued by the Department of Transportation on August 4, 2008

## NOTICE OF ACTION TAKEN – DOCKET DOT-OST-2008-0195

This serves as notice to the public of the action described below, taken by the Department official indicated (no additional confirming order will be issued in this matter).

Joint Applicants:  **AMERICAN AIRLINES, INC. (American)[1] and**          Date Filed:  June 17, 2008
                **GULF AIR COMPANY (Gulf Air)**

Relief requested:  Exemption from 49 USC § 41301 to permit Gulf Air to conduct scheduled foreign air transportation of persons, property, and mail from points behind Abu Dhabi, Bahrain, Oman, and Qatar, on the one hand, via points in Abu Dhabi, Bahrain, Oman, and Qatar and via intermediate points, to a point or points in the United States and beyond, on the other hand, pursuant to a code-share arrangement with American.[2]

Blanket statement of authorization under 14 CFR Part 212 to permit Gulf Air to display the (AA*) designator code of American on flights operated by Gulf Air between: 1) points in Abu Dhabi, Bahrain, Oman, and Qatar; 2) points in Abu Dhabi, Bahrain, Oman, and Qatar and points in the United States (either nonstop or via intermediate points in third countries); 3) points in Abu Dhabi, Bahrain, Oman, and Qatar and points in third countries; and 4) points in the United States and points in third countries.[3]

Blanket statement of authorization under 14 CFR Part 212 to permit American to display the (GF*) designator code of Gulf Air on flights operated by American or American Eagle between: 1) points in the United States; 2) points in the United States and points in Abu Dhabi, Bahrain, Oman, and Qatar (either nonstop or via intermediate points in third countries); 3) points in the United States and points in third countries; and 4) points in Abu Dhabi, Bahrain, Oman, and Qatar and points in third countries.[4]

The initial code-share points to be served by the joint applicants are attached as Appendix A.

Applicant representatives:  Moffett B. Roller, 202-331-3300 (Gulf Air) and Carl B. Nelson, Jr., 202-496-5647 (American)

DOT analyst:  Robert J. Finamore, 202-366-2405

Responsive pleadings:  None

### DISPOSITION

Action:  Approved, subject to conditions                    Action date:  August 4, 2008

Effective dates of authority granted:  Gulf Air's exemption authority is effective from August 4, 2008, through August 4, 2010.  The statements of authorization granted to Gulf Air and American are effective August 4, 2008, and will remain in effect for an indefinite duration, subject to conditions.

---

[1] The joint applicants state that American is also applying on behalf of its affiliated carriers American Eagle Airlines, Inc. and Executive Airlines, Inc. d/b/a American Eagle.
[2] The joint applicants note that Gulf Air's existing exemption does not include the behind and beyond authority necessary for its codeshare operations with American, and that its instant request for expanded exemption authority will therefore supersede the exemption authority held by Gulf Air in Docket DOT-OST-2005-20097.
[3]  The joint applicants note that Gulf Air's instant request for a statement of authorization will supersede the route-specific statement of authorization held by Gulf Air in Docket DOT-OST-1996-1055.
[4] The authority requested by American will replace its limited authority to display the GF* code on specific transatlantic flights.  *See* undocketed statement of authorization 99-07, granted March 8, 1999, and Notice of Action Taken dated January 5, 2005, in Docket DOT-OST-2004-19923.

Basis for approval (bilateral agreement/reciprocity): Bilateral aviation agreements between the United States and the United Arab Emirates, Bahrain, Oman, and Qatar.

Except to the extent exempted/waived, this authority is subject to the terms, conditions, and limitations of our standard foreign air carrier exemption conditions attached as Appendix B and codeshare conditions attached as Appendix C.  In addition, American shall adhere to the otherwise applicable terms, conditions, and limitations of its certificates of public convenience and necessity.

Special conditions/Remarks:  The authority granted above does not authorize Gulf Air to operate its own aircraft to any point in the United States for which it does not hold Department authority to serve with its own aircraft and crews (see Docket DOT-OST-1995-309).

**Action taken by:   Paul L. Gretch, Director Office of International Aviation**

---

Under authority assigned by the Department in its regulations, 14 CFR Part 385, we found that (1) our action was consistent with Department policy; (2) the applicants were qualified to perform their proposed operations; (3) grant of the authority was consistent with the public interest; and (4) grant of the authority would not constitute a major regulatory action under the Energy Policy and Conservation Act of 1975.  To the extent not granted/deferred/dismissed, we denied all requests in the referenced Docket.  We may amend, modify, or revoke the authority granted in this Notice at any time without hearing at our discretion.

Persons entitled to petition the Department for review of the action set forth in this Notice under the Department's regulations, 14 CFR §385.30, may file their petitions within seven (7) days after the date of issuance of this Notice.  This action was effective when taken, and the filing of a petition for review will not alter such effectiveness.

*An electronic version of this document is available on the World Wide Web at:*
*http://www.regulations.gov*

## NOTICE OF INITIAL CODESHARE POINTS

Between GF* U.S. Gateways And

Atlanta
Austin
Baltimore
Corpus Christi
Denver
Detroit
Houston
Jackson
Jacksonville
Kansas City
Las Vegas
Memphis
Minneapolis/St. Paul
Newark
New Orleans
Norfolk
Oklahoma City
Orlando
Philadelphia
Phoenix
Portland OR
Raleigh/Durham
St. Louis
San Antonio
San Diego
San Francisco
Seattle
Tampa

Appendix B

**Foreign Carrier Exemption Conditions**

In the conduct of the operations authorized, the foreign carrier applicant(s) shall:

(1)  Not conduct any operations unless it holds a currently effective authorization from its homeland for such operations, and it has filed a copy of such authorization with the Department;

(2)  Comply with all applicable requirements of the Federal Aviation Administration, the Transportation Security Administration, and with all applicable U.S. Government requirements concerning security, including, but not limited to, 14 CFR Parts 129, 91, and 36 and 49 CFR Part 1546 or 1550, as applicable.  To assure compliance with all applicable U.S. Government requirements concerning security, the holder shall, before commencing any new service (including charter flights) from a foreign airport that would be the holder's last point of departure for the United States, contact its International Industry Representative (IIR) (formerly referred to as International Principal Security Inspector) to advise the IIR of its plans and to find out whether the Transportation Security Administration has determined that security is adequate to allow such airport(s) to be served;

(3)  Comply with the requirements for minimum insurance coverage contained in 14 CFR Part 205, and, prior to the commencement of any operations under this authority, file evidence of such coverage, in the form of a completed OST Form 6411, with the Federal Aviation Administration's Program Management Branch (AFS-260), Flight Standards Service (any changes to, or termination of, insurance also shall be filed with that office);

(4)  Not operate aircraft under this authority unless it complies with operational safety requirements at least equivalent to Annex 6 of the Chicago Convention;

(5)  Conform to the airworthiness and airman competency requirements of its Government for international air services;

(6)  Except as specifically exempted or otherwise provided for in a Department Order, comply with the requirements of 14 CFR Part 203, concerning waiver of Warsaw Convention liability limits and defenses;

(7)  Agree that operations under this authority constitute a waiver of sovereign immunity, for the purposes of 28 U.S.C. 1605(a), but only with respect to those actions or proceedings instituted against it in any court or other tribunal in the United States that are: (a)  based on its operations in international air transportation that, according to the contract of carriage, include a point in the United States as a point of origin, point of destination, or agreed stopping place, or for which the contract of carriage was purchased in the United States; or (b)  based on a claim under any international agreement or treaty cognizable in any court or other tribunal of the United States.  In this condition, the term "international air transportation" means "international transportation" as defined by the Warsaw Convention, except that all States shall be considered to be High Contracting Parties for the purpose of this definition;

(8)  Except as specifically authorized by the Department, originate or terminate all flights to/from the United States in its homeland;

(9)  Comply with the requirements of 14 CFR Part 217, concerning the reporting of scheduled, nonscheduled, and charter data;

(10) If charter operations are authorized, except as otherwise provided in the applicable aviation agreement, comply with the Department's rules governing charters (including 14 CFR Parts 212 and 380); and

(11) Comply with such other reasonable terms, conditions, and limitations required by the public interest as may be prescribed by the Department, with all applicable orders or regulations of other U.S. agencies and courts, and with all applicable laws of the United States.


This authority shall not be effective during any period when the holder is not in compliance with the conditions imposed above.  Moreover, this authority cannot be sold or otherwise transferred without explicit Department approval under Title 49 of the U.S. Code.

12/2007

Appendix C

**The code-share operations authorized here are subject to the following conditions:**

(a) The statements of authorization will remain in effect only as long as (i) American and Gulf Air continue to hold the necessary underlying authority to operate the code-share services at issue, and (ii) the code-share agreement providing for the code-share operations remains in effect.

(b) American and Gulf Air must promptly notify the Department (Office of International Aviation) if the code-share agreement providing for the code-share operations is no longer effective or if the carriers decide to cease operating all or a portion of the approved code-share services.  Such notices should be filed in Docket DOT-OST-2008-0195.[1]

(c) American and/or Gulf Air must notify the Department no later than 30 days before they begin any new code-share service under the code-share services authorized here.  Such notice shall identify the market(s) to be served, which carrier will be operating the aircraft in the code-share market added, and the date on which the service will begin.  Such notices should be filed in Docket DOT-OST-2008-0195.

(d) The code-sharing operations conducted under this authority must comply with 14 CFR 257 and with any amendments to the Department's regulations concerning code-share arrangements that may be adopted.  Notwithstanding any provisions in the contract between the carriers, our approval here is expressly conditioned upon the requirements that the subject foreign air transportation be sold in the name of the carrier holding out such service in the computer reservation systems and elsewhere; that the carrier selling such transportation (*i.e.,* the carrier shown on the ticket) accept responsibility for the entirety of the code-share journey for all obligations established in its contract of carriage with the passenger; that the passenger liability of the operating carrier be unaffected; and that the operating carrier shall not permit the code of its U.S. code-sharing partner to be carried on any flight that enters, departs, or transits the airspace of any area for whose airspace the Federal Aviation Administration has issued a flight prohibition.

(e) Any service provided shall be consistent with all applicable agreements between the United States and the United Arab Emirates, Bahrain, Oman, and Qatar, and all applicable agreements with other foreign countries involved.  Furthermore, (i) nothing in the award of this blanket statement of authorization should be construed as conferring upon American rights (including code-share, fifth-freedom intermediate and/or beyond rights) to serve markets where U.S. carrier rights are limited unless American notifies us of its intent to serve such market and unless and until the Department has completed any necessary carrier selection procedures to determine which carrier(s) should be authorized to exercise such rights;[2] and (ii) should there be a request by any carrier to use the limited-entry route rights that are included in American's authority by virtue of the blanket statement of authorization granted here, but that are not being used by American, the holding of such authority will not be considered as providing any preference for American in a carrier selection proceeding to determine which carrier(s) should be entitled to use the authority at issue.

(f) The authority granted here is specifically conditioned so that neither American nor Gulf Air shall give any force or effect to any contractual provisions between themselves that are contrary to these conditions.

We may amend, modify, or revoke the authority granted at any time without hearing at our discretion.

---

[1] We expect this notification to be received within 10 days of such non-effectiveness or of such decision.
[2] The notice referenced in condition (c) above may be used for this notification.

# EXHIBIT 4



# EXHIBIT 5

007811/10

# OS NM01

## Registration of change of name of overseas company as registered in the UK

In accordance with Section 1047 and 1048 of the Companies Act 2006.


Companies House

A fee is payable with this form.
Please see 'How to pay' on the last page.

COMPANIES HOUSE

✓ **What this form is for**
You may use this form to give notice of a change of name by the company previously registered in the UK.

✗ **What this form is NOT**
You cannot use this form notice of a change of na UK establishment

THURSDAY

*L148WCMZ*

LD2          08/03/2012          #72

| 1 | Overseas company details |
|---|---|

**Existing company number**

F C 0 0 9 9 1 6

**Existing name of overseas company or alternative name registered in the UK**

GULF AIR COMPANY G S.C.

→ **Filling in this form**
Please complete in typescript or in bold black capitals.

All fields are mandatory unless specified or indicated by *

| 2 | Change of name |
|---|---|

Is the company changing its existing corporate name to a new corporate name?
→ **Yes**    Go to Section 3.
→ **No**     Go to Section 4 to change the name to, or from, an alternative name under section 1048 of the Companies Act 2006.

| 3 | Existing corporate name to new corporate name ❶ |
|---|---|

Please give the new corporate name below.

**New corporate name**    Gulf Air B S C  (c)

❶ If you are an EEA company go to Section 6 (if applicable) and Section 7 If you are a non-EEA company go to Section 5, then Section 6 (if applicable) and Section 7.

| 4 | Change of name under Section 1048 of the Companies Act 2006 ❷ |
|---|---|

The company wishes to register an alternative name under which it proposes to carry on business in the UK under Section 1048 of the Companies Act 2006.

Please tick the appropriate box below to indicate the change: ❸
☐ Corporate name to an alternative name
☐ Alternative name to a corporate name
☐ Alternative name to a new alternative name

Please give the new name below

❷ A company may register an alternative name under which it proposes to carry on business in the United Kingdom under Section 1048 of the Companies Act 2006.

❸ You must tick one box

**New corporate/ alternative name**

RE-SCAN

**BIS** | Department for Business Innovation & Skills

CHFP000
05/10 Version 4 0

## OS NM01
Registration of change of name of overseas company as registered in the UK

**5** | **Overseas company name restrictions** ❶

This section does not apply to a European Economic Area (EEA) company registering its corporate name.

Please tick the box only if the proposed company name contains sensitive or restricted words or expressions that require you to seek comments of government department or other specified body.

☐ I confirm that the proposed company name contains sensitive or restricted words or expressions and that approval, where appropriate, has been sought of a government department or other specified body and I attach a copy of their response.

❶ **Overseas company name restrictions**
A list of sensitive or restricted words or expressions that require consent can be found in guidance available on our website
www.companieshouse.gov.uk

**6** | **UK establishments**

A return must be delivered in respect of any alteration to the company particulars by each UK establishment. If, however, a company has more than one UK establishment, it may deliver only one form in respect of all those UK establishments, provided it completes the table below

| UK establishment name | Registration number |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

**7** | **Signature**

Signature

I am signing this form on behalf of the overseas company.

Signature
X _____ , X

This form may be signed by.
Director, Secretary, Permanent representative.

CHFP000
05/10 Version 4 0

# OS NM01

**Registration of change of name of overseas company as registered in the UK**

## Presenter information

You do not have to give any contact information, but if you do it will help Companies House if there is a query on the form. The contact information you give will be visible to searchers of the public record

**Contact name** Mr. Rajesh Saggar

**Company name** Gulf Air

**Address** 3 Shortlands, Hammersmith

**Post town** London

**County/Region**

**Postcode** | W | 6 | | 8 | D | A | |

**Country** England

**DX**

**Telephone** +44 208 600 7455

## ✓ Checklist

We may return forms completed incorrectly or with information missing.

Please make sure you have remembered the following:
- ☐ The company name and number as registered in the UK match the information held on the public Register.
- ☐ You have entered the proposed new overseas company name in either Section 3 or Section 4 as appropriate.
- ☐ You have completed Section 5, if applicable.
- ☐ You have completed Section 6, if applicable.
- ☐ You have signed the form
- ☐ You have included copies of any response from an appropriate body, if applicable.
- ☐ You have provided the correct fee.

## ❗ Important information

Please note that all information on this form will appear on the public record.

## £ How to pay

A fee of £10 is payable to Companies House to change the name of an overseas company. Make cheques or postal orders payable to 'Companies House'.

## ✉ Where to send

You may return this form to any Companies House address:

**England and Wales:**
The Registrar of Companies, Companies House, Crown Way, Cardiff, Wales, CF14 3UZ.
DX 33050 Cardiff.

**Scotland:**
The Registrar of Companies, Companies House, Fourth floor, Edinburgh Quay 2, 139 Fountainbridge, Edinburgh, Scotland, EH3 9FF.
DX ED235 Edinburgh 1
or LP - 4 Edinburgh 2 (Legal Post).

**Northern Ireland:**
The Registrar of Companies, Companies House, Second Floor, The Linenhall, 32-38 Linenhall Street, Belfast, Northern Ireland, BT2 8BG.
DX 481 N R. Belfast 1

## ℹ Further information

For further information, please see the guidance notes on the website at www.companieshouse.gov.uk or email enquiries@companieshouse.gov.uk

**This form is available in an alternative format. Please visit the forms page on the website at www.companieshouse.gov.uk**

This form has been provided free of charge by Companies House.

CHFP000
05/10 Version 4.0



## FILE COPY

## CERTIFICATE OF REGISTRATION
## OF A CHANGE OF NAME OF AN
## OVERSEA COMPANY

Company No. FC009916

The Registrar of Companies for England and Wales hereby certifies that

## GULF AIR COMPANY G.S.C.

has this day registered a change of name to

## GULF AIR B.S.C.(C)

Given at Companies House on **13th March 2012**





THE OFFICIAL SEAL OF THE
REGISTRAR OF COMPANIES

# EXHIBIT 6

BEFORE THE

DEPARTMENT OF TRANSPORTATION

WASHINGTON, D. C.

```
--------------------------------------------
Joint Application of                        :
                                            :
     AMERICAN AIRLINES, INC.                :
               and                          :   DOT-OST-2008-
     GULF AIR COMPANY                        :   0195
                                            :
under 14 CFR Part 212 for statements of     :
authorization (blanket codesharing) and     :
Under 49 USC 40109 for related exemption    :
authority                                   :
--------------------------------------------
```

30-DAY NOTICE OF AMERICAN AIRLINES, INC.
OF ADDITIONAL CODESHARE SERVICES

Communications with respect to this document should be sent to:

HENRY C. JOYNER
Senior Vice President -
  Planning
American Airlines, Inc.
P.O. Box 619616, MD 5628
DFW Airport, Texas  75261

DON CASEY
Managing Director -
  International Planning
American Airlines, Inc.
P.O. Box 619616, MD 5635
DFW Airport, Texas  75261
(817) 963-2354
don.casey@aa.com

ROBERT A. WIRICK
Director, International Planning
American Airlines, Inc.
P.O. Box 619616, MD 5635
DFW Airport, Texas  75261
(817) 963-0394
robert.wirick@aa.com

WILLIAM K. RIS, JR.
Senior Vice President -
  Government Affairs
American Airlines, Inc.
1101 17th Street, N.W.
Suite 600
Washington, D.C.  20036

CARL B. NELSON, JR.
Associate General Counsel
American Airlines, Inc.
1101 17th Street, N.W.
Suite 600
Washington, D.C.  20036
(202) 496-5647
carl.nelson@aa.com

October 23, 2008

BEFORE THE

DEPARTMENT OF TRANSPORTATION

WASHINGTON, D. C.

```
---------------------------------------------
Joint Application of                    :
                                        :
    AMERICAN AIRLINES, INC.             :
              and                       :    DOT-OST-2008-
    GULF AIR COMPANY                     :    0195
                                        :
under 14 CFR Part 212 for statements of :
authorization (blanket codesharing) and :
under 49 USC 40109 for related exemption :
authority                               :
---------------------------------------------
```

30-DAY NOTICE OF AMERICAN AIRLINES, INC.
OF ADDITIONAL CODESHARE SERVICES

American Airlines, Inc., under condition (c) of
Appendix C to the Notice of Action Taken in this docket issued
on August 4, 2008, hereby gives notice that, effective no
sooner than 30 days from the date hereof, the GF* designator
code of Gulf Air Company will be displayed on flights operated
by American or American Eagle between GF* U.S. gateways and the
following points:

Albuquerque

Buffalo

Charlotte

Cincinnati

Cleveland

El Paso

- 2 -

Fort Lauderdale

Nashville

Omaha

Pittsburgh

Sacramento

Santa Ana Orange County

Syracuse

Tulsa

Respectfully submitted,

CARL B. NELSON, JR.
Associate General Counsel
American Airlines, Inc.

October 23, 2008

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing document by email on the following persons:

scott.mcclain@delta.com
sametta.c.barnett@delta.com
kquinn@pillsburywinthrop.com
bkeiner@crowell.com
sascha.vanderbellen@nwa.com
bruce.rabinovitz@wilmerhale.com
jonathan.moss@wilmerhale.com
jeffrey.manley@united.com
bob.kneisley@wnco.com
robert.land@jetblue.com
msinick@ssd.com
cdonley@ssd.com
anbird@fedex.com
dvaughan@kelleydrye.com
kevin.montgomery@polaraircargo.com
jrichardson@johnlrichardson.com
lhalloway@crowell.com
efaberman@wileyrein.com
mroller@rollerbauer.com
howard_kass@usairways.com
benjamin.slocum@usairways.com
jhill@dlalaw.com
bill@mietuslaw.com
mgoldman@sgbdc.com
rsilverberg@sgbdc.com
dhainbach@ggh-airlaw.com
mcmillin@woa.com
mchopra@jamhoff.com
russell.bailey@alpa.org
dkirstein@yklaw.com
jyoung@yklaw.com
donna.kooperstein@usdoj.gov
dwight.moore@ustranscom.mil
jim.ballough@faa.gov
byerlyjr@state.gov
recohn@hhlaw.com
cjsimpson@zsrlaw.com
pmurphy@lopmurphy.com
lachter@starpower.net
anita.mosner@hklaw.com

October 23, 2008          CARL B. NELSON, JR.

# EXHIBIT 7

**BEFORE THE**
**DEPARTMENT OF TRANSPORTATION**
**WASHINGTON, D.C.**

| | |
|---|---|
| Application of<br><br>**ETIHAD AIRWAYS P.J.S.C.**<br><br>for statement of authorization pursuant to 14 C.F.R.<br>Part 212<br><br>and<br><br>**GULF AIR B.S.C. (C)**<br><br>For an Exemption | Docket DOT-OST-2019-___ |

## JOINT APPLICATION OF
## ETIHAD AIRWAYS P.J.S.C. AND GULF AIR B.S.C. (C)

Communications with respect to this document should be sent to:

Anita M. Mosner
Jennifer Nowak
Benjamin T. Slocum
Marina V. O'Brien
Holland & Knight LLP
800 17th Street, N.W., Suite 1100
Washington, DC 20006
T: (202) 419-2604
Email: anita.mosner@hklaw.com

Counsel for Etihad Airways P.J.S.C.

Carol Anderson
Acting General Counsel
Gulf Air B.S.C. (c)
Building 122
Road 2403
Muharraq
Kingdom of Bahrain
Email: carol.anderson@gulfair.com

Counsel for Gulf Air B.S.C.(c)

DATED: August 20, 2019

**NOTICE: Any person may file an answer to this Joint Application. The Joint Applicants**
**are requesting expedited relief from the Department and will poll all interested parties.**

# EXHIBIT 8

## BEFORE THE
## DEPARTMENT OF TRANSPORTATION
## WASHINGTON, D.C.

Application of

**ETIHAD AIRWAYS P.J.S.C.**

for statement of authorization pursuant to 14 C.F.R.
Part 212

and

**GULF AIR B.S.C. (C)**

For an Exemption

Docket DOT-OST-2019-___

## APPLICATION OF
## ETIHAD AIRWAYS P.J.S.C. AND GULF AIR B.S.C. (C)

Pursuant to 14 C.F.R. Part 212, Etihad Airways P.J.S.C. ("Etihad") applies for a statement

of authorization in order to engage display the Gulf Air B.S.C. (c) ("Gulf Air") code on its flights

operated between the United States and Abu Dhabi. Gulf Air requests an exemption in order to

permit it to hold out and market scheduled air transportation to the United States pursuant to this

arrangement. The Joint Applicants intend to begin codeshare service as soon as possible and

respectfully request expedited approval of this Application.[1]  Etihad requests that the statement

of authorization be granted for an indefinite period, consistent with Department precedent, so long

as the codeshare agreement continues to be effective.

---

[1] To the extent necessary, Etihad requests a waiver of the 45-day advance filing requirement contained
in 14 C.F.R. § 212.10(d)(2).  The carriers will poll on these applications.

In support of this joint application, the Joint Applicants respectfully state as follows:

1.      Etihad requests a statement of authorization in order to display Gulf Air's GF*

designator code in conjunction with foreign air transportation of persons, property, and mail on

flights operated by Etihad between points in the United States and in points in the U.A.E.

3.      Etihad holds a foreign air carrier permit that authorizes it to engage in scheduled

and charter foreign air transportation of persons, property, and mail from points behind the U.A.E.

and intermediate points to a point or points in the United States and beyond.[2]

4.      Gulf Air hereby applies for exemption authority to hold out service to the United

States pursuant to its code-sharing arrangement with Etihad.  Approval of this authority would be

entirely consistent with the Department's prior approvals of codesharing by Gulf Air.[3]

5.      The codeshare authorization requested herein is fully consistent with the

applicable open skies air transport agreements currently in place between the United States and

both the U.A.E. and Bahrain, as well as with the public interest.[4]  As the Department has noted:

> Increased international codesharing and other cooperative arrangements can
> benefit consumers by increasing international service options and enhancing
> competition between carriers, particularly for traffic to or from cities behind major
> gateways. By stimulating traffic, the increased competition and service options
> should expand the overall international market and increase overall opportunities
> for the aviation industry.[5]

---

[2] See DOT Order 2010-8-6 (Aug. 11, 2010). Etihad also holds an exemption to engage in scheduled and charter foreign air transportation of property and mail between any point or points in the United States and any other point or points. See Notice of Action Taken (November 2, 2012), DOT-OST-2005-23345 (renewal timely filed).

[3] See Notice of Action Taken, Docket DOT-OST-2005-20097 (July 23, 2007) (granting exemption to Gulf Air to provide air service to the United States pursuant to a codeshare arrangement with American Airlines).

[4] See U.S.-U.A.E. Open Skies Agreement, Art. 8, Para. 7 (Mar. 11, 2002) and U.S.-Bahrain Air Transport Agreement (May 24, 1999), Annex I, Section 1, Route B.1.

[5] Statement of United States International Air Transportation Policy, 60 Fed. Reg. 21841 (May 3, 1995).

Joint Application of Etihad Airways P.J.S.C. and
Gulf Air B.S.C. (C)
Page 3

6.    Initially, Gulf Air will place its code on Etihad services operated from Abu Dhabi to
Washington, DC (IAD), New York (JFK), Los Angeles (LAX) and Chicago (ORD).

7.    The Joint Applicants accept the conditions normally applicable to codeshare
authority as requested herein. The Joint Applicants will comply with the requirements of 14 C.F.R.
Part 257 in operating and marketing the codeshare services described in this application.

**WHEREFORE**, Etihad Airways P.J.S.C. and Gulf Air B.S.C. (c) respectfully request that
the Department of Transportation promptly approve a statement of authorization for Etihad to
enable Gulf Air to place its designator code on its US-Abu Dhabi flights, and grant Gulf Air an
exemption so that it can hold out and market Bahrain-US services as described herein. The
parties further request that the Department grant such other relief as the Department may deem
necessary and appropriate.

Respectfully submitted,

Anita M. Mosner
Jennifer Nowak
Benjamin T. Slocum
Marina V. O'Brien
**Holland & Knight LLP**

Carol Anderson
Acting General Counsel
**Gulf Air B.S.C. (c)**

Counsel for Etihad Airways P.J.S.C.

DATED:  August 20, 2019

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served the foregoing document on the persons identified below by causing a copy to be sent by electronic mail.

robert.wirick@aa.com
john.b.williams@aa.com
alex.krulic@delta.com
steven.seiden@delta.com
chris.walker@delta.com
dan.weiss@united.com
steve.morrisey@united.com
abried@jenner.com (Counsel for United)
dsmalls@ups.com
anita.mosner@hklaw.com (Counsel for UPS)
jennifer.nowak@hklaw.com (Counsel for UPS)
sllunsford@fedex.com
sharon.pasley@fedex.com
cefelts@fedex.com
rscarter@fedex.com
jcanny@amerijet.com
rpommer@atlasair.com
naveen.rao@atlasair.com
kevin.montgomery@polaraircargo.com
rsilverberg@sgbdc.com (Counsel for ABX)
jjohnson@sgbdc.com (Counsel for ABX)
matwood@cozen.com (Counsel for Kalitta Air)

Marina O'Brien
August 20, 2019

# EXHIBIT 9



**UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION
OFFICE OF THE SECRETARY
WASHINGTON, D.C.**

Issued by the Department of Transportation on August 29, 2019

**NOTICE OF ACTION TAKEN -- DOCKET DOT-OST-2019-0121**

This serves as notice to the public of the action described below, taken by the Department official indicated (no additional confirming order will be issued in this matter).

**Applicants:  Etihad Airways P.J.S.C. (Etihad)
             Gulf Air B.S.C. (C) (Gulf Air)**

Date Filed: August 20, 2019

Relief requested:

**Gulf Air** - Exemption from 49 U.S.C. § 41301 to permit Gulf Air to engage in scheduled foreign air transportation of persons, property, and mail to the extent necessary to hold out service pursuant to its code-share arrangement with Etihad between points in the United States and points in the United Arab Emirates.

**Etihad -** Statement of authorization under 14 CFR Part 212 to the extent necessary to permit Etihad to display the GF* designator code of Gulf Air in conjunction with foreign air transportation of persons, property, and mail on flights operated by Etihad between points in the United States and points in the United Arab Emirates.

The joint applicants further request a waiver of the 45-day advance filing requirements under 14 CFR Part 212.

If renewal, date and citation of last action: New authority

Applicant representatives: Anita M. Mosner, Jennifer Nowak,
                 Benjamin T. Slocum, & Marina V. O'Brien (Etihad Airways)  (202) 419-2604
                 Carol Anderson (Gulf Air)

DOT Analyst:  Shelita A. Johnson (202) 366-1226

Responsive pleadings:  None filed

**DISPOSITION**

Action:  Approved                                    Action date: August 29, 2019[1]

Effective dates of exemption authority granted: August 29, 2019 – August 29, 2021
Effective dates of statement of authorization granted: August 29, 2019, and will remain in effect indefinitely, subject to conditions.

Basis for approval (bilateral agreement/reciprocity): Bilateral Air Transport Agreements between the United States and the United Arab Emirates and between the United States and Bahrain

Except to the extent exempted/waived, this authority is subject to the terms, conditions, and limitations of our standard foreign air carrier exemption conditions (attached as Appendix A), and code-share conditions (attached as Appendix B).

**Action taken by:  Brian J. Hedberg, Director
                 Office of International Aviation**

---

[1] The Department is acting on the joint applicants' request prior to the expiration of the answer period with the consent of all parties served.

Under authority assigned by the Department in its regulations, 14 CFR Part 385, we found that (1) the applicants are qualified to perform the proposed operations; (2) our action was consistent with Department policy; (3) grant of the authority was consistent with the public interest; and (4) grant of the authority would not constitute a major regulatory action under the Energy Policy and Conservation Act of 1975. To the extent not granted/deferred/dismissed, we denied all requests in the referenced Docket. We may amend, modify, or revoke the authority granted in this Notice at any time without hearing at our discretion.

Persons entitled to petition the Department for review of the action set forth in this Notice under the Department's regulations, 14 CFR § 385.30, may file their petitions within seven (7) days after the date of issuance of this Notice. This action was effective when taken, and the filing of a petition for review will not alter such effectiveness.

*An electronic version of this document is available on the World Wide Web at:*
***http://www.regulations.gov***

**Appendix A**

**Foreign Air Carrier Exemption Conditions**

In the conduct of the operations authorized, the foreign carrier applicant shall:

(1)  Not conduct any operations unless it holds a currently effective authorization from its homeland for such operations, and it has filed a copy of such authorization with the Department;

(2)  Comply with all applicable requirements of the Federal Aviation Administration, the Transportation Security Administration, and with all applicable U.S. Government requirements concerning security, including, but not limited to, 14 CFR Parts 129, 91, and 36 and 49 CFR Part 1546 or 1550, as applicable. To assure compliance with all applicable U.S. Government requirements concerning security, the holder shall, before commencing any new service (including charter flights) from a foreign airport that would be the holder's last point of departure for the United States, contact its International Industry Representative (IIR) (formerly referred to as International Principal Security Inspector) to advise the IIR of its plans and to find out whether the Transportation Security Administration has determined that security is adequate to allow such airport(s) to be served;

(3)  Comply with the requirements for minimum insurance coverage contained in 14 CFR Part 205, and, prior to the commencement of any operations under this authority, file evidence of such coverage, in the form of a completed OST Form 6411, with the Federal Aviation Administration's Program Management Branch (AFS-260), Flight Standards Service (any changes to, or termination of, insurance also shall be filed with that office);

(4)  Not operate aircraft under this authority unless it complies with operational safety requirements at least equivalent to Annex 6 of the Chicago Convention;

(5)  Conform to the airworthiness and airman competency requirements of its Government for international air services;

(6)  Except as specifically exempted or otherwise provided for in a Department Order, comply with the requirements of 14 CFR Part 203, concerning waiver of Warsaw Convention liability limits and defenses;

(7)  Agree that operations under this authority constitute a waiver of sovereign immunity, for the purposes of 28 U.S.C. 1605(a), but only with respect to those actions or proceedings instituted against it in any court or other tribunal in the United States that are: (a)  based on its operations in international air transportation that, according to the contract of carriage, include a point in the United States as a point of origin, point of destination, or agreed stopping place, or for which the contract of carriage was purchased in the United States; or (b)  based on a claim under any international agreement or treaty cognizable in any court or other tribunal of the United States.  In this condition, the term "international air transportation" means "international transportation" as defined by the Warsaw Convention, except that all States shall be considered to be High Contracting Parties for the purpose of this definition;

(8)  Except as specifically authorized by the Department, originate or terminate all flights to/from the United States in its homeland;

(9)  Comply with the requirements of 14 CFR Part 217, concerning the reporting of scheduled, nonscheduled, and charter data;

(10) If charter operations are authorized, except as otherwise provided in the applicable aviation agreement, comply with the Department's rules governing charters (including 14 CFR Parts 212 and 380);

(11) Comply with such other reasonable terms, conditions, and limitations required by the public interest as may be prescribed by the Department, with all applicable orders or regulations of other U.S. agencies and courts, and with all applicable laws of the United States; and

(12) Be subject to all applicable provisions of any treaty, convention or agreement affecting international air transportation now in effect, or that may become effective during the period this exemption remains in effect, to which the United States and the holder's homeland are or shall become parties.

This authority shall not be effective during any period when the holder is not in compliance with the conditions imposed above.  Moreover, this authority cannot be sold or otherwise transferred without explicit Department approval under Title 49 of the U.S. Code.

**Appendix B**

**The code-share operations authorized here are subject to the following conditions:**

(a)  The statement of authorization will remain in effect only as long as (i) Etihad Airways and Gulf Air continue to hold the necessary underlying authority to operate the code-share services at issue, and (ii) the code-share agreement providing for the code-share operations remains in effect.

(b) Etihad Airways and/or Gulf Air must promptly notify the Department if the code-share agreement providing for the code-share operations is no longer effective or the carriers decide to cease operating any or all of the approved code-share services.   We expect this notification to be received within 10 days of such non-effectiveness or of such decision.  Such notices should be filed in docket DOT-OST-2019-0121.

(c)  The code-sharing operations conducted under this authority must comply with 14 C.F.R. Part 257 and with any amendments to the Department's regulations concerning code-share arrangements that may be adopted.  Notwithstanding any provisions in the contract between the carriers, our approval here is expressly conditioned upon the requirements that the subject foreign air transportation be sold in the name of the carrier holding out such service in computer reservation systems and elsewhere; that the carrier selling such transportation (i.e., the carrier shown on the ticket) accept responsibility for the entirety of the code-share journey for all obligations established in its contract of carriage with the passenger; and that the passenger liability of the operating carrier be unaffected.

(d)  The authority granted here is specifically conditioned so that neither Etihad Airways nor Gulf Air shall give any force or effect to any contractual provisions between themselves that are contrary to these conditions.

(e)  We may amend, modify, or revoke this authority at any time without hearing, at our discretion.

# EXHIBIT 10

 truthfinder®

Background Report

# Mohannad Y Alhindi

Link to Report

Report Created

Feb 22, 2023

truthfinder.com/dashboard



# Disclaimer

TruthFinder IS NOT A CREDIT REPORTING AGENCY ("CRA") FOR PURPOSES OF THE FAIR CREDIT REPORTING ACT ("FCRA"), 15 USC §§ 1681 et seq. AS SUCH, THE ADDITIONAL PROTECTIONS AFFORDED TO CONSUMERS, AND OBLIGATIONS PLACED UPON CREDIT REPORTING AGENCIES, ARE NOT CONTEMPLATED BY, NOR CONTAINED WITHIN, THESE TERMS.

You may not use any information obtained from this report in connection with determining a prospective candidate's suitability for:

Health insurance or any other insurance

Credit and/or loans

Employment

Education, scholarships or fellowships

Housing or other accommodations

Benefits, privileges or services provided by any business establishment.

The information provided by this report has not been collected in whole or in part for the purpose of furnishing consumer reports, as defined in the FCRA. Accordingly, you understand and agree that you will not use any of the information you obtain from this report as a factor in: (a) establishing an individual's eligibility for personal credit, loans, insurance or assessing risks associated with existing consumer credit obligations; (b) evaluating an individual for employment, promotion, reassignment or retention (including employment of household workers such as babysitters, cleaning personnel, nannies, contractors, and other individuals); (c) evaluating an individual for educational opportunities, scholarships or fellowships; (d) evaluating an individual's eligibility for a license or other benefit granted by a government agency or (e) any other product, service or transaction in connection with which a consumer report may be used under the FCRA or any similar state statute, including, without limitation, apartment rental, check-cashing, or the opening of a deposit or transaction account. You also agree that you shall not use any of the information you receive through this report to take any "adverse action," as that term is defined in the FCRA; you have appropriate knowledge of the FCRA; and, if necessary, you will consult with an attorney to ensure compliance with these Terms.

# Personal Information

This section contains known aliases, birth information, and potential imposters gleaned from public records.

---

First Name
## Mohannad

Middle Name
## Y

Last Name
## Alhindi

## Known Aliases

Mohannad Y Amani  Alhindi          M Y  Alhindi

## Images

 

## Possible Relatives

| Name | Age | Date of Birth |
|---|---|---|
| Adnan H Elhindi | 85 (approx) | Jan 1, 1938 - Feb 22, 1939 |
| Amani A Alhindi | 53 | Jun 30, 1969 |
| Theodora  Sutton | 31 | Dec 4, 1991 |
| Toleen Muhannad Yousef Alhindi | 29 | May 16, 1993 |
| Laith M Alhindi | 25 | Sep 4, 1997 |

## Possible Associates

## Ahmad A Elhindi, 43 years old (approximate)

Shared Locations          7345 Tiffany Dr Apt 2w

 Ahmad A Elhindi and Mohannad Y Alhindi may have shared this address from Oct 01, 2011 to Jul 22, 2013 for 1 years 9 months 25 days

---

## Yazn El Elhindi, 49 years old (approximate)

Phone Numbers          (708) 770-4775
(708) 444-8367
(708) 594-2506
(773) 594-2506

Possible Relationships

# Contact Information

This section contains phone numbers, previous phone number and email addresses associated with Mohannad Y Alhindi.

---

Our extensive public records search did not uncover contact information for Mohannad Y Alhindi.

# Location Information

This section includes all of the locations related to this person. Locations listed may include current residence, past residences, and places of work.

---

## 1904 Tamahawk Ln, Naperville, IL 60564-8936

| Dates Seen At Address | Subdivision | Classification | Address Type |
|---|---|---|---|
| Jul 23, 2014 - Feb 22, 2023 | Hearthlands Condo | Residential | Street<br>Address Contains a Valid Primary Number Range |

| Is Deliverable | Is Receiving Mail |
|---|---|
| Yes | Yes |

---

## 1140 Preserve Ave Apt 210, Naperville, IL 60564-1619

| | Classification | Address Type | Is Deliverable |
|---|---|---|---|
| | Residential | High-Rise<br>Address Contains Apartment or Building Sub-Units | Yes |

| Is Receiving Mail |
|---|
| Yes |

---

## 7345 Tiffany Dr Apt 2w, Orland Park, IL 60462-3586

| Dates Seen At Address | Subdivision | Classification | Address Type |
|---|---|---|---|
| Oct 1, 2011 - Jul 22, 2013 | Colonades | Residential | High-Rise<br>Address Contains Apartment or Building Sub-Units |

| Building | Is Deliverable | Is Receiving Mail |
|---|---|---|
| 6 Apartments | Yes | Yes |

# Criminal & Traffic Records

DISCLAIMER: The criminal & traffic record information contained in our reports may not be 100% accurate or complete. This is because the information is pulled from records maintained by government agencies and the information contained in those records may not be 100% accurate or complete. Please use this information as a starting point for your own due diligence and investigation.

---

## Our extensive public records search did not uncover arrest, criminal, or traffic records information for Mohannad Y Alhindi.

How did we search for Mohannad Y Alhindi's data?

We scanned for Mohannad Y Alhindi's name among hundreds of millions of records from local, state, and federal databases in all 50 states.

Why didn't anything show up?

1. Some counties and states don't disclose certain information about criminal, arrest, and traffic records.
2. Mohannad Y Alhindi might not have a criminal, arrest, or traffic record!
3. Mohannad Y Alhindi's record is still being processed in their county.



EXCLUDED Based on your PDF customizations

# Sex Offender Information

This section displays the names, locations, and offenses of individuals charged with sex crimes living in close proximity to the locations associated with the subject of this report. Individuals listed below may have been charged with sex crimes as indicated. We make no representation as to the current status of these individuals. Some individuals listed below may no longer be required to register or report to state sex offender registries.

This section is not included in the download because of your PDF report customizations. To include it in a future report, toggle the section to "on" when you download again.

# Social Profiles

This section contains possible online profiles and articles for the subject of this report.

---

## Facebook

### Mohannad Alhindi

mohannad.alhindi.3

| Usernames: | Related URLs | User's ID |
|---|---|---|
| mohannad.alhindi.3 | http://www.facebook.com/m... | 1287677627@facebook |

---

## Twitter

### Mohannad Alhindi

mohannadalhindi

| Usernames: | User's ID | Followers | Following |
|---|---|---|---|
| mohannadalhindi | 413907387@twitter | 19 | 164 |

---

## Google Profiles

### Mohannad Alhindi

Archived URL:
plus.google.com/105647915180359786880/about

User's ID
105647915180359786880@-google

---

## instagram

### Mohannad Alhindi

alhindi.mohannad

| Usernames: | User's ID | Followers | Following |
|---|---|---|---|
| alhindi.mohannad | 3966756160@instagram | 150 | 262 |
| tawfiq00000 | | 0 | 201 |

---

## instagram

### Mohannad Alhindi

alhindimohannad

| Usernames: | User's ID | Followers | Following |
|---|---|---|---|
| alhindimohannad | 628970721@instagram | 78 | 22 |

---

# Twitter

Mohannad Alhindi

mikemikehotel

| Usernames: | User's ID | Followers | Following |
|---|---|---|---|
| mikemikehotel | 256596204@twitter | 0 | 0 |

# instagram

Mohannad Alhindi

alhmohannad

| Usernames: | User's ID | Followers | Following |
|---|---|---|---|
| alhmohannad | 8284656549@instagram | 9 | 4 |

# Twitter

Mohannad Alhindi

mohannadalhind5

| Usernames: | User's ID | Followers | Following |
|---|---|---|---|
| mohannadalhind5 | 1081650714462568449@twitter | 0 | 45 |

# Facebook

Mohannad Alhindi

mohannad.alhindi.7

| Usernames: | Related URLs | User's ID |
|---|---|---|
| mohannad.alhindi.7 | http://www.facebook.com/m... | 100001202401918@facebook |

# Facebook

Mohannad Alhindi

zaid.mohannad

| Usernames: | Related URLs | User's ID |
|---|---|---|
| zaid.mohannad | http://www.facebook.com/z... | 100000760751214@facebook |

# Facebook

Mohannad Alhindi

mohannad.alhindi

| Usernames: | Related URLs | User's ID |
|---|---|---|
| mohannad.alhindi | http://www.facebook.com/m... | 100001659795602@facebook |

# Pinterest

Mohannad Alhindi

[mohannadalhindi](mohannadalhindi)

Usernames:
mohannadalhindi

## Flixster

[mohannadalhindi](mohannadalhindi)

| Usernames: | Other |
|---|---|
| mohannadalhindi | Khalid  Hamadneh |

## Residential Property

Mohannad Alhindi

| Addresses: | Other | Home_owner_lives_in_property | Last_sale_date |
|---|---|---|---|
| 1904 Tamahawk Lane, Naperville, Illinois, 60564 | Amani A Alhindi | True | 2014-08-19 |
| | | True | 2014-08-19 |

Apn
07-01-02-307-009-1001
07-01-02-307-009-1001

## Residential Address

Mohannad Alhindi

Addresses:
1904 Tamahawk Lane, Naperville,
Illinois, 60564

# Business Profiles

This section includes business related information that we have found on this person such as business affiliations or employment history.

---

Our extensive public records search did not uncover businesses information for Mohannad Y Alhindi.

# Licenses

Possible data may include FAA pilot licenses and DEA licenses for prescribing controlled pharmaceuticals.

---

## Our extensive public records search did not uncover licenses information for Mohannad Y Alhindi.

There are 618,660 FAA certified pilots in the U.S. That's less than 0.2% of the population.

So, if FAA license information doesn't show up here, Mohannad Y Alhindi may not have one.

# Finances

This section includes financial information that we have found on this person such as bankruptcies, liens, judgments, foreclosures or evictions.

---

Our extensive public records search did not uncover finances information for Mohannad Y Alhindi.

# Assets

This section includes assets information that we have found on this person. Possible data may include properties owned, watercrafts owned and vehicles owned or driven.

## Currently Owned Properties

### Currently Owned Property #1

Heartland

1904 Tamahawk Ln
Naperville, Illinois, 60564

Current Owner
Mohannad Y Amani Alhindi

0 beds | 2 baths | 1656 sq/ft

| Assessed Value | Mortgage Amount | Sale Amount | Tax Amount |
|---|---|---|---|
| $84,104.00 | $194,400.00 | $243,000.00 | $5,674.00 |
| 2020 | | Jul 16, 2014 | 2020 |

Property Details

| Bedrooms | Bathrooms | Living Sq. Ft | Land Sq. Ft |
|---|---|---|---|
| 0 | 2 | 1656 | 15990 |
| Floors | Year Built | APN# | Type |
| 2 | 1994 | 07-01-02-307-009-1001 | Street; Address Contains A Valid Primary Number Range. |

Property Value

| Land Value | Improvement Value | Assessed Value (2020) | Tax Amount (2020) |
|---|---|---|---|
| $57,822.00 | $194,490.00 | $84,104.00 | $5,674.00 |

Assessed Value
2007 - 2020

| 2007 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|
| $85,444.00 | $85,444.00 | $83,991.00 | $81,440.00 | $80,470.00 |
| 2013 | 2014 | 2016 | 2017 | 2018 |
| $80,470.00 | $80,470.00 | $77,357.00 | $79,059.00 | $81,154.00 |
| 2019 | 2020 | | | |
| $81,734.00 | $84,104.00 | | | |

## Ownership History

Current Owner

Mohannad Y Alhindi

Amani A Alhindi

Ownership Details

| | | | | |
|---|---|---|---|---|
| Document Number | 2014.72979 | Sale Date | | Aug 19, 2014 |
| Recording Date | Jul 16, 2014 | Deed Securities Category | | ARMS-LENGTH RESIDEN-TIAL TRANSACTIONS (PUR-CHASE/RESALES) |
| Sale Amount | $243,000.00 | Owner | | Mohannad Y Alhindi<br>Amani A Alhindi |
| Seller | Diane  Workman<br>Thomas  Hartenbach | | | |

Mortgage Information

| | | | |
|---|---|---|---|
| Document Number | 2014.72982 | Mortgage Amount | $194,400.00 |
| Mortgage Loan Type | New Conventional | | |

Deed Information

| | | | |
|---|---|---|---|
| Document Type | WARRANTY DEED | Transaction Type | ARMS-LENGTH RESIDEN-TIAL TRANSACTIONS (PUR-CHASE/RESALES) |

---

Previous Owner
## Diane C Workman
## Diane C Hartenbach

Ownership Details

| | | | |
|---|---|---|---|
| Document Number | 2011.1491 | Sale Date | Jan 4, 2011 |
| Recording Date | Dec 3, 2010 | Deed Securities Category | REFI LOANS AND 2ND TRUST DEEDS (PURCHASE AND NON-PURCHASE MONEY TRUST DEEDS) |
| Owner | Diane C Workman<br>Diane C Hartenbach | | |

Mortgage Information

| | | | |
|---|---|---|---|
| Document Number | 2011.1491 | Mortgage Amount | $231,800.00 |
| Mortgage Loan Type | New Conventional | | |

Deed Information

| | | | |
|---|---|---|---|
| Document Type | STAND ALONE MORTGAGE | Transaction Type | REFI LOANS AND 2ND TRUST DEEDS (PURCHASE AND NON-PURCHASE MONEY TRUST DEEDS) |

---

Previous Owner
## Diane  Workman

Ownership Details

| | | | |
|---|---|---|---|
| Document Number | 2008.42958 | Sale Date | Apr 4, 2008 |
| Recording Date | Mar 31, 2008 | Deed Securities Category | REFI LOANS AND 2ND TRUST DEEDS (PURCHASE AND NON-PURCHASE MONEY TRUST DEEDS) |
| Owner | Diane  Workman | | |

Mortgage Information

| | | | |
|---|---|---|---|
| Document Number | 2008.42958 | Mortgage Amount | $230,100.00 |
| Mortgage Loan Type | Unknown | | |

Deed Information

| Document Type | STAND ALONE MORTGAGE | Transaction Type | REFI LOANS AND 2ND TRUST DEEDS (PURCHASE AND NON-PURCHASE MONEY TRUST DEEDS) |
|---|---|---|---|

**Previous Owner**

**Pinaki  Datta**

**Rini  Datta**

Ownership Details

| Document Number | 2006.91304 | Sale Date | Jun 2, 2006 |
|---|---|---|---|
| Recording Date | Dec 1, 2005 | Deed Securities Category | REFI LOANS AND 2ND TRUST DEEDS (PURCHASE AND NON-PURCHASE MONEY TRUST DEEDS) |
| Owner | Pinaki  Datta<br>Rini  Datta | | |

Mortgage Information

| Document Number | 2006.91304 | Mortgage Amount | $180,000.00 |
|---|---|---|---|
| Mortgage Loan Type | Unknown | | |

Deed Information

| Document Type | STAND ALONE MORTGAGE | Transaction Type | REFI LOANS AND 2ND TRUST DEEDS (PURCHASE AND NON-PURCHASE MONEY TRUST DEEDS) |
|---|---|---|---|

**Previous Owner**

**Diane  Workman**

Ownership Details

| Document Number | 2006.26755 | Sale Date | Feb 14, 2006 |
|---|---|---|---|
| Recording Date | Jan 24, 2006 | Deed Securities Category | ARMS-LENGTH RESIDEN-TIAL TRANSACTIONS (PUR-CHASE/RESALES) |
| Sale Amount | $256,000.00 | Owner | Diane  Workman |
| Seller | Pinaki  Datta<br>Rini  Datta | | |

Mortgage Information

| Document Number | 2006.26756 | Mortgage Amount | $230,400.00 |
|---|---|---|---|
| Mortgage Loan Type | Negative Amortization | | |

Deed Information

| Document Type | WARRANTY DEED | Transaction Type | ARMS-LENGTH RESIDEN-TIAL TRANSACTIONS (PUR-CHASE/RESALES) |
|---|---|---|---|

**Previous Owner**

**Pinaki  Datta**

**Rini  Datta**

Ownership Details

| Document Number | 2003.157518 | Sale Date | Jul 3, 2003 |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Recording Date | Jun 20, 2003 | Deed Securities Category | ARMS-LENGTH RESIDEN-TIAL TRANSACTIONS (PUR-CHASE/RESALES) |
| Sale Amount | $220,000.00 | Owner | Pinaki Datta<br>Rini Datta |
| Seller | Sandra L Castronovo<br>Sandra L Castronovo | | |

### Mortgage Information

| | | | |
|---|---|---|---|
| Document Number | 2003.157519 | Mortgage Amount | $169,350.00 |
| Mortgage Loan Type | Purchase Money Mortgage | | |

### Deed Information

| | | | |
|---|---|---|---|
| Document Type | WARRANTY DEED | Transaction Type | ARMS-LENGTH RESIDEN-TIAL TRANSACTIONS (PUR-CHASE/RESALES) |

---

### Previous Owner
## Sandra L Castronovo

### Ownership Details

| | | | |
|---|---|---|---|
| Document Number | 2002.104633 | Sale Date | Jun 26, 2002 |
| Recording Date | Jun 5, 2002 | Deed Securities Category | HELOCS - BOTH PURCHASE MONEY AND NON-PURCHASE MONEY HELOCS |
| Owner | Sandra L Castronovo | | |

### Mortgage Information

| | | | |
|---|---|---|---|
| Document Number | 2002.104633 | Mortgage Amount | $40,000.00 |
| Mortgage Loan Type | Credit Line (Revolving) | | |

### Deed Information

| | | | |
|---|---|---|---|
| Document Type | STAND ALONE MORTGAGE | Transaction Type | HELOCS - BOTH PURCHASE MONEY AND NON-PURCHASE MONEY HELOCS |

---

### Previous Owner
## Sandra  Castronovo

### Ownership Details

| | | | |
|---|---|---|---|
| Document Number | 1999.79574 | Sale Date | Jun 25, 1999 |
| Recording Date | Jun 16, 1999 | Deed Securities Category | ARMS-LENGTH RESIDEN-TIAL TRANSACTIONS (PUR-CHASE/RESALES) |
| Sale Amount | $162,500.00 | Owner | Sandra  Castronovo |
| Seller | Frank C Caputo<br>Frank C Caputo | | |

### Deed Information

| | | | |
|---|---|---|---|
| Document Type | WARRANTY DEED | Transaction Type | ARMS-LENGTH RESIDEN-TIAL TRANSACTIONS (PUR-CHASE/RESALES) |

---

### Previous Owner
## Frank C Caputo

Frank C Caputo

## Ownership Details

| | | | |
|---|---|---|---|
| Document Number | 1999.79573 | Sale Date | Jun 25, 1999 |
| Recording Date | Jun 16, 1999 | Deed Securities Category | NON-ARMS LENGTH TRANS-ACTIONS WITH VALID TITLE COMPANY NAME (NO ACCO-MODATIONS) |
| Owner | Frank C Caputo<br>Frank C Caputo | Seller | Frank C Caputo |

### Deed Information

| | | | |
|---|---|---|---|
| Document Type | INTRAFAMILY TRANSFER & DISSOLUTION | Transaction Type | NON-ARMS LENGTH TRANS-ACTIONS WITH VALID TITLE COMPANY NAME (NO ACCO-MODATIONS) |

---

Previous Owner
## Frank C Caputo

### Ownership Details

| | | | |
|---|---|---|---|
| Document Number | 1996.42543 | Sale Date | May 14, 1996 |
| Recording Date | Mar 26, 1996 | Deed Securities Category | NON-ARMS LENGTH TRANS-ACTIONS WITH VALID TITLE COMPANY NAME (NO ACCO-MODATIONS) |
| Owner | Frank C Caputo | Seller | Frank C Caputo<br>Louise M Caputo |

### Deed Information

| | | | |
|---|---|---|---|
| Document Type | INTRAFAMILY TRANSFER & DISSOLUTION | Transaction Type | NON-ARMS LENGTH TRANS-ACTIONS WITH VALID TITLE COMPANY NAME (NO ACCO-MODATIONS) |

---

Previous Owner
## Frank C Caputo
## Louise M Caputo

### Ownership Details

| | | | |
|---|---|---|---|
| Document Number | 1994.75910 | Sale Date | Aug 4, 1994 |
| Recording Date | Jul 27, 1994 | Deed Securities Category | ARMS-LENGTH RESIDEN-TIAL TRANSACTIONS (PUR-CHASE/RESALES) |
| Sale Amount | $154,000.00 | Owner | Frank C Caputo<br>Louise M Caputo |

### Deed Information

| | | | |
|---|---|---|---|
| Document Type | WARRANTY DEED | Transaction Type | ARMS-LENGTH RESIDEN-TIAL TRANSACTIONS (PUR-CHASE/RESALES) |

# EXHIBIT 11

Illinois (/il-property-records/) > Will County (/il-will-county-property-records/)

> Naperville (/naperville-il-property-records/)

> Tamahawk Lane (/tamahawk-ln-naperville-il-property-records/)



Map data ©2025 Imagery ©2025 Airbus, Maxar Technologies

# 1904 Tamahawk Ln, Naperville, IL 60564 Property Record

This property is a residential condominium built in 1994 sitting on a 0.367 acre lot located at 1904 Tamahawk Ln, Naperville, IL 60564. Currently owner occupied and last sold in 2014 for $243,000, the 1,656 sq ft property has a fireplace.

## Property Highlights

‣ Year Built: **1994**

‣ Bathrooms: **3**

‣ Bedrooms: **--**

‣ Property Type: **Residential Condominium**

‣ Last Sale Date: **19-Aug-2014**

‣ Last Sale Price: **$243,000**

‣ Square Footage: **1,656 sq ft**

‣ Lot Size: **--**

‣ Garage: **Yes**



# PUBLIC RECORDS

Due to the sensitive nature of the records you may find, please review & agree to the statement below to continue your search.

I will not use this service or the info it provides to make decisions about credit, employment, insurance, or any purpose that requires FCRA compliance.

I Agree

## Public Records Search

TruthFinder                                    Open ›

#  Property Details

## Quick Facts

‣ Type                    **Residential > Condominium / Townhouse > Condominium**

‣ Building Area           **1,656 sq ft**

‣ Lot Area                **15,991 sq ft**

‣ Garage Area             **342 sq ft**

‣ Last Sold               **19-Aug-2014**

‣ Sale Price              **$243,000**

‣ Owner Occupied          **Yes**

# Structural Details

## Interior

‣ Full Baths              **3**

‣ Stories                 **2**

# Location & Zoning

‣ Street Address          **1904 TAMAHAWK LN**

‣ City                    **NAPERVILLE**

‣ State                   **IL**

‣ Zip                     **60564-8936**

‣ Year Added              **2006**

‣ Parcel Number           **07-01-02-307-009-1001**

‣ Old Parcel Number       **01023070091001 (Changed in 1997)**

‣ Property Usage          **Residential**

‣ Jurisdiction            **WILL IL**

‣ Minor Civil Division    **WHEATLAND**

‣ Census Blockgroup       **2**

‣ Census Block            **2010**

‣ Census Tract            **880303**

‣ Legal Description       **UNIT 1904 OF LOT 9 IN THE HEARTLANDS CONDOS, BEING A SUB OF PRT OF THE W1/2 OF THE SW1/4 OF SEC 2, T37N-R9E.**

‣ Legal Range             **09E**

‣ Legal Township          **37N**

| | |
|---|---|
| ‣ Legal Section | **02** |
| ‣ Legal Quarter | **SW** |
| ‣ Legal Subdivision | **HEARTLAND** |
| ‣ Legal Block | **307** |
| ‣ Legal Lot Number | **9** |

## 👥 Owner

| | |
|---|---|
| Primary Owner | **AMANI A ALHINDI** |
| Secondary Owner | **AMANI A ALHINDI REVOCABLE TRUST** |
| Address | 1904 TAMAHAWK LN, NAPERVILLE, IL 60564-8936 |
| Owner Occupied | Yes |
| Notes | Owner is a Company, Owner is a Trust |

> 🔒 **Property Unlocked**



Court Records: 4 Sources Found

Review Public Records                    **Open** ›

##  Tax Assessment & Valuation

### Property Tax

The tax bill for 1904 Tamahawk Ln is $6,066.48, which is 35% lower than the median bill of $9,398 in Naperville.

### Tax Bill Details

| | |
|---|---|
| Tax Bill | $6,066.48 |
| Tax Roll Date | 01-Jan-2022 |
| Last Checked | May 2024 |
| Filed Exemptions | Homeowner's |

## 1904 Tamahawk Lane Property Tax Compared



## Assessed Market Value

The market value for 1904 Tamahawk Ln is $269,193, which is 39% lower than the median assessed value of $441,270 in Naperville.

## Tax Assessment Details

| | |
|---|---|
| Assessment Year | 2022 |
| Total Assessed Value | $89,731 |
| Land Value | $20,563 |
| Improvements Value | $69,168 (77.00%) |
| Previous Assessment | $85,458 |

## Market Value Details

| | |
|---|---|
| Valuation Year | 2022 |
| Total Market Value | $269,193 |
| Land Value | $61,689 |
| Improvements Value | $207,504 (77.00%) |

## 1904 Tamahawk Lane Assessed Property Value Compared



| Location | 20th Percentile | Median Market Value | 80th Percentile |
|---|---|---|---|
| Naperville | $298,113 | $441,270 | $583,050 |
| Will County | $173,478 | $253,599 | $377,562 |
| Illinois | $84,415 | $189,261 | $342,090 |

Source: **Will County Assessor Records**

#  Deeds, Mortgages & Sale History

## Assessor's Deed Record

| Deed Names | **AMANI A ALHINDI, AMANI A ALHINDI REVOCABLE TRUST** |
|---|---|
| Known Transactions | **$243,000** on 19-Aug-2014<br>26-Jan-2023 |
| Deed Transaction Id | 434332222 |
| Deed Doc Number | 0000072979 |
| Last Transfer Date | Mon 8th May 2023 |
| Transfer Doc | 0000021932 |
| Transfer Transaction | 1010492911 |

## Recorder Entries

 **April 2023: Intrafamily Transfer, Transfer**

### Record Details

| Document Type | Intrafamily Transfer |
| --- | --- |
| Jurisdiction | WILL IL |
| Recording Date | Mon 8th May 2023 |
| Property Address | 1904 TAMAHAWK LN, NAPERVILLE, IL 60564-8936 |
| Document Number | 0000021932 |
| Map Reference | DOC R94-38361 |
| Instrument Date | Thu 27th April 2023 |
| Instrument | R2023021932 |
| Transaction Type | Transfer |
| Record Updated | 21-Aug-2023 |
| Last Checked | August 2023 |

## Transaction Details

| Tax | $0.00 |
| --- | --- |
| Amount Accuracy | Transfer Tax Exempt |
| Additional | Interfamily Transfer |

🔒 Unlocked    💙    👤    ☰

(/)

Search Property Records by Address or Street

## Transferred From (Grantor/Seller)

| Owner Name | 📋 Tax Assessment | 📝 Deeds & Mortgages | 🏚️ Nearby Properties | 🔍 Search by Address |
| --- | --- | --- | --- | --- |
| | | AMANI A ALHINDI (Single Person or Individual) | | |

## Transferred To (Grantee/Buyer)

| Name | **AMANI A ALHINDI** (Trustee, or Conservator), **AMANI A ALHINDI REVOCABLE TRUST** (Non-Individual) |
|---|---|
| Relationship | Revocable Trust |
| Address | 1904 TAMAHAWK LN, NAPERVILLE, IL 60564-8936 |

 **January 2023: Affidavit of Death of Joint Tenant, Transfer**

## Record Details

| Document Type | Affidavit of Death of Joint Tenant |
|---|---|
| Jurisdiction | WILL IL |
| Recording Date | Thu 26th January 2023 |
| Property Address | 1904 TAMAHAWK LN, NAPERVILLE, IL 60564-8936 |
| Document Number | 0000004273 |
| Map Reference | DOC R93-89902 |
| Instrument Date | Tue 24th January 2023 |
| Instrument | R2023004273 |
| Transaction Type | Transfer |
| Record Updated | 21-Aug-2023 |
| Last Checked | August 2023 |

## Transaction Details

| Tax | $0.00 |
| Amount Accuracy | Zero or No Consideration Stated |
| Additional | Interfamily Transfer |

## Transferred From (Grantor/Seller)

| Name | **AMANI A ALHINDI** (Surviving Joint Tenant), **MOHANNAD Y ALHINDI** (Deceased) |

## Transferred To (Grantee/Buyer)

| Name | **AMANI A ALHINDI** (Surviving Joint Tenant) |
| Address | 1904 TAMAHAWK LN, NAPERVILLE, IL 60564-8936 |

#  Nearby Properties on Tamahawk Ln

| Address ⬆️⬇️ | Market Value ⬆️⬇️ | Owner ⬆️⬇️ |
|---|---|---|
| 1880 Tamahawk Ln, Naperville, IL 60564 (/property-record-1880-tamahawk-ln-naperville-il-60564-036/) | $244,305 | ✅ (/property-record-1880-tamahawk-ln-naperville-il-60564-036/#property-owner) |
| 1884 Tamahawk Ln, Naperville, IL 60564 (/property-record-1884-tamahawk-ln-naperville-il-60564-02f/) | $274,281 | ✅ (/property-record-1884-tamahawk-ln-naperville-il-60564-02f/#property-owner) |
| 1903 Tamahawk Ln, Naperville, IL 60564 (/property-record-1903-tamahawk-ln-naperville-il-60564-fe4/) | $249,720 | ✅ (/property-record-1903-tamahawk-ln-naperville-il-60564-fe4/#property-owner) |
| 1907 Tamahawk Ln, Naperville, IL 60564 (/property-record-1907-tamahawk-ln-naperville-il-60564-fe7/) | $237,108 | ✅ (/property-record-1907-tamahawk-ln-naperville-il-60564-fe7/#property-owner) |
| 1908 Tamahawk Ln, Naperville, IL 60564 (/property-record-1908-tamahawk-ln-naperville-il-60564-02c/) | $231,936 | ✅ (/property-record-1908-tamahawk-ln-naperville-il-60564-02c/#property-owner) |
| 1911 Tamahawk Ln, Naperville, IL 60564 (/property-record-1911-tamahawk-ln-naperville-il-60564-fe0/) | $231,423 | ✅ (/property-record-1911-tamahawk-ln-naperville-il-60564-fe0/#property-owner) |

→ View all 97 Properties on Tamahawk Ln (/tamahawk-ln-naperville-il-property-records/)

## 🔎 Property Records Search by Address

Search our free real estate database to access detailed property records. Enter an address to find property deeds, owner information, property tax history, assessments, home values, sales history, mortgages, and more.



| 🔍 Enter Property Address Here | **Search Property** |
|---|---|

> **For your privacy we don't log searches you make.**
> To save properties in your Property History, click the (💙) button on any property page (it'll turn into a ❤️ when saved).

## Property Records in Nearby Streets

Tamahawk Ln, Naperville, IL (/tamahawk-ln-naperville-il-property-records/)

Alandale Cir, Naperville, IL (/alandale-cir-naperville-il-property-records/)

Brossman St, Naperville, IL (/brossman-st-naperville-il-property-records/)

Tee Girl Ct, Naperville, IL (/tee-girl-ct-naperville-il-property-records/)

Salix Cir, Naperville, IL (/salix-cir-naperville-il-property-records/)

Willow Ridge Dr, Naperville, IL (/willow-ridge-dr-naperville-il-property-records/)

Sutton Cir, Naperville, IL (/sutton-cir-naperville-il-property-records/)

Landore Dr, Naperville, IL (/landore-dr-naperville-il-property-records/)

95th St, Naperville, IL (/95th-st-naperville-il-property-records/)

## Property Records in Nearby Cities

Naperville, IL (/naperville-il-property-records/)

Bolingbrook, IL (/bolingbrook-il-property-records/)

Eola, IL (/eola-il-property-records/)

Naperville, TX (/naperville-tx-property-records/)

Plainfield, IL (/plainfield-il-property-records/)

Aurora, IL (/aurora-il-property-records/)

Romeoville, IL (/romeoville-il-property-records/)

Warrenville, IL (/warrenville-il-property-records/)

Woodridge, IL (/woodridge-il-property-records/)

➜ All Illinois Property Records (/il-property-records/)

# 🟥 Safety Zone

**Need to protect your privacy?**
As a verified user, you can request to have your information removed from this property record. Each request is processed immediately and later carefully reviewed by our team.

 Request Removal

For security purposes, all removal requests are cryptographically signed using your passkey and permanently logged in your account activity.

**Want peace of mind about your property's privacy?**
We understand the importance of knowing if anyone has accessed your information. As a verified user, you can check if other users have previously unlocked this property record.

 Check Activity

For transparency and your peace of mind, we maintain secure logs of all property unlocks while respecting user privacy.

⚠️ **Important:** Please check the activity history before requesting a property redaction, as this page will not exist after your request is actioned.

---

About Us (/about-us/)

Contact Us (/contact-us/)

Privacy Policy (/privacy-policy/)

36-17 30th Avenue, Suite 200

New York, New York 11103

332-244-4146 (tel:+1-332-244-414)

   

(https://www.countyoffice.org/property-record-1904-tamahawk-ln-naperville-il-60564-02b/)

© 2014-2025 CountyOffice.org.

All Rights Reserved. CountyOffice.org is an independent provider of public records & government services information.

YOUR USE OF THIS SITE IS AT ALL TIMES SUBJECT TO OUR TERMS AND CONDITIONS (/terms-and-conditions/) AND THE DISCLAIMERS SET FORTH THEREIN.

# EXHIBIT 12

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

### Civil Division

**Samiha Ayysah, Feras Hindi,**

**Tala Josephano** ) **Case No.: 1:24-cv-03434-ACR**

)
Plaintiffs )

**American Airlines Inc. ,** )

**Gulf Air B.S.C** )
Defendants )

_____ )


### AFFIDAVIT OF PlAINTIFF TALA JOSEPHANO

### IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXHIBIT A

I, Tala Josephano, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as
follows:

1.  I am a named Plaintiff in the above-captioned action and the sister of the late Captain
    Mohannad Alhindi ("Decedent"), who passed away on December 14, 2022. I have
    firsthand knowledge of his domicile, employment, and personal affairs. He was a close
    friend to me as he replaced my sick dad in giving me love.

2.  From approximately 2014 through the time of his death, Captain Alhindi maintained his
    permanent home and residence at 1903 Tomahawk Court, Naperville, Illinois. He owned
    this property, paid the mortgage and taxes, and kept the majority of his personal

belongings there. His children were enrolled in U.S. schools, and his wife resided in the United States during this period.

3. He finished paying the mortgage in Nov 2022 a month before he died.He maintained U.S.-based bank accounts, regularly paid utility bills at his Naperville residence, and subscribed to U.S. services using his Illinois address.

4. His 2021 and 2022 IRS tax returns were filed listing 1903 Tomahawk Court as his primary residence.

5. At the time of his death, Captain Alhindi was a lawful permanent resident (Green Card holder) of the United States. He had completed the residency requirements and was eligible and  preparing to file for U.S. citizenship upon retirement. His wife and two children are U.S Citizens who live in IL

6. He lived in Bahrain solely for employment purposes and maintained uninterrupted ties to his Illinois residence between rotations. He always returned to Naperville, Illinois between assignments abroad.

7. Captain Alhindi consistently returned to the United States to maintain his U.S. permanent resident status (Green Card), with the intent of retiring in Illinois. He retained U.S.-based legal counsel and an accountant, and filed U.S. tax returns on his foreign income. He had become eligible for U.S. citizenship.

8. I have personal knowledge that Captain Alhindi held employment contracts and/or compensation agreements with Gulf Air that were updated after 2004, reflecting his promotion to Captain, Instructor, and Senior Captain, and his assignment to the Boeing fleet in 2019 in preparation for upcoming U.S. flights. He was paid extra for codeshare flights and training First Officers on those routes. The employment contract labeled as

Exhibit A is dated prior to 2005, during a period when Gulf Air operated under a different legal structure.

9. By contrast, I possess knowledge and records of at least three updated compensation agreements, including his 2019 Boeing fleet assignment, none of which are referenced in Exhibit A.

10. I have met my brother in London Multiple times through his codeshare flights and training.

11. I contributed toward mortgage payments for his Naperville property during 2020 and 2021, when Gulf Air reduced his salary due to the COVID-19 pandemic.

12. Captain Alhindi and I frequently discussed his future retirement plans. He intended to permanently relocate to Illinois and start a family business with me for his son. He also planned to work at a potential Gulf Air station at Chicago O'Hare International Airport as local

13. He was excited and ready for Gulf Air flying to the U.S

14. I know a few of his Bahrain friends and I have met Captain Qasim Ghuloom Ismaeel, who submitted the declaration supporting Exhibit A, through FaceTime and joint conversations with my brother. Captain Qasim knew my brother's living arrangements in the U.S. and was aware of his domicile, promotions, and duties.

15. On December 17, 2022, Captain Qasim sent an internal email to Gulf Air pilots acknowledging Captain Alhindi's promotions and close relationship with him. These facts are omitted from both his sworn declaration and Exhibit A.

16. The contract submitted by Defendant Gulf Air as Exhibit A is materially misleading. It is an outdated agreement executed by a now-defunct entity (Gulf Air G.S.C.) and omits at

least 18 years of updated employment terms and domicile changes. It does not reflect the Decedent's actual duties, rank, salary, or legal residence at the time of his death.

17. We have discussed a possibility of instructing for American Airlines Inc once retired as he believed in them as the national airlines of the U.S and his record flying their codeshare flights through Gulf Air would give him an entry

18. He never wanted to be buried in Jordan, and we shared bad experiences in that authoritarian country. He never called it home after he left.

19. I respectfully submit this affidavit in support of Plaintiffs' Motion to Strike Exhibit A, as the document fails to reflect the Decedent's true legal status, domicile, and employment terms, and stands to materially mislead the Court on a central issue.

I declare under penalty of perjury that the foregoing is true and correct.

Submitted,

May 29 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

## CERTIFICATE OF SERVICE

I hereby certify that on May 29 2025, Plaintiff Feras Hindi, Plaintiff Tala & Plaintiff Samiha will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion to Strike Exhibits

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Service Processor ABC Legal service

Submitted,

May 29 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767