## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

### Civil Division

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | ) | |
| **Tala Josephano** | ) | **Case No.:  1:24-cv-03434-ACR** |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| _____ | ) | |

**PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

NOW COME the Plaintiffs respectfully move the Court for entry of an Order granting Plaintiffs

leave to conduct limited discovery on the issues of whether Defendant, Gulf Air B.S.C.(c)

("Defendant" or "Gulf Air"), is subject to this Court's personal jurisdiction and whether the Court

has subject matter jurisdiction over this action.

As set forth more fully in this motion the law of this Circuit authorizes jurisdictional discovery

when the facts relevant to the jurisdictional analysis are contested or lie within the exclusive

control of the defendant. See *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343,

1351–52 (D.C. Cir. 2000). Here, Gulf Air's motion to dismiss under Federal Rules of Civil

Procedure 12(b)(1), 12(b)(2), and 12(b)(5) raises multiple unresolved factual questions regarding



RECEIVED

JUNE 12 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

the Decedent's domicile, Gulf Air's contacts with the United States, its corporate structure, and the adequacy of service of process.

Defendant improperly relies on inadmissible exhibits, including the Declaration of Captain Qasim Ghuloom Ismaeel and an outdated foreign employment contract, neither of which satisfies the Federal Rules of Evidence. These materials cannot be accepted as dispositive without Plaintiffs having a fair opportunity to challenge their credibility and develop a factual record through discovery.

Plaintiffs respectfully seek leave to conduct targeted jurisdictional discovery to develop the factual record regarding Gulf Air's business transactions and contacts with the District of Columbia. Although Gulf Air asserts that it has no contacts with D.C. aside from government-related activity and seeks to invoke the government contacts doctrine despite alleged Fraud by Plaintiffs which void the government contacts doctrine especially when the alleged fraud happened multiple times and the gain was direct from the alleged government Fraud. DC residents, the public and the Plaintiffs have been harmed from the alleged fraud and misrepresentation of safety and their injuries continue and their safety continues to be at risk due to Gulf Air B.S.C non compliance.

Plaintiffs allege—and seek to prove through discovery—that Gulf Air transacts substantial business in D.C. beyond mere governmental interaction. Specifically, Plaintiffs seek evidence of Gulf Air's commercial activities in the District, including but not limited to codeshare arrangements, ticket sales and reservations made through Gulf Air's website and internet platforms targeting D.C. residents, and any local sales, marketing, or distribution agreements.

These facts are directly relevant to establishing both specific and general jurisdiction, particularly in light of Gulf Air's alleged noncompliance with ICAO, DOT, and U.S. law, and its false representations to the Department of Transportation and the public.

The facts essential to resolving jurisdiction—such as the nature of Gulf Air's code-share operations, ticket sales targeting D.C., and the regulatory status of the flight in question—lie exclusively within Defendant's control and cannot be independently verified without discovery Jurisdictional discovery is further warranted because Plaintiffs allege that Gulf Air engaged in fraud and other conduct outside the scope of the government contacts doctrine, and the relevant evidence is uniquely within Gulf Air's or its agents' control

## TABLE OF AUTHORITY

1. Fed. R. Civ. P. 26(b)(1)

2. El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996)

3. GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1351 (D.C. Cir. 2000)

4. Edmond v. United States Postal Serv. Gen. Counsel, 949 F.2d 415, 425 (D.C. Cir. 1991)

5. Crane v. Carr, 814 F.2d 758, 760 (D.C. Cir. 1987)

6. Hansen v. Neumueller, 163 F.R.D. 471, 473 (D. Del. 1995)

7. GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343, 1351–52 (D.C. Cir. 2000)

8. Fed. R. Civ. P. 12(b)(1)

9. Fed. R. Civ. P. 12(b)(2)

10. Fed. R. Civ. P. 12(b)(5)

11. See FED. R. Civ. P. 26(b)(1)

12. See Hansen v. Neumueller, 163 F.R.D. 471, 473 (D. Del. 1995)

13. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250–51 (11th Cir. 2000);

14. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)

15. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250–51 (11th Cir. 2000);

16. *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021).

## <u>INTRODUCTION</u>

Jurisdictional discovery is based, in part, on the right to discovery arising under the Federal Rules of Civil Procedure . Rule 26(b)(1) states: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. See FED. R. Civ. P. 26(b)(1) (explaining the scope and limits on discovery under the Federal Rules). See Hansen v. Neumueller, 163 F.R.D. 471, 473 (D. Del. 1995) (permitting liberal discovery of any facts which are relevant, including jurisdictional facts);

Because Plaintiffs allege violations of federal aviation law, international treaties, and DOT safety regulations, this case arises under federal law and satisfies 28 U.S.C. § 1331. Accordingly, personal jurisdiction is proper under Rule 4(k)(2) because Gulf Air is not subject to general jurisdiction in any one U.S. state according to their lawyer statement that they have no Presence, NY state doesn't consider registered company and registered agent enough to establish General Jurisdiction,  and the exercise of jurisdiction comports with due process given its sustained commercial, regulatory, and operational contacts with the United States. Alternatively, jurisdiction exists under D.C. Code § 13-423(a)(1) due to Gulf Air's purposeful engagement in ongoing business and regulatory conduct centered in the District.

## BACKGROUND

Plaintiffs filed their Amended Complaint on December 31, 2025, and properly served Defendant Gulf Air B.S.C.(c) in the District of Columbia pursuant to Federal Rule of Civil Procedure 4, by delivering the summons and complaint to its designated agent at the law firm of Eckert Seamans Cherin & Mellott, LLC, as listed in its DOT Form OST-4523, filed under 49 U.S.C. § 46103 and on Gulf Air Codeshare filings to DOT. DOT confirmed.

The specific flight on which the Decedent served as operating pilot was part of a regularly approved codeshare arrangement with American Airlines and Etihad Airways under DOT Order 2008-2023, which included JFK and IAD as onward destinations per the contract of carriage. Thus, the conduct that led to harm arose from activities governed by D.C.-based regulatory obligations.

### Plaintiffs' Prima Facie Showing of Jurisdiction over Gulf Air

Plaintiffs have established a prima facie basis for jurisdiction over Defendant Gulf Air under both 28 U.S.C. § 1332 (diversity jurisdiction) and 28 U.S.C. § 1331 (federal question jurisdiction).

First, under § 1332, complete diversity exists: Plaintiffs are citizens of Virginia and California, while Gulf Air is incorporated and maintains its principal place of business in the Kingdom of Bahrain. The amount in controversy exceeds $75,000. Deceased is Domiciled in IL

Second, under § 1331, the claims arise in part under federal law, including violations of federal aviation regulations, the Code of Federal Regulations (CFR), and U.S. Department of Transportation (DOT) orders, including DOT Order 2008-2023, which governs code-share safety obligations and public interest compliance. Gulf Air's failure to meet safety oversight and reporting duties imposed by U.S. authorities, including violations of 14 C.F.R. Part 129, directly

implicates federal policies and aviation safety regulations—satisfying the federal question requirement.

Further, Plaintiffs have sufficiently alleged personal jurisdiction under the District of Columbia long-arm statute, D.C. Code § 13-423(a)(1), by showing that Gulf Air has transacted business in D.C., and the claims arise directly from those transactions. Specifically, Gulf Air Maintains a registered agent in Washington, D.C., as required by federal statute and DOT authorization processes; Regularly engages U.S.-based counsel for DOT and FAA filings (e.g., Eckert Seamans Cherin & Mellott, LLC, 1717 Pennsylvania Ave NW, Washington, D.C.); Files regulatory applications and compliance documents directly with the DOT in Washington, D.C., including safety and fitness disclosures under codeshare authorizations; Enters into Contracts, and voluntary conduct business and engage with entities

Gulf Air's active and ongoing code-share relationships with multiple U.S. carriers—American Airlines, Etihad Airways, Delta, and United—subject it to continuous regulatory oversight and legal obligations within the United States, administered from D.C. These relationships are governed by Open Skies Agreements, the Montreal Convention, and various aviation treaties, which establish rights and obligations enforceable under U.S. law and contribute to jurisdictional contacts.

Notably, DOT Order 2008-2023 imposes affirmative duties on Gulf Air, as a foreign air carrier operating under codeshare, to comply with U.S. aviation safety standards. Plaintiffs' claims for wrongful death and negligence are based on Gulf Air's failure to fulfill these obligations—including misrepresentations in DOT filings and concealment of medical

incapacitation incidents—rendering Gulf Air's conduct within the scope of both federal oversight and D.C.-based business activity.

**Venue** is proper in this District because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in and through the District of Columbia. See 28 U.S.C. § 1391(b)(2). The Kingdom of Bahrain, where Defendant Gulf Air B.S.C.(c) is headquartered, is not a proper venue for these claims Under 28 U.S.C. § 1391(c)(3), a defendant not resident in the United States may be sued in any judicial district, and the District of Columbia is appropriate because the alleged conduct and resulting harm are substantially connected to this forum

Accordingly, the Plaintiffs have shown that Gulf Air's conduct falls squarely within the ambit of U.S. jurisdiction, supported by both statutory and treaty-based legal frameworks, and that venue in the District of Columbia is proper under 28 U.S.C. § 1391(b)(2).

## <u>ARGUMENT</u>

### <u>The Law Is Well-Settled That Plaintiffs Are Entitled To Jurisdictional Discovery</u>

Whenever a defendant raises lack of personal jurisdiction as an affirmative defense and the plaintiffs demonstrate that its jurisdictional allegations can be supplemented through discovery, the law in this Circuit is well-settled that Plaintiffs have the right to conduct jurisdictional discovery. A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum. See El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 676 (D.C. Cir. 1996); see also GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1351 (D.C. Cir. 2000); Edmond v. United States Postal Serv. Gen. Counsel, 949 F.2d 415, 425 (D.C. Cir. 1991); Crane v. Carr, 814 F.2d 758, 760 (D.C. Cir. 1987).

**Through Jurisdictional Discovery, Plaintiff Can Supplement The Factual Basis**

Supporting The Courts Personal Jurisdiction Over Defendant for its Opposition Motion, the Plaintiffs proffered evidence, which taken together confirms that this court has jurisdiction over Gulf Air B.S.C

Plaintiffís Motion As described below, through jurisdictional discovery, Plaintiff, if necessary, can supplement the existing factual basis supporting the Courtís exercise of personal jurisdiction over Defendant. See GTE, 199 F.3d at 1351-52 (finding that jurisdictional discovery was warranted even though i[t]he record [currently] before th[e] court [wa]s plainly inadequate.). See also Edmond, 949 F.2d at 425 (holding that, given the plaintiffís specific allegations, ìit [w]as an abuse of discretion to deny jurisdictional discovery . . . .); Crane, 814 F.2d at 760 (vacating, in part, the lower courtís decision, because the plaintiffís case was dismissed with no opportunity for discovery on the issue of personal jurisdictionî).

If jurisdictional discovery is denied, Plaintiffs will be deprived of the opportunity to rebut Defendant's factual assertions—particularly the authenticity and completeness of Gulf Air's submitted declarations—and the Court risks dismissal based on an incomplete record This request is strictly limited to facts necessary to resolve jurisdictional disputes raised in Defendant's 12(b)(1), (2), and (5) motion and is not directed at merits discovery.


**This Court has Personal Jurisdiction over Gulf Air B.S.C**

Under Federal Rule of Civil Procedure 4(k)(2), which applies to claims arising under federal law, a federal court may exercise personal jurisdiction over a foreign defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Although Gulf Air maintains a registered agent in the District of Columbia for federal aviation regulatory purposes and an agent in New York for business registration, these limited contacts are insufficient to establish general jurisdiction in any individual state because Gulf Air is not "at home" in any U.S. jurisdiction. Gulf Air is a foreign corporation domiciled in Bahrain, with no principal place of business or incorporation in the United States.

Accordingly, Gulf Air is not subject to the general jurisdiction of any state court, satisfying the first prong of Rule 4(k)(2). The second prong is satisfied because the exercise of jurisdiction in this case is consistent with the United States Constitution and laws. Gulf Air has sufficient minimum contacts with the United States as a whole, including but not limited to its DOT certifications, regulatory filings, codeshare operations, use of distributors and U.S. airlines, internet ticket sales to U.S. residents (including through its website), engagement of auditing firms such as Wick Group, retention of U.S.-based legal counsel, and active participation in U.S. airspace and commerce through codeshare and wet lease agreements, as well as its current permit to operate flights to the United States

These ongoing contacts—especially as Plaintiffs' injuries are continuing—demonstrate that Gulf Air has purposefully availed itself of the privilege of conducting business in the United States. Accordingly, exercising jurisdiction over Gulf Air comports with due process and federal law, as required under Rule 4(k)(2) and established minimum contacts

Even if the Court were to find that Rule 4(k)(2) does not apply, jurisdiction is independently proper under D.C. Code § 13-423(a)(1), as Gulf Air has transacted substantial business in the District of Columbia, and Plaintiffs' claims arise from that conduct.

## Waiver of Sovereignty, USA Jurisdiction Under DOT order 2008-2025

Plaintiffs allege that Gulf Air, by operating under and invoking rights granted pursuant to DOT Order 2008-2023, has expressly or impliedly waived any claim to sovereign immunity and has thereby consented to suit in U.S. courts. By participating in the Department of Transportation's foreign air carrier permitting process, submitting regulatory filings, and conducting operations under U.S. codeshare agreements, Gulf Air has purposefully availed itself of the benefits and protections of U.S. law. In doing so, Gulf Air has subjected itself to the jurisdiction of U.S. courts, including the District of Columbia, and has established sufficient presence through legal representation, regulatory compliance duties, and continuous business transactions governed by U.S. aviation law. Up until the year 2023 and Every two years, Gulf Air B.S.C was issued the Standard form of approval by DOT, which governs the codeshare agreements and Gulf Air Exemption to fly wet lease .

Since 2012 up to date every DOT order approving Gulf Air B.S.C commercial activities through codeshare and wet lease, to be governed under the US LAW which Gulf Air explicitly agreed to

**DOT ORDERS,** states " *Agree that operations under this authority constitute a waiver of sovereign immunity, for the purposes of 28 U.S.C. 1605(a), but only with respect to those actions or proceedings instituted against it in any court or other tribunal in the United States that are: (a) based on its operations in international air transportation that,  according to the contract of carriage, include a point in the United States as a point of origin, point of  destination, or agreed stopping place, or for which the contract of carriage was purchased in the United  States; or (b) based on a claim under any international agreement or treaty cognizable in any court or other tribunal of the United States. In this condition, the term "international air transportation" means*

*"international transportation" as defined by the Warsaw Convention, except that all States shall be considered to be High Contracting Parties for the purpose of this definition;* Here, Gulf Air B.S.C falls squarely under a referenced above and b. As for the condition a) *based on its operations in international air transportation that, according to the contract of carriage, include a point in the United States as a point of origin, point of destination, or agreed stopping place.* Captain Mohannad was on a codeshare flight from Bangladesh that would end in JFK , DCA or IAD ( See Motion to Strike & Exhibits  DKT 50 )

 (b) This Court also has jurisdiction based on a claim arising under an international agreement or treaty cognizable in any court of the United States. Plaintiffs clearly define the international agreements that govern their claims, specifically the Bilateral Air Transport Agreement—commonly known as the "Open Skies" Agreement—between the United States and the Kingdom of Bahrain, signed on May 24, 1999. This agreement expressly permits designated airlines, including Gulf Air, to operate scheduled international air transportation between Bahrain and the United States and sets forth the regulatory and operational framework for such services.

The joint applications and renewals by American Airlines and Defendant Gulf Air B.S.C. for codeshare authority, as reflected in their filings with the U.S. Department of Transportation and related DOT orders, are expressly based on rights and obligations established by this Open Skies Bilateral Agreement (see, e.g., Exhibit: 2008 application; 2019–2021 renewals). Plaintiffs' claims thus arise directly under and are governed by this binding international agreement between the United States and Bahrain

**Defendant's Motion to Dismiss**

Gulf Air B.S.C in their motion to Dismiss, supported their argument that this court lacks Subject

matter Jurisdiction and Personal Jurisdiction using Exhibit 1 ( see exhibit 1 DKT  ) Declaration

from Captain Qasim that relies on Employment contract between the deceased Captain

Mohannad ( Plaintiffs brother ) since 1999 to 2008. Gulf Air B.S.C failed to provide the new

contracts between the deceased and the Captain Mohannad which they signed with all employees

especially the expats every 5 years or when change of circumstances such change of company

name and formation, contracts, pay, residency, family matters , insurances under the new

company names that was changed in 2012 from Gulf Air Company G.S.C to Gulf Air B.S.C. (

company name change ) . In support of its motion to dismiss, Gulf Air submitted the declaration

of Qasim, in which he asserts that the deceased was domiciled in Illinois, not Jordan, and that the

subject flight was neither a DOT-authorized flight nor a codeshare flight. Plaintiffs dispute both

factual claims, which go directly to the issues of personal jurisdiction and the applicability of

U.S. aviation regulations and treaties, including the Montreal Convention and DOT oversight

obligations.

Therefore, Plaintiffs respectfully request jurisdictional discovery to test the veracity of these

assertions, including (a) discovery concerning the decedent's residency and domicile, including

U.S. contacts and legal status; and (b) discovery related to the nature, designation, and regulatory

classification of the subject flight, including whether it involved U.S. code-share operations,

FAA oversight, or fell under any existing DOT authorization or bilateral aviation agreement. C

discovery related to service

Jurisdictional discovery is particularly warranted where, as here, the disputed facts are solely

within the control of Defendant and form the basis for its motion to dismiss under Rules 12(b)(1)

and 12(b)(2).

**Proper Service on Gulf Air under Rule 4(h)(1)(B)**

(h) Serving a Corporation, Partnership, or Association. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served (1) in a judicial district of the United States; (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and —if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant; or

Plaintiffs effected service on Defendant Gulf Air B.S.C. (C) in full compliance with Federal Rule of Civil Procedure 4(h)(1)(B) by delivering a copy of the summons and complaint to the law firm of Eckert Seamans Cherin & Mellott, LLC, at their Washington, D.C. office on January 30, 2025. The summons was issued in Gulf Air's name, and was directed to its designated agent, Evelyn D. Sahr, who is listed on Gulf Air's official DOT Form OST-4523, executed under 49 U.S.C. § 46103, as the company's authorized agent for service of "notices and process."

Upon delivery, **Gene Grey**, an individual at the law firm, accepted service and signed the service acknowledgment, identifying himself as authorized to accept service on behalf of the designated agent.

Rule 4(h)(1)(B) allows service on a foreign corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." That is precisely what occurred.

Gene Grey qualifies under the rule as either a managing or general agent, or as an agent authorized by appointment to receive service on behalf of the designated agent (Evelyn Sahr). His authority was not denied at the time of service, and no affidavit or declaration from him has been submitted to contradict this. Moreover, Plaintiffs also mailed a copy of the summons and complaint to Gulf Air's headquarters in Bahrain, fulfilling the mailing requirement under Rule 4(h)(1)(B) in cases where the agent is designated by statute. Email notifying them was also sent to Gulf Air B.S.C and DOT

Gulf Air, DOT, and counsel were notified of the lawsuit on multiple occasions, and Gulf Air has had actual notice of the claims since before and after January 30, 2025, yet it has failed to move to quash service or make a special appearance to challenge jurisdiction in a timely manner.

The declaration filed by Evelyn D. Sahr is insufficient and legally irrelevant to negate proper service because she was not the individual who received and accepted service. If Gulf Air believed service was defective, it was obligated to submit a declaration from Gene Grey, who physically accepted the summons and complaint.

Plaintiffs request jurisdictional discovery into the authority and role of Gene Grey, who accepted service and identified himself as authorized. Gulf Air cannot deny service without first addressing whether Gene Grey was acting within the scope of his actual or apparent authority as required by Rule 4. Under these circumstances, service is proper, and any technical dispute over internal law firm designation is irrelevant where the person who accepted service represented themselves as authorized and acted accordingly

**D.C. Code § 13-423(a)(1) provides:**

"A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's... transacting any business in the District of Columbia."

Under the D.C. long-arm statute, Plaintiffs make a prima facie showing for jurisdictional discovery by demonstrating that Defendant Gulf Air has purposefully and voluntarily transacted substantial business in the District of Columbia. Gulf Air's business activities in D.C. include Selling and distributing tickets for flights, including codeshare flights with domestic U.S. airlines, through its website and online distributors such as Expedia and other travel portals, which are accessible to and used by D.C. residents; Engaging in codeshare agreements with American Airlines and other U.S. carriers, with regulatory approval, oversight, and renewal processes rooted in Washington, D.C., making D.C. the jurisdictional origin of these business transactions; Generating substantial revenue from ticket sales and codeshare operations that directly involve D.C. consumers and the D.C. market; Maintaining a registered agent for service of process in D.C. and regularly making regulatory filings with the U.S. Department of Transportation and Federal Aviation Administration, both headquartered in D.C.; Utilizing U.S.-based distributors, agents, and legal counsel whose activities are directed at and benefit the D.C. market. These persistent, voluntary, and revenue-generating activities constitute "transacting business" under D.C. Code § 13-423(a)(1) and establish minimum contacts sufficient to satisfy due process.

These sustained commercial contacts including Codeshare  fall squarely within D.C. Code § 13-423(a)(1), and the claims arise directly from Gulf Air's use of D.C. institutions and markets to maintain operations that caused Plaintiffs' injuries."

Courts have held that the "transacting any business" provision is to be interpreted expansively and is coextensive with the limits of due process, requiring only that the defendant's contacts with the District are purposeful and give rise to the claims asserted. Gulf Air's purposeful engagement in the D.C. market through online sales, codeshare partnerships, and regulatory activities directed at D.C. residents and institutions meets this standard and warrants the exercise of personal jurisdiction as well as jurisdictional discovery

**<u>DUE PROCESS</u>**

To satisfy the Due Process Clause, specific personal jurisdiction requires that: (1) the defendant purposefully availed itself of the forum; (2) the claims arise out of or relate to those activities; and (3) it was reasonably foreseeable that the defendant could be haled into court there. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250–51 (11th Cir. 2000); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Gulf Air purposefully availed itself of the District of Columbia by deliberately engaging in continuous commercial and regulatory activities, including filing for and operating under DOT-authorized codeshare agreements. As part of those filings, Gulf Air executed a signed consent and waiver of jurisdiction, acknowledging that claims arising from codeshare operations are subject to U.S. law and federal oversight pursuant to DOT Order 2008-2023.. Gulf Air has entered into multiple codeshare partnerships, actively benefiting from U.S. market access and federal regulatory privileges. These are not isolated or incidental contacts—they are strategic and sustained, and they directly support Plaintiffs' claims based on regulatory misrepresentations and safety violations tied to codeshare operations.

Given this deliberate and repeated engagement with D.C.-based federal authorities, including the DOT and FAA, it was reasonably foreseeable that Gulf Air could be haled into court in the

District. Jurisdiction is consistent with constitutional due process under *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), and *Burger King*, 471 U.S. at 476–77.

## Relatedness of Contacts to the Claim

Plaintiffs' claims arise directly from Gulf Air's forum-directed activities. The alleged misrepresentations regarding safety compliance were made through regulatory filings, certifications, and audits submitted to the DOT and FAA in Washington, D.C., to maintain its codeshare operations. These filings—central to Plaintiffs' claims—form the regulatory and contractual basis of the codeshare itself. The alleged noncompliance, concealment, and misuse of the regulatory process in D.C. are the direct nexus between Gulf Air's conduct and the harm suffered, satisfying the "arising out of or relating to" requirement under *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021).

## Fair Play and Substantial Justice

Exercising jurisdiction over Gulf Air does not offend traditional notions of fair play and substantial justice .No Unfair Burden on Defendant: Gulf Air cannot claim hardship litigating in the United States while simultaneously benefiting from U.S. aviation markets, maintaining registered agents, and submitting regulatory filings to DOT and FAA in Washington, D.C. It is fundamentally unjust for a foreign airline to invoke U.S. regulatory privileges, then evade U.S. jurisdiction when disputes arise.  Plaintiffs are U.S. residents proceeding pro se, making access to a local forum especially important. Forcing them to litigate abroad would impose a vastly greater burden than requiring Gulf Air to respond in a forum where it already conducts business. D.C. and the United States have a strong interest in enforcing safety, transparency, and accountability in international aviation—particularly in codeshare operations governed by

federal law and overseen by federal agencies headquartered in D.C.

Judicial Efficiency: The claims relate directly to federal regulatory systems centralized in Washington, D.C., including the DOT and FAA, whose records, oversight, and witnesses are located within the forum.

## **Gulf Air's Fraudulent Conduct Toward D.C.-Based Federal Agencies, Combined with Substantial Business Activity, Supports Specific Personal Jurisdiction Under the Akhmetshin Exception and D.C. Long-Arm Statute**

Pursuant to *Akhmetshin v. Browder*, 335 F. Supp. 3d 128 (D.D.C. 2018), contacts with federal government agencies located in Washington, D.C. typically do not support personal jurisdiction under the government contacts exception. However, this exception does not apply where the defendant engages in fraudulent or deceptive conduct directed at government agencies, or where the defendant maintains substantial non-governmental business activity in D.C.

Here, Gulf Air's deliberate repeated and fraudulent filings submitted to the U.S. Department of Transportation (DOT) and Federal Aviation Administration (FAA)—both headquartered in Washington, D.C.—squarely fall within the fraudulent petitions exception. Plaintiffs allege that Gulf Air misrepresented their compliance in DOT order and ICAO compliance including covering up incapacitations and medical condition of its crew, safety protocols, and compliance status in official DOT filings, in order to maintain active codeshare status and U.S. market access. These fraudulent submissions were not merely advocacy or passive contact—they were affirmative, material misrepresentations to regulatory authorities responsible for overseeing passenger safety in the United States.

This misconduct directly caused Plaintiffs' injuries, which began prior to the decedent's death, through exposure to unsafe flight conditions and related harm, and have continued posthumously,

including emotional, financial, and legal damages suffered by surviving family members. The fraud was not abstract—it was the mechanism by which Gulf Air evaded regulatory scrutiny and enabled conditions that led to the fatal incident at the heart of this case.

Furthermore, Gulf Air's longstanding, continuous participation in DOT-regulated codeshare programs, its appointment of a registered agent in D.C., and its benefit from access to the U.S. aviation market, constitute substantial non-governmental business activity in the District. Gulf Air derived significant commercial and regulatory benefit from its D.C.-based operations and filings.

Gulf Air's fraudulent conduct was purposefully directed at D.C.-based federal agencies, and Plaintiffs' injuries arise directly from that misconduct before the death, after the death, and continuously to the present, satisfying both the statutory and constitutional tests for specific personal jurisdiction. These contacts are neither random nor compelled by government mandate; rather, they are voluntary and undertaken solely for Gulf Air's commercial benefit.

Since at least 2019, Gulf Air has voluntarily and consistently marketed its services in the United States for commercial gain, including promoting flights to and from U.S. cities through online platforms and third-party distributors. Beginning in 2023, Gulf Air has also posted employment advertisements targeting U.S.-based applicants, seeking to expand its operational footprint. Although these activities may not independently establish general jurisdiction—particularly in New York where the causes of action did not arise—they reinforce Gulf Air's purposeful availment of the U.S. market. These acts are neither incidental nor passive; they reflect a deliberate effort to engage with U.S. consumers and labor, further supporting the exercise of

specific personal jurisdiction for claims arising from Gulf Air's U.S.-regulated aviation operations.

Plaintiffs' claims for negligence, negligence per se, wrongful death (for Samiha), NIED (for Feras), IIED (for Samiha), damages and fraud—including fraudulent misrepresentation and concealment (for Tala)—all arise directly from Gulf Air's D.C.-centered regulatory fraud and safety violations. But for Gulf Air's noncompliance and fraudulent cover-up with ICAO and DOT, Plaintiffs' injuries would not have occurred and continue to this day.


## LIMITED JURISDICTIONAL DISCOVERY REQUEST

Plaintiffs respectfully seek leave to conduct the following limited discovery to develop the factual record necessary for the Court's jurisdictional analysis:

1. **Subpoena and Deposition of Gene Grey:**

   To determine his authority to accept service on behalf of Gulf Air and their registered agent (Evelyn Sahr)

2. **Subpoena and Deposition of Captain Qasim Ghuloom Ismaeel:**

   To examine the factual basis of his declaration regarding the decedent's domicile and the nature of the flight, including whether it was subject to DOT regulation or a codeshare agreement.

3. **Subpoena and Deposition of Evelyn D. Sahr:**

   To clarify her role and responsibilities as Gulf Air's DOT-designated registered agent under Form OST-4523 and DOT Order 2008-2023. Ms Evelyn didn't declare she doesn't accept services for other Gulf Air's matters. That Gene Gray wasn't authorized to accept service on her behalf

4.  Request for Production of Financial and Regulatory Records Submitted to DOT 2024 To establish Gulf Air's commercial benefit and regulatory interactions with D.C.-based federal agencies, including all filings, certifications, and correspondence. These financial records will show any contract with DC entities, income from DC sales, Codeshare revenue to help develop Transact business & Minimum contacts if the court finds the mentioned in this motion is not enough.

5.  Production of Codeshare Agreements and Renewals signed with American Airlines Inc. Including all communications to establish if DC is consented to Forum and compliance requirements.

6.  **Targeted Interrogatories or Requests for Production Regarding Business Transactions in D.C.:**

    Including but not limited to marketing activities, online ticket sales (including through Gulf Air's website and major travel portals such as United, Expedia, Kayak, Google Travel, Booking, Travelocity)2022-2024 or 2024 only if sufficient to the judge , contracts with U.S.-based travel agencies and distributors, and legal or compliance engagements evidencing Gulf Air's commercial conduct in the District of Columbia.

This limited discovery is directly relevant to the jurisdictional issues before the Court and is narrowly tailored to develop facts within Gulf Air's exclusive control regarding its business transactions, regulatory presence, and minimum contacts with the District of Columbia and the United States as a whole

The D.C. Circuit has repeatedly emphasized that it is an abuse of discretion to deny jurisdictional discovery where plaintiffs raise plausible allegations and the facts are in the control of the defendant. See *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996); *Crane v.*

*Carr*, 814 F.2d 758, 760 (D.C. Cir. 1987). To deny discovery here would elevate Defendant's factual denials above judicial scrutiny and deny Plaintiffs fair process

## **CONCLUSION**

For the reasons set forth above, Plaintiffs have made a prima facie showing of personal jurisdiction over Gulf Air under both Rule 4(k)(2) and D.C. Code § 13-423. Gulf Air has purposefully availed itself of the District of Columbia through regulatory filings, consent to jurisdiction under DOT Order 2008-2023, and its extensive codeshare-related activities in the United States.

Plaintiffs respectfully request leave to conduct limited jurisdictional discovery on contested facts within the exclusive control of Gulf Air and its agents. As required by law, Plaintiffs should not be denied discovery necessary to establish jurisdiction simply because Gulf Air seeks to withhold the factual record behind its regulatory, commercial, and operational presence in the United States

Submitted,

June 12  2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

*F. H*

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

*S. A*

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12 2025, Plaintiff Feras Hindi, Plaintiff Tala & Plaintiff Samiha will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion Leave for Limited Discovery, Memorandum & attachments

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Email, First Class mail

Submitted,

June 12  2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767