UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Civil Division

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | ) | |
| **Tala Josephano** | ) | Case No.: 1:24-cv-03434-ACR |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| | ) | |

**PLAINTIFF TALA JOSEPHANO'S MOTION FOR LEAVE TO FILE EMERGENCY MOTION FOR PROTECTIVE ORDER, STAY ON DEADLINES AND REQUEST FOR HEARING**

Plaintiff Tala Josephano respectfully requests leave to refile and amend her previously submitted *Emergency Motion for Protective Order and Request for In Camera Hearing* (Dkt. 46) to prevent denial by the court, and further requests that the Court set a hearing to address the ongoing threats and retaliatory actions described therein.

**A Moment for Human Reflection – Before the Law Fails the Living**

Before continuing with legal arguments, Plaintiff Tala Josephano respectfully asks this Court to take a moment of solemn reflection for the innocent lives lost yesterday. Over 240 people tragically lost their lives when Air India Flight 171, a Boeing 787-8 bound for London Gatwick, crashed shortly after takeoff from Ahmedabad on June 12, 2025, striking a medical-college

**RECEIVED**

JUN 13 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

hostel and igniting a firestorm of destruction  Among the ground victims were several resident junior doctors from India, who were eating lunch at the hostel—bright young medical professionals preparing to treat others, only to be burned alive in an instant . Their deaths—potentially caused by pilot error or a Boeing mechanical failure—underscore the grave consequences when airline safety is compromised.

Let us not forget Captain Mohannad, who died just minutes before boarding a flight, while his co-pilot — untrained in CPR and basic emergency judgment — failed to recognize a heart attack, and later failed, over eight hours, to secure proper medical care. This tragedy occurred under the banner of Gulf Air, the same airline now attempting to expand into U.S. airspace, armed with Boeing aircraft, shielded by misrepresented safety records, and emboldened by foreign interference that silences dissent rather than confronts danger.

Gulf Air, with its documented noncompliance and unresolved safety failures, has already cost lives. Their strategic expansion to the U.S. — achieved not through improved safety, but through the suppression of whistleblowers and the manipulation of regulatory channels — is not just a legal question. It is a human one. The Bangladeshi courts, influenced and pressured by Gulf Air, failed to act after Captain Mohannad's death, resulting in the preventable death of a child under the same hospital's watch. That silence killed again.

If this Court chooses not to act — if it dismisses these warnings or avoids scrutiny into Gulf Air's safety practices and campaign of retaliation — then it will share the burden of consequence. Because when the next catastrophe occurs, if it occurs here on American soil, with an unfit crew flying U.S. families in noncompliant aircraft, it will be this Court's ruling that cleared the way.

While the law rightly requires evidence, justice often begins with caution. This Court has the discretion to act — and the moment calls for it.

## BACKGROUND

On March 26, 2025, the Court issued a minute order restricting the filing of motions without leave. Plaintiff Tala believed in good faith that the restriction was resolved following the March 28 2025 hearing — particularly as the Court took argument and issued instructions orally at that time. Further, the original emergency motion was not a routine filing but a serious, time-sensitive request related to escalating safety threats, potential surveillance, and intimidation, which Plaintiff believed required immediate Court attention to preserve both personal safety and due process.

Plaintiff Tala asserts that had the Court responded to her earlier motions about investigating into the clerks and intake matters, the situation would not have escalated to this point. Tala should not have had to repeatedly plead for protection or resort to seeking public attention simply to be heard by the Court on serious and documented threats. Unfortunately, the lack of judicial response has allowed the harm to intensify and emboldened those targeting her to discredit or isolate her. In particular, the response from Gulf Air has included personal attacks and mischaracterizations — accusing her of being delusional, a "conspiracy theorist," or unlawfully filing for other Plaintiffs. These are not only false and abuse, but serve to further undermine her credibility and pressure her to abandon her case.

Reminder to the court, that Captain Mohannad Alhindi died with 99% Arterial blockage minutes from flying and Flight attendant Yaser died 16 days before him with a heart attack on the flight. If Gulf Air wasn't at fault, they would not go to this extent to make this case go away in every

country. In the U.S.A they used the same vehicle that is supporting the Jordanian Government to silence Plaintiff Tala. Now they have exceeded their limits.

## LEGAL BASIS

Federal courts possess broad inherent authority to manage their proceedings, ensure fairness, protect litigants, and preserve the integrity of the judicial process. This inherent power is not governed solely by the Federal Rules of Civil Procedure but derives from the courts' institutional duty to uphold justice and prevent abuse of their forum. The Supreme Court has recognized that the inherent powers of federal courts are essential to and inherent in the organization of courts of justice. These powers serve to prevent abuse, oppression, and injustice, and to protect the courts' jurisdiction and officers.

As articulated in Chambers v. NASCO, Inc., 501 U.S. 32, 43–46 (1991), "the inherent power of a federal court includes the power to protect the administration of justice by sanctioning abuses of the judicial process and ensuring proceedings remain fair". Plaintiff Tala is not a lawyer she follows with the internet advice on how to write motions or requests. Plaintiff Tala is under stress and harassment and has done everything the right way to get the court's attention, Plaintiff is within her rights to resort to public exposure to protect herself. These are kings and governments with power that fear exposure of their corruption and abuse, especially from an American Citizen opposition that they can't silence except utilizing people in our systems.

A district court may act sua sponte or on motion to address misconduct, harassment, intimidation, or any extrajudicial interference that may obstruct justice. The D.C. Circuit has recognized that "the inherent powers of the federal courts are those which are necessary to the exercise of all others... including the power to regulate the conduct of parties and to safeguard

judicial functions." Shepherd v. American Broadcasting Companies, Inc., 62 F.3d 1469, 1474 (D.C. Cir. 1995).

The court's inherent authority includes, but is not limited to, the power to Issue protective orders to prevent harassment or intimidation of a party; Stay proceedings where continued litigation may cause irreparable harm or undermine due process; Refer credible allegations of criminal conduct to appropriate investigative bodies, such as the U.S. Attorney or Department of Justice; Appoint a special master or take remedial action to ensure proceedings remain fair, especially where misconduct may involve foreign actors or extrajudicial influence

The Supreme Court has emphasized that courts have exercised this authority to protect not only the parties but also the judicial institution itself. As stated in Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980), "courts cannot be expected to tolerate flagrant abuses or serious threats to the proper functioning of the judicial process".

Where, as here, a pro se litigant alleges serious threats to her safety, improper influence from foreign entities, and retaliatory conduct affecting access to justice and preventing her from having a normal life as entitled by the Constitution, the court has both the authority and the responsibility to inquire further and issue appropriate relief to protect the integrity of the proceedings

**ARGUMENT**

During the March 28, 2025 hearing, the Court stated: *"If any party here is abusing the system, or harassing the other side, please bring it to my attention and we will get it dealt with."* Plaintiff Tala Josephano takes this instruction seriously and respectfully emphasizes that while the Court may have been addressing defense counsel at the time, the directive did not specify that only one

side's conduct should be reported or addressed. Plaintiff reasonably interpreted this as an open invitation by the Court to report any abuse or harassment relevant to this litigation — regardless of source. Plaintiff is not the party engaging in harassment; she is the party defending herself and seeking relief from it. If this statement applies to defense counsel, it must equally apply to a pro se litigant who has raised credible allegations of sustained intimidation, threats, surveillance, and foreign interference. Her emergency motion falls squarely within the type of situation the Court said it would address. Plaintiff Tala is simply doing what the Court permitted: bringing serious misconduct to its attention

**Jordanian Government Abuse & Interference**

Plaintiff Tala Josephano respectfully submits additional context in support of her request for emergency protective relief. Prior to this case, Plaintiff brought a separate action involving Israeli American journalist **Daphne Barak**, Josephano Vs Barak who had been preparing a documentary focused on Plaintiff's experience of abuse and persecution by the Jordanian government. Ms. Barak initially intended to expose the government's misconduct, but later withdrew her support and reversed course after being influenced by Jordanian authorities.

Specifically, Ms. Barak received and relied on materials directly from the **Office of Queen Rania of Jordan**—Private materials that do not accurately reflect Plaintiff Tala's background or activities. Those materials were used in an attempt to discredit Plaintiff, and were submitted to the court in that earlier case, ultimately causing Plaintiff to lose. This is not speculation or conspiracy: Ms. Barak herself **has made a sworn statement** (to be submitted at hearing) confirming that the private documents came from the Queen's office and that her decision to abandon the documentary and oppose Plaintiff was based on that interaction.

Case 1:24-cv-03434-ACR    Document 56    Filed 06/13/25    Page 7 of 16

7

Moreover, Ms. Barak did not stop there. After the litigation, she continued to send threatening emails to Plaintiff, urging her to drop her ongoing claims in this action. This directly implicates ongoing foreign retaliation and coordination, which Plaintiff has raised multiple times to the Court.

Plaintiff alleges that the Jordanian government, specifically King Abdullah, Queen Rania, and associated officials, have coordinated efforts inside the United States to suppress Plaintiff's legal claims and assist Defendant Gulf Air B.S.C. These actions are not theoretical — they are supported by documentary evidence, witness declarations, and personal testimony, which Plaintiff stands ready to present at an evidentiary hearing. Plaintiff further asserts that elements within the U.S. government have enabled or ignored this conduct, whether knowingly or through inaction.

Plaintiff's history of government retaliation extends beyond the United States. In her home country of Jordan, Plaintiff Tala has been criminally charged in absentia- ( 10 years after she left Jordan and moved to the USA, and right when she created her public facebook page that exposed corruption and theft of US Aid money)- with allegations including fraud, drug dealing, and attempting to "overthrow the government through publications." These charges were politically motivated, arising not from any criminal conduct, but from her public activism, online posts, and investigations into corruption and misuse of U.S. foreign aid by the Jordanian royal family.

As a result of these charges:

1. Plaintiff Tala has been sentenced to Jail if she returns, banned from entering Jordan, is barred from renewing her citizenship; and banned from receiving her inheritance.

2. She was prohibited from attending her brother's funeral unless she agreed to apologize to the government and stop her public criticism of the regime which she didn't;

3. Several of her personal friends were arrested in Jordan or gets harrassed on daily basis, allegedly due to their association with her;

4. Plaintiff Tala published a study on Queen Rania public reports, including a detailed analysis of theft and laundering of U.S. aid, have been widely shared, implicating Queen Rania's use of foundations and properties (including in the United States) to funnel and obscure funds. Plaintiff Tala has the number of 44 Billion that was misused from US aid and others. Our tax money basically.

5. Plaintiff Tala wrote many posts criticizing the amount of people waiting to be executed in Bahrain , their human rights and on the former CEO of Gulf Air who is known for corruption in Royal Jordanian Airlines from before her brother's death.

Plaintiff has filed formal complaints and reports with multiple U.S. and international agencies, including oversight bodies and law enforcement entities. However, no action has been taken. Plaintiff believes this inaction stems from political favoritism, diplomatic shielding, or mischaracterization of her as a "person of interest" within U.S. government circles — a Standard tactic used by Governments  that has effectively silenced her requests for investigation or protection.

Despite presenting evidence and cooperating fully, Plaintiff has been treated not as a whistleblower or a protected witness, but as a perceived threat. This response has enabled foreign retaliation and chilled Plaintiff's constitutional rights to petition, speak, and seek legal redress.

These facts are not hypothetical, nor are they exaggerated. They are supported by public records, social media archives, criminal filings from Jordanian authorities, and Plaintiff's detailed documentation, which she stands ready to present in full at an evidentiary hearing.

Plaintiff has since been forced to relocate from her home in CA due to continued harassment and surveillance. Her internet access has been repeatedly disrupted, and she has gathered credible evidence of unlawful monitoring, including sworn declarations from family members attesting to the pattern of intimidation.

Plaintiff respectfully asks: what if these allegations are true — and imminently provable? What if another aviation catastrophe happens ? What if Plaintiff is harmed while the Court remains silent? Why would the Court take that risk, especially when a limited referral to the Department of Justice or a protective hearing could clarify the facts and prevent irreversible harm? The court should consider these possibilities and use its power to order both DOT and FBI or DOJ investigation.

Plaintiff Tala apologizes if her pleadings have not followed strict legal formatting. She is not a lawyer. She is a pro se litigant navigating severe fear, danger and stress. But the law does not require perfection — only **credibility**, which she is prepared to prove. Plaintiff fears that without Court intervention, she will continue to be marginalized, painted falsely as a threat or a delusional person to discredit her claims. That is precisely the playbook used by authoritarian governments to silence critics. She asks the Court not to allow it to happen here. Defendant not only is defaming Plaintiff in his opposition, but abusing her public image stating she fantasizes without proofs to what they claim.

This case arises in a context of direct interference by the Jordanian government, a regime with deep ties to Bahrain's intelligence infrastructure. Indeed, Jordanian personnel form a significant portion of Bahrain's intelligence services, and Gulf Air — a state-owned airline of Bahrain — has had Jordanian leadership at the highest level, including a former CEO whom Plaintiff has publicly accused of corruption and regulatory fraud prior to the Death of her brother. Plaintiff has been actively opposing corruption publicly since 2019

The timing of this litigation is not accidental. It coincides with Gulf Air's strategic effort to expand into the U.S. market, seeking to portray itself as a prestigious, "seven-star" airline with full regulatory compliance. But Plaintiff's filings and public statements present a very different picture — one of regulatory non-compliance, cover-ups, and manipulation, especially regarding safety, employment practices, and international aviation standards.

There are four central issues now before this Court, each implicating not only this case but broader public and constitutional interests:

**1. Government Surveillance Initiated Through Foreign Mischaracterization**

The Jordanian government has deliberately portrayed Plaintiff Tala as a "person of interest" to U.S. intelligence agencies — not because she poses any threat, but because she exercises her First Amendment rights to expose corruption and demand transparency. This mischaracterization appears to have been used to justify unlawful surveillance, harassment, and monitoring of her social media, communications, and reporting activities, particularly concerning U.S. aid money and Jordanian-Bahraini collusion.

**2. Unlawful Transmission of Personal Data by a Foreign Monarchy**

Queen Rania of Jordan has personally disseminated confidential files on Plaintiff —after labeling her as an "anti-Royalist" and opposition figure — and passed those files to individuals inside and outside the United States in an apparent effort to destroy her reputation and impede previous litigation. Plaintiff Tala clarifies unequivocally: she is not "anti-Royalist." She has no interest in monarchies or titles. She is anti-corruption, and she acts out of principle to protect those without power.

**3. Systemic Vulnerability of the U.S. Judicial System to Foreign Pressure**

This case reveals a dangerous vulnerability in the federal system: that foreign governments or powerful domestic actors can influence judicial processes — bypassing constitutional safeguards, suppressing filings, discrediting litigants, and chilling the rights of whistleblowers. That this could happen under the radar, through sealed communications or silent gatekeeping, is not only a threat to Plaintiff but to every litigant in the system who relies on equal protection, transparency, and due process.

**4. Collusion and Cover-Up Involving a "National" Airline's Violations**

Most concerning, Plaintiff believes there is a coordinated effort to cover up noncompliance and misconduct by two airlines — Gulf Air and American Airlines — the latter of which holds immense influence as a major U.S. carrier. Gulf Air, backed by an authoritarian regime, appears to believe that it can buy access, suppress opposition, and pressure U.S. institutions into silence. That belief is being validated through this case — unless this Court intervenes.

Plaintiff Tala Josephano urges the Court to recognize that these matters are not private grievances or personal vendettas. They implicate national integrity, judicial independence, civil liberties, and public trust in regulated industries. She asks, again:

1. What if she is right?
2. What if the threats she describes are real, imminent, and provable?
3. And what if failing to act allows a dangerous precedent to go unchecked — where foreign influence shapes who gets heard, who gets ignored, and who gets hurt?

Plaintiff respectfully renews her request for a hearing, protective relief, and referral for independent investigation. The time to act is now.

Plaintiff Tala Josephano asserts that despite the bullying, harassment, injustice, and abuse she has endured at the hands of the Jordanian government — and now, increasingly, from Bahrain's state-aligned entities including Gulf Air — she remains unwavering in her commitment to expose unlawful interference in the judicial system. These regimes may rely on intimidation and silence, but Plaintiff Tala does not.

If this Court chooses to disregard these problems, that responsibility will rest with the Court. But Plaintiff Tala will not look away. She will not be silenced, and she will not stop fighting for what she believes in — truth, transparency, and accountability.

Despite the Court's repeated in action in response to her motions and requests for protection, Plaintiff Tala continues to act not only in her own defense, but in the defense of this very Court — a Court she believes must remain independent from the influence of foreign governments and

corporate actors who place profit over safety and human rights. She continues to speak out to ensure that this institution is not co-opted or compromised.

**Clarification and Relief Requested**

Plaintiff Tala Josephano respectfully clarifies the following in light of accusations raised in opposition:

1. Plaintiff is an individual who has been directly subjected to sustained harassment, surveillance, and intimidation — both domestically and internationally — and her motions reflect her urgent need for judicial protection;
2. The Emergency Motion for Protective Order (Dkt. 46) is not a routine motion within the scope of the Court's March 26, 2025 minute order, but a narrowly tailored, good-faith filing based on fear and credible and escalating threats to personal safety and legal access. Emergency protective relief is constitutionally and procedurally distinct from ordinary motion practice, particularly where First and Fifth Amendment rights are at stake.

Plaintiff Tala Josephano respectfully informs the Court that she possesses substantial evidence of unlawful surveillance and harassment, including statements, photographic images, names, and identifying information of individuals believed to be involved in monitoring her activities, — both domestically and internationally. This includes individuals suspected to be acting under direction of foreign governments or/and domestic officials influenced by foreign interests. While Plaintiff maintains that this surveillance is unjustified and unlawful, she acknowledges that many of these US individuals may be carrying out orders or functioning within official or contracted roles.

For that reason, and despite the deeply personal and harmful nature of this surveillance, Plaintiff will not publish or release this evidence publicly, even though it could support her broader claim of foreign interference and abuse of process. She is mindful of the potential danger to the individuals depicted, and believes that exposing their identities publicly could jeopardize their personal safety and national interests, even if they were wrongfully tasked with these operations. They are under order, not personal. Plaintiff Tala is prepared, however, to present this evidence under seal or in camera, should the Court grant an evidentiary hearing. She is also willing to identify individuals by name — including agents, intermediaries, and contractors — who were involved in the coordination or execution of surveillance and harassment tactics. She does so not out of malice, but in furtherance of the truth and the integrity of the judicial process.

Plaintiff believes the courtroom — not the public — is the appropriate forum for adjudicating these matters. She acts not to shame, threaten, or endanger anyone, but to seek protection, relief, and accountability through lawful means. She asks only that the Court recognize the seriousness and sensitivity of what she brings forward.

## **Conclusion**

Accordingly, Plaintiff Tala Josephano Respectfully Moves for the Following Relief:

1. GRANT or Leave to refile her *Emergency Motion for Protective Order and Request for In Camera Hearing* (Dkt. 46);
2. That the Court set a limited evidentiary hearing, either in person or in camera, so Plaintiff may present sworn testimony and material evidence concerning the threats, interference, and surveillance she continues to experience;

3. That the Court stay all filing deadlines and while Plaintiffs obtain Jurisdictional discovery — including Plaintiff's response to Defendant Gulf Air's oppositions motions and request for baseless sanctions accompanied with possible Defamation — until resolution of this motion;

4. That the Court grant any further relief it deems just and appropriate in the interests of justice, safety, and constitutional integrity.

Dated: June 13, 2025
Respectfully submitted,

**/s/ Tala Josephano**
Pro Se Plaintiff
615 S Catalina Ave #233
Redondo Beach, CA 90277
(347) 749-4980

## CERTIFICATE OF SERVICE

I hereby certify that on June 13 2025, Plaintiff Tala will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Motion to leave and Stay

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc  Mark & Darcy  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Service : Email

Submitted,

June 13 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980