UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Civil Division

| | | |
|---|---|---|
| **Samiha Ayysah, Feras Hindi,** | ) | |
| **Tala Josephano** | ) | Case No.: 1:24-cv-03434-ACR |
| | ) | |
| Plaintiffs | ) | |
| **American Airlines Inc. ,** | ) | |
| **Gulf Air B.S.C** | ) | |
| Defendants | ) | |
| | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE DEFENDANT GULF AIR'S EXHIBIT A**

Defendant Gulf Air's opposition rests on the submission of Exhibit A—an employment contract that expired in 2004—which is both outdated and irrelevant to the issues presently before the Court. In doing so, Defendant has disregarded the Court's Standing Order regarding the relevance and admissibility of evidence, as well as the Federal Rules of Evidence, specifically Rules 401 and 403, is immaterial and the court should grant Plaintiffs' motion DKT 47, invoke its authority and strike Defendants' Exhibit A .

## BACKGROUND

Plaintiffs filed  Motion to Strike Exhibit A from Exhibit 1 ( DKT 47  ). Defendant filed Opposition to Motion to Strike DKT 53.

RECEIVED

JUN 26 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

## REPLY TO DEFENDANT GULF AIR OPPOSITION

Defendant has failed to present any admissible evidence rebutting the critical omissions and contradictions identified by Plaintiffs. Instead, Defendant relies on Exhibit A—an incomplete and misleading document—which unfairly prejudices Plaintiffs. Defendant's argument that Exhibit A is relevant based on domicile from 2004 misconstrues the legal standard, as domicile must be determined at the time of death in 2022. Exhibit A's outdated information cannot establish domicile in 2022, especially in light of Plaintiffs' substantial evidence of Illinois domicile.

By submitting this misleading and expired document, Defendant has violated the Court's directives and evidentiary standards, causing substantial prejudice and obstructing fair resolution. Defendant does not dispute that Exhibit A expired in 2004, nor does it provide any evidence that it governed Captain Alhindi's employment in 2022 or produce the operative records required.

 Plaintiffs—pro se—have been clearly prejudiced by Defendant's use of an  immaterial and expired 2004 contract while withholding operative records. The contract has no relevance but a high risk of confusing the issues and distorting the jurisdictional analysis. Its exclusion is necessary to prevent unfairness and uphold the integrity of the proceedings. Accordingly, the Court's inherent authority and the Federal Rules warrant striking Exhibit A. Defendant's second claim that it serves only as "background" contradicts its reliance on the exhibit in key arguments about domicile, contract terms, and U.S. regulatory coverage. Defendant also fails to address the contradiction between its declarant's sworn statement and his contemporaneous email acknowledging omitted employment changes.

1. **Procedural Compliance and Relevance**

Plaintiffs move to strike Exhibit A in advance of responding to Defendant Gulf Air's Motion to Dismiss for lack of jurisdiction, which relies on an expired employment contract and a contradictory supporting declaration. The motion seeks to ensure that only relevant, admissible evidence is considered. Defendant's claim that the motion is procedurally improper is unfounded; Plaintiffs are entitled under the Federal Rules to challenge evidence supporting a dispositive motion. Defendant's reliance on Exhibit A has placed a disproportionate burden on Plaintiffs.

2. **Material Omissions and Contradictions**

Defendant fails to rebut key evidence, including a December 17, 2022 email from its own declarant, Captain Qasim, confirming multiple promotions, salary increases, and DOT-regulated assignments after Exhibit A expired in 2004. None of these changes appear in Exhibit A, making it incomplete, misleading, and irrelevant. These omissions show Exhibit A is not merely outdated but affirmatively deceptive. Under Rule 403, its minimal probative value if any, is outweighed by the risk of unfair prejudice and confusion. Defendant's continued reliance on a superseded contract underscores the need to strike Exhibit A.  Plaintiffs have clearly explained why Exhibit A is irrelevant and inadmissible. Their Motion to Strike set forth specific grounds: (A) Immaterial and lack of contemporaneous relevance ; (B) misleading and prejudicial impact; (C) violation of the Court's Standing Order; and (D) material misrepresentation. Gulf Air's claim that Plaintiffs failed to raise these points is refuted by the detailed legal and factual analysis in the motion. Gulf Air has offered no substantive rebuttal or competing evidence to challenge

Plaintiffs' showing that Exhibit A is immaterial, irrelevant, non compliant with Court's Standing order, misleading and prejudicial.

### 3. Defendant's Misuse and the Misleading Nature of Exhibit A

Defendant relies on Exhibit A as the foundation of its jurisdictional arguments, despite its expiration nearly two decades before the Decedent's death and the absence of any supporting, up-to-date records thereby presenting a distorted and misleading picture of the Decedent's employment and domicile. This strategic omission appears calculated to prejudice Plaintiffs by presenting an incomplete and inaccurate narrative. Such use of immaterial Exhibit A risks confusing the issues and undermines the fairness and accuracy essential to the Court's jurisdictional determination.

### 4. Inconsistency and Credibility of Defendant's Declarant

Defendant relies on conclusory, unsupported statements from Captain Qasim to justify the use of Exhibit A. However, his December 17, 2022 internal email contradicts key assertions in his sworn declaration, acknowledging significant post-2004 changes in the Decedent's employment—none of which appear in Exhibit A. This inconsistency undermines his credibility and highlights Defendant's reliance on incomplete and misleading evidence. Qasim's declaration is uncorroborated by any attachments, contemporaneous records, or successor documentation. Despite repeated requests, Gulf Air has failed to produce a single post-2004 contract, salary record, or policy confirming that Exhibit A remained operative. Plaintiffs, by contrast, submitted a list of supporting evidence, including internal communications and business records. Courts routinely reject declarations that are internally inconsistent or unsupported, particularly where they form the basis for dispositive jurisdictional arguments.

The Court is not required to credit a declaration that remains untested, is contradicted by the declarant's own email, and is unsupported by documentation within Defendant's exclusive control. Plaintiffs are not required to submit a counter-declaration where the declarant's credibility is already undermined by Defendant's own evidence. The resulting evidentiary gap—on issues central to jurisdiction, liability, and DOT-governed assignments—further reinforces that Exhibit A is inadmissible and must be stricken.

### 5. No Successor Liability Established

Plaintiffs have not alleged successor liability; Defendant raises it by relying on a 1999 contract issued by Gulf Air Company G.S.C., a separate legal entity. Yet Defendant provides no evidence of corporate succession—no merger documents, asset transfers, or assumption of liabilities—to justify relying on that agreement.

Statements that the 1999 contract "subsists indefinitely" are legally baseless without proof of merger or express assumption. Exhibit A contains no clause binding successors or assigning obligations to future entities. This omission is especially significant because Gulf Air B.S.C., incorporated in 2012, operates under a distinct DOT exemption, separate from any prior authorization held by Gulf Air Company G.S.C., confirming a break in legal and operational identity. Even under Defendant's own theory, Exhibit A lacks probative value. It is outdated, disconnected from current operations, and unsupported by successor liability. The document is therefore both substantively irrelevant and legally inadmissible, and must be stricken.

Contemporaneous records undermine Defendant's claim of continuity. In a December 2022 email, Captain Qasim confirmed all employment changes occurred under Gulf Air B.S.C., not the defunct Gulf Air Company G.S.C., establishing a separate relationship. Defendant's reliance

on Exhibit A—while withholding post-2004 records and succession evidence—is selective and misleading. With no proof that Gulf Air B.S.C. assumed its predecessor's obligations, and a clear break in corporate identity and terms, Exhibit A is immaterial, misleading, and legally irrelevant. It should be stricken in full.

### 6. Defendant's Mischaracterization of Evidentiary Standards, Burden, and Prejudice

Defendant misstates the evidentiary standard by treating Exhibit A as dispositive proof of domicile and employment. Jurisdictional evidence must be current, relevant, and non-misleading—standards Exhibit A fails to meet. Presented as "operative," not as claimed background, it is both outdated and misleading. These omissions are not disputed—Defendant's own declarant acknowledges them in internal emails. Under Rule 403, such evidence must be excluded due to its risk of misleading the Court even if it carries nominal relevance, which it doesn't.

This is not only a dispute over limited probative weight—it is a case of evidentiary misuse. When a party submits a stale, legally disconnected contract as dispositive of present-day jurisdictional facts, the Court is not only permitted but obligated to strike it.

A careful Rule 403 balancing confirms that Exhibit A's probative value is negligible while its risks are substantial. The only possible probative value of Exhibit A is as background evidence of Captain Alhindi's employment with Gulf Air prior to 2004—a fact Plaintiffs do not dispute and that is already established by other, uncontested records. In contrast, the risks of admitting Exhibit A are significant **Confusion of the Issues; Unfair Prejudice** and **Waste of Time:** Litigating the meaning and relevance of a long-expired contract would divert attention from the actual, material facts at issue—namely, the Decedent's domicile and employment status at the

time of his death. Given these facts, Exhibit A's minimal relevance is vastly outweighed by the risk of confusion, prejudice, and inefficiency

**7. Defendant's Mischaracterization and Evidentiary Gaps**

Defendant's stated justification for submitting Exhibit A fails both legally and logically. Plaintiffs do not dispute Captain Alhindi's long standing service with Gulf Air—he died on duty while performing his professional responsibilities. But that fact alone does not render Exhibit A material, admissible or probative for jurisdictional analysis. Defendant asserts that Exhibit A reflects Decedent's role as a pilot based in Bahrain and Jordan, yet the contract never refers to him as "Captain"—a title Gulf Air uses elsewhere, refers to him as First officer. This omission underscores the document's failure to accurately represent Decedent's actual employment status at the time of death. Gulf Air offers no contemporary records to support its claim that Decedent resided in Jordan—no housing, immigration, travel, or utility records or proofs that he didn't fly DOT governed codeshare flights, in contrast, Plaintiffs submitted evidence to prove his DOT and codeshare connection specially the flight he was about to fly and solid arguments that at minimum grant them discovery for jurisdiction and for their claims

Defendant also references communication with the Decedent's family about transportation of remains but submits no affidavit, letter, or declaration from any family member—further weakening its evidentiary posture and highlighting the reliance on unsupported claims. Taken together, Defendant's selective, unsupported, and inconsistent reliance on Exhibit A reflects an effort to derive legal conclusions from a document that cannot bear the weight. The Court should not permit such evidentiary shortcuts. Plaintiffs respectfully request that Exhibit A be stricken.

Gulf Air does not present Exhibit A as mere historical context; it offers it as operative evidence to establish Captain Alhindi's domicile, role, and employment terms in 2022. Yet the contract covers 1999–2004, and omits nearly two decades of critical updates. These omissions, **known** to and internally acknowledged by Gulf Air, render the exhibit affirmatively misleading.

Defendant's argument oversimplifies evidentiary standards and ignores the unique role Exhibit A is asked to play in this case. While a document need not be exhaustive to be admissible, one submitted as dispositive on a central jurisdictional fact must be material, relevant and not misleading. Exhibit A fails on all grounds.

Defendant's suggestion that Plaintiffs should merely "challenge the weight" of Exhibit A disregards the reality that Plaintiffs have done precisely that. Gulf Air, in contrast, has failed to produce any updated documentation or verification supporting the contract's ongoing relevance. This is not a question of competing weight in trial; it is a threshold question of admissibility, particularly amid unresolved jurisdictional issues. While evidentiary flaws may sometimes be exposed through cross-examination, that presumes the evidence is admissible in the first place. Here, the foundation is absent, the declarant lives in Bahrain and has not been deposed, the signature has two ink colors, the document is contradicted by the declarant's own contemporaneous email, and no successor liability or corporate linkage to Gulf Air B.S.C. has been established.

### 8. Mere Consistency with an Undisputed Fact Does Not Render Evidence Admissible

Defendant's argument that Exhibit A is admissible merely because it is "consistent" with undisputed facts about Captain Alhindi's long-standing employment with Gulf Air fails under the Federal Rules of Evidence. Under Rule 401, evidence is only relevant if it tends to make a

9

material fact in dispute more or less probable. Consistency with an undisputed fact—such as length of service—does not satisfy this standard, as Plaintiffs have never contested Captain Alhindi's employment history. Exhibit A is immaterial to the actual dispute: whether it accurately reflects his employment terms, domicile, or legal status at the time of his death in 2022.

Defendant's opposition fails to dispute the key facts raised by Plaintiffs and concedes that Exhibit A omits any reference to DOT regulations, codeshare assignments, or the Decedent's 2022 employment terms, rank, or benefits. Nor does Defendant challenge the authenticity of Plaintiffs' evidence, including Captain Qasim's December 17, 2022 email, which directly contradicts the 2004 contract. This silence underscores the need to strike Exhibit A. Allowing it to remain would mislead the Court and force Plaintiffs—who lack access to Gulf Air's internal records—to undertake burdensome third-party discovery to establish facts Gulf Air is obligated to disclose. This unnecessary burden is unjust and further supports striking Exhibit A.

**9. Pattern of Operational Negligence and Withholding of Evidence**

Gulf Air's conduct supports Plaintiffs' core claim of operational negligence, especially on codeshare flights. During Captain Alhindi's fatal on duty emergency, the airline lacked immediate access to his medical records, a serious failure in recordkeeping or deliberate concealment. Whether these records were lost or deliberately withheld, both scenarios reflect serious noncompliance with aviation and medical documentation standards. Gulf Air's failure to issue updated contracts under Gulf Air B.S.C. points to basic lapses in employment governance. This pattern of omissions undermines the credibility of its submissions and reinforces Plaintiffs' theory that Gulf Air operates below standards and with disregard for Crew fitness and welfare, aviation safety, and legal accountability.

### 10. Pattern of Legal and Regulatory Misrepresentation

Defendant's use of Exhibit A reflects a broader pattern of legal and regulatory misrepresentation. While seeking protection from U.S. courts and invoking its DOT exemption, Gulf Air has failed to produce basic employment records for a pilot who died mid-assignment. This raises serious concerns about its claimed regulatory compliance. The evidentiary gap suggests not mere oversight but systemic failure—or deliberate avoidance—of recordkeeping obligations essential to aviation safety. The FAA and DOT have previously run into similar misconduct by foreign carriers. Gulf Air's reliance on DOT compliance, while withholding records that would verify it, reveals a troubling inconsistency between its posture before regulators and this Court. This contradiction supports a reasonable inference that Defendant is misleading both the judiciary and possibly federal regulators. In a case implicating flight safety and jurisdictional integrity, this conduct is materially significant. The Court should view it as part of a broader pattern of strategic concealment—not an isolated evidentiary dispute.

### 11. Litigation Strategy Cannot Justify Post Hoc Supplementation

Defendant's claim that deficiencies in Exhibit A can be cured later fails. It made a clear and final evidentiary choice by submitting Exhibit A as the operative contract, supported by a sworn declaration. At no point was the exhibit described as incomplete or provisional. Defendant affirmatively relied on it in both its motion to dismiss and its opposition to the motion to strike. It had two full procedural opportunities to submit updated contracts, pay records, or employment confirmations—and chose not to. Defendant submitted nothing additional. This was not inadvertent—it was a deliberate litigation strategy. Courts have repeatedly held that when a party withholds documents within its control and instead relies on selective or outdated evidence to

frame the dispute, the appropriate remedy is not belated supplementation, but exclusion. See *Lucas v. Pathmark Stores, Inc.*, 2002 WL 99036 (E.D. Pa. Jan. 22, 2002)

Captain Qasim's declaration asserts that Exhibit A remained valid, yet his own internal email contradicts this by confirming significant post-2004 changes in Decedent's employment. If the sworn statement is misleading, any attempt to supplement the record now would further undermine the credibility of Defendant's key witness. Allowing supplementation at this stage would unfairly prejudice Plaintiffs, who have already expended significant effort rebutting a flawed submission without discovery. Procedural fairness requires parties to present their best evidence when due—not after contradiction or exposure.

### 12. Defendant's Unsupported Claim of Prejudice

Defendant's claim of undue prejudice lacks merit and should be disregarded. Any burden it now faces is self-created by submitting Exhibit A while withholding the updated employment records needed to resolve key issues. This is especially prejudicial to Plaintiffs, who, as pro se litigants, lack access to those documents. Defendant's refusal to produce essential records undermines its position and unfairly disadvantages Plaintiffs. The Court should recognize this imbalance and give no weight to Defendant's unsupported claim of prejudice.

### 13. Plaintiffs Have Established Prejudice That Exceeds Threshold

The prejudice stems from Exhibit A's inherently misleading nature. Though submitted to prove employment and domicile in 2022, the contract expired in 2004—a fact acknowledged by Gulf Air's own declarant, Captain Qasim, in a December 17, 2022 email. Moreover, the contract was

issued by a now-defunct entity, not Gulf Air B.S.C., and no link between the two has been established. It is a misrepresentation presented as admissible evidence.

Under Rule 403, as any probative value is substantially outweighed by the risk of misleading the Court, confusing the issues, and unfairly prejudicing Plaintiffs. Defendant has knowingly presented an outdated contract as operative evidence of jurisdictional facts while withholding contemporaneous records. This tactic distorts the evidentiary record and undermines the integrity of the judicial process.

 Relying on Exhibit A risks serious jurisdictional error. Defendant uses it to argue Jordanian domicile and application of the Survival Act, but jurisdiction must be based on facts as of the Decedent's death . Accepting Exhibit A invites an erroneous ruling that could limit claims, or lead to wrongful dismissal. Defendant's submission of Exhibit A, while withholding the actual 2022 employment contract and related records, has created a serious evidentiary imbalance. This is not oversight—it is deliberate strategic concealment. Courts have consistently rejected such tactics.

The resulting burden on Plaintiffs—particularly with one proceeding pro se—is severe. They have had to oppose a dispositive motion, file a motion to strike, and rebut misleading evidence, all while trying to reconstruct the Decedent's employment from incomplete communications. This effort comes without access to core records that Gulf Air is obligated to provide. Rule 403 exists precisely to prevent such manipulation of the evidentiary process.

Defendant's failure to produce the current contract goes beyond evidentiary imbalance—it strikes at the core of Plaintiffs' claims. Jurisdiction, applicable law, insurance and medical coverage, and Gulf Air's liability—including for fraud and wrongful death—all depend on the

Decedent's actual employment terms and codeshare duties at the time of death. Submitting a 2004 contract while concealing the operative 2022 agreement is not just misleading—it is materially prejudicial and undermines the integrity of these proceedings.

This evidentiary gap has compelled Plaintiffs to file multiple additional motions—including for discovery, a stay, leave to amend, and motions to strike and reply—when a single, focused opposition would have sufficed had Defendant timely produced the relevant documents. Plaintiffs have had to rely on incomplete or secondary sources, further undermining their ability to rebut Defendant's arguments and exposing them, especially the pro se Plaintiffs, to the risk of dismissal based on an incomplete record. Plaintiffs will now be forced to move to strike Defendant's declaration as well. This unnecessary litigation has resulted in out-of-pocket expenses, significant time loss, stress, and material harm, all of which compound the unfair prejudice Plaintiffs have suffered. This exemplifies the precise type of prejudice and harm that Rule 403 is designed to prevent.

Finally, the broader public interest is at stake. This case involves the safety and regulation of international flights conducted under U.S. DOT codeshare authority. Allowing a foreign carrier to conceal employment records while claiming compliance undermines regulatory oversight and sets a dangerous precedent. The Court's evidentiary gatekeeping role serves not only the parties, but also protects public trust in the legal process and the integrity of regulatory enforcement.

In sum, Plaintiffs have not only met but exceeded the Rule 403 threshold. Exhibit A's inclusion would distort the jurisdictional analysis, taint the record, and unfairly prejudice Plaintiffs. The Court should strike Exhibit A to preserve the integrity of the evidentiary process and ensure a fair adjudication.

### 14. Court's Inherent Authority

Plaintiffs respectfully remind the Court of its inherent authority to strike filings that mislead or prejudice the proceedings. Defendant's selective, irrelevant, immaterial and incomplete presentation of evidence has created an unfair record, especially prejudicing Plaintiffs as pro se litigants. Plaintiffs move to strike Exhibit A pursuant to the Court's inherent authority to manage its docket and enforce compliance with its orders and the Federal Rules. Plaintiffs further request that, if the Court deems it appropriate, it may also strike Exhibit A as immaterial under Rule 12(f). Plaintiffs ask the Court to exercise its authority to ensure fairness and integrity in this matter.

### CONCLUSION

Defendant has failed to rebut Plaintiffs' evidentiary showing with any admissible, contemporaneous, or credible documentation. Instead, it relies on an expired contract from a defunct entity, supported only by a self-contradictory declaration and lacking any corroborating records. Exhibit A is not merely incomplete—it is affirmatively misleading, legally irrelevant to the jurisdictional facts at issue, non compliant with court order, immaterial and procedurally prejudicial.

Defendant's opposition does not cure these deficiencies. It fails to produce the Decedent's operative contract, offers no explanation for the absence of successor documentation, and ignores its own internal email acknowledging facts that undermine Exhibit A's reliability. Continued reliance on this document risks misleading the Court and obstructing a fair resolution of key jurisdictional and liability issues.

Accordingly, Plaintiffs respectfully request that the Court grant their Motion to Strike Exhibit A in its entirety, grant all other relief requested in the motion, and order any further relief the Court deems just and proper.

June 26, 2025

Respectfully submitted,

**Pro Se Plaintiffs**



*Tala Josephano*

615 S Catalina Ave #233

Redondo Beach, CA 90277



*Feras Hindi*

7823 New London Dr.

Springfield, VA 22153

*Samiha Ayyash*

7823 New London Dr.

Springfield, VA 22153

# CERTIFICATE OF SERVICE

I hereby certify that on June 26 2025, Plaintiff Feras Hindi, Plaintiff Tala & Plaintiff Samiha will be sending a true and correct copy of the following documents to be served upon the parties listed below:

Response to Opposition Motion to Strike

1-Defendant American Airlines, Inc. Micah E. Ticatch 1945 Old Gallows Road, Suite 650 Vienna, Virginia 22182 . Method of Service: Email

2-Defendant Gulf Air B.S.C., Inc Darcy & Mark  **AT** Eckert Seamans Cherin & Mellott, LLC 1717 Pennsylvania Ave., N.W., 12th Floor 12th Washington, D.C. 20006 Method of Service: Email and mail

Submitted,

June 26 2025

**Pro Se Plaintiffs**

Tala Josephano
615 S Catalina Ave #233
Redondo Beach CA 90277
347-749-4980

Feras Hindi
7823 New London Dr.
Springfield VA 22153
703-980-6955

Samiha Ayyash
7823 New London Dr.
Springfield VA 22153
703-623-3767